# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| RIGHTCHOICE MANAGED CARE, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 5:18-cv-06037-DGK ) |
| HOSPITAL PARTNERS, INC., et al., | ) ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

This action arises out of an alleged pass-through billing scheme for laboratory tests at a rural Missouri hospital. Plaintiffs RightCHOICE Managed Care, Inc. ("RightCHOICE"), and Blue Cross Blue Shield insurance plans ("BCBS Plans") claim that Defendants contrived to bill them for lab tests through the Missouri hospital even though the tests were performed at outside labs throughout the country. Now before the Court is Defendants Hospital Partners, Inc., Empower H.I.S., LLC, David Byrns, and Jorge Perez's motion to dismiss or, in the alternative, for a more definite statement (Doc. 77). Also before the Court is Defendant James Porter, Jr.'s motion to dismiss (Doc. 124). The Court DENIES both motions.

### Background

Putnam County Memorial Hospital (the "Hospital") is a struggling fifteen-bed hospital in Unionville, Missouri. In 2008, the Hospital entered into a participating-provider agreement with RightCHOICE. Health-insurance companies frequently reimburse rural hospitals at higher rates than is typical to account for their precarious financial footing. RightCHOICE's "in-network" contract is no exception. It binds the Hospital to provide medical services to BCBS Plan members in exchange for reimbursement from RightCHOICE at favorable agreed-upon rates. The contract

states that the Hospital "shall bill only for Hospital Services performed by, or under the direction and personal supervision of, [the Hospital]." Doc. 60 § 4.1(b). The contract also appears to limit reimbursable services to those deemed medically necessary. *Id.* §§ 1.13, 1.18, 4.4(a).

The BCBS Plans are independently owned BCBS licensees or subsidiaries of licensees that provide health insurance in limited service areas. The BCBS Plans also provide insurance and administrative support for employer-sponsored health plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The BCBS "BlueCard" program allows members of one BCBS Plan to obtain medical treatment in another Plan's service area. Thus, if an outside BCBS Plan member obtains treatment at the Hospital, RightCHOICE would reimburse the Hospital at the Hospital's negotiated rates. RightCHOICE would then reconcile such reimbursements with the treated member's applicable home plan.

Notwithstanding this arrangement, the Hospital faced growing financial troubles and began searching for new leadership. In September 2016, the Hospital contracted with Hospital Partners, helmed by David Byrns and Jorge Perez, to take over the Hospital. Byrns became the Hospital's president and chief executive officer. Upon assuming control, Hospital Partners engaged Empower H.I.S., also managed by Perez, to handle the Hospital's claim billing and recordkeeping. Hospital Partners additionally engaged Defendant Hospital Lab Partners, LLC, managed by Perez and James Porter, Jr., to engage and coordinate with Defendant laboratories in Florida, Georgia, Texas, and Colorado. One such laboratory was Defendant RAJ Enterprises of Central Florida, LLC, doing business as Pinnacle Laboratory Services, which Porter managed.[1]

Plaintiffs describe Defendants' billing arrangement as follows. First, out-of-state laboratories generated test orders from out-of-state healthcare providers. The vast majority of

---

[1] Hospital Lab Partners and Pinnacle Laboratory Services voluntary dissolved after being served with Plaintiffs' complaint. The Court entered default against both parties (Doc. 89).

these orders were for urine drug tests. The rest were for blood tests and general health panels. The providers mailed their patients' specimens to the labs, where they were analyzed. The labs sent the results back to the providers and the patients' insurance information to the Defendants in control of the Hospital. Empower H.I.S. then billed RightCHOICE for the tests as if they had been performed at the Hospital, despite the patients never having been there. This enabled Defendants to avail themselves of the Hospital's high reimbursement rates; had the labs billed RightCHOICE directly, they would have received much less.[2]

Plaintiffs state that the number of urine drug test claims the Hospital billed to RightCHOICE jumped 43,000% in the first six months of 2017 over the same period the prior year. Plaintiffs add that many of these tests were not medically necessary, and were ordered purely to maximize Defendants' revenue. RightCHOICE broached these issues with Byrns, who reportedly responded that the Hospital occasionally experienced operational failures requiring it to work with outside associates to provide patients with physician-ordered medical services. Plaintiffs claim this statement was false. Plaintiffs also claim that Byrns refused to expound upon Hospital Lab Partners' relationship with the Hospital, telling them only that the company assisted the Hospital with its own lab services.

Plaintiffs allege that Defendants' scheme defrauded them of over $73 million. Plaintiffs further allege that Defendants each received a portion of the proceeds. Plaintiffs' third amended complaint (Doc. 57) brings nine counts: Fraud and Fraudulent Concealment (Count I), Negligent Misrepresentation (Count II), Restitution under ERISA Section 502(a)(3) (Count III), Declaratory

---

[2] Plaintiffs offer two claims as examples of how the alleged scheme worked. One involves urine collected from a BCBS Plan member at an Ohio pain-management practice. Plaintiffs allege that a Georgia laboratory tested the urine and conducted unnecessary follow-up testing. Plaintiffs claim that Empower H.I.S. billed RightCHOICE for the testing, even though the BCBS Plan member was not a Hospital patient and was hundreds of miles from Missouri. Plaintiffs' other sample claim is similar, but involves urine collected from a patient at a substance-abuse facility in Virginia.

and Injunctive Relief under ERISA Section 502(a)(3) and 28 U.S.C. §§ 2201 and 2202 (Count IV), Tortious Interference with Contract (Count V), Civil Conspiracy (Count VI), Aiding and Abetting a Tort (Count VII), Unjust Enrichment (Count VIII), and Money Had and Received (Count IX).

## Discussion

Hospital Partners, Empower H.I.S., Byrns, and Perez advance a number of arguments in their motion to dismiss Plaintiffs' third amended complaint. They claim that the Court lacks subject-matter and personal jurisdiction; that venue does not lie in this district; that the complaint fails to join indispensable parties; and that the complaint impermissibly lumps Defendants together and fails to plead fraud, fraudulent concealment, and negligent misrepresentation with sufficient particularity. They also contend that Plaintiffs fail to state claims of unjust enrichment and money had and received and fail to address conditions precedent. They finally maintain that the economic loss doctrine bars Plaintiffs' tort claims. Porter's motion includes many of the same arguments, but adds that ERISA preempts Plaintiffs' state-law claims; that Plaintiffs' seek impermissible relief under ERISA; that Plaintiffs fail to state claims of tortious interference with contract, civil conspiracy, and aiding and abetting a tort; and that Plaintiffs fail to pierce the corporate veil.

**I.    The Court has subject-matter jurisdiction over Defendants.**

A district court must have both subject-matter and personal jurisdiction to hear a case. *Crawford v. F. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001); Fed. R. Civ. P. 12(b)(1)-(b)(2). Plaintiffs plead subject-matter jurisdiction under 28 U.S.C. § 1331, which grants district courts the power to hear cases presenting a federal question. To properly allege federal-question jurisdiction, a party must plead a "colorable claim arising under the Federal Constitution or laws." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (internal quotations and citation omitted).

Plaintiffs assert claims under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), a remedial provision authorizing fiduciaries[3] of ERISA-governed health-insurance plans to sue to "enjoin any act or practice" that violates the plans' terms. Section 502(a)(3) also permits fiduciaries to obtain equitable relief redressing any such violations. *Id.*; *Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) (discussing the remedies available under section 502(a)(3)). Plaintiffs invoke section 502(a)(3) in seeking equitable restitution of reimbursement overpayments, a constructive trust on these payments, a declaration as to the lawfulness of Defendants' actions, and an injunction halting the same.

Defendants contend that the ERISA claims are not colorable because Defendants have no contractual relationship with Plaintiffs or their plans. They argue the Court lacks subject-matter jurisdiction as a result. This argument fails. ERISA does not require privity to maintain an action under section 502(a)(3). Indeed, section 502(a)(3) "admits of no limit . . . on the universe of possible defendants." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 239 (2000); *see also Lyons v. Philip Morris Inc.*, 225 F.3d 909, 913 (8th Cir. 2000) (concluding that suing third parties under section 502(a)(3) "does not eliminate § 502(a)(3) jurisdiction over . . . claims to recover health care benefits paid by the plans"). "[T]he focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I or an ERISA plan].'" *Harris Tr.*, 530 U.S. at 239 (quoting 29 U.S.C. § 1132(a)(3)). For purposes of establishing subject-matter jurisdiction, then, it is sufficient that Plaintiffs seek appropriate relief under ERISA.

---

[3] ERISA defines "fiduciary" as one who exercises "any discretionary authority or discretionary control" over the management of an ERISA plan or its assets. 29 U.S.C. § 1002(21)(A). Plaintiffs assert that they are ERISA fiduciaries at least in part because they provide insurance and administrative services, including claim processing, to the ERISA plans. Defendants do not challenge this claim.

## II. The Court has personal jurisdiction over Defendants.

The Court likewise has personal jurisdiction over Defendants. Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), provides that "process may be served in any . . . district where a defendant resides or may be found." Courts of appeals widely interpret this provision as conferring personal jurisdiction over distant defendants. *See, e.g.*, *Denny's, Inc. v. Cake*, 364 F.3d 521, 525 (4th Cir. 2004); *Bellaire Gen. Hosp. v. BCBS*, 97 F.3d 822, 826 (5th Cir. 1996); *Med. Mut. of Ohio v. DeSoto*, 245 F.3d 561, 567 (6th Cir. 2001); *Bd. of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035-36 (7th Cir. 2000); *see also Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) ("Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.").

Although the Eighth Circuit has not directly addressed the issue, it would likely agree. It held in *In re Federal Fountain, Inc.*, 165 F.3d 600, 602 (8th Cir. 1999), that the bankruptcy code's nationwide-service provision permits the exercise of nationwide personal jurisdiction, provided the defendant has sufficient contacts with the United States. The court reasoned that the provision's national scope evinced Congress's intent to grant a district court the power to bring before it "'all the parties necessary to its decision.'" *Id.* (quoting *Robertson v. Union Pacific R.R. Co.*, 98 U.S. 569, 604 (1878)). Courts in the Eighth Circuit have roundly applied this ruling in the ERISA setting. *See, e.g.*, *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Soles*, 204 F. Supp. 2d 1184, 1185-86 (W.D. Ark. 2002); *BCBSM, Inc. v. Vazquez*, No. 14-1901 (JNE/TNL), 2014 WL 2808962, at *2 (D. Minn. June 20, 2014); *Wellmark, Inc. v. Deguara*, No. 4:02-cv-40534, 2003 WL 21254637, at *3 (D.S.D. May 28, 2003); *Stumpf v. Med. Ben. Adm'rs*, No. 8:99-cv-185, 2001 WL 1397326, at *2 (D. Neb. Mar. 14, 2001). This Court does the same,

and holds that section 502(e)(2) of ERISA serves as a statutory basis for exercising personal jurisdiction over Defendants.

**III.    Venue is proper in this Court.**

Defendants next claim that venue is improper in this Court because they lack privity with Plaintiffs and because it is unclear where the alleged wrongdoing occurred. Venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[4] 28 U.S.C. § 1391(b)(2). In the Eighth Circuit, the defendant has the burden of establishing that venue is improper. *Brigdon v. Slater*, 100 F. Supp. 2d 1162, 1164 (W.D. Mo. 2000) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)). Venue lies here because Defendants allegedly billed RightCHOICE for fraudulent claims through the Hospital, which multiple Defendants managed and which is located within the Saint Joseph Division of the Western District of Missouri. 28 U.S.C. § 105(b)(3).

**IV.    ERISA does not preempt Plaintiffs' state-law claims.**

Porter generally argues that ERISA expressly preempts Plaintiffs' state-law claims. The Court disagrees. Section 514 of ERISA, 29 U.S.C. § 1144, provides that ERISA expressly preempts state laws that "relate to any [ERISA] plan." *Prud. Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907-08 (8th Cir. 2005) (discussing 29 U.S.C. § 1144). A state law "relates to" an ERISA plan if it either "has a connection with or reference to such a plan." *N.Y. State Conf. of BCBS Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Despite the breadth of this language, the Supreme Court has clarified that preemption does not occur "if the state law has only

---

[4] ERISA has its own venue provision, which provides for venue "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Plaintiffs do not plead or brief jurisdiction under this section, and are not required to do so. *See Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 607 F.2d 245, 248 (9th Cir. 1979) ("The ERISA venue provision is intended to expand, rather than restrict, the range of permissible venue locations."); 14D Charles A. Wright, et al., *Fed'l Practice and Procedure* § 3825 (4th ed. 2018) ("The ERISA venue provision is not exclusive.").

a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Id.* at 661 (internal quotations and citation omitted). Furthermore, courts presume that Congress did not intend for ERISA to supplant state law. *Travelers*, 514 U.S. at 654.

Plaintiffs bring their tort claims under generally applicable Missouri laws. Because these laws make no reference to ERISA, the question is whether Plaintiffs' claims have more than a tenuous or remote connection with an ERISA plan. Courts weigh several factors in making this determination, including

> (1) whether the state law negates a plan provision; (2) the effect on primary ERISA entities and impact on plan structure; (3) the impact on plan administration; (4) the economic impact on the plan; (5) whether preemption is consistent with other provisions of ERISA; and (6) whether the state law at issue is an exercise of traditional state power.

*Bannister v. Sorenson*, 103 F.3d 632, 636 (8th Cir. 1996) (citing *Ark. BCBS v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1345-50 (8th Cir. 1991)). No one factor is determinative; courts must consider the totality of the state law's impact on the ERISA plan. *Id.* (citing *Ark. BCBS*, 947 F.3d at 1345).

The parties do not brief each of the above factors in great detail. But having considered them, the Court concludes that ERISA does not preempt Plaintiffs' tort claims. For one, the claims do not encroach upon the relations between primary ERISA entities—"the employer, the plan, the plan fiduciaries, and the beneficiaries"—because Defendants are not primary ERISA entities. *See In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 605 (8th Cir. 1996) (stating that a state claim is less likely to be preempted "if it affects relations between [a primary ERISA entity] and an outside party" (internal quotations and citation omitted)). In addition, a recovery by Plaintiffs would not impose additional burdens on plan administrators or require them to change existing procedures. *Id.* at 606 (considering these factors). It also seems that Defendants, and not the ERISA plans, would be liable for any damages resulting from the tort claims. *Id.* (considering

this as well).  And, of course, Missouri exercises a traditional state power in regulating fraud and misrepresentation.  *See, e.g.*, *Bruffey v. Brickley*, 5 Mo. 395 (1838).

Porter contends that the claims necessitate looking to the ERISA plans to determine whether the lab tests were medically necessary. Yet, any such interaction with the plans is peripheral.  Plaintiffs' tort claims derive not from ERISA, but from Defendants' alleged fraudulent billing practices.  Plaintiffs maintain that Defendants made intentional misrepresentations and omitted material facts to induce them to reimburse Defendants at the high rates guaranteed by RightCHOICE's participating-provider agreement.  In other words, the heart of Plaintiffs' tort claims is "garden-variety" fraud in the health-insurance context.  Courts frequently rule against preemption in such circumstances.  *See, e.g.*, *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (ruling that ERISA did not preempt a fraud claim where it "[did] not rely on the plan's operation and management" and where the plan "was only the context in which this garden variety fraud occurred"); *Conn. Gen. Life Ins. Co. v. Adv. Chiro. Healthcare*, 54 F. Supp. 3d 260, 268 (E.D.N.Y. 2003) ("While the Court is mindful that the definition of 'medically necessary' is relevant is deciding the legitimacy of Plaintiff's claims, the essence of the claim is fraud, and mere involvement of the definitions of the terms does not implicate the Plan so as to warrant preemption."); *Conn. Gen. Life Ins. Co. v. Adv. Surgery Ctr. of Bethesda, LLC*, No: DKC 14-2376, 2015 WL 4394408, at *17 (D. Md. July 15, 2015); *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 5:16-cv-01094-BF-RBF, 2018 WL 4211742, at *4 (W.D. Tex. Sept. 4, 2018); *BCBS of Miss. v. Sharkey-Issaquena Comm. Hosp.*, No. 3:17-cv-338-DPJ-FKB, 2017 WL 6375954, at *3-5 (S.D. Miss. Dec. 13, 2017).  The Court finds such opinions persuasive and holds that Plaintiffs' tort claims have too tenuous an effect on the ERISA plans to justify preemption.

## V. Plaintiffs seek appropriate relief under ERISA.

Porter next challenges Plaintiffs' claims for equitable restitution and declaratory and injunctive relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). He argues that Plaintiffs' improperly invoke this section to obtain money damages. Section 502(a)(3) indeed affords claimants "appropriate equitable relief" only. *Id.*; *Knudson*, 534 U.S. at 213-14. This includes restitution in the form of a constructive trust over money "belonging in good conscience" to the plaintiff, provided the plaintiff can trace it "to particular funds . . . in the defendant's possession." *Id.* at 213. Section 502(a)(3) does not authorize compensatory damages. *Id.* at 212-15. Such a claim will ultimately fail even if it is couched as a prayer for equitable relief. *Id.* Moreover, equitable restitution is unavailable where the proceeds in question have "dissipated" and the claim seeks to recover from a defendant's general assets. *Id.* at 714; *Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 390 (8th Cir. 2017).

Although Plaintiffs properly request a constructive trust over the alleged overpayments, Defendants argue that because Plaintiffs have not identified—and cannot identify—any particular funds housing the payments, their claim is legal in nature and must be dismissed. This argument is premature. Plaintiffs are not required to identify the underlying funds in their complaint. *Pharmacia Corp. Supp. Pension Plan, ex rel. Pfizer Inc. v. Weldon*, 126 F. Supp. 3d 1061, 1069-70 (E.D. Mo. 2015) ("[T]he location of the funds is not necessary at the pleading stage."); *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950, 979 (W.D. Wis. 2011) ("At this early stage, plaintiffs cannot be expected to identify a specific account in which the funds are held or string of transactions that show that the proceeds can be traced. To require as much would shut the door on most, if not all, claims for such equitable relief."); *Conn. Gen. Life Ins. Co. v. Elite Ctr. for Minimally Invasive Sur., LLC*, No. 4:16-cv-00571, 2017 WL 607130, at *7 (S.D. Tex. Feb.

15, 2017) ("In the present case, [the plaintiff] has not yet had an opportunity to prove the deposited funds can be traced to a specific account."); *but see Bethesda*, 2015 WL 4394408, at *5-8 (dismissing claim for reimbursement of overpayments where the plaintiffs did not allege "that the overpayments were kept in separate accounts or otherwise how they are separate and distinct from the [defendant's] general assets").

Plaintiffs' claim for equitable restitution seeks remedies typically available at equity, and Plaintiffs acknowledge the necessity of tracing their money to particular funds in Defendants' possession. Furthermore, the claim focuses on disgorging Defendants' allegedly ill-gotten gains, as opposed to imposing liability on them for Plaintiffs' losses. *See Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944-45 (8th Cir. 1999) (discussing the significance of this distinction). The Court will therefore allow the claim to proceed at this time.

Porter's challenge to Plaintiffs' claim for declaratory and injunctive relief is similarly unavailing. He asserts that Plaintiffs use this claim too as a vehicle for obtaining unauthorized compensatory damages under ERISA. Plaintiffs respond that they are not asking the Court for damages, but for an injunction halting Defendants' alleged scheme and a declaration that they need not pay for pending and future insurance claims arising therefrom. Section 502(a)(3) contemplates such relief. *Id.* at 944 ("Equitable relief [under section 502(a)(3)] clearly includes injunctive and declaratory relief."); *Dakotas and W. Minn. Elec. Health & Welfare Fund v. First Agency. Inc.*, 865 F.3d 1098, 1104 (8th Cir. 2017) (holding that declaratory relief is equitable for purposes of section 502(a)(3)). As a result, Plaintiffs' claim for declaratory and injunctive relief also survives Defendants' motion.

## VI. Defendants have not shown that the Hospital and Putnam County are indispensable parties.

Defendants ask the Court to dismiss Plaintiffs' complaint for failing to join the Hospital and Putnam County as indispensable parties. Federal Rule of Civil Procedure 12(b)(7) allows for dismissal for the "failure to join a party under Rule 19." Rule 19 in turn sets forth a two-part test for ascertaining whether a non-party is indispensable. Rule 19(a)(1) first requires a court to determine whether it cannot accord complete relief in the non-party's absence, whether the non-party claims an interest in the action such that its absence would impair or impede its ability to protect the interest, and whether without the non-party an existing party would face multiple or inconsistent obligations.

If one of Rule 19(a)(1)'s criteria is satisfied, a court considers whether the non-party is indispensable under Rule 19(b). A non-party is indispensable when it cannot be joined and its absence "would render a judgment infirm, defective, or unfairly prejudicial in some fashion." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001). Courts disfavor motions of this type, *Fort Yates Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015), and their proponent has the burden of producing evidence "showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 992 (N.D. Iowa 1995) (citations omitted).

Defendants have not met their burden. They argue the Hospital and Putnam County are indispensable because they contracted with RightCHOICE and themselves committed wrongdoing under the facts Plaintiffs allege. But "[a] required party must be more than just a joint tortfeasor." *Christenson v. Freeman Health Sys.*, 71 F. Supp. 3d 964, 969 (W.D. Mo. 2014) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). And whether or not the Hospital wronged Plaintiffs has no bearing on Plaintiffs' allegations that Defendants defrauded them. The Court can still accord

Plaintiffs complete relief on the counts advanced. The Hospital's actions likewise do not establish that it has an interest in this litigation or could face conflicting obligations.

Defendants also argue that a judgment against them will impact their contracts with the Hospital and result in tested patients being held liable for their medical costs under "various contract and quasi-contract theories." Defendants do not flesh out these arguments, however, and it is unlikely they would impact the result in any event. "Rule 19(a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among *the current parties* . . . . The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *LLC Corp. v. Pension Ben. Guar. Corp.*, 703 F.2d 301, 305 (8th Cir. 1983) (emphasis added). Defendants moreover make no effort to show that the Court could not join the Hospital and Putnam County. Consequently, the Court cannot now conclude that they are indispensable.

### VII. Plaintiffs state claims of fraud and fraudulent concealment, negligent misrepresentation, tortious interference with contract, unjust enrichment, money had and received, civil conspiracy, and aiding and abetting a tort.

Defendants move to dismiss Plaintiffs' state-law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), which authorizes the dismissal of a complaint for "fail[ing] to state a claim upon which relief can be granted." A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Mere labels and conclusions, or formulaic recitations of the elements of a cause of action, are insufficient. *Twombley*, 550 U.S. at 555. In ruling on a Rule 12(b)(6) motion, a court treats all well-pleaded facts in a complaint as true and construes them in the plaintiff's favor. *Id.* at 554.

Rule 9(b) additionally sets forth a heightened pleading standard for fraud claims. It requires parties to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This typically includes "the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997) (citation omitted). Conclusory allegations are not enough, *id.*, but Rule 9(b)'s requirement must be read "in harmony with the principles of notice pleading." *Schaller Tel. Co. v. Golden Sky Sys., Inc.* 298 F.3d 736, 746 (8th Cir. 2002) (internal quotations and citation omitted). Thus, "the special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* (internal quotations and citation omitted).

### a. Plaintiffs plead fraud, fraudulent concealment, and negligent misrepresentation with sufficient particularity.

Defendants argue that Plaintiffs' third amended complaint runs afoul of Rule 9(b) by failing to allege with particularity the nature of each Defendant's participation in the billing scheme.[5] It is true that a complaint must inform defendants of their individual participation in a purported fraud, *Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1088-89 (N.D. Iowa 2005), but Plaintiffs have satisfied this burden. The third amended complaint alleges the role each Defendant played in the billing arrangement, when the arrangement took place, the amount Plaintiffs paid to Defendants as a result of the arrangement, and how Defendants distributed the insurance proceeds amongst themselves. The complaint also provides representative examples of the laboratory-test claims billed to RightCHOICE. This information is sufficient to put Defendants

---

[5] Defendants also argue that Plaintiffs' complaint lumps them together without distinguishing their conduct, in violation of Rule 8(a)'s fair-notice requirement. The Court rejects this argument for the same reasons it rejects Defendants' argument that Plaintiffs failed to plead fraud with particularity as to each Defendant.

14

on notice of Plaintiffs' allegations and permit them to prepare a response. *See Roberts v. Accenture, LLP*, 707 F.3d 1011, 1018 (8th Cir. 2013) (citation omitted).

Porter argues separately that Plaintiffs did not justifiably rely on any alleged misrepresentations because they should have known earlier that the Hospital's billing was amiss. While the torts of fraudulent and negligent misrepresentation require justifiable reliance, *Ryann Spencer Group, Inc. v. Ass. Co. of Am.*, 275 S.W.3d 284, 291 (Mo. Ct. App. 2008), it is a factual issue viewed in the light most favorable to Plaintiffs. *Grove v. Principal Mut. Life. Ins. Co.*, 14 F. Supp. 2d 1101, 1111 (S.D. Iowa 1998) (deciding that justifiable reliance "goes beyond the scope of a motion to dismiss"); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132 (Mo. 2010) ("Generally, whether a party has justifiably relied on a misrepresentation is an issue of fact for the jury to decide."). Plaintiffs allege that they reasonably relied upon Defendants' misrepresentations, and that is enough at the pleading stage.

**b. Plaintiffs state a claim of tortious interference with contract.**

"Tortious interference with contract occurs when the defendant, without justification, causes damage by intentionally interfering with a business relationship of which the defendant has knowledge." *Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855, 858 (8th Cir. 2006) (citing *Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. Ct. App. 2003)). Porter argues that Plaintiffs insufficiently plead this claim because they fail to identify specific actions taken by Porter that caused or induced a breach of the Hospital's participating-provider agreement. Plaintiffs allege that Porter formed Hospital Lab Partners with the express intent of exploiting the agreement and causing RightCHOICE to reimburse the Hospital for fraudulent claims. Plaintiffs further allege that Porter conspired with the other Defendants to bill RightCHOICE through the Hospital for testing performed at Pinnacle Labs, a Florida laboratory that Porter managed. Construing these facts in

Plaintiffs' favor, the Court concludes that Plaintiffs adequately plead tortious interference with contract.

### c. Plaintiffs state claims of unjust enrichment and money had and received.

Missouri treats unjust enrichment and money had and received as the same suit. *See Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 558 n.1 (W.D. Mo. 2014) (citing *Fulton Nat'l Bank v. Callaway Mem'l Hosp.*, 465 S.W.2d 549, 553 (Mo. 1971)) (additional citation omitted). The essence of each claim is that "the defendant obtained a benefit, the plaintiff suffered an economic detriment as a result, and it would be inequitable for the defendant to keep the benefit under the circumstances." *Id.* Defendants contend that Plaintiffs merely recited the claims' elements without supporting factual averments. But the third amended complaint alleges that Porter and the other Defendants wrongly received reimbursements from RightCHOICE due to their fraudulent billing practices. This is sufficient to state claims of unjust enrichment and money had and received.

### d. Plaintiffs state claims of civil conspiracy and aiding and abetting a tort.

"To establish a civil conspiracy, a plaintiff must prove that the defendants had a 'meeting of the minds' to further the conspiracy." *Global Control Sys., Inc. v. Luebbert*, No. 4:14-cv-657-DGK, 2016 WL 910190, at *2 (W.D. Mo. Mar. 9, 2016) (quoting *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999)). Porter argues this claim fails because Plaintiffs have not offered facts showing any such agreement between Defendants. This is not so. The third amended complaint alleges the scope and nature of the conspiracy, as well as Defendants' interlocking roles and how they cooperated to enrich themselves at Plaintiffs' expense. Thus, Plaintiffs adequately plead that Defendants acted in concert to defraud them. Porter also argues that both the counts of civil conspiracy and aiding and abetting a tort fail because Plaintiffs failed to state any underlying

tort claims. As discussed, however, Plaintiffs' plead their tort claims with sufficient particularity. The claims of civil conspiracy and aiding and abetting a tort thus survive Porter's motion.

**VIII.　Plaintiffs need not pierce the corporate veil.**

Defendants argue that the Court cannot hold Perez, Byrns, and Porter personally liable because Plaintiffs have not pierced the veil of the corporate entities they control. But piercing the corporate veil is just one way to establish personal liability over corporate officers in Missouri. A plaintiff can also state a claim directly against an individual "for tortious corporate conduct if he or she had 'actual or constructive knowledge of, and participated in, an actionable wrong.'" *State ex rel. Dow Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. 2004) (quoting *Lynch v. Blanke Baer & Bowey Krimko, Inc.*, 901 S.W.2d 147, 153 (Mo. Ct. App. 1995)) (additional citation omitted). This applies even when a corporate officer is acting in the scope of his or her employment. *Id.* Plaintiffs therefore do not need to pierce the corporate veil to seek liability against Perez, Byrns, and Porter. It is enough that Plaintiffs allege they knowingly took part in the wrongdoing.

**IX.　Conditions precedent do not preclude Plaintiffs' suit.**

Defendants claim that Plaintiffs failed to satisfy all conditions precedent, as required by Federal Rule of Civil Procedure 9(c), because the participating-provider agreement may require RightCHOICE to arbitrate disputes with the Hospital before litigating. This argument fails for two reasons. First, Rule 9(c) requires movants to deny that a condition precedent occurred "with particularity." Defendants have not done so. They state merely that the exhibits attached to the complaint "seem to indicate certain pre-suit requirements," including "pre-suit conferral or ADR." Second, Defendants are not parties to the participating-provider agreement, so any arbitration requirements contained therein do not apply. *See Dunn Indus. Grp., Inc. v. City of Sugar Creek*,

112 S.W.3d 421, 435 (Mo. 2003) ("Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." (citation omitted)).

## X. The economic loss doctrine does not apply.

Defendants next contend that Plaintiffs' tort claims are barred because they arise from a breach of contract and seek purely economic losses. The economic loss doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013) (internal quotations and citation omitted). The doctrine is inapplicable here, however. No contract governs the relationship between Plaintiffs and Defendants, and the case involves fraud and not the sale of goods or disappointed commercial expectations. *Cf. Dannix*, 732 F.3d at 909; *see MEA Financial Enters., LLC v. Fiserv Sols., Inc.*, No. 3:13-cv-05041-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013) (observing that the case did not fall under the Uniform Commercial Code and finding that "the Missouri Supreme Court would not apply the economic loss doctrine to [the plaintiff's] tortious interference or fraudulent misrepresentation claims"); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2017 WL 1498073, at *3 (W.D. Mo. Apr. 26, 2017) (discussing the history of the doctrine and observing that "Missouri courts have never extended the economic loss doctrine beyond the doctrine's traditional moorings as policing the boundaries between warranty and negligence/strict liability to a claim for conversion").

## XI. A more definite statement is not required.

Finally, the Court rejects Defendants' request for a more definite statement. Federal Rule of Civil Procedure 12(e) permits parties to move for a more definite statement when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Defendants argue that the complaint needs to be "cleaned up" to better identify the particular acts of each Defendant.

But as discussed, Plaintiffs' third amended complaint provides ample information for Defendants to frame a response. Rule 12(e) is "intended to address unintelligible pleadings, and not to . . . correct a claimed lack of detail." *Diallo v. Pagoria*, No. 2:18-cv-04252-NKL, 2018 WL 6790491, at *1 (W.D. Mo. Dec. 26, 2018) (internal quotations and citation omitted). The parties can obtain additional information through discovery.

## Conclusion

Accordingly, for the reasons set forth in this Order, Hospital Partners, Empower H.I.S., Byrns, and Perez's motion to dismiss or, in the alternative, for a more definite statement (Doc. 77), and Porter's motion to dismiss (Doc. 124) are both DENIED.

**IT IS SO ORDERED.**

Date: January 23, 2019 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT