IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| RightCHOICE Managed Care, Inc., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>Hospital Partners, Inc.; Hospital Laboratory Partners, LLC; Empower H.I.S. LLC; LifeBrite Laboratories, LLC; RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services; LabMed Services, LLC; SeroDynamics, LLC; Lucenta Labs, LLC; David Byrns; Jorge Perez; Christian Fletcher; James F. Porter, Jr.; Beau Gertz; and Mark Blake.<br><br>    Defendants. | Civil Action No.<br>5:18-CV-06037-DGK |

# PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTES
# WITH THE CADIRA DEFENDANTS

The Cadira Defendants—Beau Gertz ("Gertz"); Mark Blake ("Blake"); LabMed Services, LLC ("LabMed"); and SeroDynamics, LLC ("SeroDynamics")—have unreasonably limited the scope of discovery, failed to produce documents requested months ago, and obstructed depositions. Fact discovery is scheduled to close in little more than six weeks, Plaintiffs' efforts to find reasonable compromise with the Cadira Defendants have failed, and Plaintiffs have been forced to take key depositions—including those of Gertz and Blake—without relevant emails, relevant text messages, relevant financial information, and even the Cadira Defendants' records of which tests were ordered and performed by their laboratories. The Cadira Defendants' counsel has also repeatedly disrupted depositions (including unilaterally terminating Gertz's deposition before Plaintiffs' time had elapsed). Plaintiffs respectfully request that the Court order the Cadira Defendants to produce the relevant documents sought by Plaintiffs and order that their counsel cease their deposition misconduct.

## BACKGROUND AND EFFORTS TO COMPLY WITH LOCAL RULE 37.1

Plaintiffs have alleged that the Cadira Defendants played an integral role in the pass-through-billing scheme at Putnam County Memorial Hospital ("Putnam"). (Dkt. 57 ¶¶ 150-58.) LabMed contracted with marketing personnel who interfaced with providers and encouraged them to order tests from SeroDynamics. (*Id.* ¶ 234(f).) When providers ordered the tests from SeroDynamics, SeroDynamics performed the tests at its laboratory in Colorado. (*Id.* ¶ 234(g).) The Cadira Defendants transmitted information about the tests to Defendant Empower H.I.S., LLC ("Empower") in Florida. (*Id.* ¶¶ 128, 234(c).) Empower billed the claims to Plaintiffs and misrepresented that they had been performed by Putnam in Missouri, to take advantage of the higher reimbursement that Putnam was contracted to receive from Plaintiffs for services it provided to its inpatients and outpatients. (*Id.*; *id.* ¶¶ 155(d).) In fact, Putnam did not have the machinery to perform the vast majority of the tests performed by SeroDynamics. (*Id.* ¶¶ 194-95.)

The patients whose tests were billed to Plaintiffs through Putnam also had no affiliation with Putnam (*i.e.*, they were neither inpatients nor outpatients of the hospital). (*Id.* ¶ 3.) Gertz and Blake—an attorney admitted to practice in Florida and Texas—oversaw and managed the arrangement for the Cadira Defendants. (*Id.* ¶¶ 234(f)-(g), (m)-(n).) As a result, LabMed received more than $20 million and SeroDynamics received more than $6 million, through which Gertz and Blake were paid (although they have refused to identify how much they, individually, received). (*Id.* ¶¶ 234(f)-(g).)

On October 8, 2018, Plaintiffs served their first set of requests for production ("RFP") on the Cadira Defendants. (Moore Decl. Exs. 1-4.[1]) The Cadira Defendants served responses and objections on November 7, 2018. (Exs. 5-8.) They began producing documents on a rolling basis on February 4, 2019, after Plaintiffs sent a deficiency letter on January 31, 2019. (Ex. 9.)

Over the past six months, counsel for Plaintiffs and the Cadira Defendants have had repeated correspondence and telephone calls, including a final meet-and-confer call on May 29, 2019, at which point counsel for the Parties agreed that the issues addressed herein were unlikely to be resolved without the Court's involvement. (Moore Decl. ¶ 13.)

## THE DISCOVERY DISPUTES

**I.      The Cadira Defendants' refusal to consider additional, reasonable search terms.**

Without consulting Plaintiffs, the Cadira Defendants applied eight search terms to their custodians' email accounts, reviewed the resulting documents, and produced some subset.[2] The

---

[1] All later citations to exhibits refer to those exhibits accompanying the Declaration of Nathaniel J. Moore in Support of Plaintiffs' Brief Regarding Discovery Disputes with Cadira Defendants, filed concurrently herewith.

[2] The search terms purportedly used by the Cadira Defendants were: (1) Putnam OR PCMH; (2) Jorge OR Perez; (3) "Hospital Partners"; (4) "Hospital Lab Partners"; (5) Empower; (6) RightCHOICE; (7) BCBS or "Blue Cross"; and (8) Missouri AND Audit.

search terms used by the Cadira Defendants are so narrow that there is no doubt that they have missed large categories of relevant documents (*e.g.*, communications between the Cadira Defendants and the marketers and body brokers they used to generate test orders from SeroDynamics, which would not have referenced Putnam because Putnam was not performing the tests). When informed of the search terms used, Plaintiffs requested that the Cadira Defendants apply a list of additional search terms, but the Cadira Defendants refused. Plaintiffs then revised their list of additional search terms to include only 17 terms.[3] (Ex. 13 at 3.) Seven of the search terms proposed by Plaintiffs are *names of defendants in this case (or their aliases)*. Another four of Plaintiffs' proposed search terms are the names of marketers who caused large volumes of the tests at issue to be ordered from SeroDynamics. The other search terms are similarly relevant (*e.g.*, the Cadira Defendants billed their claims through Campbellton-Graceville Hospital ("CGH") before Putnam, but when CGH cut off their access, the Cadira Defendants re-routed some tests intended for CGH to be billed through Putnam). The Cadira Defendants have repeatedly refused to apply *any* of Plaintiffs' 17 proposed search terms. (*See id.* 1-2.) Their counsel stated that Plaintiffs' proposed search terms would hit on approximately 30,000 documents, but when Plaintiffs' counsel attempted to work with the Cadira Defendants to address any potential problematic terms by, for example, considering a hit report, the Cadira Defendants' counsel refused. (*See* Ex. 17 at 1-2.)

The search terms proposed by Plaintiffs are proportional and appropriate here considering that more than $70 million is in controversy. *Cf.* Fed. R. Civ. P. 26(b)(1); *see also Fenerjian v.*

---

[3] The additional search terms requested by Plaintiffs were: (1) Byrns; (2) Porter; (3) "RAJ Enterprises"; (4) Pinnacle; (5) "Lab Initiatives"; (6) BLB; (7) MP3 Labs; (8) Claypoole; (9) "Campbellton-Graceville" OR Campbellton OR CGH; (10) Mark /1 Thomas; (11) Anthony /1 Thomas; (12) Ivey; (13) SWL OR Southwest; (14) LifeBrite; (15) Christian OR Fletcher; (16) MedX; and (17) Lander.

*Nong Shim Co.*, No. 13-cv-04115-WHO (DMR), 2016 U.S. Dist. LEXIS 33419, at *22-23 (N.D. Cal. Mar. 15, 2016) (compelling responding parties to run additional search terms when doing so required "a simple search" and would not cause undue burden). Moreover, it is inexcusable for the Cadira Defendants to refuse to engage in any good-faith discussion of additional reasonable terms (*e.g.*, the names of their co-defendants and marketers). The Cadira Defendants have refused to offer an alternative approach or evidence of any undue burden that they would suffer by applying Plaintiffs' proposed search terms. Plaintiffs therefore request that the Court order the Cadira Defendants to apply the search terms identified in footnote 3, and produce all responsive, non-privileged documents within 14 days.

## II. The Cadira Defendants' refusal or failure to produce categories of relevant documents.

### A. Financial records

This Court has—on three occasions—recognized that financial discovery is necessary and appropriate in this case in light of Plaintiffs' claims for equitable relief under ERISA § 502(a)(3). (Dkt. 165 at 10; Dkt. 171 at 9; Dkt. 208 at 2-3.) Plaintiffs have requested financial information—including bank statements, wire transfer detail, and canceled checks—from the accounts into which SeroDynamics and LabMed received millions from Putnam, as well as from the accounts of Gertz, Blake, and the intermediary entities they use to hold their ownership interests in LabMed and SeroDynamics. Plaintiffs have even directed the Cadira Defendants to the Court's past Orders on this very topic. But the Cadira Defendants refuse to produce the financial information and—as set forth in more detail below—their counsel have directed Gertz and Blake not to answer questions at their depositions about which financial institutions they use, preventing the Plaintiffs from obtaining the information they need through third-party discovery. (*See*, *e.g.*, Ex. 13 at 2.) The Cadira Defendants' response to date has been that the Court's past

4

Orders either do not address this issue or do not apply equally to the Cadira Defendants. Neither has a basis in fact or in law, and Plaintiffs respectfully request that the Court order the Cadira Defendants to produce all documents necessary to perform the tracing analysis—including but not limited to statements, wire transfer detail, and canceled checks for their accounts and the accounts of any intermediary entities from June 2016 to the present—within 10 days.

### B.     Text messages that the Cadira Defendants admit relate to Putnam

While text messages are not relevant in many cases, Gertz admitted at his deposition that he texted about Putnam with Blake and other employees of the Cadira Defendants (*e.g.*, Cadira's Vice President of Sales). (Ex. 14 at 1.) Because of this testimony, counsel for the Cadira Defendants committed to looking into what relevant text messages Gertz and Blake have (*see id.*), but have not produced *any* text messages, including those that Gertz admitted exist and relate to Putnam. The Cadira Defendants also refused *to even look into* whether any of the Cadira Defendants' employees who are likely to have responsive documents also are likely to have relevant and substantive text messages that are the sole source of responsive information sufficient to justify collection. This is, from Plaintiffs' perspective, another example of the Cadira Defendants failing to undertake reasonable efforts to identify and produce relevant documents. Plaintiffs request that the Court Order the Cadira Defendants to produce all substantive text messages relating to Putnam—whether in the possession of Gertz, Blake, or the Cadira Defendants' employees—within a reasonable time, and Plaintiffs suggest 10 days.

### C.     LabTrac

Plaintiffs began requesting that the Cadira Defendants produce records of which laboratory performed the tests at issue in October 2018. (*E.g.*, Exs. 1-4 (RFPs 17, 25, 27, 33).) Those requests continued into late April. (*See*, *e.g.*, Ex. 13 at 3, 5.) The Cadira Defendants first identified the system that contained that information—known as LabTrac—in a letter dated May

5

6, 2019. (Ex. 10 at 2.) In that letter, the Cadira Defendants required that, before Plaintiffs or their counsel be given access to LabTrac or its contents, they sign an affidavit agreeing not to provide access to the system to anyone outside of Plaintiffs' counsel's law firm. (*Id.* at 2-3.) The letter and proposed affidavit were sent three days before Plaintiffs deposed Cadira's "Director of LabTrac" and nine days before Plaintiffs deposed Gertz. (*See id*.) To date, Plaintiffs still do not have access to LabTrac. As a result, Plaintiffs did not have the benefit of these critical records for the depositions of Cadira's Director of LabTrac, Gertz, Blake, and other witnesses.

Plaintiffs volunteered to treat the information contained in LabTrac as if it had been designated "Confidential" and "Protected Health Information" under the Protective Order. (Ex. 11 at 1.) Still, the Cadira Defendants refused to provide access to LabTrac until Plaintiffs' counsel signed the proposed affidavits. (Ex. 12 at 1.) Finally, at the Parties' meet-and-confer call on May 29, 2019, the Cadira Defendants agreed that an amended Protective Order could address their concerns, but discussions about modifications to the Protective Order are ongoing. Given that the location where the tests were performed is a critical fact in this case, and given that depositions have been taking place for nearly two months and are continuing, Plaintiffs request that the Court order the Cadira Defendants to provide the Parties with immediate access to LabTrac on the condition that all Parties and their counsel treat the information contained therein as if designated "Confidential" and "Protected Health Information" under the Protective Order.[4]

### III. Conduct by the Cadira Defendants and their counsel at depositions

The Cadira Defendants and their counsel have repeatedly refused to answer relevant questions by Plaintiffs' counsel at depositions, made inappropriate speaking objections that serve

---

[4] If the Parties can agree on proposed amendments to the Protective Order such that this issue is mooted, Plaintiffs will notify the Court.

to coach witnesses on their answers, and unilaterally terminated the deposition of Gertz before Plaintiffs had used the seven hours permitted under Rule 30(d)(1).

### A. Instructions to deponents not to answer questions

On several occasions, and in several depositions, the Cadira Defendants' counsel has instructed his clients and their employees not to answer questions posed to them for reasons other than privilege. During the deposition of Gertz, his counsel instructed him not to answer questions posed by Plaintiffs about: (1) the owners of various companies affiliated with the Cadira Defendants; (2) why Gertz loaned money to someone who he later sued; (3) the financial institution that maintains the bank accounts into which Gertz received funds from the Cadira Defendants; and (4) Gertz's net worth. (Ex. 15 at 16:18-25, 33:11-22, 314:14-19, 315:23-316:5.) Counsel for the Cadira Defendants made the same instructions during Blake's deposition, including as to: (1) the amount that Blake received from a company that held Blake's ownership interests in the Cadira Defendants; (2) the identity of Blake's accountant; and (3) the financial institutions that maintain the bank accounts into which Blake received funds from the Cadira Defendants. (Moore Decl. ¶ 22.[5])

Improper instructions not to answer a question disrupt and unduly prolong depositions. Counsel may instruct a deponent not to answer only when necessary to: (i) preserve a privilege; (ii) enforce a court-ordered limitation; or (iii) move to terminate the deposition under Rule 30(d)(3)(A). Fed. R. Civ. P. 30(c)(2); *see also Craig v. St. Anthony's Med. Ctr.*, 384 F. App'x 531, 533 (8th Cir. 2010) (affirming sanctions against lawyer who improperly instructed his client not to answer questions during deposition). The Cadira Defendants' counsel did not cite any of

---

[5] As of this time, Plaintiffs have not received a final transcript of Blake's deposition. If the Court wishes to review select portions of the transcript, Plaintiffs will be happy to provide excerpts once the final transcript is received.

these reasons when instructing Gertz not to answer, nor did he move to terminate the deposition. His instructions were based only on a unilateral determination of what constituted proper topics of examination, even after Plaintiffs' counsel said that this conduct was inappropriate.

Because there was no legitimate basis for their refusal to answer these questions (or for their counsel's instruction that they not do so), Plaintiffs respectfully request that the Court order Gertz and Blake to answer each question that they refused to answer on the basis of any reason other than privilege as if posed via interrogatory within five days, including sworn verification.

### B. Premature termination of Gertz's deposition

In addition to instructing his clients not to answer questions for reasons other than privilege, counsel for the Cadira Defendants unilaterally terminated Gertz's deposition shortly after 4:00 PM, before Plaintiffs used the seven hours permitted under Rule 30(d)(1), because he had "a plane to catch." (Ex. 15 at 375:13-22.) The Cadira Defendants' counsel stated that, "combined with the breaks you chose to take, to look at your notes and that sort of thing, I think we're over seven hours, so I need to go catch a plane." (*Id.* at 376:1-7.) The videographer then stated, on the record, that Plaintiffs had used six hours, 40 minutes. (*Id.* at 376:12-13.)

Absent the parties' agreement or court order, depositions are limited to one day of seven hours on the record. Fed. R. Civ. P. 30(d)(1); *id.* advisory committee's note to 2000 amendment. Courts should allow additional time if a party or any other person impedes or delays the examination, including by failing to produce documents. Fed. R. Civ. P. 30(d)(1); *see also Star Envirotech, Inc. v. Redline Detection, LLC*, No. SA CV 12-01861-JGB (DFMx), 2015 U.S. Dist. LEXIS 169042, at *10-11 (C.D. Cal. Dec. 16, 2015) (reopening depositions due to late production of documents). Given the Cadira Defendants' failure to produce relevant documents, refusal to answer questions on a basis other than privilege, and counsel's unilateral and premature termination of the Gertz deposition, Plaintiffs request that the Court order that, if

8

Plaintiffs determine that they are not able to obtain the information they need through the Rule 30(b)(6) depositions of SeroDynamics and LabMed, then: (1) Plaintiffs be given an additional four hours—in addition to the remaining 20 minutes—to depose Gertz; and (2) the Cadira Defendants pay reasonable costs and attorneys' fees for Plaintiffs' counsel to travel to the deposition.

### C. Improper objections

Additionally, the Cadira Defendants' counsel has made repeated speaking objections that unnecessarily consume deposition time and appear to have the effect of coaching witnesses. For example, the following exchange took place during the deposition of Gertz:

> Q. Did [redacted] quit, or was she fired from your companies?
> A. She quit.
> Q. Why did she quit?
> A. She had a --
> MR. MINANA: Wait. I'll object. I think it calls for speculation.
> A. Yeah, actually, I can't even answer that question.

(Ex. 15 at 310:1-9.) The Cadira Defendants' counsel made repeated speaking objections during other depositions as well. For example:

> Q. So [redacted] was involved in billing as it relates to Southwest Labs, CGH, and Putnam, correct?
> MR. MINANA: I'll object to the form of the question. The way you say it, as if some misstatement by her. The distinction is between her and [redacted]. I think that is argumentative.
> MR. PFEIFFER: That is a speaking objection.

(Ex. 16 at 137:19-138:3.) Plaintiffs can provide an additional dozen examples once deposition transcripts are finalized (*i.e.*, the types of speaking objections set forth above are not unique).

Objections must be stated concisely in a non-argumentative and non-suggestive manner. Fed. R. Civ. P. 30(c)(2); *see also Lund v. Matthews*, No. 8:13CV144, 2014 U.S. Dist. LEXIS 15863, at *3-4 (D. Neb. Feb. 7, 2014) (sanctioning lawyer who made numerous speaking objections during his client's deposition and ordering his client to sit for additional deposition).

9

Depositions are otherwise needlessly delayed, inflicting greater expense on all parties. Plaintiffs' counsel have requested repeatedly that the Cadira Defendants' counsel state objections as to form, foundation, or privilege, to no avail. Plaintiffs request that the Court order the parties and their counsel to: (1) limit objections to form, foundation, or privilege; and (2) to stop making objections that are suggesting of an answer to deponents, including that questions call for speculation and admonitions that deponents answer questions "if they know."

## CONCLUSION

Plaintiffs request that the Court order the Cadira Defendants and their counsel to: (1) apply the search terms identified in footnote 3, and produce all responsive, non-privileged documents within 14 days; (2) produce relevant text messages within 10 days; (3) produce the information necessary to perform a tracing analysis—including statements, wire transfer detail, and canceled checks for all accounts maintained by the Cadira Defendants and any intermediary entities—within 10 days; (4) immediately provide the Parties access to LabTrac on the condition that all Parties treat the information contained therein as "Confidential" and "Protected Health Information"; (5) answer each question that they refused to answer in their depositions on the basis of any reason other than privilege, as if posed via interrogatory within five days, including sworn verification; (6) if Plaintiffs are not able to obtain the information they need through the Rule 30(b)(6) depositions of SeroDynamics and LabMed, Plaintiffs have an additional four hours—in addition to the remaining 20 minutes—to depose Gertz; the Cadira Defendants pay reasonable costs and attorneys' fees for Plaintiffs' counsel to travel to the deposition; and (7) limit deposition objections to form, foundation, or privilege and stop asserting objections that are suggestive of an answer to pending questions.

10
Case 5:18-cv-06037-DGK   Document 234   Filed 06/21/19   Page 11 of 13

Dated: June 21, 2019  By:      */s/ Michael L. Jente*

**LEWIS RICE LLC**
Neal F. Perryman, MO Bar #43057
Michael L. Jente, MO Bar #62980
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
T: (314) 444-7600
nperryman@lewisrice.com
mjente@lewisrice.com

-and-

**ROBINS KAPLAN LLP**
Jeffrey S. Gleason (admitted PHV)
Jason W. Pfeiffer, MO Bar # 50104
Nathaniel J. Moore (admitted PHV)
Amira A. ElShareif (admitted PHV)
Jaime J. Wing (admitted PHV)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
jgleason@robinskaplan.com
jpfeiffer@robinskaplan.com
nmoore@robinskaplan.com
aelshareif@robinskaplan.com
jwing@robinskaplan.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically with the United States District Court for the Western District of Missouri, through the Court's CM/ECF system, on the 21st day of June, with notice of case activity sent to counsel of record.

*/s/ Michael L. Jente*