# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RightChoice Managed Care, Inc. *et al.*, | ) |
| Plaintiffs, | ) Case No. 18-cv-06037-DGK |
| v. | ) |
| Hospital Partners, Inc.; *et al.*, | ) |
| Defendants. | ) |

## SERO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTE

Corporate Defendants SeroDynamics, LLC and LabMed Services, LLC and Individual Defendants Mark Blake and Beau Gertz (collectively, the "**Sero Defendants**"[1]) respectfully submit their opposition to Plaintiffs' "Brief Regarding Discovery Disputes" (Doc. 234).

---

[1] It is unclear why the Plaintiffs label these defendants the "Cadira defendants." SeroDynamics is a former blood laboratory. LabMed was a consulting entity that worked with SeroDynamics. Blake and Gertz were principles of the two entities. Throughout this litigation, the parties have referred to the four entities as the Sero Defendants.

The issues raised by Plaintiffs are manufactured and disingenuous, based on misstatements and half-truths. For example, the introduction to Plaintiffs' brief contains numerous citations to <u>The Third-Amended Complaint</u> (the "TAC"). This action has now been on file for nearly a full year. After receiving hundreds of thousands of pages of documents and taking seven depositions, it is time for Plaintiffs to cite the facts of this case. For instance, in Plaintiffs' brief, they reassert the tired allegation that Putnam's lab was unable to conduct blood testing. Doc. 234 at p. 1. This is false. Dr. Belinda Fender, Medical Director for Putnam's lab, testified that Putnam had many blood testing capabilities. Fender Depo. at 35:17-25; 36-37; 38:1-18 (**Exhibit 1**). Further Plaintiffs claim they have had to take "key depositions" without "critical" documents." Doc 234 at pp. 1, 6. Again, false: Plaintiffs could have filed the instant briefing and raised the issues prior to any of the seven depositions they have taken to-date. They did not.

*Introduction: The Sero Defendants*

Prior to their filing of this case, the Sero Defendants had **never spoken** to Plaintiffs about the Putnam claim submissions at issue here. The TAC alleges garden variety fraud. It is impossible for Plaintiffs to prove these allegations. If the Sero Defendants made no representations to plaintiffs, it is impossible for them to have made any material misrepresentations. Simply describing a billing practice that appears unusual to a layperson makes for attention-grabbing headlines. But it says little about the desirability of the practice and, more importantly, it says nothing about the *legality* of the practice. Under the "alleged scheme," several independent laboratories conspired to "pass" private health insurance reimbursement claims "through" Putnam, who in-turn submitted the claims for reimbursement to Plaintiffs. TAC ¶ 3. The alleged purpose was to exploit Putnam's in-network and favorable reimbursement rate with RightChoice. *Id.* at ¶ 4.

SeroDynamics was a clinical blood testing laboratory. Curiously however, the TAC mentions the word "blood" only twice, TAC at ¶¶ 103; 106, and spends the bulk of its time discussing fraud associated with over-testing <u>toxicology</u> (urine) claims, *see* ¶¶ 103-19; 183-90; 201-29. The Sero Defendants <u>never</u> once performed toxicology testing. Plaintiffs' allegations in this litigation do nothing more than <u>describe</u> a billing practice that may appear unusual at first impression. In reality—and as will be further briefed in a forthcoming motion for summary judgment to this Court—the practice is entirely consistent with industry regulations and norms. Plaintiffs do not cite a single regulation, rule, statute, or law that the Sero Defendants violated. That is because there are none: what the Sero Defendants did was entirety appropriate and legal.

The Sero Defendants have spent hundreds upon hundreds of hours litigating this case, despite the spuriousness of Plaintiffs' claims. They have been beaten down, publicly humiliated, and economically devastated. Nevertheless, they have persisted under the crushing weight of Plaintiffs' witch hunt, the latest chapter in the saga, is this motion.

## I. Plaintiffs Have Scorched the Earth of this Litigation at Every Turn in a Direct Attempt to Intimidate and Steamroll the Sero Defendants Into Submission

To-date, the Sero Defendants alone have responded to two-hundred sixty-nine (269) requests for the production of documents and have answered sixty-four separate interrogatories. They have reviewed over 20,000 documents for relevant material and privilege, and have produced 9,986 documents totaling 39,495 pages. Plaintiffs issued similar requests to other named defendants, and those requests resulted in 15,233 documents totaling 414,395 pages. Plaintiffs then issued sixty-seven (and counting) subpoenas, containing one thousand one hundred seventy-three (1173) discrete requests to various third parties, which have <u>currently</u> generated 30,544 documents totaling 366,459 pages of material (so far, with only 28 of the 67 subpoenaed recipients thus far producing documents). In total, there are already 55,777 produced documents

2

Case 5:18-cv-06037-DGK   Document 237   Filed 06/28/19   Page 3 of 13

in this litigation totaling more than 820,636 pages. The Sero Defendants' cost to simply store this amount of data via e-discovery vendor currently costs over $6,000 per month (not surprisingly, Plaintiffs do not cite or attach a single one of these documents to their motion).

Through winter and spring 2019, counsel for Plaintiffs and Sero Defendants engaged in multiple meet-and-confers regarding the production of additional documents based on Plaintiffs' amorphous and shifting theories of this case. Beginning on February 14, 2019, Plaintiffs' counsel lead a charge to bury the Sero Defendants in discovery by demanding (in addition to the search terms the Sero Defendants had already performed) a search of seventy-one "non-exhaustible" terms. **Exhibit 2**. These terms would have resulted in a review of **25,100** irrelevant documents, with no assurance this was even the full extent of Plaintiffs' requests. While Plaintiffs later admitted the 71 requests were overreaching and reduced the number to seventeen (17) terms (subtracting some terms and adding others), the additional 17 are still burdensome, not proportional to the needs of the case, and are benign in light of the amount of—and substance of— other discovery already produced.[2] A review of the proposed 17 terms would necessitate a review of **30,490** additional documents.

This Circuit has long affirmed that discovery should be proportional to the needs of a given case. *In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*, No. 4:12-MD-02361-FJG, 2018 WL 522785, at *1 (W.D. Mo. Jan. 23, 2018). Requesting dozens of irrelevant and needless search terms is not proper. *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 739 (8th Cir. 2018)("Vallejo had requested 206 search terms . . . The overbreadth of the discovery requests was obvious" and limiting all terms to 15 terms); *see also Sours v. Karr*, No. 3:15-CV-05075-DGK, 2017 WL 4169433, at *1 (W.D. Mo. Sept. 20, 2017)(Kays, J.)(holding search terms

---

[2] Many of the 17 additional search terms are the names of individuals or entities that Plaintiffs' have served subpoenas on and collected documents from already. Several are the names of co-defendants or former defendants, whom Plaintiffs have already settled with.

3

resulting in production of otherwise-relevant information but already produced elsewhere is unnecessary).[3] This Court has further held that Parties should not attempt to waste resources: if a Party has already collected sufficient documents on specific or discrete topics, it is improper to continue fishing for additional and further information on ancillary points:

> Plaintiff argues that the proposed search term[s] [are] meant to capture information . . . . However, Defendant has already provided [] information to Plaintiff, and Plaintiff has not provided a reason for why that discovery is insufficient. As such, additional ESI would be unnecessarily cumulative or duplicative. Moreover, Plaintiff can obtain this information by other, more convenient means, such as 30(b)(6) depositions. Plaintiff also contends that the search terms . . . are necessary to capture information . . . However, Defendant has produced many documents regarding these practices, and Plaintiff has failed to provide a basis for why additional ESI is needed to understand them. Additionally, Plaintiff can also obtain information on these practices via other, less expensive means.

*Harrington Enterprises, Inc. v. Safety-Kleen Sys., Inc.*, No. 13-00167-CV-W-BP, 2014 WL 12611318, at *2 (W.D. Mo. July 11, 2014).[4]

Plaintiffs' assertion the Sero Defendants "refuse[d] to engage in any good-faith discussion of additional reasonable terms," Doc. 234 at p. 4, is a blatant misrepresentation to this Court. The Sero Defendants engaged Plaintiffs at every request on the search terms, but have maintained their position that the terms are overly broad, not proportional to the needs of the case, are irrelevant, and likely to be the same documents produced by other parties or third parties. The Sero Defendants communicated on the search terms at least six discrete times.[5]

---

[3] Plaintiffs claim there is $70 million in dispute which justifies the oppressive search terms. This is another misstatement or half-truth to this Court. There is $26 million in dispute related to the Sero Defendants. While perhaps a significant number, it is less than 30% of what Plaintiffs claim by their misstatements; moreover, while that may be the number Plaintiffs argue, is certainly not a number agreed to by the Sero Defendants.

[4] *Fenerjian v. Nong Shim Co., Ltd.* cited by Plaintiffs does not support the assertion for which Plaintiffs claim it, that a "simple" search should be compelled by the trial court any time a party characterizes a search as "simple." No. 13CV04115WHODMR, 2016 WL 1019669, at *5 (N.D. Cal. Mar. 15, 2016)("Defendants also move the court to compel the IPPs to use as search terms five other common spellings or variations of the word 'ramen': ≠ (ramen written in Korean), ramyon, ramyun, udon, and noodle"). *Fenerjian* is not analogous to the instant dispute: Plaintiffs are not asking the Court for variations of a word, they are asking the Court to compel a broad sweep of new terms.

[5] Counsel for the Sero Defendants wrote to Counsel for the Plaintiffs regarding the search terms dispute at least three separate times: (1) April 24, 2019; (2) May 24, 2019; (3) May 29, 2019 and participated in telephonic

## II. The Remainder of the Discovery Disputes are Manufactured in an Attempt to Taint This Court Against the Sero Defendants

*<u>Financial Records & Instructing Blake/Gertz Not to Answer</u>:*[6] Plaintiffs assert the Sero Defendants have withheld "critical" financial documents to support Plaintiffs' ERISA claims, and further allege it was improper to instruct Mr. Gertz not to answer questions regarding his net worth and personal bank accounts prior to judgment in this case. Plaintiffs then go on to state they should be allowed to reopen depositions and be given extra time. The request is disingenuous, and omits that Plaintiffs were aware the Sero Defendants had objected to the discovery of Blake and Gertz's personal bank accounts, yet Plaintiffs scheduled and took the depositions anyway. **Exhibit 4.** This was also the subject of several meet-and-confers on the very topic. Plaintiffs could have motioned the Court to compel discovery prior to those depositions, yet did not do so.

*<u>Requisition Forms & LabTrac</u>***:** Plaintiffs' assertion they were deprived of the documents contained in LabTrac is equally disingenuous. Doc. 234 at pp. 5-6. On **December 21, 2018**, Counsel for Sero Defendants wrote to counsel for Plaintiffs and informed Plaintiffs there were approximately twenty-five (25) boxes of documents containing lab requisition forms (the <u>original</u> requisition forms for every test at issue in this litigation) at a facility located in Denver, Colorado, and that Plaintiffs were free to collect those documents at any time. **Exhibit 5**. <u>Plaintiffs **never** did so</u>. The very same information was also contained in an electronic, proprietary database called LabTrac, which the Sero Defendants no longer had access to. Plaintiffs were informed of this. Counsel for the Sero Defendants reviewed the system in the spring of 2019 once their clients re-obtained access, at Plaintiffs' demands.

---

discussions on the search terms at least three separate times: (4) February 22, 2019; (5) March 29, 2019; (6) and May 29, 2019 (**Exhibit 3**).

[6] Plaintiffs claim the discovery of Gertz's personal bank accounts has been decided by this court "on three occasions." This is simply untrue. Not surprisingly, plaintiffs do <u>not</u> cite to any specific Court ruling or order. While the court may have discussed finances, those rulings were on different issues related to different discovery requests to different defendants.

On May 6, 2019, the Sero Defendants proposed a production of LabTrac to Plaintiffs and asked for equivalent protections afforded by the current Protective Order.  Plaintiffs refused.  Plaintiffs and the Sero Defendants then conducted a meet-and-confer on the issue, whereby the Sero Defendants correctly explained the current protective order does not afford adequate protection for a proprietary, cloud-based system such as LabTrac.  Counsel explained that once the password for the database is released, any party could conceivably share access with any other individual.  Specifically, documents and native information stored in LabTrac are at the risk of being copied, reproduced, downloaded, and/or circulated without the protection of being stamped "PHI" or "Confidential" pursuant to the order.  This could expose the Sero Defendants to enormous liability.  At the meet and confer on May 29, 2019, Counsel for Plaintiffs <u>agreed with</u> the Sero Defendants, but suggested the Sero Defendants provide proposed changes to the Protective Order and the Sero Defendants agreed.  On June 6, 2019 the Sero Defendants conveyed the changes, yet were met with complete silence until shortly before this motion.

***Text Messages:***  The Sero Defendants have collected Mr. Gertz's text messages, and are currently applying search terms to them for review.  The delay in production was inadvertent, as Mr. Gertz did not realize he had pertinent text messages until he was asked questions about them at his deposition.  The Sero defendants believe the texts will be irrelevant or redundant, but are in the process of reviewing. The Sero Defendants communicated the same to Plaintiffs, yet Plaintiffs filed this dispute anyway, without conferring.  In their briefing, Plaintiffs also contend the Sero Defendants should be compelled to collect and produce text messages of every former employee of SeroDynamics and LabMed *from those employees' personal cellphones*.  Plaintiffs provide no justification for this, and no Federal Court (that the Sero Defendants are aware of) has ever interpreted "control, custody, or possession" so broadly.  Rather, as the United States District

6

Case 5:18-cv-06037-DGK   Document 237   Filed 06/28/19   Page 7 of 13

Court of the District of Kansas recently held, text messages on personal cellphones are not within an employer's custody, possession, or control:

> Request No. 25 seeks text messages sent or received by Costco employees . . . . From what the court understands from the parties' briefs, Mr. Cotton is seeking text messages sent from these individuals' personal cell phones. . . . Accordingly, it appears to the court that Costco does not likely have within its possession, custody, or control text messages sent or received by these individuals on their personal cell phones. Mr. Cotton's motion to compel is denied . . . .

*Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013).

***Deposition Questions & Objections*:** Plaintiffs contend the Sero Defendants have made improper objections during depositions and assert that a party may use only the words "objection, form" during a deposition, despite counsel for Plaintiffs posing hundreds of improper questions to, and continually harassing, the Sero Defendants' witnesses.[7]

Attorneys at depositions are often between Scylla and Charybdis when objecting at depositions: they must tow a line between objections that could suggest an answer, but must also object to preserve the record for trial. As one Federal Court recently held:

> [A] mere "form" objection, without specifying why the form is improper (such as compound, leading, asked and answered, assumes facts not in evidence, etc.), is inefficient and frustrates the goals underlying the Federal Rules of Civil Procedure. Moreover, a recent Florida Bar Journal article provides an excellent review and discussion of the case law and rules pertaining to which objections are proper during a deposition and which objections are improper. *See* 90-AUG Fla. B.J. 56, J. Evan Gibbs III, *Let's Get Objective About Objectionable Objections* (July/August 2016) (stating that "unspecified 'form' objections do not actually alert the questioner to what the specified alleged defect is.")

> The Court is well-aware that many attorneys have been taught that, under the Federal Rules of Civil Procedure, all they are permitted to state at a deposition is "objection, form." However, the applicable Federal Rules of Civil Procedure do not support this position.

---

[7] Notably, Plaintiffs argue "speculation" to be an improper objection, yet the very question referenced asked the witness to engage the mental gymnastics of transmitting themselves to another psyche: "*why did she quit*?" Doc. 234 at p. 9.

*Vargas v. Fla. Crystals Corp.*, No. 16-81399-CV, 2017 WL 1861775, at *5–6 (S.D. Fla. May 5, 2017); *see also Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 945 (8th Cir. 2015)(reversing the District Court's imposition of sanctions for deposition objections); *Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-CV-302, 2017 WL 775852, at *1 (S.D. Ohio Feb. 28, 2017)("To the extent that counsel made a generic objection to 'form,' but failed to specify the basis for the objection, the Court also considers those objections to be waived.")[8]

### III. Plaintiffs' Harassment of the Sero Defendants' Witnesses & Unprofessional Deposition Conduct

Plaintiffs engaged in egregious, harassing tactics at the depositions of the Sero Defendants' witnesses. For example, the first deposition taken by Plaintiffs in this case was of Ms. Criste Tiegs. Ms. Tiegs is Blake's sister, and she was a data entry employee who did not make a single decision relative to this case. Plaintiffs <u>took more than six hours</u> for the deposition. Moreover, Plaintiffs used the deposition to repeatedly harass Ms. Tiegs and her brother, preying on Ms. Tiegs' familial connection, and suggesting Blake will be criminally prosecuted for the actions comprising Plaintiffs' civil case:

> **MR. PFEIFFER:**
> \*\*\*
> Q. Has your brother ever expressed concerns to you about what happened at Putnam?
> A. No, sir.
> \*\*\*
> Q. Have you expressed any concerns to your brother, Mark Blake, about what happened at Putnam?
> A. No, sir.
> Q. Have you ever discussed the potential for criminal prosecution with Mr. Blake?
> A. For?
> Q. For what happened at Putnam.
> A. No, sir.

---

[8] There are other opinions throughout the District Courts suggesting "objection, form" is appropriate and should be used. This Court has never issued an opinion stating "objection, form" is the only proper objection during a deposition, and this Court has not held "objection, form" is improper. Plaintiffs point to no such binding authority for their blanket assertions on this point.

Tiegs Depo. at 29:2-14 (**Exhibit 6**).  Similarly, during the deposition of Mark Blake, counsel for Plaintiffs blatantly accused counsel for the Sero Defendants of ethical violations (and later refused to even substantiate the allegations):

> **MR. GLEASON:** I don't consider bar violations to be funny, sir.
> \*\*\*
> **MR. MINANA:** Wait a minute. Wait a minute. Did you just accuse me of a bar violation?
> **MR. GLEASON:**
> \*\*\*
> Here's what I'm going to say: You can object to the form, and anything else will be deemed -- I will stipulate, all other objections besides the word "form" will be deemed reserved until trial. . . .  So I will consider any statements that you make other than "objection to form" or instructions not to answer to be intentional coaching of the witness. Let's move forward.

Blake Depo. at 23:8-25; 24:1-15 (**Exhibit 7**).  Counsel for the Sero Defendants were forced to repeatedly lodge objections to form and foundation, as well as to the harassing conduct of counsel, such as when Plaintiffs' counsel literally spent hours questioning Ms. Tiegs (and other witnesses) about documents they had never even seen before.  *See e.g.,* Tiegs Depo. at 96:4-6 (**Exhibit 8**) ("*So you are going to ask her about a document she has never seen?*"  MR. PFEIFFER: "*Correct*.").  The pattern was the same for many of the 50 exhibits Ms. Tiegs was shown.

Lastly, Plaintiffs' counsel has failed to cooperate with counsel for the Sero Defendants in a courteous or professional manner.  When the depositions of Ms. Tiegs took an inordinate length of time to complete, Counsel for the Sero Defendants rearranged his schedule and requested Mr. Gertz's deposition begin at 8:00am because he had to leave at 4:00pm for an unchangeable flight.  **Exhibit 9**.  This provided <u>a full eight hours</u> of available time for testimony.  Despite the prearranged schedule, Plaintiffs' counsel insisted on a prolonged lunch breaks and took multiple breaks off the record to review notes.  **Exhibit 10**.  Amazingly, counsel for Plaintiffs later expressed his belief the Federal Rules do not apply to him, that he intended to violate them anyway, and he intended to keep the deposition going longer than the allowed seven (7) hours:

> **MR. MINANA**: And the videographer has said we've been going for six hours and 27 minutes of video time. And, Jason, I asked you, before the last break, if you had an idea of how much longer you had. Do you have an idea how much longer you have?

9

> **MR. PFEIFFER**: I think I will go past the seven hours.

*Deposition of Beau Gertz* at p. 367:8-15. **Exhibit 10**.

Throughout the depositions, Plaintiffs have continually asked innumerable harassing, irrelevant, and objectionable questions to the Sero Defendants' witnesses. Plaintiffs' claims of "foul" now are not proper. Plaintiffs asked most of the questions in written discovery, and the Sero Defendants properly objected. Rather than timely bringing the issues before the Court (if Plaintiffs even genuinely believe in their position), Plaintiffs' waited until the depositions to re-ask the same questions in order to disingenuously "create" the issues here. Even when counsel for the Sero Defendants made proper objections pursuant to the letter of the Federal Rules and proposed terminating the deposition of Blake to achieve a ruling on the financial documents questions, counsel for Plaintiffs refused and proceeded anyway.[9] Blake Depo. at 21:21-25; 22:1-9; 25:5-14 (**Exhibit 11**).

## CONCLUSION

Plaintiffs—one of the largest insurance companies in the world—brought this suit against the Sero Defendants who *dared* conduct business within Plaintiffs' captive market without first securing Plaintiffs' express blessing. Punishment struck in the form of this litigation, devastating the Sero Defendants. Throughout the case, Plaintiffs have attempted to crush the Sero Defendants with unbridled resources and dilatory litigation tactics. For this, and the other aforementioned reasons, this Court should overrule Plaintiffs' manufactured discovery disputes.

---

[9] Plaintiffs' now have the audacity to claim they are entitled to **more** deposition time of witnesses (an additional four hours for Gertz, at the Sero Defendants' expense), without even performing a proper analysis: a complete review of Mr. Gertz's transcript shows he was made available from 8:04 AM until 4:04pm, a full 8.0 hours. *See* **Exhibit 10**, pp. 2, 376.

Dated this Friday, June 28, 2019.            Respectfully submitted,

                                             */s/ Greg J. Minana*
                                             GREGORY J. MINANA        MO #38004
                                             JAMES R. MONTGOMERY      MO #68281
                                             HUSCH BLACKWELL LLP
                                             4801 Main Street, Suite 1000
                                             Kansas City, Missouri  64112
                                             Telephone  (816) 983-8000
                                             Facsimile  (816) 983-8080
                                             greg.minana@huschblackwell.com
                                             jr.montgomery@huschblackwell.com

                                             ***Attorneys for Defendants Mark Blake, Beau Gertz, SeroDynamics LLC,***

**CERTIFICATE OF SERVICE**

      I hereby certify that on Friday, June 28, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                    /s/ Greg J. Minana