# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| RightCHOICE Managed Care, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Hospital Partners, Inc.; Hospital Laboratory Partners, LLC; Empower H.I.S. LLC; LifeBrite Laboratories, LLC; RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services; Labmed Services, LLC; SeroDynamics, LLC; Lucenta Labs, LLC; David Byrns; Jorge Perez; Christian Fletcher; James F. Porter, Jr.; Beau Gertz; and Mark Blake,<br><br>Defendants. | Civil Action No.<br><br>5:18-CV-06037-DGK<br><br>**PLAINTIFFS' NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF DEFENDANT SERODYNAMICS, LLC.** |

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of the designated corporate representative(s) of Defendant Serodynamics, LLC ("Serodynamics") regarding the topics identified on the attached Exhibit A on July 31, 2019 at 9:00AM Eastern. The deposition will be taken before a court reporter, notary public, or other person authorized to administer oaths, and it will be recorded by stenographic, audio, audiovisual, and/or real-time transcription means at Regus, One Urban Centre, 4830 West Kennedy Boulevard, Suite 600, Tampa, Florida 33609.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Serodynamics must designate one or more officers, directors, managing agents, or other persons who

consent to testify on its behalf as to the information known or reasonably available to it regarding the topics in the attached Exhibit A.

The deposition will continue from day to day until completed.

DATED: July 12, 2019

By: /s/ Nathaniel J. Moore

LEWIS RICE LLC
Neal F. Perryman, MO Bar #43057
Michael L. Jente, MO Bar #62980
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
T: (314) 444-7600
nperryman@lewisrice.com
mjente@lewisrice.com

-and-

ROBINS KAPLAN LLP
Jeffrey S. Gleason (admitted PHV)
Jason W. Pfeiffer, MO Bar # 50104
Nathaniel J. Moore (admitted PHV)
Amira A. ElShareif (admitted PHV)
Jaime J. Wing (admitted PHV)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
jgleason@robinskaplan.com
jpfeiffer@robinskaplan.com
nmoore@robinskaplan.com
aelshareif@robinskaplan.com
jwing@robinskaplan.com

*Attorneys for Plaintiffs*

2

## EXHIBIT A

### DEFINITIONS

1.      This **action** means the above-captioned civil action.

2.      **Accounts** mean accounts held at a **financial institution**.

3.      **Asset** or **assets** or **property** includes any interest in real property or personal property. Real property means real estate. Personal property includes cash, an account, cash-value insurance, securities, bonds, mutual funds, pension or profit-sharing accounts, stock options, stock grants, retirement plans, mutual funds, escrow accounts, loans or contract rights, and securities.

4.      **Billing scheme**, **billing arrangement**, or **laboratory-billing scheme** means the scheme alleged in Plaintiffs' Third Amended Complaint, Dkt. 57, and as described in the Missouri Auditor's reports.

5.      **Claim** means a demand for payment submitted to one or more Plaintiffs.

6.      **Defendant** or **Defendants** means, as appropriate, any or all of the defendants in this action, as well as their agents, affiliates, predecessors, or successors, regardless of whether or not that Defendant has been dismissed from the action.

7.      **Financial institution** means any company or other organization in the business of handling financial transactions or performing financial services for individuals or organizations, such as deposits, payment services, checking accounts, savings accounts, certificates of deposit, investments, loans, brokerage services, credit-card services, wire transfers, asset protection, currency exchange, or business financing, including but not limited to banks, trust companies, thrifts, credit unions, insurance

3

companies, investment dealers companies, brokerage firms, and any financial institutions as defined by 18 U.S.C. § 20.

8.     The **hospital** means the inpatient and outpatient healthcare facility located at 1926 Oak Street, Unionville, Missouri 63565, independent of its ownership or control.

9.     **Identity** or **identify** with respect to an individual or organization means, to the extent possible, the individual or organization's full name, present or last known personal and business address and telephone number(s); and, with respect to an individual, present or last known place of employment.

10.    **Including** means including but not limited to.

11.    **Marketing, marketer, or distributor** means those individuals or organizations functioning as employees or independent contractors of any of the Defendants whose purpose, at least in part, was to convince healthcare providers to use the services of any of the Defendants.

12.    **Member** means an enrollee in a health benefit plan issued or administered by one of the Plaintiffs alone or collectively.

13.    The **Missouri Auditor's reports** mean reports authored by the Missouri State Auditor's office bearing serial numbers 2017-074 and 2018-045, available at https://app.auditor.mo.gov/Repository/Press/2017074829206.pdf and https://app.auditor.mo.gov/Repository/Press/2018045134671.pdf respectively.

14.    **Payment** means any form of direct or indirect remuneration, including commissions, bonuses, or other compensation.

15.    **PCMH** means Putnam County Memorial Hospital.

4

16.     **Person** means any natural person or entity.

17.     **Plaintiffs** means the plaintiffs in the above-captioned civil action.

18.     **Provider** means anyone rendering medical care and includes anyone acting on a provider's behalf.

19.     **Unique identifiers** means Taxpayer Identification Number, National Provider Identification number, or any other uniquely-assigned identifier by which a health care provider identifies itself to payors.

20.     **You**, **your**, or **Serodynamics** means Serodynamics, LLC, as well as your agents, employees, officers, directors, managers, affiliates, predecessors, or successors.

## TOPICS

1.     Serodynamics' Answer to the Third Amended Complaint, discovery responses, and production of documents in this case.

2.      Serodynamics' efforts to preserve and produce documents in this case.

3.     Serodynamics' status as a corporate entity since it was created, including but not limited to its formation, ownership structure, ownership interests, and identification of owners, voting members, and managers.

4.     The entities affiliated with Serodynamics—including but not limited to Labmed Services, LLC; Perseverance Med LLC; Lab Metrics, LLC, CadiraMD; Cadira Group Holdings, LLC;  Lab Initiatives, LLC; and CadiraLab—and their relationship to Serodynamics.

5.     Serodynamics' agents, employees, officers, directors, and managers, and their corresponding responsibilities.

6. The nature of Serodynamics' business beginning in 2015 through the present including (a) the businesses it operated; (b) the services those businesses provided and how it provided them; (c) the means by which it generated revenue; and (d) the size and location of its operations.

7. Salaries, distributions, dividends, or other remuneration that Serodynamics paid from 2015 to the present.

8. Financial institutions at which Serodynamics has had an account since January 1, 2016, and the activities of those accounts. This topic includes information regarding: the type of account (e.g., checking, credit card, investment); the purpose of the account (e.g., payroll); the account number or other corresponding unique identifier; the identity of the individual(s) who had authority to transfer or dispose of monies in those accounts; the duration and current status of the account; and the transfers, payments, or other activities in the account.

9. Serodynamics' relationship and communications with Campbellton-Graceville Hospital.

10. Serodynamics' relationship and communications with PCMH.

11. The role that Serodynamics played in laboratory tests billed through Campbellton-Graceville Hospital and PCMH.

12. The origin, mechanics, organization, and termination of Serodynamics' relationship with Campbellton-Graceville Hospital, including your understanding of the roles played by various parties that led to claims being submitted to Plaintiffs by

6

Campbellton-Graceville Hospital for laboratory tests performed by Serodynamics, and the distribution of proceeds of those claims through Campbellton-Graceville Hospital.

13.     The origin, mechanics, organization, and termination of Serodynamics' relationship with PCMH, including your understanding of the roles played by various parties that led to claims being submitted to Plaintiffs by PCMH for laboratory tests performed by Serodynamics, and the distribution of proceeds of those claims through PCMH.

14.     Any evidence you say tends to prove that tests billed to Plaintiffs were performed at PCMH's on-site laboratory.

15.     Serodynamics' relationships with the other Defendants.

16.     The capabilities of Serodynamics' laboratory facilities from 2016 to present.

17.     The capabilities of PCMH's laboratory facilities from 2016 to present.

18.     Your contentions that Serodynamics served as a reference laboratory for PCMH and that PCMH ordered tests from Serodynamics.

19.     The information contained in LabTrac.

20.     Serodynamics' transfer of information to facilitate the billing of claims to Plaintiffs through PCMH.

21.     Serodynamics' efforts to bill or cause others to bill for laboratory services that it provided.

22.     Serodynamics' efforts to bill claims through PCMH that were originally intended to be billed to insurers through or by another hospital or provider—including

but not limited to Campbellton-Graceville Hospital, Simpson General Hospital, and Southwest Labs.

23. The creation, editing, or modification of requisition forms related to laboratory services billed to payors through PCMH.

24. The marketers or distributors who sought to encourage providers to orders tests from Serodynamics, including but not limited to the nature of Serodynamics' relationship with those marketers or distributors and Serodynamics' awareness of the ways in which the marketers or distributors encouraged providers to order tests from Serodynamics.

25. The phlebotomists who drew specimens tested by Serodynamics but billed to Plaintiffs through PCMH.

26. Plaintiffs' contract with PCMH, including Serodynamics' awareness and interpretation of the contract.

27. Serodynamics' awareness of any efforts to collect patient cost-sharing obligations (including but not limited to deductibles, copays, and similar) for laboratory tests billed to Plaintiffs through PCMH.

28. Serodynamics' efforts to evaluate whether its relationship with Putnam was lawful, compliant with Plaintiffs' contract with PCMH, criminal, or otherwise inappropriate.

29. Any law or regulation that SeroDynamics contends justifies or authorizes the submission of claims to Plaintiffs for lab testing that was not performed at PCMH.

30. Serodynamics' assets and any transfers of assets since January 1, 2016.

8

31. The efforts made by the individual(s) who will testify on the topics above to prepare for their testimony, including, for example, the identity of the individuals with whom the witness communicated and the subjects about which they communicated (with the exception of attorney-client communications).

**Certificate of Service**

I hereby certify that on July 12, 2019, the foregoing document was served on all counsel of record via electronic mail.

/s/ *Nathaniel J. Moore*

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

RightCHOICE Managed Care, Inc., *et al.*,

        Plaintiffs,

v.

Hospital Partners, Inc.; Hospital Laboratory
Partners, LLC; Empower H.I.S. LLC; LifeBrite
Laboratories, LLC; RAJ Enterprises of Central
Florida, LLC d/b/a Pinnacle Laboratory
Services; LabMed Services, LLC;
SeroDynamics, LLC; Lucenta Labs, LLC;
David Byrns; Jorge Perez; Christian Fletcher;
James F. Porter, Jr.; Beau Gertz; and Mark
Blake,

        Defendants.

Civil Action No.

5:18-CV-06037-DGK

**PLAINTIFFS' NOTICE OF TAKING
RULE 30(b)(6) DEPOSITION OF
DEFENDANT LABMED SERVICES,
LLC.**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure, Plaintiffs will take the deposition of the designated corporate

representative(s) of Defendant LabMed Services, LLC ("LabMed Services") regarding

the topics identified on the attached Exhibit A on July 30, 2019 at 9:00AM Eastern.

The deposition will be taken before a court reporter, notary public, or other person

authorized to administer oaths, and it will be recorded by stenographic, audio,

audiovisual, and/or real-time transcription means at Regus, One Urban Centre, 4830

West Kennedy Boulevard, Suite 600, Tampa, Florida 33609.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), LabMed Services must

designate one or more officers, directors, managing agents, or other persons who

consent to testify on its behalf as to the information known or reasonably available to it regarding the topics in the attached Exhibit A.

The deposition will continue from day to day until completed.

DATED: July 12, 2019                 By:      /s/ Nathaniel J. Moore

                                    LEWIS RICE LLC
                                    Neal F. Perryman, MO Bar #43057
                                    Michael L. Jente, MO Bar #62980
                                    600 Washington Avenue, Suite 2500
                                    St. Louis, Missouri 63101
                                    T: (314) 444-7600
                                    nperryman@lewisrice.com
                                    mjente@lewisrice.com

                                             -and-

                                    ROBINS KAPLAN LLP
                                    Jeffrey S. Gleason (admitted PHV)
                                    Jason W. Pfeiffer, MO Bar # 50104
                                    Nathaniel J. Moore (admitted PHV)
                                    Amira A. ElShareif (admitted PHV)
                                    Jaime J. Wing (admitted PHV)
                                    800 LaSalle Avenue, Suite 2800
                                    Minneapolis, Minnesota 55402
                                    T: (612) 349-8500
                                    F: (612) 339-4181
                                    jgleason@robinskaplan.com
                                    jpfeiffer@robinskaplan.com
                                    nmoore@robinskaplan.com
                                    aelshareif@robinskaplan.com
                                    jwing@robinskaplan.com

                                    *Attorneys for Plaintiffs*

# EXHIBIT A

## DEFINITIONS

1.      This **action** means the above-captioned civil action.

2.      **Accounts** mean accounts held at a **financial institution**.

3.      **Asset** or **assets** or **property** includes any interest in real property or personal property. Real property means real estate. Personal property includes cash, an account, cash-value insurance, securities, bonds, mutual funds, pension or profit-sharing accounts, stock options, stock grants, retirement plans, mutual funds, escrow accounts, loans or contract rights, and securities.

4.      **Billing scheme**, **billing arrangement**, or **laboratory-billing scheme** means the scheme alleged in Plaintiffs' Third Amended Complaint, Dkt. 57, and as described in the Missouri Auditor's reports.

5.      **Claim** means a demand for payment submitted to one or more Plaintiffs.

6.      **Defendant** or **Defendants** means, as appropriate, any or all of the defendants in this action, as well as their agents, affiliates, predecessors, or successors, regardless of whether or not that Defendant has been dismissed from the action.

7.      **Financial institution** means any company or other organization in the business of handling financial transactions or performing financial services for individuals or organizations, such as deposits, payment services, checking accounts, savings accounts, certificates of deposit, investments, loans, brokerage services, credit-card services, wire transfers, asset protection, currency exchange, or business financing, including but not limited to banks, trust companies, thrifts, credit unions, insurance

3

companies, investment dealers companies, brokerage firms, and any financial institutions as defined by 18 U.S.C. § 20.

8.      The **hospital** means the inpatient and outpatient healthcare facility located at 1926 Oak Street, Unionville, Missouri 63565, independent of its ownership or control.

9.      **Identity** or **identify** with respect to an individual or organization means, to the extent possible, the individual or organization's full name, present or last known personal and business address and telephone number(s); and, with respect to an individual, present or last known place of employment.

10.     **Including** means including but not limited to.

11.     **Marketing, marketer, or distributor** means those individuals or organizations functioning as employees or independent contractors of any of the Defendants whose purpose, at least in part, was to convince healthcare providers to use the services of any of the Defendants.

12.     **Member** means an enrollee in a health benefit plan issued or administered by one of the Plaintiffs alone or collectively.

13.     **Payment** means any form of direct or indirect remuneration, including commissions, bonuses, or other compensation.

14.     **PCMH** means Putnam County Memorial Hospital.

15.     **Person** means any natural person or entity.

16.     **Plaintiffs** means the plaintiffs in the above-captioned civil action.

17.     **Provider** means anyone rendering medical care and includes anyone acting on a provider's behalf.

18. **Unique identifiers** means Taxpayer Identification Number, National Provider Identification number, or any other uniquely-assigned identifier by which a health care provider identifies itself to payors.

19. **You**, **your**, or **LabMed** means LabMed Services, LLC, as well as your agents, employees, officers, directors, managers, affiliates, predecessors, or successors.

## TOPICS

1. Labmed's Answer to the Third Amended Complaint, discovery responses, and production of documents in this case.

2. Labmed's efforts to preserve and produce documents in this case.

3. Labmed's status as a corporate entity since it was created, including but not limited to its formation, ownership structure, ownership interests, and identification of owners, voting members, and managers.

4. The entities affiliated with Labmed—including but not limited to Serodynamics, LLC; Perseverance Med LLC; Lab Metrics, LLC, CadiraMD; Cadira Group Holdings, LLC; Lab Initiatives, LLC; and CadiraLab—and their relationship to Serodynamics.

5. LabMed's agents, employees, officers, directors, and managers, and their corresponding responsibilities.

6. The nature of Labmed's business beginning in 2015 through the present including (a) the businesses it operated; (b) the services those businesses provided and how it provided them; (c) the means by which it generated revenue; and (d) the size and location of its operations.

5

7.      Salaries, distributions, dividends, or other remuneration that Labmed paid from 2015 to the present.

8.      Financial institutions at which Labmed has had an account since January 1, 2016, and the activities of those accounts. This topic includes information regarding: the type of account (e.g., checking, credit card, investment); the purpose of the account (e.g., payroll); the account number or other corresponding unique identifier; the identity of the individual(s) who had authority to transfer or dispose of monies in those accounts; the duration and current status of the account; and the transfers, payments, or other activities in the account.

9.      Labmed's relationship and communications with Campbellton-Graceville Hospital.

10.     Labmed's relationship and communications with PCMH.

11.     Labmed's relationship and communications with Empower H.I.S., LLC.

12.     Labmeds' relationships and communications with the other Defendants.

13.     The role that Labmed played in laboratory tests billed through Campbellton-Graceville Hospital and PCMH.

14.     The origin, mechanics, organization, and termination of Labmed's relationship with Campbellton-Graceville Hospital, including your understanding of the roles played by various parties that led to claims being submitted to Plaintiffs by Campbellton-Graceville Hospital for laboratory tests performed by Serodynamics, and the distribution of proceeds of those claims through Campbellton-Graceville Hospital.

15. The origin, mechanics, organization, and termination of Labmed's relationship with PCMH, including your understanding of the roles played by various parties that led to claims being submitted to Plaintiffs by PCMH for laboratory tests performed by Serodynamics, and the distribution of proceeds of those claims through PCMH.

16. The services that LabMed rendered to PCMH or Empower H.I.S, LLC.

17. Any evidence you say tends to prove that tests billed to Plaintiffs were performed at PCMH's on-site laboratory.

18. Your contentions that Serodynamics served as a reference laboratory for PCMH and that PCMH ordered tests from Serodynamics.

19. The information contained in LabTrac.

20. Labmed's efforts to bill or cause others to bill for laboratory services provided by Labmed's affiliated entities, including Serodynamics and CadiraLab.

21. Labmed's efforts (or awareness of other Defendants' efforts) to bill claims through PCMH that were originally intended to be billed to insurers through or by another hospital or provider—including but not limited to Campbellton-Graceville Hospital, Simpson General Hospital, and Southwest Labs.

22. The creation, editing, or modification of requisition forms related to laboratory services billed to payors through PCMH.

23. Labmed's relationships with marketers and distributors, including but not limited to (a) the financial arrangements with marketers and distributors; (b) the contracts between Labmed and the marketers and distributors; (c) the steps taken by

7

marketers and distributors to encourage providers to order tests from Serodynamics, Cadira, Campbellton-Graceville Hospital, or PCMH; (d) the promotional materials used by the marketers and distributors; and (e) communications with the marketers and distributors.

24. Whether Labmed (and the marketers and distributors engaged by Labmed) marketed the services offered by Cadira, Serodynamics, Campbellton-Graceville Hospital, and PCMH.

25. The phlebotomists who drew specimens tested by Serodynamics but billed to Plaintiffs through PCMH.

26. Plaintiffs' contract with PCMH, including Labmed's awareness and interpretation of the contract.

27. Labmed's awareness of any effort to collect patient cost-sharing obligations (including but not limited to deductibles, copays, and similar) for laboratory tests billed to Plaintiffs through PCMH.

28. Labmed's efforts to evaluate whether its relationship with Putnam was lawful, compliant with Plaintiffs' contract with PCMH, criminal, or otherwise inappropriate.

29. Any law or regulation that Labmed contends justifies or authorizes the submission of claims to Plaintiffs for lab testing that was not performed at PCMH.

30. Labmed's assets and any transfers of assets since January 1, 2016.

31. The efforts made by the individual(s) who will testify on the topics above to prepare for their testimony, including, for example, the identity of the individuals

with whom the witness communicated and the subjects about which they

communicated (with the exception of attorney-client communications).

**Certificate of Service**

I hereby certify that on July 12, 2019, the foregoing document was served on all counsel of record via electronic mail.

/s/ *Nathaniel J. Moore*