**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

RightCHOICE Managed Care, Inc., *et al.*,

        Plaintiffs,

v.

Hospital Partners, Inc.; Hospital Laboratory
Partners, LLC; Empower H.I.S. LLC; RAJ
Enterprises of Central Florida, LLC d/b/a Pinnacle
Laboratory Services; LabMed Services, LLC;
SeroDynamics, LLC; David Byrns; Jorge Perez;
James F. Porter, Jr.; Beau Gertz; and Mark Blake,

        Defendants.

Civil Action No.
5:18-CV-06037-DGK

## PLAINTIFFS' SUGGESTIONS IN SUPPORT OF MOTION
## FOR RULE 37 SANCTIONS AGAINST DEFENDANTS
## EMPOWER H.I.S., LLC; HOSPITAL PARTNERS, INC.; AND JORGE PEREZ

# INTRODUCTION

The Empower Defendants—Empower H.I.S., LLC ("Empower"); Hospital Partners, Inc.

("Hospital Partners"); and Jorge Perez—played essential roles in the scheme at issue in this

litigation. Jorge Perez and his co-defendant, David Byrns (who recently pleaded guilty to

Conspiracy to Commit Health Care Fraud in connection with his role at Putnam[1]), created

Hospital Partners as a vehicle through which to control Putnam County Memorial Hospital

("Putnam"). Once Hospital Partners assumed the management of Putnam, Jorge Perez and David

Byrns entered into contracts, purportedly on behalf of Putnam, with certain of the other

Defendants. When the Defendant laboratories performed tests, they transmitted information

about the tests to Empower (operated by Jorge Perez and his family), which in turn billed

Plaintiffs for the tests using Putnam's name and other identifiers. As a result, the Empower

Defendants' testimony and documents are important to the claims in this matter.

The Empower Defendants continued to disregard their discovery obligations even after

this Court issued two Orders instructing them to comply with their discovery obligations and

warning them that failure to do so would result in adverse consequences. Yet, even today,

months after the close of fact discovery, Plaintiffs are without key documents from the Empower

Defendants, and both Empower and Hospital Partners *refused to make corporate representatives

available to be deposed*, stating that any possible corporate representative would invoke their

Fifth Amendment privilege and refuse to answer Plaintiffs' questions. Critically, Plaintiffs had

no other way to obtain testimony from the Empower Defendants because *each* of the Empower

Defendants' owners or employees deposed by Plaintiffs invoked the Fifth Amendment and

refused to answer Plaintiffs' questions. In sum, the Empower Defendants have deprived

---

[1] *See U.S. v. Byrns*, No. 3:19-cr-166-J-32JRK.

1

Plaintiffs of documentary and testimonial evidence they are entitled to in this case, and sanctions are appropriate to avoid undue prejudice to Plaintiffs.

This motion has two primary components. *First*, in violation of Rule 37(b) and (d), Empower and Hospital Partners refused to make corporate representatives available for their respective Rule 30(b)(6) depositions, claiming that any corporate representative knowledgeable enough to testify would invoke their Fifth Amendment rights and refuse to answer Plaintiffs' questions. *Second*, in violation of Rule 37(b), and despite multiple Orders from the Court requiring them to produce relevant evidence months ago, the Empower Defendants still have not produced large swathes of relevant evidence, including but not limited to their emails from 2016 (when the Putnam arrangement was planned and implemented) and other non-email operations documents relevant to how they conducted billing at Putnam. Under both components, sanctions are appropriate and necessary to avoid further prejudice to Plaintiffs.

In response to an earlier Order by the Court, each of the Empower Defendants provided sworn statements that their emails and documents relevant to Putnam were preserved, and would continue to be preserved. There is, therefore, no reasonable explanation for the Empower Defendants' failure to produce these materials, and sanctions are appropriate and necessary to avoid further prejudice to Plaintiffs.

## FACTUAL BACKGROUND

### I.     The Empower Defendants' roles in the Putnam scheme.

The Empower Defendants were essential to the operation of the pass-through-billing scheme at issue in this case. The scheme operated as follows: Perez and Byrns took control of Putnam through Hospital Partners. (Moore Decl., Ex. A (Pickens Tr. 70:18-22).) They engaged Empower to handle billing for the scheme. (*Id.*, Ex. A (Pickens Tr. 42:5-8).) The Empower Defendants engaged laboratories—including Defendants Serodynamics, LLC ("Serodynamics"),

Pinnacle Laboratory Services ("Pinnacle Labs"), and former Defendant LifeBrite Laboratories, LLC ("LifeBrite Labs")—to collect patient specimens from health care providers; test them at their laboratories in Colorado, Florida, and Georgia, respectively; and send patient and test information to Empower, which would then bill the tests using Putnam's identifiers (*e.g.*, Tax Identification Number and National Provider Identifier) and representing to Plaintiffs that Putnam performed the tests. (*Id.*, Ex. A (Pickens Tr. 42:25-43:4, 49:10-21, 63:4-19, 66:3-4).)) The effect was that Perez and Byrns, along with their co-conspirators, were able to exploit Putnam's in-network contract with Plaintiffs, which provided them a number of benefits, including in-network adjudication and more lucrative reimbursements than the laboratories would have received if they had billed the tests directly to Plaintiffs. When Plaintiffs and other insurers relied on the fraudulent claims and paid Putnam, the Empower Defendants directed Putnam to distribute the payments among the Defendants. (*Id.*, Exs. B, C.)

## II. Plaintiffs' Discovery Requests to the Empower Defendants.

Plaintiffs filed this case on March 30, 2018. (Dkt. 1.) The parties held a Rule 26(f) conference on October 4, 2018. (*See* Dkt. 115 at 1.) Plaintiffs served Interrogatories, Requests for Production, and Requests for Admission on each Defendant—including Jorge Perez, Hospital Partners, and Empower—on October 8, 2018. (*See* Dkt. 113 (the "Discovery Requests").)

## III. The Empower Defendants' Discovery Conduct and the Court's Orders.

### A. The Empower Defendants' Initial Disclosures.

The Empower Defendants served their Rule 26(a)(1) disclosures on October 18, 2018. (*See* Dkt. 114; Moore Decl., Ex. D.) The Empower Defendants did not identify a single person likely to have discoverable information by name, nor did they provide or describe any documents that may be used to support their claims or defenses. (*Id*.)

**B.      The Empower Defendants' Discovery Responses and Objections.**

On November 26, 2018, the Empower Defendants served Responses and Objections to

Plaintiffs' Discovery Requests. (*See* Dkt. 140; Moore Decl., Exs. E-M (the "Responses").) In the

Responses, the Empower Defendants: (i) objected to all 58 of Plaintiffs' Requests for

Production, almost entirely on the basis of boilerplate objections, and refused to produce a single

document; (ii) denied all 13 of Plaintiffs' Requests for Admission, often after re-phrasing the

Requests for Admission;  and (iii) failed to provide substantive answers to the Interrogatories.

(*See* Moore Decl., Exs. E-M.) In a meet-and-confer, the Empower Defendants reiterated that they

would not produce any documents. (*Id.*, ¶ 2.) For the first time, they also asserted the Fifth

Amendment as a basis for their refusal to produce responsive documents. (*Id.*, ¶ 3.)

On January 11, 2019, the Empower Defendants served Plaintiffs with Amended

Responses to Plaintiffs' Discovery Requests, in which they asserted, "at least on a temporary

basis," their rights under the Fifth Amendment as a justification for refusing to produce

documents and otherwise respond to Plaintiffs' Discovery Requests. (*See Id.*, Ex. N at ¶ 4.)

**C.      The Court's February 2019 Discovery Order.**

On January 21, 2019, Plaintiffs moved for an Order requiring the Empower Defendants

to supplement their Responses and comply with their discovery obligations. (Dkt. 159.) On

February 1, 2019, the Court issued an Order in which it: (i) noted that, during the telephonic

hearing, prior counsel for the Empower Defendants "enthusiastically" stated that his clients had

not produced a single document; (ii) ordered the Empower Defendants to supplement their Initial

Disclosures within 14 days; (iii) ordered Empower and Hospital Partners to respond to Plaintiffs'

Discovery Requests within 14 days, because legal entities are not entitled to protection under the

Fifth Amendment; (iv) ordered Jorge Perez and David Byrns to produce relevant business

records in their possession within 14 days; (v) ordered the Empower Defendants to respond to

Plaintiffs' Discovery Requests in good faith or specifically tailor their objections to each request within 14 days; and (vi) ordered each of the Empower Defendants to prepare a statement identifying the steps they had taken to preserve discoverable information. (Dkt. 171, at 3, 6-7, 10 (the "February 2019 Order").) The Court closed the February 2019 Order by warning that the conduct of the Empower Defendants and their previous attorney "delay[ed] litigation and create[d] additional costs for all involved," and that, if their conduct continued, the Court "would consider imposing sanctions." (*Id*. at 10.)

### D.    The Empower Defendants' Response to the February 2019 Order.

On February 15, 2019, the Empower Defendants made a limited production of documents and served Amended Discovery Responses. (Dkt. 179; Moore Decl., Exs. O-T (the "Amended Discovery Responses").) The Empower Defendants' production was plainly deficient. It did not include various categories of relevant documents that the Court had ordered to be produced, including: (i) emails from key custodians, such as Jorge Perez, Ricardo Perez (Jorge Perez's brother and business partner), Yesenia Hidalgo (Empower's Operations Manager), and Ernesto Fesser (Empower's Controller); (ii) operations-type documents describing Empower's business practices (*e.g.*, documents detailing Empower's submission of the claims at issue, or guiding employees on how to bill claims); and (iii) the Empower Defendants' financial records. (Moore Decl., ¶ 4.)

The Empower Defendants' Amended Discovery Responses each included an attestation that all relevant documents were, *and would continue to be*, preserved:

- "EMPOWER H.I.S., LLC, pursuant to the Court's Order of February 1, 2019, hereby acknowledges that upon becoming aware of this case, it did ensure that all of the emails under its domain (www.empowerhis.com) (and also www.medxgroup.com) and documents which were otherwise related to Putnam County Memorial Hospital, continued to be maintained in the ordinary course, and that no such emails and documents were deleted or otherwise subject to disposal. Virtually all of such documents were and are

stored electronically, and are preserved "in the cloud;" and will continue to be preserved as such."

(*Id.*, Ex. R, ¶ 13.)

- "HOSPITAL PARTNERS, INC., pursuant to the Court's Order of February 1, 2019, hereby acknowledges that upon becoming aware of this case, it did ensure that all of the emails (noting it has no email domain) and documents which were otherwise related to Putnam County Memorial Hospital, continued to be maintained in the ordinary course, and that no such emails and documents were deleted or otherwise subject to disposal. Virtually all of such documents were and are stored electronically, and are preserved 'in the cloud;' and will continue to be preserved as such."

(*Id.*, Ex. S, ¶ 13.)

- "JORGE PEREZ, pursuant to the Courts' Order of February 1, 2019, hereby acknowledges that upon becoming aware of this case, he did ensure that all of his emails and documents which were otherwise related to Putnam County Memorial Hospital, continued to be maintained in the ordinary course, and that no such emails and documents were deleted or otherwise subject to disposal. Virtually all of such documents were and are stored electronically, and are preserved 'in the cloud;' and will continue to be preserved as such."

(*Id.*, Ex. T, ¶ 13.)

In April 2019, Plaintiffs again reached out to the Empower Defendants and sought to work through the deficiencies with the Empower Defendants' productions. (Dkt. 202 Ex. 7 at 1-2.) The Empower Defendants' counsel stated that Empower had produced responsive documents within its control and that he would further communicate with his clients regarding the status of their productions. (Dkt. 202 Ex. 7 at 2.) The Empower Defendants produced no additional documents during the spring of 2019. (Moore Decl., ¶ 5.)

### E. The Court's May 2019 Order.

On May 1, 2019, still lacking most of the documents and information that the Empower Defendants had been ordered to produce, Plaintiffs again moved to compel. (Dkts. 202 at 5; 208 at 2-3.) Plaintiffs also requested the Court's involvement in setting deadlines for the depositions of the Empower Defendants, who had refused to provide dates. (*Id.*) Around the same time, the

6

Empower Defendants' counsel—Frank Smith—moved to withdraw from the case. (Dkts. 206; 208 at 3.) Plaintiffs opposed Mr. Smith's withdrawal, largely due to the incomplete state of discovery. (Dkt. 208 at 3.)

On May 10, 2019, the Court issued an Order granting the relief sought by Plaintiffs. (*See* Dkt. 208 (the "May 2019 Order").) In its May 2019 Order, the Court: (i) ordered Perez and Empower to sit for depositions within 20 and 45 days, respectively; (ii) ordered the Empower Defendants to "produce all relevant documents within seven days," including financial records; (iii) denied Mr. Smith's motion to withdraw, considering "the state of discovery at this juncture and the [Empower Defendants'] lack of responsiveness;" and (iv) required Plaintiffs and the Empower Defendants to appear for an in-person conference on July 26, 2019. (*Id.* at 4.) The Court noted that the Empower Defendants "ha[d] fallen short" of the expectation to adhere to the letter and spirit of the discovery rules and that "their continued and possibly intentional foot-dragging frustrates the Court and wastes the time and resources of all involved." (*Id.* at 4.)

**F.  The Empower Defendants' Response to the May 2019 Order.**

Seven days after the Court's May 2019 Order, the Empower Defendants made another limited production. (Moore Decl., ¶ 6.) When informing Plaintiffs of the production, Mr. Smith asserted that the Empower Defendants had added "everything else they found pursuant to the Judge's order." (Moore Decl., Ex. U.) The production did not materially improve the state of the Empower Defendants' production. (Moore Decl., ¶ 6.)

**G.  The Empower Defendants' Retention of New Counsel and Plaintiffs' Continued Efforts to Obtain Relevant Materials from the Empower Defendants.**

Shortly after the Court's May 2019 Order, new counsel, Mr. Marney, appeared on behalf of the Empower Defendants. (Dkts. 214, 217, 218.) On June 18, 2019, Mr. Marney informed the Court that he had engaged an "electronic discovery vendor" to "fulfill the document production

obligations" of the Empower Defendants. (Dkt. 229 at 2.) Days later, Mr. Marney informed Plaintiffs that the vendor had begun collecting documents, and that Plaintiffs could expect a production before the July 26, 2019 hearing. (Moore Decl., Ex. V.)

On July 3, 2019, Plaintiffs moved the Court for an Order extending fact and expert discovery, in substantial part due to the discovery conduct of the Empower Defendants, including their non-production of responsive documents and the repeated rescheduling of the Empower Defendants' depositions due to Jorge Perez's health and other issues. (*See* Dkt. 245 at 2-3.) The Court granted Plaintiff's motion and issued an Order extending the close of fact discovery to September 30, 2019. (Dkt. 256.)

## H. The Empower Defendants Identify an Additional 600,000 Potentially Relevant Documents.

On August 20, 2019, about five weeks before the extended deadline for fact discovery, the Empower Defendants' counsel reported that their electronic discovery vendor had recently identified an additional 600,000 documents that were potentially responsive to Plaintiffs' Discovery Requests. (Moore Decl., Ex. W.) They also stated that their clients would reproduce certain documents already made available to Plaintiffs, albeit in a more useable format.[2] (*Id*.)

On August 21, 2019, the parties' counsel spoke by phone regarding the status of the Empower Defendants' production, including the 600,000 new documents. (*Id.*, ¶ 7.) Counsel agreed to work on search terms to narrow the universe of documents to be reviewed from the new batch of 600,000 documents. (*Id.*, ¶ 7.)

On August 28, 2019, Plaintiffs and the Empower Defendants agreed to search terms that narrowed the universe of new documents to be reviewed to approximately 112,000. (*Id.*, ¶ 9.)

---

[2] On August 23, 2019, the Empower Defendants re-produced in usable form the documents that their previous counsel had produced months before. (Moore Decl., ¶ 8.)

However, the review of the 112,000 documents would take weeks, fact discovery was scheduled to close on September 30, 2019, and Plaintiffs would be forced to depose each of the Empower Defendants—as well as any other Empower employees—without the benefit of the vast majority of the Empower Defendants' documents. (*Id.*, ¶ 10.)

## I.     Plaintiffs' Scheduled Depositions of the Empower Defendants.

In September 2019—the last month of fact discovery—Plaintiffs deposed Jorge Perez as well as two other Empower employees, each of whom refused to answer any of Plaintiffs' questions, citing their Fifth Amendment rights against self-incrimination. (*Id.*, ¶ 11.) Plaintiffs did not have the benefit of the majority of the Empower Defendants' relevant documents when deposing Jorge Perez and the Empower employees. (*Id.*, ¶ 10.)

Empower and Hospital Partners were scheduled to be deposed in September, but each refused to offer a corporate representative, as explained in Section IV.

## J.     The Empower Defendants' Supplemental Productions.

On September 24, 2019, less than one week before the close of fact discovery, but after the depositions of the Empower Defendants and their employees, the Empower Defendants produced 92,140 documents, totaling 349,657 pages. (*Id.*, ¶ 12.)

On October 17, 2019, more than two weeks after the close of fact discovery, the Empower Defendants produced additional financial records. (*Id.*, ¶ 13.)  On December 27, 2019, nearly two months after the close of fact discovery, the Empower Defendants produced more financial records. (*Id.*, ¶ 14.)

## K.     The Continuing Deficiencies in the Empower Defendants' Productions.

Between September 26, 2019 and the end of October 2019, Plaintiffs and the Empower Defendants discussed the completeness of the Empower Defendants' production in multiple emails and in at least one telephone call. (*Id.*, ¶ 15.) Among other things, Plaintiffs noted that the

Empower Defendants had produced, in total, *fewer than ten emails from 2016*, even though they took control of and implemented their arrangement at Putnam in 2016, and documents produced by other Defendants showed the Empower Defendants' production was incomplete. (*Id.*, ¶ 15.)

The productions' metadata reveals the extent of the deficiencies. Of the 193,301 documents the Empower Defendants produced, only 0.54% were sent, received, last modified, or created in 2016. (*Id.*, ¶ 16.) And only 14.07% were sent, received, last modified, or created in 2017. (*Id.*, ¶ 16.) The majority of the Empower Defendants' documents were created in 2019, two years after the key events in this litigation. (*Id.*, ¶ 16.) The following table summarizes the Empower Defendants' productions by year:

|  | 2016 | 2017 | 2018 | 2019 | no date |
|---|---|---|---|---|---|
| **Date Sent** | 9 | 6,443 | 4,411 | 286 | |
| **Date Received** | 5 | 6,125 | 4,361 | 286 | |
| **Date Last Modified** | 115 | 24,350 | 12,061 | 150,180 | |
| **Date Created** | 934 | 10,283 | 7,285 | 167,544 | |
| **Total Unique Docs**[3] | 1041 | 27,198 | 12,876 | 168,704 | 6,264 |
| **% of Population**[4] | 0.54% | 14.07% | 6.66% | 87.28% | 3.24% |

(*Id.*, ¶ 17.)

Despite the Plaintiffs' requests into late 2019, the Empower Defendants still have not provided an explanation for why documents from 2016 have not been produced. (*Id.*, ¶ 20.)

---

[3] "Total Unique Docs" was calculated by searching for all documents with a Date Sent, Date Received, Date Last Modified, or Date Created in a particular year, counting each document once. If a single document has a Date Sent, Date Received, Date Last Modified, and Date Created in the same year, it was counted as one unique document. If a document was created in one year and modified in another year, it shows as a unique document in both of those years. As a result, the sum of the "Total Unique Docs" exceeds the total documents produced by the Empower Defendants, and the sum of the "% of Population" calculations is more than 100%. (Moore Decl., ¶ 18.)

[4] "% of Population" is calculated by dividing the Total Unique Docs field by the total number of documents produced by the Empower Defendants (193,301). (Moore Decl., ¶ 18.)

Similarly, despite the fact that Empower is a medical billing and software company, few, if any, operations-type documents (*e.g.*, billing manuals and policies) have been produced. (*Id.*, ¶ 15.)

## IV.    The Empower Defendants' Refusal to Designate Corporate Representatives under Rule 30(b)(6).

Plaintiffs began requesting dates for the deposition of Jorge Perez in April 2019. (*Id.*, ¶ 21.) In May 2019, Plaintiffs moved the Court for an Order (which the Court granted) requiring the Empower Defendants to "provide three dates each for the deposition of Perez, none of which shall be more than twenty days from this order, and Hospital Partners and Empower H.I.S., none of which shall be more than forty-five days from this order[.]" (Dkt. 208 at 4.) However, in May 2019, the Empower Defendants each moved (unopposed) to continue their depositions due to the health of Jorge Perez. (*See* Dkts. 215, 219, 220.)

Plaintiffs and the Empower Defendants eventually agreed to dates that the Empower Defendants and certain of their employees would be deposed in September 2019. (Moore Decl., ¶ 23.) In late August 2019, counsel for the Empower Defendants stated that they did not expect to have corporate representatives available to testify under Rule 30(b)(6) for either Empower or Hospital Partners, because anyone capable of providing such testimony would invoke their Fifth Amendment rights and refuse to answer Plaintiffs' questions. (*Id.*, ¶ 22.) Plaintiffs' counsel responded that, if they did not designate a corporate designee, Plaintiffs would seek the imposition of sanctions. (*Id.*, ¶ 22.)

On September 10, 2019, Plaintiffs were scheduled to depose Empower, but no corporate representative appeared. (Id., ¶ 24; Ex. X.) On September 18, 2019, Plaintiffs were scheduled to depose Hospital Partners, but no corporate representative appeared. (*Id.*, ¶ 25; Ex. Y.) In both depositions, counsel for Empower and Hospital Partners stated on the record that no corporate representative could appear on behalf of the entities because any corporate representative

designated would have invoked their rights under the Fifth Amendment and refuse to answer Plaintiffs' questions. (Moore Decl., Ex. X & Y.)

## ARGUMENT

I. **Defendants Empower H.I.S., LLC and Hospital Partners, Inc. should be sanctioned under Rule 37 for refusing to designate corporate representatives to be deposed.**

Rule 30(b)(6) requires that, in response to a notice or subpoena, a named organization "*must* then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" Fed. R. Civ. P. 30(b)(6) (emphasis added). The Court's May 2019 Order also required Empower and Hospital Partners to produce corporate representatives to be deposed within 45 days. (*See* Dkt. 208 at 1-4.) Although the depositions of both Empower and Hospital Partners were subsequently postponed due to the health of Mr. Perez (*see* Dkts. 222 & 223),[5] neither Defendant made a corporate representative available on the dates of the rescheduled depositions. (*See* Moore Decl., Exs. X & Y.) Instead, at both depositions, counsel for the Empower Defendants stated on the record that every person knowledgeable about the topics noticed by Plaintiffs under Rule 30(b)(6) would invoke their Fifth Amendment privilege and refuse to testify, and that they would also refuse to prepare any other corporate representative designated by Empower or Hospital Partners. (*Id.*)

Because they refused to be questioned by Plaintiffs at their depositions, Empower and Hospital Partners should not be permitted to introduce evidence in support of their defenses. Absent such a sanction, Empower and Hospital Partners will benefit from their extraordinary violations of the Court's Orders and the Federal Rules.

---

[5] Plaintiffs note that, in their respective motions to continue the depositions of Empower and Hospital Partners, those Defendants stated that Jorge Perez was the only person who could "potentially, competently and adequately" testify to all of the noticed topics. (*See* Dkts. 219 & 220.) The motions were granted. (*See* Dkts. 222 & 223.) This delay was for naught; Jorge Perez did not appear at the continued depositions of Hospital Partners or Empower.

In response to a notice of Rule 30(b)(6) deposition, a corporate entity must designate one or more representatives who will not invoke the Fifth Amendment, and the corporate entity may not simply refuse to designate a corporate representative. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 102 (2d Cir. 2012) (affirming denial of defendants' motion to stay civil case and noting that the defendants could designate a corporate representative who would not invoke the Fifth Amendment); *see also Eisner v. Enhanced Recovery Co., LLC*, 407 F. Supp. 3d 132, 142 (E.D.N.Y. 2019) (party must designate a corporate representative who will testify at a Rule 30(b)(6) deposition without invoking their Fifth Amendment privilege). Otherwise, the corporate entity would secure the benefits of a privilege (*i.e.*, the Fifth Amendment) that it does not have. *See United States v. Kordel*, 397 U.S. 1, 8 (1970); *see also Curcio v. United States*, 354 U.S. 118, 122 (1957).

Legal entities that refuse to designate non-invoking corporate representatives may be sanctioned under Rule 37. *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 32 F. Supp. 2d 331, 338 (D. Md. 1999) (striking affidavits and testimony from Rule 30(b)(6) designee who invoked the Fifth Amendment, and ordering further deposition); *In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364, 370 (M.D. Pa. 1979) (sanctioning defendants by barring introduction of evidence).

Two subsections of Rule 37 authorize the imposition of sanctions on Empower and Hospital Partners for failing to appear at their depositions. *First*, Rule 37(d) states that the Court may impose sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). This subsection of Rule 37 is plainly applicable here. *Second*, Rule 37(b)(2)(A) permits the issuance of sanctions where a party fails to obey an order to provide or permit discovery. *See* Fed. R. Civ. P. 37(b)(2)(A). The

13

Court's May 2019 Order required Empower and Hospital Partners to be deposed within a period that was later extended by a separate Order. (*See* Dkts. 208 & 222-223.) Yet, neither entity appeared for their deposition, violating the Court's May 2019 Order, as modified by its Order of May 30, 2019. As a result, Empower and Hospital Partners should be sanctioned under Rule 37(b) and (d).

## II. The Empower Defendants should be sanctioned for their failure to produce documents in violation of the Court's Orders.

Under Rule 37(b)(2), a court may sanction a party that fails to obey a court order related to discovery. *H&R Block E. Enters., Inc. v. Sanks*, No. 4:16-cv-00206-GAF, 2017 WL 2587739, at *1 (W.D. Mo. Mar. 9, 2017). A court may properly impose sanctions "where there has been 'an order compelling discovery, a willful violation of that order, and prejudice to the other party.'" *Id.* (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)).

The Court's February 2019 Order required the Empower Defendants to produce "relevant business records in their possession" by February 15, 2019, and its May 2019 Order required the Empower Defendants to produce "all relevant documents" by May 17, 2019. (*See* Dkt. 171 at 10; Dkt. 208 at 4.) The Empower Defendants disregarded both Orders. Instead, on September 24, 2019—months after they were required to have produced all relevant documents, and after Plaintiffs had deposed the Empower Defendants and their employees, but only one week before the close of fact discovery—they produced 92,140 documents. (Moore Decl., ¶ 12.) But, as Plaintiffs later learned, even that production was substantially incomplete. For example, it contained fewer than ten emails from 2016, the year that the Putnam pass-through-billing scheme was planned and implemented by the Empower Defendants and their co-conspirators. (*Id.*, ¶ 15.) The Empower Defendants' production also appears to be missing operations-type documents including, for example, those detailing Empower's billing processes. (*Id.*, ¶ 15.) In total, only

14

0.54% of the produced documents were sent, received, last modified, or created in 2016, while 87% were from 2019, long after the key events in this case. (*Id.*, ¶ 16.)

Plaintiffs do not know, and do not have means by which to determine, how many relevant documents have not been produced by the Empower Defendants. Clearly, however, critical documents are missing, as a comparison of documents produced by the other Defendants confirms. For example, David Byrns produced Exhibit Z hereto, an email chain from September 2016 whereby David Byrns obtains the contract between Plaintiffs and Putnam, and then forwards it with commentary to Jorge Perez. (*Id.*, Ex. Z.) Searches of the productions made by Plaintiffs reflect that the document was not produced by the Empower Defendants, even though it should have been in their files, as it was sent to Jorge Perez at an email domain that Empower attested was being preserved for purposes of this litigation. (*Id.*, Ex. R, ¶ 13.) Another example of the shortcomings of the Empower Defendants' productions is Exhibit AA hereto, an email chain from November 2016 wherein Defendant Beau Gertz thanks Jorge Perez and David Byrns for signing the contracts between Putnam and Defendant Serodynamics and Labmed Services, LLC ("Labmed"). (*Id.*, Ex. AA.) It, too, is missing from the Empower Defendants' production.[6] There is no explanation for why these documents were not included in the Empower Defendants' production. Their absence confirms the Empower Defendants' discovery violations. Only the Empower Defendants know how many other relevant documents they have failed to produce.

Plaintiffs have raised concerns about the Empower Defendants' failure to produce relevant documents since early 2019, when the Court ordered each of the Empower Defendants to "prepare a statement identifying the steps taken to preserve discoverable information." (*See*

---

[6] Plaintiffs attempted numerous searches for Exhibits Z and AA in the Empower Defendants' productions, but were unable to locate those documents. (Moore Decl., ¶ 26.)

Dkt. 171 at 10.) In response, each of Empower, Hospital Partners, and Perez committed that all documents relating to Putnam were preserved, "and will continue to be preserved as such." (Moore Decl., Exs. R, S, T.)

There is no explanation for why these plainly relevant documents were not produced by the deadlines twice ordered by the Court, nor for why they have not been produced to date. And the documents are particularly critical here, where every witness employed by or with an ownership interest in the Empower Defendants has refused to provide testimony. While Plaintiffs have received some documents from other Defendants, they can only speculate as to what the Empower Defendants have withheld. The prejudice to Plaintiffs is plain; the documents that the Empower Defendants have withheld are relevant to Plaintiffs' claims not just against the Empower Defendants, but also against their co-conspirators. Moreover, this is the third time that Plaintiffs have been forced to incur the expense of motion practice because of the Empower Defendants' discovery failures.

Courts in this District and around the Eighth Circuit regularly impose sanctions for violating discovery orders. For example, in *Sanks*, the court ordered a defendant to produce requested discovery by a deadline certain. 2017 WL 2587739, at *1. The defendant did not do so, and the court noted that the defendant's actions had "resulted in material prejudice to Plaintiff, as [the defendant had] deprived Plaintiff of full and timely access to documents and other evidence and information crucial to a fair determination of this matter on the merits." *Id.* at *2. The court ordered that the defendant could not oppose some of the plaintiff's claims. *Id.* at *2-3. Other courts have imposed similar sanctions for violating discovery orders. *See, e.g.*, *Jiang v. Porter*, No. 4:15-CV-1008 (CEJ), 2016 WL 4430188, at *3 (E.D. Mo. Aug. 22, 2016) (imposing sanctions against defendants for violating discovery order and ruling that the fact that defendants

conspired with one another was established for purposes of lawsuit) *vacated due to voluntary dismissal* 2017 WL 6947741 (E.D. Mo. Oct. 31, 2017); *Monsanto Co. v. Hargrove*, No. 4:09-CV-1628 (CEJ), 2011 WL 93718, at *1-2 (E.D. Mo. Jan. 11, 2011) (entering default judgment against defendant for failure to comply with two discovery orders); *3M Innovative Props. Co. v. Tomar Elecs.*, No. 05-0756(MJD/AJB), 2006 WL 2670038, at *1-11 (D. Minn. Sept. 18, 2006) (ordering sanctions and allowing adverse inference against defendant based, in part, on failure to produce responsive documents).

## III.     Plaintiffs' request sanctions against the Empower Defendants.

Under Rule 37(b) and (d), the available sanctions include, among others: (i) ordering that certain facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting a party from supporting or opposing claims or defenses, or from introducing evidence; (iii) striking pleadings; and (iv) entering default judgment against a disobedient party. Fed. R. Civ. P. 37(b)(2)(A). In addition, disobedient parties must pay the reasonable expenses caused by the discovery violation. Fed. R. Civ. P. 37(b)(2)(C). Eligible costs include those due to the disobedient party's failure to fulfill discovery obligations, failure to comply with court orders, and the moving party's preparation and filing of the Rule 37(b) sanctions motion. *See Sanks*, 2017 WL 2587739, at *10.

As a sanction for the Empower Defendants' repeated violations of their obligations under the Federal Rules of Civil Procedure and the Court's Orders, Plaintiffs request an Order as to Defendants Empower and Hospital Partners: (1) that it be taken as established for purposes of this action that Empower knew of the falsity of its representations to Plaintiffs and intended for Plaintiffs to act on those misrepresentations by paying the claims; (2) prohibiting Empower or Hospital Partners from opposing Plaintiff's claims or introducing any evidence in defense of Plaintiffs' claims; and (3) awarding Plaintiffs their costs and reasonable attorneys' fees incurred

in connection with the February 2019 Order, the May 2019 Order, and this motion.

As a sanction for Jorge Perez's repeated violations of his documentary discovery obligations under the Federal Rules of Civil Procedure and the Court's Orders, Plaintiffs request an Order as to Defendant Jorge Perez: (1) that it be taken as established for purposes of this action that Jorge Perez knew of the falsity of his representations to Plaintiffs and intended for Plaintiffs to act on those misrepresentations by paying the claims; (2) prohibiting Jorge Perez from opposing Plaintiffs' claims or introducing any evidence in defense of Plaintiffs' claims; and (3) awarding Plaintiffs their costs and reasonable attorneys' fees incurred in connection with the February 2019 Order, the May 2019 Order, and this motion.

The Empower Defendants have been warned repeatedly by this Court of the potential consequences of their failure to honor their discovery obligations. The sanctions Plaintiffs seek are proportional to the Empower Defendants' conduct and are necessary to address the substantial and undue prejudice that this behavior would otherwise cause Plaintiffs. Plaintiffs allege that the Empower Defendants engaged in fraud, negligent misrepresentation, and civil conspiracy, among other things. Despite certifying in February 2019 that they had preserved and would continue to preserve all documents relating to Putnam, the Empower Defendants have withheld nearly every document from the time period when they are alleged to have developed and implemented the scheme. For these reasons, and particularly given the Court's repeated warnings to the Empower Defendants, sanctions are warranted.

## CONCLUSION

For nearly a year, the Empower Defendants have undermined the discovery process and disregarded the Court's Orders. The Court made it abundantly clear that this approach would have consequences. At present, the consequences are uniquely borne by the Plaintiffs, who are forced to litigate without the benefit of the Empower Defendants' testimony or documents from

the key time period. Under Rule 37, the Court is authorized to shift those consequences to the offending parties, and Plaintiffs respectfully request that the Court do so here.

Dated: February 7, 2020          By:          */s/ Michael L. Jente*

**LEWIS RICE LLC**
Neal F. Perryman, MO Bar #43057
Michael L. Jente, MO Bar #62980
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
T: (314) 444-7600
nperryman@lewisrice.com
mjente@lewisrice.com

-and-

**ROBINS KAPLAN LLP**
Jeffrey S. Gleason (admitted PHV)
Jason W. Pfeiffer, MO Bar # 50104
Nathaniel J. Moore (admitted PHV)
Amira A. ElShareif (admitted PHV)
Jaime J. Wing (admitted PHV)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
jgleason@robinskaplan.com
jpfeiffer@robinskaplan.com
nmoore@robinskaplan.com
aelshareif@robinskaplan.com
jwing@robinskaplan.com

***Attorneys for Plaintiffs***

20

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District

Court for the Western District of Missouri, through the Court's CM/ECF system, on the 7th day

of February 2020, with notice of case activity sent to counsel of record.

*/s/ Michael L. Jente*