IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| RightCHOICE Managed Care, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Hospital Partners, Inc.; Hospital Laboratory Partners, LLC; Empower H.I.S. LLC; LifeBrite Laboratories, LLC; RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services; Labmed Services, LLC; SeroDynamics, LLC; Lucenta Labs, LLC; David Byrns; Jorge Perez; Christian Fletcher; James F. Porter, Jr.; Beau Gertz; and Mark Blake,<br><br>Defendants. | CIVIL ACTION NO.<br>5:18-CV-06037-DGK<br><br><br>**DECLARATION OF NATHANIEL MOORE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER THAT THE SERO DEFENDANTS HAVE WAIVED ATTORNEY-CLIENT PRIVILEGE, OR, IN THE ALTERNATIVE, STRIKING ALL EVIDENCE OF RELIANCE ON ADVICE OF COUNSEL AND FOR IN CAMERA REVIEW** |

I, Nathaniel Moore, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney at Robins Kaplan LLP, counsel to Plaintiffs in the above-captioned proceeding.

2.      Attached hereto as Exhibit A is a true and correct copy of an excerpt of Labmed Services, LLC's Responses to Plaintiffs' First Requests for Production of Documents.

3.      Attached hereto as Exhibit B is a true and correct copy of an excerpt of SeroDynamics, LLC's Responses to Plaintiffs' First Requests for Production of Documents.

4.      Attached hereto as Exhibit C is a true and correct copy of an excerpt of Beau Gertz's Responses to Plaintiffs' First Requests for Production of Documents.

5.      Attached hereto as Exhibit D is a true and correct copy of an excerpt of Blake's Responses to Plaintiffs' First Requests for Production of Documents.

6.     Between July 2019 and January 2020, the Sero Defendants made additional productions of documents involving Mr. Blake and employees of Serodynamics.

7.     Attached hereto as Exhibit E is a true and correct copy of excerpts of the deposition transcript of Defendant Beau Gertz.

8.     Attached hereto as Exhibit F is a true and correct copy of excerpts of the deposition transcript of Defendant Mark Blake.

9.     Attached here to as Exhibit G is a true and correct copy of excerpts of the expert report of Doctor Karen Meador.

10.     Attached hereto as Exhibit H is a true and correct copy of excerpts of the deposition transcript of Doctor Karen Meador.

11.     Attached hereto as Exhibit I is a true and correct copy of the Sero Defendants' privilege log, which counsel for the Sero Defendants served on Plaintiffs' counsel via email on January 28, 2020.

12.     Attached hereto as Exhibit J is a true and correct copy of an email chain bearing Bates number SERO0083459-60, which was produced by the Sero Defendants on October 2, 2019.

13.     Attached hereto as Exhibit K is a true and correct copy of an email chain bearing Bates number SERO0083805, which was produced by the Sero Defendants on October 2, 2019.

14.     Attached hereto as Exhibit L is a true and correct copy of an email chain bearing Bates number SERO0003871, which was produced by the Sero Defendants on March 11, 2019.

15.     Attached hereto as Exhibit M is a true and correct copy of an email chain bearing Bates number SERO0002590, which was produced by the Sero Defendants in discovery on

2

March 11, 2019, and which was marked with no objection as an exhibit to the deposition of Bruce Kassover on June 5, 2019.

16.     Attached hereto as Exhibit N is a true and correct copy of excerpts of the deposition transcript of Defendant Serodynamics, LLC.

17.     Plaintiffs requested privilege logs from Defendants via email on June 28, 2019, July 16, 2019, January 2, 2020, and January 23, 2020. True and correct copies of these emails are attached as Exhibit O, P, and Q hereto. Counsel for the Sero Defendants did via email that it would respond to the January 2, 2020, request, but it did not.

18.     On January 29, 2020, Plaintiffs' counsel asked counsel for the Sero Defendants for a meet and confer.

19.     On January 31, 2020, counsel for Plaintiffs and the Sero Defendants conferred via telephone regarding the Sero Defendants' reliance on advice of counsel and privilege log. Counsel for Sero Defendants also communicated to Plaintiffs counsel that the privilege log was produced to Plaintiffs in late January because their clients produced more documents than Plaintiffs.

20.     On February 4, 2020, counsel for Plaintiffs communicated to counsel for Sero Defendants that 19 documents listed on the privilege log include third parties and do not appear to be privileged. Counsel for Sero Defendants did not respond.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Minneapolis, Minnesota this 21st day of February 2020.

By:     */s/ Nathaniel J. Moore*
Nathaniel J. Moore

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically with the United States District Court for the Western District of Missouri, through the Court's CM/ECF system, on the 21st day of February 2020, with notice of case activity sent to counsel of record.

    /s/ Michael L. Jente

1

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

RightCHOICE Managed Care, Inc. et al.,    )
    )
        Plaintiffs,    )    Case No. 18-cv-06037-DGK
    )
    v.    )
    )
Hospital Partners, Inc.; *et al.*,    )
    )
        Defendants.    )

## DEFENDANT LABMED SERVICES, LLC'S RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant LabMed Services, LLC ("LabMed") submits the following Responses to Plaintiffs' First Set of Requests for Production of Documents:

## DOCUMENT PRODUCTION

Pursuant to Fed. R. Civ. P. 34(b)(2)(B), Defendant states that it will complete its document production on or before November 30, 2018.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents sent to or received from PCMH regarding the laboratory-billing arrangement at PCMH.

> **RESPONSE: This Defendant objects to this Request as argumentative because it requires this Defendant to adopt an assumption of fact or law that he expressly denies. This Defendant denies knowledge of or participation in the "laboratory-billing arrangement," which these Requests define to mean "the scheme alleged in Plaintiffs' Third Amended Complaint." Without waiving this objection, this Defendant will produce all contracts, agreements, and correspondence between SeroDynamics, LabMed, Beau Gertz, Mark Blake, and PCMH.**

**REQUEST NO. 2:**

DocID: 4836-6020-8762.3

"through" PCMH. This Defendant further objects to this Request because it seeks information that is within the possession of the requesting party or is available to the requesting party with equal or lesser burden. Without waiving this objection, this Defendant will produce responsive communications with PCMH-credentialed providers.

**REQUEST NO. 34:**

All documents related to any criticism of, or questioning of the legality of, the

laboratory-billing scheme at PCMH.

**RESPONSE: This Defendant objects to this Request because it is overbroad and seeks documents equally available to the requesting party, such as media reports and documents generated in other lawsuits. This Defendant also objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine.**

**REQUEST NO. 35:**

All documents relating to any questions or concerns from any provider, member, or payor

regarding why claims for laboratory tests were billed through PCMH, or why the questioning the

propriety of amounts billed or owed.

**RESPONSE: This Defendant objects to this Request as unintelligible with respect to the phrase "or why the questioning the propriety of amounts billed." This Defendant also objects to the Request as argumentative because it requires this Defendant to adopt the assumption that the laboratory tests were billed "through" PCMH. Without waiving this objection, this Defendant is not aware of any documents responsive to this Request.**

**REQUEST NO. 36:**

All documents regarding legal advice that you received relating to the laboratory-billing

scheme, if you intend to rely on advice of counsel as a defense in this litigation.

**RESPONSE: Not applicable.**

**REQUEST NO. 37:**

All documents related to any defendants' efforts to conceal or explain the

laboratory-billing scheme.

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| RightCHOICE Managed Care, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc.; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SERODYNAMICS, LLC'S RESPONSES TO PLAINTIFFS' FIRST
REQUESTS FOR PRODUCTION**

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant SeroDynamics, LLC

("SeroDynamics") submits the following Responses to Plaintiffs' First Set of Requests for

Production of Documents:

**DOCUMENT PRODUCTION**

Pursuant to Fed. R. Civ. P. 34(b)(2)(B), Defendant states that it will complete its

document production on or before November 30, 2018.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**

All documents sent to or received from PCMH regarding the laboratory-billing

arrangement at PCMH.

> **RESPONSE: This Defendant objects to this Request as argumentative because it
> requires this Defendant to adopt an assumption of fact or law that he expressly
> denies. This Defendant denies knowledge of or participation in the "laboratory-
> billing arrangement," which these Requests define to mean "the scheme alleged in
> Plaintiffs' Third Amended Complaint." Without waiving this objection, this
> Defendant will produce all contracts, agreements, and correspondence between
> SeroDynamics, LabMed, Beau Gertz, Mark Blake, and PCMH.**

**REQUEST NO. 2:**

"through" PCMH. This Defendant further objects to this Request because it seeks information that is within the possession of the requesting party or is available to the requesting party with equal or lesser burden. Without waiving this objection, this Defendant will produce responsive communications with PCMH-credentialed providers.

**REQUEST NO. 34:**

All documents related to any criticism of, or questioning of the legality of, the laboratory-billing scheme at PCMH.

RESPONSE: This Defendant objects to this Request because it is overbroad and seeks documents equally available to the requesting party, such as media reports and documents generated in other lawsuits. This Defendant also objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine.

**REQUEST NO. 35:**

All documents relating to any questions or concerns from any provider, member, or payor regarding why claims for laboratory tests were billed through PCMH, or why the questioning the propriety of amounts billed or owed.

RESPONSE: This Defendant objects to this Request as unintelligible with respect to the phrase "or why the questioning the propriety of amounts billed." This Defendant also objects to the Request as argumentative because it requires this Defendant to adopt the assumption that the laboratory tests were billed "through" PCMH. Without waiving this objection, this Defendant is not aware of any documents responsive to this Request.

**REQUEST NO. 36:**

All documents regarding legal advice that you received relating to the laboratory-billing scheme, if you intend to rely on advice of counsel as a defense in this litigation.

RESPONSE: Not applicable.

**REQUEST NO. 37:**

All documents related to any defendants' efforts to conceal or explain the laboratory-billing scheme.

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| RightCHOICE Managed Care, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc.; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT BEAU GERTZ'S RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant Beau Gertz submits the following Responses to Plaintiffs' First Set of Requests for Production of Documents:

## DOCUMENT PRODUCTION

Pursuant to Fed. R. Civ. P. 34(b)(2)(B), Defendant states that it will complete its document production on or before November 30, 2018.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents sent to or received from PCMH regarding the laboratory-billing arrangement at PCMH.

> **RESPONSE: This Defendant objects to this Request as argumentative because it requires this Defendant to adopt an assumption of fact or law that he expressly denies. This Defendant denies knowledge of or participation in the "laboratory-billing arrangement," which these Requests define to mean "the scheme alleged in Plaintiffs' Third Amended Complaint." Without waiving this objection, this Defendant will produce all contracts, agreements, and correspondence between SeroDynamics, LabMed, Beau Gertz, Mark Blake, and PCMH.**

**REQUEST NO. 2:**

"through" PCMH.  This Defendant further objects to this Request because it seeks information that is within the possession of the requesting party or is available to the requesting party with equal or lesser burden.  Without waiving this objection, this Defendant will produce responsive communications with PCMH-credentialed providers.

**REQUEST NO. 34:**

All documents related to any criticism of, or questioning of the legality of, the

laboratory-billing scheme at PCMH.

> **RESPONSE:  This Defendant objects to this Request because it is overbroad and seeks documents equally available to the requesting party, such as media reports and documents generated in other lawsuits.  This Defendant also objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine.**

**REQUEST NO. 35:**

All documents relating to any questions or concerns from any provider, member, or payor

regarding why claims for laboratory tests were billed through PCMH, or why the questioning the

propriety of amounts billed or owed.

> **RESPONSE:  This Defendant objects to this Request as unintelligible with respect to the phrase "or why the questioning the propriety of amounts billed."  This Defendant also objects to the Request as argumentative because it requires this Defendant to adopt the assumption that the laboratory tests were billed "through" PCMH.  Without waiving this objection, this Defendant is not aware of any documents responsive to this Request.**

**REQUEST NO. 36:**

All documents regarding legal advice that you received relating to the laboratory-billing

scheme, if you intend to rely on advice of counsel as a defense in this litigation.

> **RESPONSE:  Not applicable.**

**REQUEST NO. 37:**

All documents related to any defendants' efforts to conceal or explain the

laboratory-billing scheme.

DocID: 4847-3630-9882.3

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| RightCHOICE Managed Care, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc.; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MARK BLAKE'S RESPONSES TO PLAINTIFFS' FIRST
REQUESTS FOR PRODUCTION**

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant Mark Blake submits the following

Responses to Plaintiffs' First Set of Requests for Production of Documents:

**DOCUMENT PRODUCTION**

Pursuant to Fed. R. Civ. P. 34(b)(2)(B), Defendant states that it will complete its

document production on or before November 30, 2018.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**

All documents sent to or received from PCMH regarding the laboratory-billing

arrangement at PCMH.

> **RESPONSE: This Defendant objects to this Request as argumentative because it
> requires this Defendant to adopt an assumption of fact or law that he expressly
> denies. This Defendant denies knowledge of or participation in the "laboratory-
> billing arrangement," which these Requests define to mean "the scheme alleged in
> Plaintiffs' Third Amended Complaint." Without waiving this objection, this
> Defendant will produce all contracts, agreements, and correspondence between
> SeroDynamics, LabMed, Beau Gertz, Mark Blake, and PCMH.**

**REQUEST NO. 2:**

"through" PCMH. This Defendant further objects to this Request because it seeks information that is within the possession of the requesting party or is available to the requesting party with equal or lesser burden. Without waiving this objection, this Defendant will produce responsive communications with PCMH-credentialed providers.

**REQUEST NO. 34:**

All documents related to any criticism of, or questioning of the legality of, the laboratory-billing scheme at PCMH.

**RESPONSE: This Defendant objects to this Request because it is overbroad and seeks documents equally available to the requesting party, such as media reports and documents generated in other lawsuits. This Defendant also objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine.**

**REQUEST NO. 35:**

All documents relating to any questions or concerns from any provider, member, or payor regarding why claims for laboratory tests were billed through PCMH, or why the questioning the propriety of amounts billed or owed.

**RESPONSE: This Defendant objects to this Request as unintelligible with respect to the phrase "or why the questioning the propriety of amounts billed." This Defendant also objects to the Request as argumentative because it requires this Defendant to adopt the assumption that the laboratory tests were billed "through" PCMH. Without waiving this objection, this Defendant is not aware of any documents responsive to this Request.**

**REQUEST NO. 36:**

All documents regarding legal advice that you received relating to the laboratory-billing scheme, if you intend to rely on advice of counsel as a defense in this litigation.

**RESPONSE: Not applicable.**

**REQUEST NO. 37:**

All documents related to any defendants' efforts to conceal or explain the laboratory-billing scheme.

# Exhibit E

1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF MISSOURI
2                       ST. JOSEPH DIVISION

3

    _____
4                                      )
    RIGHTCHOICE MANAGED CARE,          )
5   INC., et al.,                      )
                                       )
6   Plaintiffs,                        )
                                       )
7   vs.                                )   Civil Action No.
                                       )   5:18-CV-06037-DGK
8   HOSPITAL PARTNERS, INC.;           )
    HOSPITAL LABORATORY                )
9   PARTNERS, LLC; EMPOWER             )
    H.I.S. LLC; RAJ                    )
10  ENTERPRISES OF CENTRAL             )
    FLORIDA, LLC d/b/a                 )
11  PINNACLE LABORATORY                )
    SERVICES; LABMED SERVICES,         )
12  LLC; SERODYNAMICS, LLC;            )
    DAVID BYRNS; JORGE PEREZ;          )
13  JAMES F. PORTER, JR.; BEAU         )
    GERTZ; and MARK BLAKE,             )
14                                     )
    Defendants.                        )
15  _____)
16
17
18                  VIDEOTAPED DEPOSITION OF:
19                          BEAU GERTZ
20                      Denver, Colorado
21                       May 15, 2019
22
23  Reported by:
24  MELANIE L. GIAMARCO, RMR, CRR, RPR, CSR
25  JOB NO.:  159702

1    Q.  I tried to with Surprise Valley, that

2  you had some investors involved with it -- with you

3  at Surprise Valley.

4    A.  If you're asking if I've ever had

5  venture capital or anybody infusing our company

6  with cash that is from the outside, the answer is

7  no.  As owners, we all put money into the company,

8  and almost all went bankrupt.

9    Q.  So I think the question, then -- let me

10  rephrase the question and make sure I've got a

11  clear answer.

12    As it relates to Putnam, your companies did

13  not utilize any venture capital; is that fair?

14    A.  That is fair.

15    Q.  Who developed the rural-hospital

16  approach?

17    A.  I don't think that there was just one

18  person, sir.

19    Q.  Who was involved in developing the

20  rural-hospital approach?

21    A.  Multiple attorneys, myself, business

22  partners and other people from within the industry.

23    Q.  Was Mark Blake involved in developing

24  the rural-hospital approach?

25    A.  He was one.

1    Q.  Who are the names of the other

2   individuals who were involved in developing of the

3   rural-hospital approach?

4    A.  There's a lot, sir.  If you want to be

5   more specific and ask certain people, I'll be more

6   than happy to share.

7    Q.  Well, I'm asking about any individuals

8   that you remember as part of helping to develop the

9   rural-hospital approach.

10    A.  Mark Thomas, George Perez, Jim Porter,

11   everybody who worked at Campbellton-Graceville,

12   select individuals from subsidiaries of United

13   Healthcare, and multiple legal attorneys.

14    Q.  Which hospitals have used the

15   rural-hospital approach, to your knowledge?

16    A.  To my knowledge, Putnam and Surprise

17   Valley.

18    Q.  Was the rural-hospital approach used at

19   Campbellton-Graceville Hospital?

20    A.  I can't recall.

21    Q.  And if we talk about

22   Campbellton-Graceville today, is it okay to call it

23   "CGH"?

24    A.  Yeah, that's fine.

25    Q.  What is the rural-hospital approach?

1    MR. PFEIFFER:  Are you going --

2    MR. MINANA:  You're asking about discovery

3  issues and objections.  That's legal objections by

4  us in discovery.  I don't understand that.

5    Q.  Are you going to share with us the

6  advice that you received from legal counsel,

7  whether it be Denton's or anyone else?

8    A.  No.

9    Q.  When did Sero begin billing lab to lab?

10    A.  I don't recall.

11    Q.  Before you began your involvement at

12  Campbellton-Graceville, had Sero ever billed lab to

13  lab at any other hospital?

14    A.  Yes.

15    Q.  Which ones?

16    A.  At a hospital?

17    Q.  Yes.

18    A.  No, actually, the answer to your

19  question is no.

20    Q.  So before Sero took its business to

21  Campbellton-Graceville, Sero had never billed lab

22  to lab at any hospital; is that true?

23    A.  That is true, sir.

24    Q.  And after Surprise Valley, did Sero bill

25  lab to lab at any hospital?

1    And when we couldn't understand the billing, I know

2    he started jumping in to try and help.

3          Q.  What was Mark Blake's role with respect

4    to Putnam?

5          A.  Overall businessman and legal, general

6    counsel.

7          Q.  What was Ken Ivey's role with respect to

8    Putnam?

9          A.  He was a vendor that helped with the IT

10   services.

11         Q.  What did he do specifically with respect

12   to Putnam?

13         A.  You'd have to ask Charlie.

14         Q.  You had interaction with Ken Ivey,

15   correct?

16         A.  Mm-hmm.

17         Q.  Yes?

18         A.  Yes, sir.

19         Q.  What was your involvement with Ken Ivey

20   and Putnam?

21         A.  Giving him the connections to speak to

22   the individuals that we needed to speak to on the

23   HL7, ongoing conversations in regards to daily IT,

24   helping us create our proprietary genetic report to

25   help with the substance-of-abuse issue and

1  asking the question, what does the term "assume

2  billing functions" mean?

3        MR. PFEIFFER:  Yes.

4        MR. MINANA:  Ah, okay.  You're right.

5  That's a new question.  I don't think that's what

6  you asked, but that is a new question.

7        A.  Go ahead and ask that question again for

8  me, sir.

9        Q.  What does it mean to assume billing

10  functions for these specimens?

11        A.  Well, we had quite a few conversations

12  with the hospital CEO, quite a few conversations

13  with Campbellton-Graceville, Southwest and multiple

14  attorneys on the best way to facilitate ongoing

15  billing with Putnam.

16        Q.  Did you have conversations with each of

17  those folks about how to transition CGH claims to

18  Putnam?

19        MR. MINANA:  Object to form and foundation.

20        A.  I don't recall the exact specifics.

21        MR. EDWARDS:  Same objection.

22        Q.  Were you involved in helping to

23  transition CGH claims to Putnam?

24        MR. MINANA:  Same objection.

25        A.  Yes.

1    Q.  Was it appropriate to have specimens

2  billed through Putnam without common ownership?

3         MR. MINANA:  Object to form and foundation.

4         MR. JOHNSTON:  Objection; calls for a legal

5  conclusion.

6         MR. EDWARDS:  Calls for a legal conclusion.

7         A.  I'm not an attorney, but there was legal

8  opinion letters and a lot of attorneys involved

9  that said it was proper.

10         Q.  And were there attorneys that told you

11  it was not proper?

12         A.  I still have not heard that to today.

13         Q.  You told a public audience that you ran

14  away as fast as possible when you discovered how

15  Perez was using hospitals to run off-site labs,

16  true?

17         MR. MINANA:  Object to form and foundation.

18         A.  Ask the one question one more time,

19  please.

20         Q.  You told a public audience that you ran

21  away as fast as possible when you discovered how

22  George Perez was using hospitals to run off-site

23  labs, true?

24         A.  That'd be untrue.  If I said it, it was

25  untrue.

1    consulted Mr. Minana?

2          A.  I did.

3          Q.  And do you want to take a position as to

4    the legal counsel that you've been provided?

5          A.  Well, he really couldn't provide a whole

6    lot of legal counsel.  It's up to me.  I'm going to

7    waive for this time being.

8          MR. BLAKE:  You're not waiving.

9          A.  Not waive.  Not waive.  Sorry.

10         Q.  So you are not waiving, and, therefore,

11   you will not answer any questions about advice of

12   counsel that you received; is that true?

13         A.  Yeah, at this time.

14         Q.  So I could spend the next hour asking

15   you about those, and no matter what I asked about

16   your legal counsel that you received, your response

17   to me would be that you're not going to answer

18   those questions based on the advice of counsel; is

19   that true?

20         A.  Why do you want to continue to harass

21   something I just gave you the answer on?

22         Q.  I just need to make it for the record.

23         A.  You already have that for the record.

24         Q.  All right.  What is a code map?

25         A.  A code map is a third party that tries

# Exhibit F

1          UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF MISSOURI

3              ST. JOSEPH DIVISION

4   RIGHTCHOICE MANAGED CARE,        )
    INC., ET AL.,                    )
5                                    )
              Plaintiffs,            )
6                                    )
       vs.                           ) Case No.
7                                    ) 5:18-CV-06037-DGK
    HOSPITAL PARTNERS, INC.;         )
8   HOSPITAL LABORATORY PARTNERS,    )
    LLC; EMPOWER H.I.S. LLC; RAJ     )
9   ENTERPRISES OF CENTRAL           )
    FLORIDA, LLC D/B/A PINNACLE      )
10  LABORATORY SERVICES; LABMED      )
    SERVICES, LLC; SERODYNAMICS,     )
11  LLC; DAVID BYRNS; JORGE PEREZ;   )
    JAMES F. PORTER, JR.; BEAU       )
12  GERTZ; AND MARK BLAKE,           )
                                     )
13            Defendants.            )
    _____)

14

15

16          VIDEOTAPED DEPOSITION OF

17              MARK T. BLAKE

18              Tampa, Florida

19          Thursday, June 13, 2019

20

21

22

23  STENOGRAPHICALLY REPORTED BY:

24  RHONDA HALL-BREUWET, RDR, CRR, LCR, CCR, FPR

25  JOB NO. 159707

1    did you -- well, withdrawn.

2           You mentioned that Mr. Thomas was

3    based in Florida; is that right?

4           A.    Yes, sir.

5           Q.    Did he educate you on Florida law?

6           A.    No, sir.

7           Q.    Have you seen a written opinion that

8    he drafted in February of 2016 or thereabouts

9    with respect to lab arrangements?

10          A.    I've seen it, but I wasn't provided

11   a copy.

12          Q.    How did you see it?

13          A.    I'm trying to think if I saw it from

14   Mr. Perez.  I'm not sure.

15          Q.    In the context of the negotiations

16   to enter into the Putnam agreement?

17          A.    I don't know if it's before or

18   after, sir.

19          Q.    So Putnam is located in Missouri,

20   correct?

21          A.    Yes, sir.

22          Q.    And Sero is located in Colorado,

23   correct?

24          A.    Yes, sir.

25          Q.    Did you consult any lawyers who had

1  familiarity with state law claims or --

2  sorry -- state law obligations in the

3  laboratory space other than Mr. Thomas?

4       A.    Yes, sir.

5       Q.    Who else did you consult with?

6       A.    Attorneys.

7       Q.    What were their names?

8       A.    I'm not telling you.  It's

9  attorney-client privilege.

10       Q.    The name of an attorney?

11       A.    Yes, sir.

12       Q.    You won't tell me the name of an

13  attorney that you consulted with?

14       A.    No, sir.

15       Q.    Did those consultations happen prior

16  to November 1st of 2016?

17       A.    Yes, sir.

18       Q.    You are aware that there are state

19  laws that govern healthcare providers; is that

20  right?

21       A.    Yes, sir.

22       Q.    And Florida has some laws, right?

23       A.    Every state has some laws, sir.

24       Q.    Did -- what efforts did you make to

25  satisfy yourself that all of the state laws

1  that could apply to the lab arrangement into

2  which Sero entered with Putnam were -- that the

3  arrangement complied with all of those state

4  laws?

5      A.    I had a law firm prepare a 50-state

6  survey of self-referral antikickback and

7  physician something.  I can't remember right

8  now.  It was over 400 pages and covered all 50

9  states.  So anytime any action was taken, I

10  would refer to that manual.

11     Q.    And when was that prepared?

12     A.    I think it was even before the labs

13  opened.

14     Q.    So you're familiar that some states

15  have what are called "patient brokering

16  statutes"?

17     A.    Yes, sir.

18     Q.    That prohibit the payment of

19  commission for referrals; is that right?

20     A.    Yes.

21     Q.    And you're familiar that there are

22  fee-splitting statutes that apply; is that

23  right?

24     A.    Yes.

25     Q.    Where compensation -- in essence,

# Exhibit G

# (FILED UNDER SEAL)

# Exhibit H

# (FILED UNDER SEAL)

# Exhibit I

# (FILED UNDER SEAL)

# Exhibit J

| **From**: | [Laine@labsdx.com] |
|---|---|
| on behalf of | Laine Hetzler |
| **Sent**: | 9/29/2016 4:34:17 PM |
| **To**: | Marathon Medical [marathonmedical@cox.net]; brentmontgomery@yahoo.com |
| **Subject**: | FW: Specimens from Marathon Medical |

Al and Brent,

Please see below for the email sent to the billing team. I will be able to follow up with them tomorrow and see where we are on this.

Thank you,

Laine Erin Hetzler
*Vice President of Sales*
Cadira Medical
M | 817-253-5338

---

**From:** Beau Gertz
**Sent:** Tuesday, September 20, 2016 8:43 AM
**To:** Laine Hetzler
**Cc:** Mark Blake; Beau Gertz; Charlie Seraydar; Jai Jahier; Maggie Martinez
**Subject:** Re: Specimens from Marathon Medical

> On Sep 19, 2016, at 5:55 PM, Laine Hetzler <Laine@labsdx.com> wrote:
>
> Team,
>
> Al Serpa and Brent Montgomery have expressed their desire to no longer have specimens billed through CGH, and to be billed OON as we had been doing previously. Can you verify which/any of these specimens in the attached spreadsheet can be billed through our billing team?
>
> Additionally, I will be sending an additional spreadsheet that had a handful of commercial specimens that were billed through our billing team, and reimbursed, instead of being sent to CGH for invoice. Can you confirm what happened with these particular specimens?
>
> Al and Brent would like to have commissions paid out through their standard contract they have had with us. Please advise that we would be able to do, and if not, what options they may have.
>
> Let me know if you have any questions.
>
> Thanks!
>
> Laine Erin Hetzler
> *Vice President of Sales*
> Cadira Medical
> M | 817-253-5338

---

**From:** Brent Montgomery <brentmontgomery@yahoo.com>
**Sent:** Wednesday, September 14, 2016 7:38 PM
**To:** Laine Hetzler; Marathon Medical
**Subject:** list of all submitted

SERO0083459

Lets talk friday afternoon.  Thanks for your help.

<Aug 6 through current Marathon Medical.xlsx>

SERO0083460

# Exhibit K

**From**: [Laine@cadiramd.com]
on behalf of     Laine Hetzler
**Sent**: 12/16/2016 2:11:12 PM
**To**: Beau Gertz [beau@cadiramd.com]
**Subject**: RE: Dave Edwards and Old CGH Distributors

Thank you for sending this. Will be very nice to have in my back pocket.

Laine Erin Hetzler
*Vice President of Sales*
CadiraMD
M | 817-253-5338

**From:** Beau Gertz
**Sent:** Friday, December 16, 2016 1:07 PM
**To:** Laine Hetzler
**Subject:** FW: Dave Edwards and Old CGH Distributors

Laine,

This is the communication to provide for distributors still upset about CGH.  Even SW took the same approach as that situation was completely out of everyone's control.

BG

**From:** Beau Gertz <beau@cadiramd.com>
**Date:** Friday, December 16, 2016 at 10:55 AM
**To:** Mark Blake <mark@cadiramd.com>
**Subject:** Dave Edwards and Old CGH Distributors

Mark,

I believe we're on the same page but I would like to highlight that all the CGH distributors never had a contract with Cadira, Sero, CadiraMD nor LI.  All the contracts were with CGH Holdings and Aaron Alonso.  All communication about phlebs with CGH need to go to Julie and all questions about payment need to go to CGH Holdings.

Whatever we can salvage in a compliant manner from our CGH claims is purely for our company to make up for the short comings we experienced.

BG



SERO0083805

# Exhibit L

# (FILED UNDER SEAL)

# Exhibit M

# (FILED UNDER SEAL)

# Exhibit N

# (FILED UNDER SEAL)

# Exhibit O

| From: | Moore, Nathaniel J. |
|---|---|
| To: | Minana, Greg; Montgomery, JR; Justin Johnston; Ronald D. Marney; mrudd@sandbergphoenix.com; sholy@sandbergphoenix.com; jenny.briner@brinerlaw.com; mohamad@josephaleem.com; yussuf@josephaleem.com; John Edwards; Seth Schwartz |
| Cc: | Pfeiffer, Jason W.; Gleason, Jeffrey S.; ElShareif, Ami A.; Wing, Jaime J.; Hansen, J. Haynes; Jente, Michael L. |
| Subject: | RE: Putnam - Privilege Logs |
| Date: | Tuesday, July 16, 2019 12:49:05 PM |
| Attachments: | image001.png |

Counsel:

Plaintiffs still have not received privilege logs from many defendants, even though some defendants have expressly invoked privilege, including at depositions, and we suspect others have withheld documents on that basis. Rule 26(b)(5) requires affirmative steps by parties claiming privilege over otherwise discoverable information. Given the current schedule in this matter, please let us know if there is any reason you will not be producing a privilege log before the deadline for discovery motions.

Thank you,
Nate

**From:** Moore, Nathaniel J.
**Sent:** Friday, June 28, 2019 2:55 PM
**To:** 'Minana, Greg' <Greg.Minana@huschblackwell.com>; 'Montgomery, JR'
<JR.Montgomery@huschblackwell.com>; 'Justin Johnston' <jjj@johnstonlawkc.com>; 'Ronald D.
Marney' <rmarney@sandbergphoenix.com>; 'mrudd@sandbergphoenix.com'
<mrudd@sandbergphoenix.com>; 'sholy@sandbergphoenix.com' <sholy@sandbergphoenix.com>;
'jenny.briner@brinerlaw.com' <jenny.briner@brinerlaw.com>; 'mohamad@josephaleem.com'
<mohamad@josephaleem.com>; 'yussuf@josephaleem.com' <yussuf@josephaleem.com>; 'John
Edwards' <john@josephaleem.com>; 'Seth Schwartz' <seth@flattorney.net>
**Cc:** Pfeiffer, Jason W. <JPfeiffer@RobinsKaplan.com>; Gleason, Jeffrey S.
<JGleason@RobinsKaplan.com>; ElShareif, Ami A. <AElShareif@RobinsKaplan.com>; Wing, Jaime J.
<JWing@RobinsKaplan.com>; Hansen, J. Haynes <HHansen@RobinsKaplan.com>
**Subject:** Putnam - Privilege Logs

All,

We have not received privilege logs from many of the defendants. For those of you who have made productions to date, please let us know when we can expect them.

Thank you,
Nate

Nathaniel J. Moore
**ROBINS KAPLAN** L.L.P.
Robins Kaplan LLP | 800 LaSalle Avenue | Suite 2800 | Minneapolis, MN 55402
p 612 349 0646 | f 612 339 4181 | NMoore@RobinsKaplan.com | RobinsKaplan.com

# Exhibit P

| From: | Chickos, Aaron |
| To: | Moore, Nathaniel J.; rmarney@sandbergphoenix.com; Michael J. Rudd; Minana, Greg; Montgomery, JR; Seth Schwartz; Jesse Berryman; Meghan M. Sholy; pdupont@sandbergphoenix.com; jjj@johnstonlawkc.com |
| Cc: | Gleason, Jeffrey S.; Pfeiffer, Jason W.; ElShareif, Ami A.; Wing, Jaime J.; Hansen, J. Haynes; Bauer, Julie M.; Jente, Michael L. |
| Subject: | [EXTERNAL] RE: Putnam - Expert Deposition Schedule & Privilege Logs |
| Date: | Friday, January 3, 2020 10:22:40 AM |
| Attachments: | image001.png |
| | Sero Defendants" Notice of Taking Videotaped Depoistion of Plaintiffs' E....pdf |
| | Sero Defendants" Notice of Taking Videotaped Depoistion of Plaintiffs' E....pdf |

Counsel:

Please see the attached deposition notices for Dr. Kongstvedt and Ms. Prillaman.  We have decided not to notice Ms. Fortune's deposition.

Dr. Meador can be available for deposition January 6-8 in St. Louis.  While expert discovery is set to close January 15, if necessary, Dr. Meador can also be available January 20-21 in St. Louis.  Please let us know which date works for you.

We will respond separately to the other item raised in your email.

Thank you,
Aaron

**Aaron Chickos**
**Attorney**
Direct:  314.345.6343
Aaron.Chickos@huschblackwell.com

---

**From:** Moore, Nathaniel J. [mailto:NMoore@RobinsKaplan.com]
**Sent:** Thursday, January 02, 2020 11:20 AM
**To:** rmarney@sandbergphoenix.com; Michael J. Rudd <mrudd@sandbergphoenix.com>; Minana, Greg <Greg.Minana@huschblackwell.com>; Montgomery, JR <JR.Montgomery@huschblackwell.com>; Chickos, Aaron <Aaron.Chickos@huschblackwell.com>; Seth Schwartz <seth@flattorney.net>; Jesse Berryman <jesse@flattorney.net>; Meghan M. Sholy <msholy@sandbergphoenix.com>; pdupont@sandbergphoenix.com; jjj@johnstonlawkc.com
**Cc:** Gleason, Jeffrey S. <JGleason@RobinsKaplan.com>; Pfeiffer, Jason W. <JPfeiffer@RobinsKaplan.com>; ElShareif, Ami A. <AElShareif@RobinsKaplan.com>; Wing, Jaime J. <JWing@RobinsKaplan.com>; Hansen, J. Haynes <HHansen@RobinsKaplan.com>; Bauer, Julie M. <JBauer@RobinsKaplan.com>; Jente, Michael L. <MJente@lewisrice.com>
**Subject:** Putnam - Expert Deposition Schedule & Privilege Logs

[EXTERNAL EMAIL]

All:

Please provide dates and locations for the depositions of the Defendants' respective experts.  Given the current deadline for expert discovery and the number of depositions that will take place, please

include your experts' availability through the end of January. If it becomes necessary, we are amenable to a joint motion extending the deadline for expert discovery by a week or two.

Greg, here are the locations for the depositions of Plaintiffs' experts, which can each begin at 9am local time:

- Jan. 7 (Dr. Kongstvedt): Hogan Lovells, Columbia Square, 555 Thirteenth St, NW, Washington, DC 20004
- Jan. 13 (Ms. Fortune): Nelson Mullins, Atlantic Station, 201 17th Street NW, Suite 1700, Atlanta, GA 30363
- Jan. 15 (Ms. Prillaman): Nelson Mullins, One Wells Fargo Center, 301 South College Street, 23rd Fl., Charlotte, NC 28202

Separately, we still have not received privilege logs from most of the Defendants. Please provide them immediately.

Thank you,
Nate

Nathaniel J. Moore
**ROBINS⧪KAPLAN**LLP
Robins Kaplan LLP | 800 LaSalle Avenue | Suite 2800 | Minneapolis, MN 55402
p 612 349 0646 | f 612 339 4181 | NMoore@RobinsKaplan.com | RobinsKaplan.com

---

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins Kaplan LLP
http://www.robinskaplan.com

---

# Exhibit Q

| From: | Moore, Nathaniel J. |
|---|---|
| To: | Minana, Greg; Montgomery, JR; Chickos, Aaron |
| Cc: | Pfeiffer, Jason W.; Gleason, Jeffrey S.; Wing, Jaime J.; Hansen, J. Haynes |
| Subject: | Putnam - Privilege |
| Date: | Thursday, January 23, 2020 11:43:01 AM |
| Attachments: | image003.png |

Greg, JR, and Aaron:

We need to know from you definitively whether your clients—Serodynamics, Labmed, Mark Blake, and Beau Gertz—are waiving any applicable privileges relating to legal advice they may have received regarding their arrangements with Putnam or other hospitals. Mr. Gertz refused in his deposition to waive applicable privileges to discuss the topic, and the Sero Defendants' written discovery (*e.g.*, response to Plaintiff's RFP #36) included representations that advice of counsel would not be a defense in this case. Now, the Sero Defendants' expert witness has opined on the content of the legal advice your clients purportedly received, and used it to form her opinions in this case. At the same time, despite our repeated requests for privilege logs from you, we have yet to receive one from you.

We need to know from you this week whether your clients are waiving all applicable privileges relating to legal advice they received regarding their arrangements with Putnam and similar arrangements. If they are waiving, we require your confirmation that every document relating to or reflecting that legal advice has been produced to the Plaintiffs. If not, we need a privilege log from you identifying all documents withheld.

We request a response this week so that we can resolve this issue promptly.

Thank you,
Nate

Nathaniel J. Moore
**ROBINS KAPLAN** LLP

Robins Kaplan LLP | 800 LaSalle Avenue | Suite 2800 | Minneapolis, MN 55402
p 612 349 0646 | f 612 339 4181 | NMoore@RobinsKaplan.com | RobinsKaplan.com