# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| RightCHOICE Managed Care, Inc., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## SERO DEFENDANTS' SUGGESTIONS IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendants SeroDynamics, LLC; LabMed Services, LLC; Beau Gertz; and Mark Blake (collectively, the "**Sero Defendants**") respectfully submit the following Suggestions in Support of their Motion for Summary Judgment.

The Sero Defendants move for summary judgment on each of Plaintiffs' nine counts contained in the Fourth Amended Complaint, including (I) fraud and fraudulent concealment; (II) negligent misrepresentation; (III) restitution under ERISA § 502(a)(3); (IV) declaratory and injunctive relief under ERISA § 502(a)(3) and 28 U.S.C. §§ 2201 and 2202; (V) tortious interference with contract; (VI) civil conspiracy; (VII) aiding and abetting a tort; (VIII) unjust enrichment; and (IX) money had and received.[1]

---

[1] Concurrent with this Motion, the Sero Defendants file a Motion for Leave to exceed the Court's page limitation. While the basis of the Sero Defendants' Motion for Summary Judgment is simple – no evidence exists supporting any of Plaintiffs' causes of action against the Sero Defendants, additional pages are necessary to respond fully to Plaintiffs' 9-count, 77-page, 316-paragraph Fourth Amended Complaint ("FAC") in which Plaintiffs – despite the clear and critical differences among the Defendants – intentionally conflate all nine counts collectively against all 11 defendants (previously 14 defendants before dismissal of three), and in which Plaintiffs assert repetitive and redundant claims.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iv

I. SUMMARY OF FACTS............................................................................................. 1

    A. Overview of the Facts and Plaintiffs' Allegations................................................... 1

    B. The Parties and Other Non-Party Entities............................................................. 4

        1. The Sero Defendants................................................................................... 4

        2. Other Cadira Companies............................................................................. 6

        3. Putnam Entities ......................................................................................... 7

        4. Urine Laboratory Entities .......................................................................... 8

    C. Hospital Outreach Programs and the Rural Hospital Approach ............................ 8

    D. Campbellton-Graceville Hospital ......................................................................... 9

    E. The Arrangement with Putnam........................................................................... 10

    F. Compliance Measures......................................................................................... 11

    G. Performance under the RefLab Agreement ........................................................ 12

    H. Putnam (and Empower) Submitted Claims to Third-Party Commercial Payers...................................................................................................................... 13

    I. Plaintiffs' Investigation of Putnam ..................................................................... 14

    J. The Sero Defendants Left the Putnam Arrangement........................................... 15

    K. Plaintiffs' Lawsuit.............................................................................................. 15

II. STANDARD OF REVIEW ...................................................................................... 15

III. ARGUMENT............................................................................................................ 16

    A. The Sero Defendants Did Not Fraudulently Misrepresent or Conceal any Information .......................................................................................................... 16

        1. No Representations .................................................................................. 17

        2. No Falsity................................................................................................ 17

3.     No Knowledge of Its Falsity or Ignorance of Its Truth ........................... 18

4.     No Intent that any False Representation Be Acted on by Plaintiffs ......... 19

5.     No Reliance by Plaintiffs on the Representation being True................... 19

6.     No Right of Plaintiffs to Rely................................................................. 19

7.     The Sero Defendants Were under No Duty to Disclose Information to Plaintiffs........................................................................................... 20

8.     No Consequent and Proximately Caused Injury..................................... 24

9.     Missouri Law Governs Plaintiffs' Fraud Claim, Not Federal Healthcare Laws.................................................................................... 26

B.     The Sero Defendants Did Not Negligently Misrepresent any Information (Count II) ................................................................................................ 28

C.     Plaintiffs Are Not Entitled to Restitution under ERISA Section 502(a)(3) against the Sero Defendants (Count III) ................................................. 29

1.     Putnam's Payments to SeroDynamics and LabMed Do Not "Belong in Good Conscience" to Plaintiffs .............................................. 30

2.     Plaintiffs are Not Acting as a Fiduciary................................................... 30

3.     Plaintiffs are Not Seeking "Appropriate Equitable Relief" ...................... 33

D.     Plaintiffs are Not Entitled to Declaratory and Injunctive Relief under ERISA Section 502(a)(3) and 28 U.S.C. §§ 2201 and 2202 (Count IV)............. 35

E.     The Sero Defendants Did Not Tortiously Interfere with the RightCHOICE Agreement or Cause any Other Party or Non-Party to Interfere with that Agreement (Count V) ........................................................................... 35

1.     No Knowledge of the Contract ................................................................. 36

2.     No Intentional Interference Inducing or Causing a Breach ...................... 36

3.     No Absence of Justification....................................................................... 37

4.     No Damages............................................................................................... 38

F.     The Sero Defendants Did Not Conspire with any Party or Non-Party to Commit any Torts against Plaintiffs (Count VI).................................... 38

1.     No Unlawful Objective .............................................................................. 39

        2.      No Meeting of the Minds ........................................................................... 40

        3.      No Act in Furtherance of Conspiracy ...................................................... 40

        4.      No Damage to Plaintiffs ............................................................................ 40

   G.     Under Missouri Law, No Legal Basis Exists for Plaintiffs' Claim for Aiding and Abetting a Tort (Count VII) ................................................................ 41

   H.     The Sero Defendants Are Entitled to Summary Judgment on Plaintiffs' Claims for Unjust Enrichment (Count VIII) and Money Had and Received (Count IX) ................................................................................................................ 42

   I.      Individual Defendants Beau Gertz and Mark Blake Are Entitled to Summary Judgment on all Counts (I to IX) ............................................................ 43

**CERTIFICATE OF SERVICE** ................................................................................................. **46**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.O.A. v. Rennert*,
350 F. Supp. 3d 818 (E.D. Mo. 2018) ..................................................................... 39

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................. 16

*Bader Farms, Inc. v. Monsanto Co.*,
Case No. 1:16CV299SNLJ, 2018 WL 1784394 (E.D. Mo. Apr. 13, 2018) ............ 39

*Bader Farms, Inc. v. Monsanto Co.*,
No. 1:16CV299-SNLJ, 2019 WL 3017425 (E.D. Mo. July 10, 2019) .................... 42

*Blaine v. J.E. Jones Const. Co.*,
841 S.W.2d 703 (Mo. Ct. App. 1992)...................................................................... 21

*Blanke v. Hendrickson*,
944 S.W.2d 943 (Mo. Ct. App. 1997)...................................................................... 37

*C.F. by & through Fletcher v. Merck & Co., Inc.*,
No. 09-00960-CV-W-DGK, 2010 WL 11509059 (W.D. Mo. July 12, 2010) ........ 17

*Captiva Lake Investments, LLC v. Fid. Nat'l Title Ins. Co.*,
883 F.3d 1038 (8th Cir. 2018) ................................................................................. 38

*Cardinal Health 110, LLC v. Premiere Healthcare, LLC*,
No. 1:18 CV 165 ACL, 2019 WL 108837 (E.D. Mo. Jan. 4, 2019)........................ 42

*Chandler v. Allen*,
108 S.W.3d 756 (Mo. Ct. App. 2003)...................................................................... 37

*Doe v. Ratigan*,
481 S.W.3d 36 (Mo. Ct. App. 2015)........................................................................ 18

*Glass Design Imports, Inc. v. Imp. Specialties*,
867 F.2d 1139 (8th Cir. 1989) ................................................................................. 25

*Global Control Sys., Inc. v. Luebbert*,
No. 4:14-cv-657-DGK, 2016 WL 910190 (W.D. Mo. Mar. 9, 2016) ................ 39, 41

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)............................................................................................ 31, 35

*Harris v. Penninger*,
   613 S.W.2d 211 (Mo. Ct. App. 1981).......................................................................... 25

*Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Center*,
   623 F.Supp.2d 568 (D. N.J. 2009) ............................................................................ 32

*Ibson v. United Healthcare Servs., Inc.*,
   877 F.3d 384 (8th Cir. 2017) ............................................................................... 30, 33

*Jo Ann Howard & Assocs., P.C. v. Cassity*,
   868 F.3d 637 (8th Cir. 2017),
   *reh'g denied* (Dec. 15, 2017) .................................................................................. 42

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
   811 F.3d 998 (8th Cir. 2016) .................................................................................... 32

*Nazeri v. Missouri Valley Coll.*,
   860 S.W.2d 303 (Mo. 1993) ..................................................................................... 38

*Nitro Distrib., Inc. v. Alticor, Inc.*,
   565 F.3d 417 (8th Cir. 2009) .................................................................................... 38

*Oak Bluff Partners, Inc. v. Meyer*,
   3 S.W.3d 777 (Mo. 1999) ......................................................................................... 39

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
   322 S.W.3d 112 (Mo. 2010) ..................................................................................... 17

*Ridings v. Maurice*,
   No. 15-00020-CV-W-JTM, 2019 WL 4888910 (W.D. Mo. Aug. 12, 2019) .................... 20, 21

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
   No. 5:18-CV-06037-DGK,
   2019 WL 302515 (W.D. Mo. Jan. 23, 2019) ............... 16, 17, 27, 30, 33, 36, 37, 38, 39, 43, 44

*Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*,
   275 S.W.3d 284 (Mo. Ct. App. 2008).................................................................... 17, 29

*State ex rel. Down Run Res. Corp. v. Neill*,
   128 S.W.3d 502 (Mo. 2004) ..................................................................................... 44

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
   533 S.W.3d 720 (Mo. 2017) ................................................................................ 21, 25

*Tension Envelope Corp. v. JBM Envelope Co.*,
   876 F.3d 1112 (8th Cir. 2017) ............................................................................ 17, 18

*The Olivier Family Interests Ltd v. Wright*,
No. 08-3075-CV-S-DW, 2012 WL 12893873 (W.D. Mo. Jan. 24, 2012),
*aff'd sub nom. Olivier Family Interests, Ltd. v. Wright*,
527 F. App'x 596 (8th Cir. 2013) ....................................................................... 16, 41

*Thole v. U.S. Bank, Nat'l Ass'n*,
873 F.3d 617 (8th Cir. 2017) ..................................................................................... 31

*United States v. Sdoulam*,
398 F.3d 981 (8th Cir. 2005) ..................................................................................... 39

*Wright v. Brooke Grp. Ltd.*,
114 F. Supp. 2d 797 (N.D. Iowa 2000) ..................................................................... 39

## Statutory Authorities

28 U.S.C. § 2201 .......................................................................................................... 35

28 U.S.C. § 2202 .......................................................................................................... 35

29 U.S.C. § 1002 .......................................................................................................... 32

29 U.S.C. § 1132 .......................................................................................................... 32

ERISA § 502 .................................................................................... 30, 32, 33, 35

## Rules and Regulations

Fed. R. Civ. P. 56(a) .................................................................................................... 16

# I. SUMMARY OF FACTS

## A. Overview of the Facts and Plaintiffs' Allegations

At its essence, Plaintiffs (25 independent licensees (or subsidiaries of independent licensees) of Blue Cross and Blue Shield ("BCBS")) have alleged garden variety fraud under generally applicable Missouri law. Plaintiffs allege that the Sero Defendants (providers of clinical blood laboratory services) submitted or caused Putnam County Memorial Hospital in Unionville, Missouri ("Putnam") to submit the wrong type of medical claims reimbursement form to Plaintiffs and failed to disclose or caused Putnam to fail to disclose an alleged billing "scheme".

First and foremost, what Plaintiffs repeatedly and pejoratively refer to as a "scheme" (nearly 100 times in their Fourth Amended Complaint ("FAC"), not counting innumerable motions and pleadings before this Court) was – as between the Sero Defendants and Putnam – a proper and lawful business arrangement (and an arrangement to which Plaintiffs were not parties). Simply put, Putnam requested that the Sero Defendants perform certain blood laboratory services, the Sero Defendants performed those services, and Putnam paid the Sero Defendants for those services. Plaintiffs were not involved in this arrangement at all.

The Sero Defendants made no representations whatsoever to Plaintiffs regarding Putnam, let alone any *mis*representations, and did not cause Putnam to make any misrepresentations or conceal any wrongdoing. Nor were the Sero Defendants – providers of independent clinical blood laboratory services with no relationship, dealings or communications with any Plaintiff – under any duty to Plaintiffs. Without these most basic elements, Plaintiffs cannot present *any* evidence of fraud or wrongdoing, let alone sufficient evidence to avoid summary judgment.

Since the Sero Defendants left the Putnam arrangement in 2017, David Byrns, who served as Putnam's Chief Executive Officer during the relevant time period, pleaded guilty to

1

conspiracy to commit healthcare fraud, and Jorge Perez (who represented himself as the owner of Putnam and its billing agent Empower HIS) has received negative press and is involved in other lawsuits. With these in mind, Plaintiffs rely on an intrinsically post hoc reading of these facts to suggest the Sero Defendants knew about and actively participated in illegal or improper behavior. However, any objective reading of the facts demonstrates that is categorically incorrect.

Plaintiffs rely not just on a post hoc interpretation of the facts; they also seek to obfuscate clear deficiencies in their case – or complete lack of a case against the Sero Defendants – by referencing federal statutes and healthcare laws that are not at issue in the case; by relying on industry norms, standards, and publications *post*-dating the relevant time period, and by repeatedly flaunting the words "scheme" and "fraud" – words presupposing the case they attempt to (but cannot) prove against the Sero Defendants. At the same time, Plaintiffs misread or simply ignore highly relevant contemporaneous documents, including the key provisions of the agreements between Putnam and the Sero Defendants, reflecting the expectations and course of dealings between the Sero Defendants and Putnam.

In a case where distinctions between the parties matter, Plaintiffs blur the lines and use a broad-brush approach wherever convenient. Despite critical differences between blood laboratory services provided to Putnam by the Sero Defendants and urine laboratory services provided to Putnam by others, Plaintiffs' FAC glosses over this distinction whenever convenient and inappropriately amalgamates the distinct roles and relationships of the Sero Defendants versus the roles and relationships of the other parties.

Plaintiffs also sensationalize the facts by suggesting that the amount of money paid by Plaintiffs to Putnam alone is somehow evidence of a "scheme." Plaintiffs suggest that the fact

that the Putnam-Sero Defendants business relationship involved large sums of money somehow evidences some "scheme" or fraud (despite the fact that Plaintiffs received the claim submissions from Putnam and paid the reimbursements, and certainly knew these amounts as they were paid). After extensive document discovery in the case, it is now clear that Plaintiffs did know about the Putnam arrangement, yet continued making payments notwithstanding that knowledge – and notwithstanding the positions they take in the case. In any event, even using Plaintiffs' own calculations, the combined payments made by Putnam to the Sero Defendants in relation to Blue Cross Blue Shield ("BCBS") members (including for blood testing, consulting, and marketing services) averaged to be *less than $60 per blood test performed*.[2] That is hardly evidence of any wrongdoing.

Fundamentally, Plaintiffs seek a windfall from the Sero Defendants. The Sero Defendants performed reliable and compliant blood testing services. The Sero Defendants performed the tests on patients actually covered by commercial payer plans, including BCBS plans, and only after that patient's independent physician certified in writing that each test was medically necessary. Plaintiffs do not even attempt to quantify the amount they were damaged. Rather, Plaintiffs disingenuously claim that all of the tests are worth zero, and request the court to order the Sero Defendants return all money paid for the tests, notwithstanding the tests that were performed reliably, the value to Plaintiffs' own members is undeniable, and the clear windfall to Plaintiffs that would result (not to mention the acknowledged benefit to Putnam, which was on the verge of bankruptcy prior to the engagement of the Sero Defendants). Plaintiffs' position is unjust, untenable, and has no basis in fact or law.

---

[2] Plaintiffs combine their 25 entities nationally (with claims assigned by 28 additional assignor entities including hundreds of ERISA plans) over the course of a year of service, but SeroDynamics performed 208,955 blood tests during that time, and the simple math of almost $12 million dollars, divided by 208,955 tests equals $56.97. SUMF at ¶¶ 3-6, 125-28.

The undisputed fact is that after 23 months of discovery, issuance by Plaintiffs of over 60 third party subpoenas, and nearly a million pages of documents produced by the parties, there are no facts to support any element of Plaintiffs' various causes of action against the Sero Defendants, and the granting of summary judgment is required.

**B.      The Parties and Other Non-Party Entities**

**1.      The Sero Defendants**

The Sero Defendants are made up of two individuals: Beau Gertz ("Gertz") and Mark Blake ("Blake"); and two companies: SeroDynamics, LLC ("SeroDynamics") and LabMed Services, LLC ("LabMed").  SUMF at ¶¶ 7-27.  Gertz is a Colorado resident and a healthcare entrepreneur.  SUMF at ¶ 7.  Blake, BA, JD, LLM, CHC is a Florida resident, a member in good standing of the Florida and Texas Bars, and certified in healthcare compliance by the Compliance Certification Board.  SUMF at ¶ 9.  Blake is also a healthcare entrepreneur.  *Id.* Neither Gertz nor Blake submitted any medical reimbursement claims to any Plaintiff in relation to Putnam, made any representations to any Plaintiff in relation to Putnam, or even had any communications with any Plaintiff in relation to Putnam.  SUMF at ¶¶ 197-207.

Gertz and Blake owned and operated (along with other individuals not named as defendants) a group of companies providing clinical blood testing services and developing genetic laboratory and telehealth services ("Cadira Companies").  SUMF at ¶¶ 11-39.  While the roles and operations of the Cadira Companies varied, they all provided clinical blood laboratory or related services aimed at promoting public health initiatives including, in particular, access to healthcare in rural communities and veteran health and wellness.  SUMF at ¶¶ 33-35.  Two of those companies, SeroDynamics (a clinical blood laboratory) and LabMed (a consulting and marketing company), are Defendants in this lawsuit.  SUMF at ¶¶ 11-27.

SeroDynamics was formed on January 1, 2015 to operate as a clinical blood laboratory accredited by the College of American Pathologists ("CAP") (a physician organization advocating best practices in, among other things, laboratory medicine) and certified under the Clinical Laboratory Improvement Amendments ("CLIA") (under CLIA, CMS regulates laboratory testing on humans to ensure quality laboratory testing). SUMF at ¶ 13. SeroDynamics operated as a blood laboratory until June 2018. *Id.* SeroDynamics served as a reference blood laboratory for Putnam, the hospital at issue in this case. SUMF at ¶ 12.

LabMed was a Nevada Limited Liability Company formed on November 11, 2016, and dissolved on September 3, 2019. SUMF at ¶ 22. LabMed was formed to provide consulting and marketing services in conjunction with the blood-testing services under the Consulting and Marketing Services Agreement, executed November 4, 2016, between LabMed and Putnam ("LabMed Agreement"). SUMF at ¶¶ 24-25.

Neither SeroDynamics nor LabMed ever performed any urine laboratory testing, nor did SeroDynamics or LabMed (or for that matter any of the Sero Defendants or Cadira Companies) have the capability to perform urine laboratory testing. SUMF at ¶¶ 16, 27. Neither SeroDynamics nor LabMed ever submitted any medical reimbursement claims to any third-party payer, including Plaintiffs, in relation to Putnam. SUMF at ¶¶ 197-202. Neither SeroDynamics nor LabMed ever made any representations to Plaintiffs in relation to Putnam; nor did either company have any communications with any Plaintiff in relation to Putnam. SUMF at ¶¶ 203-05.

Plaintiffs' original, First Amended, and Second Amended Complaints focused exclusively on urine laboratories and did not name any of the Sero Defendants. SUMF at ¶ 1. Plaintiffs named the Sero Defendants in the Third Amended Complaint ("TAC") and FAC;

however, even those Complaints focus substantially on urine. *Id.* This is not surprising. Plaintiffs' FAC relies heavily on a 2017 Report on Putnam issued by a Missouri State Auditor. The Report criticizes the Putnam Board of Trustees' lack of oversight of its management, but despite the fact that representatives of the Auditor were present at Putnam Board of Trustee meetings in which the board considered and approved payments to SeroDynamics and LabMed, the Report does not mention SeroDynamics even once, or refer to any ***blood*** testing at Putnam. SUMF at ¶¶ 231-40. The word "blood" appears only one time in the entire 41-page report, and then only in general reference to a 2014 report by the U.S. Department of Health and Human Services. SUMF at ¶ 240.

The business of running a clinical laboratory that conducts blood testing differs in substantial and material ways from a laboratory that conducts urine testing. SUMF at ¶¶ 17-21. A urine lab may receive hundreds or thousands of specimens a week from a single provider, for example from an inpatient substance abuse treatment center. SUMF at ¶ 18. In contrast, blood tests are primarily performed on an annual, not a weekly, basis (or about 50 times ***less*** frequently). SUMF at ¶ 19. A blood testing lab therefore must rely on numerous providers independently determining that a blood test is medically necessary and deciding to send the specimen to any particular laboratory. SUMF at ¶ 20. The potential for abuse that exists for urine testing – for example, a single provider or small number of providers improperly inflating the number of specimen to be billed (e.g., by testing specimens when not medically necessary or proper) – is substantially reduced (if not eliminated) for blood laboratories. SUMF at ¶ 21.

### 2. Other Cadira Companies

Gertz and Blake operated other companies in the blood laboratory industry, including Lab Initiatives LLC, Cadira MD LLC and Cadira Labs LLC. SUMF at ¶¶ 28-29. None of these other companies had any dealings with Plaintiffs. SUMF at ¶¶ 32, 36, 39. None of these

6

companies submitted any medical reimbursement claims to any Plaintiff for a clinical laboratory test, made any representations to Plaintiffs in relation to Putnam, or even had any communications with any Plaintiff in relation to Putnam. *Id.*

### 3. Putnam Entities

Putnam was and is a rural Critical Access Hospital ("CAH") in Unionville, MO that engaged SeroDynamics to perform reference blood laboratory services at issue in the case. SUMF at ¶¶ 12, 40. The Centers for Medicare and Medicaid Services ("CMS") – a federal agency administering federal payer programs, such as Medicare, which operate under a stricter regulatory regime than commercial payers – designates certain eligible rural hospitals as CAH hospitals, affording them more favorable treatment (including, for example, the ability to refer up to 100 percent of their laboratory specimens to independent reference laboratories, as opposed to the 30% limit imposed on other hospitals) in an effort to sustain them and improve access to healthcare in rural communities. SUMF at ¶¶ 41, 61-66. Putnam is the entity that submitted the medical claims at issue in this case to Plaintiff RightCHOICE Managed Care, Inc. ("RightCHOICE") under a Participating Hospital Agreement between Putnam and RightCHOICE ("RightCHOICE Agreement"). SUMF at ¶¶ 12, 129, 142, 153. Putnam is not named as a defendant in this lawsuit. SUMF at ¶ 40.

Defendant David Byrns ("Byrns") was the Chief Executive Officer at Putnam at the time the Sero Defendants entered reference laboratory arrangement with Putnam. SUMF at ¶ 53. Byrns owned and served as Chief Executive officer of Defendant Hospital Partners, Inc., a company claiming to provide hospital management services. SUMF at ¶ 44.

Defendant Jorge Perez ("Perez") introduced the Sero Defendants to the opportunity at Putnam. SUMF at ¶¶ 68-69. Perez had represented to Gertz and Blake that he owned a number

7

of rural hospitals, including Putnam and CGH, and two companies, Defendant Empower HIS and Empower HMS. *Id.*

Defendant Empower HIS ("Empower") was a company providing medical billing management services. SUMF at ¶ 46. Putnam engaged Empower to provide medical billing services as Putnam's billing agent. SUMF at ¶¶ 136-42.

Empower HMS ("EHMS") purported to be a company specializing in the management and ownership of rural and community hospitals. EHMS is not a party to this lawsuit. SUMF at ¶ 47.

### 4. Urine Laboratory Entities

Jim Porter ("Porter") and Christian Fletcher ("Fletcher") operated urine laboratories that were engaged by Defendant Hospital Laboratory Partners, LLC ("Hospital Lab Partners"), the laboratory management company engaged by Putnam. SUMF at ¶¶ 45, 48-52. The urine laboratories included Defendant RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services ("Pinnacle"), Lucenta Labs, LLC ("Lucenta") and LifeBrite Laboratories, LLC ("LifeBrite"). SUMF at ¶¶ 48, 50, 52. Fletcher, Lucenta and LifeBrite were named in Plaintiffs' Complaints up to and including the TAC, but subsequently settled with Plaintiffs and are no longer parties to this lawsuit. SUMF at ¶¶ 50-52.

### C. Hospital Outreach Programs and the Rural Hospital Approach

In early 2016, Gertz and Blake were approached by Perez, who represented that he owned several rural hospitals, including Campbellton-Graceville Hospital ("CGH"), a rural hospital in Jackson County, Florida. SUMF at ¶ 68. Perez introduced Gertz and Blake to the concept of the "Rural Hospital Approach" ("RHA"), a type of hospital outreach program aimed at generating additional hospital revenue from medical services rendered to patients not physically present at the hospital. SUMF at ¶ 70. The RHA provided for the referral of the

specimens (up to 100%, even under CMS guidelines regulating federal payer programs) to independent laboratories (here SeroDynamics) equipped and staffed to test larger quantities of specimens, which provided the CAH (Putnam) and laboratory the opportunity to receive and test additional specimens and therefore revenue. SUMF at ¶¶ 71-78. The additional revenue allowed the hospital (Putnam) to pay down debt, with a long-term goal of equipping its laboratory and personnel to take over blood laboratory services. SUMF at ¶ 79. After a hospital had sufficiently developed/expanded its own internal laboratories with capabilities and expertise, referral of specimens to reference laboratories (such as SeroDynamics) would become unnecessary, and the hospital (Putnam) would then perform 100% of the lab services it generated itself and would be a reference lab for other CAHs. SUMF at ¶¶ 80-81.

The RHA and hospital outreach programs generally are authorized by CMS for all CAHs in relation to the highly regulated federal payer programs administered by CMS. SUMF at ¶¶ 61-67, 71.

### D. Campbellton-Graceville Hospital

Perez presented Gertz and Blake with the opportunity to provide reference blood laboratory services for his hospitals, starting with CGH. SUMF at ¶ 69. By this time, SeroDynamics was in early stages of operation and considering all commercial opportunities. Gertz and Blake agreed to enter into a reference laboratory agreement with CGH in early 2016. Under the arrangement, SeroDynamics performed clinical blood tests on specimens referred to it by CGH that were ordered by independent physicians certifying medical necessity. SUMF at ¶ 82. CGH agreed to pay SeroDynamics a flat fee for the blood tests, and did pay a flat fee, independent of any reimbursements paid by commercial payers to CGH. *Id.*

Later in 2016, CGH management notified SeroDynamics that CGH would not pay for the blood tests performed by SeroDynamics (and invoiced to CGH) after August 22, 2016. SUMF at

9

¶ 87. Perez assured Gertz and Blake that the payment issue was unrelated to SeroDynamics' performance and asked that SeroDynamics transition its reference laboratory services to Putnam (another hospital which he allegedly owned). SUMF at ¶ 89. Counsel for CGH told Blake that the claims that had not been submitted by CGH to commercial payers would become the property of SeroDynamics in exchange for SeroDynamics agreeing to waive its right to recovery against CGH. SUMF at ¶ 90. Putnam submitted the claims for these medically necessary blood tests to commercial payers as the billing provider (and received revenue for doing so). SUMF at ¶ 245.

In negotiating the arrangement, Gertz and Blake dealt not only with Perez but also with Putnam's Chief Executive Officer (Byrns) and others within Putnam, including Putnam's Director of Human Resources, Debbie Douglas ("Douglas"), and Putnam's Lab Director and lab personnel. SUMF at ¶ 100. Contracts regarding the Putnam arrangement, and reflecting the settlement arrangement with CGH, were sent to Putnam, including Byrns, Perez, and Douglas, and ultimately signed by Byrns. SUMF at ¶ 103.

### E. The Arrangement with Putnam

Under the Exclusive Reference Laboratory Services Agreement entered into between SeroDynamics and Putnam with an effective date of August 23, 2016 ("RefLab Agreement"), SeroDynamics agreed to perform reference blood laboratory services on an as-needed basis for patients covered by commercial insurance (excluding patients covered under any federal programs), and to invoice Putnam for those services. SUMF at ¶¶ 113-24. In turn, Putnam paid SeroDynamics from Putnam's bank account, with all invoices and payments reviewed and approved by Putnam's Board of Trustees at monthly Board meetings. SUMF at ¶¶ 119-23.

The RefLab Agreement provided that Putnam had the "exclusive right" to submit claims to patients and applicable third-party payers for the blood tests performed by SeroDynamics.

SUMF at ¶ 129. The RefLab Agreement prohibited SeroDynamics from submitting claims to patients and third-party payers including Plaintiffs: "RefLab shall not directly or indirectly bill any party." SUMF at ¶ 130. The terms of the RefLab Agreement were similar to the arrangement between Putnam and its previous reference lab, Quest Diagnostics, a national clinical laboratory business. SUMF at ¶¶ 168-76.

Shortly after the agreement was finalized, due to an apparent incompatibility between the laboratory information systems (software) of Putnam and SeroDynamics, Byrns (Putnam's CEO) and Perez (who purported to jointly own Putnam and Empower) instructed SeroDynamics to make the testing information available to Empower, which would serve as Putnam's billing agent. SUMF at ¶¶ 136-42. Thereafter, SeroDynamics made the testing information available to both Putnam and Empower. SUMF at ¶¶ 148, 187-90. SeroDynamics also granted Putnam (including Empower) access credentials for its web-based proprietary patient database known as LabTrac, which contained embedded PDF documents of the patient encounter, including requisition forms from ordering physicians and testing results. SUMF at ¶¶ 187-90.

### F. Compliance Measures

In entering the arrangement at Putnam, the Sero Defendants took significant steps to create and implement compliance measures. SUMF at ¶¶ 208-25. For example, Gertz and Blake consulted with industry experts, created and maintained internal compliance controls and took steps to ensure (to the extent possible) that business partners complied with applicable laws by inserting Codes of Conduct in applicable contracts, including Teaming Agreements with its marketing partners. *Id.* The Teaming Agreements and Codes of Conduct incorporated therein contained robust language requiring compliance with federal and state healthcare laws. SUMF at ¶¶ 221-25.

While LabMed paid *marketers* (and <u>not</u> physicians) to build Putnam's and the Sero Defendants' business pursuant to those Teaming Agreements – just as any company pays for advertising employees or vendors – the Sero Defendants *never paid any physicians to send blood tests to SeroDynamics and never paid any illegal "kickbacks."* SUMF at ¶ 219.

███████████████████████████████████████████████████████████████

██████████████████████████████████

In addition, SeroDynamics mitigated risk by requiring that Putnam was the direct counterparty to the RefLab Agreement (and not Hospital Lab Partners, the company purporting to manage Putnam's laboratories, as originally requested by Perez). SUMF at ¶ 110.

## G. Performance under the RefLab Agreement

SeroDynamics fulfilled its obligations under the agreements. SeroDynamics performed reliable and compliant blood tests requested by an independent, ordering physician certifying medically necessary. SUMF at ¶¶ 179-96. *Every* test performed was supported by documentation of medical necessity. SUMF at ¶ 193. ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

The laboratory tests were performed in compliance with applicable laboratory industry standards. SUMF at ¶ 180. The tests were performed on specimens from patients who were covered members of BCBS plans (and other commercial insurance plans). SUMF at ¶ 185. The test results were promptly returned to the ordering physician, usually between 2-3 days. ████████████████████████████████ SUMF at ¶ 190.

In addition, SeroDynamics kept detailed records of the blood tests. SUMF at ¶¶ 187-90. The blood testing information was made available to Putnam (and Empower) in LabTrac and SchuyLab (SeroDynamics' laboratory information software). *Id.* The records were complete

and accurate, and nothing was misrepresented or concealed.  *Id.* ███████████ ████████ SUMF at ¶ 200.  Plaintiffs admit that they have no knowledge of any communications between the Sero Defendants and Putnam (or Empower).

### H. Putnam (and Empower) Submitted Claims to Third-Party Commercial Payers

The billing function, as prescribed by the RefLab Agreement, was performed exclusively by Putnam (and its billing agent Empower).  SUMF at ¶¶ 129-35.  ███████████



Rather, Putnam (and Empower) submitted claims to RightCHOICE in relation to the blood tests performed by SeroDynamics.  SUMF at ¶¶ 153, 155.  The claims submitted by Putnam to RightCHOICE were not provided to the Sero Defendants.  SUMF at ¶¶ 145-52, 154. The Sero Defendants had no knowledge of those claims or the information contained within those claims.  *Id.* ███████████████████████ SUMF at ¶¶ 200-02. Plaintiffs have no knowledge that any of the Sero Defendants submitted claims to RightCHOICE or even knowledge of any communications between the Sero Defendants and Putnam (or Empower).

The RefLab Agreement requires Putnam to comply with "applicable" third party payer standards.  SUMF at ¶¶ 159-67.  No provision in any agreement requires the Sero Defendants to

ensure that Putnam complies with its own third-party contractual obligations. ████

████████████████████████████████████

████ SUMF at ¶¶ 161-67. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ SUMF at ¶¶ 165-66.

### I.    Plaintiffs' Investigation of Putnam

████████████████████████████████████

████ SUMF at ¶¶ 226-30. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ SUMF at ¶ 228.

████████████████████████████████████

████████████████████████ *Id.*

████████████████████████████████████

████████████████████████████████████

████████████████████████████ SUMF at ¶¶ 229-30.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ SUMF at ¶¶ 229-30. ████████████████████████

███████████████████████████████████████████

████████████████████████████████████ *Id.*)

**J.        The Sero Defendants Left the Putnam Arrangement**

In or around October 2018, after Putnam assumed new management, Putnam (and Empower) ceased paying SeroDynamics' and LabMed's invoices, and the Sero Defendants terminated the arrangement.  SUMF at ¶¶ 241-43.

**K.        Plaintiffs' Lawsuit**

On March 30, 2018, Plaintiffs brought a federal lawsuit against Byrns, Perez, Empower, Hospital Laboratory Partners and certain urine laboratories alleging defendants engaged in an "illegal and fraudulent pass-through scheme" with Putnam … to enrich themselves at the BCBS Plans' expense …"  SUMF at ¶¶ 1-2. The first three versions of Plaintiffs' Complaints (including the original, First and Second Amended versions) did not name any of the Sero Defendants.  *Id.* Plaintiffs named the Sero Defendants in the TAC and FAC, which assert a plethora of causes of action against the Sero Defendants – the exact same claims it brings against *all* defendants, including Byrns, Perez and the urine laboratories.  *Id.*

**II.        <u>STANDARD OF REVIEW</u>**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  *The Olivier Family Interests Ltd v. Wright*, No. 08-3075-CV-S-DW, 2012 WL 12893873, at *4 (W.D. Mo. Jan. 24, 2012), *aff'd sub nom. Olivier Family Interests, Ltd. v. Wright*, 527 F. App'x 596 (8th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247 (1986)).  The party moving for summary judgment has the burden to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*

## III.  <u>ARGUMENT</u>

The Sero Defendants are entitled to summary judgment on each of Plaintiffs' nine counts, each of which improperly amalgamates the Sero Defendants with the co-defendants, and fails for multiple independently sufficient reasons.

### A.  The Sero Defendants Did Not Fraudulently Misrepresent or Conceal any Information

In Count I, Plaintiffs allege that the Sero Defendants made, or caused to be made, fraudulent misrepresentations relating to the insurance claims that Putnam submitted to Plaintiffs (FAC at ¶ 214) and fraudulently concealed the alleged "scheme" from Plaintiffs.  FAC at ¶ 219. However, Plaintiffs have no factual basis for these claims as against the Sero Defendants, and no genuine issue of material fact regarding this.

As recognized by this Court in its January 23, 2019 Order Denying Co-Defendants' Motions to Dismiss, Plaintiffs assert "garden-variety" fraud under "generally applicable Missouri laws."  *See RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 5:18-CV-06037-DGK, 2019 WL 302515, at *5 (W.D. Mo. Jan. 23, 2019) (Doc. 165).  The elements of a claim for fraudulent misrepresentation under Missouri law are:  (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.  *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 287 (Mo. Ct. App. 2008).  Failure to establish any one of the essential elements of fraud is

16

fatal to any recovery. *Tension Envelope Corp. v. JBM Envelope Co.*, 876 F.3d 1112, 1118 (8th Cir. 2017) (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010)). Here, Plaintiffs have no evidence to support *any* element.

### 1.    No Representations

A claim for misrepresentation may only be brought by the hearer of a statement against the speaker. *C.F. by & through Fletcher v. Merck & Co., Inc.*, No. 09-00960-CV-W-DGK, 2010 WL 11509059, at *1 (W.D. Mo. July 12, 2010). ████████████████



████████████████ SUMF at ¶¶ 156-58. ████████████████

████████████████████████████████████████████

████████████████. SUMF at ¶¶ 197-207. The contracts provided that ***Putnam*** would have the ***"exclusive right"*** to submit claims to third-party payers, including Plaintiffs, and prohibited the Sero Defendants from submitting claims to any third-party payer, including Plaintiffs. SUMF at ¶¶ 129-30. ████████████████████████

████████████████████████████████████████████

SUMF at ¶¶ 197-207. ████████████████████████

████████████████████████████████████████████

████████████████████████████████ SUMF at ¶¶ 156-58.

### 2.    No Falsity

Under Missouri law, a claim for fraudulent misrepresentation requires the plaintiff to show that the defendant made a false representation. *Tension Envelope*, 876 F.3d at 1118-19. If a false representation is not made by the defendant, then the essential element of a false, material representation is defeated. *See Doe v. Ratigan*, 481 S.W.3d 36, 45-46 (Mo. Ct. App. 2015).

SeroDynamics made available to Putnam (and Putnam's billing agent Empower) accurate blood testing information. SUMF at ¶¶ 148, 178, 186-90. SeroDynamics made that information

available via LabTrac, SeroDynamics' proprietary patient database, and SchuyLab, SeroDynamics' laboratory information software. *Id.* The Sero Defendants did not fabricate, misrepresent or conceal any information, ████████████████████████████ *Id.*

████████████████████████████████████████████

████████████████████████████ SUMF at ¶ 200. ████████████

████████████████████████████████████████████

████████████████ SUMF at ¶ 196.

### 3. No Knowledge of Its Falsity or Ignorance of Its Truth

First, SeroDynamics made available to Putnam (and Empower) accurate blood testing information. The analysis from Section III.A.2 is incorporated herein. The Sero Defendants believed and intended that information to be true and accurate, and it was true and accurate. SUMF at ¶¶ 148, 178, 186-90. ████████████████████████████ SUMF at ¶ 200. Necessarily, the Sero Defendants had no knowledge of the falsity of any information provided to Putnam (or Empower) or ignorance of its truth.

Second, the Sero Defendants had no knowledge of the claims submitted by Putnam (and Empower) to Plaintiffs or the information contained in the claims. SUMF at ¶¶ 145-54. The Sero Defendants repeatedly sought greater transparency from Putnam (and Empower) but were given only screenshots at times when Empower deemed it appropriate. SUMF at ¶ 149. As Blake (undisputedly) testified, "Sero never knew really what was going on because … it didn't know what Putnam billed … [and] they never turned on the directional feedback to Sero. So we were always in the dark." SUMF at ¶ 152. Accordingly, because this information was not made available to the Sero Defendants, the Sero Defendants could have no knowledge of the falsity (if any) of any information provided by Putnam to the Plaintiffs. ████████████████ ████████ SUMF at ¶ 200.

18

### 4. No Intent that any False Representation Be Acted on by Plaintiffs

SeroDynamics made available to Putnam (and Empower) accurate blood testing information and had no knowledge of the claims submitted by Putnam (and Empower) to Plaintiffs. The analysis from Sections III.A.2 and III.A.3 is incorporated herein.

Without knowledge of any false representations, the Sero Defendants could not have *intended* that any false representations be acted on by Plaintiffs.

### 5. No Reliance by Plaintiffs on the Representation being True

██████████████████████████████████████████ SUMF at ¶¶ 226-27. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ SUMF at ¶ 228. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ SUMF at ¶¶ 226-30. The analysis from Section I.I is incorporated herein. By continuing to reimburse Putnam, Plaintiffs were not relying on the truth of the representations from Putnam (and Empower), but instead were relying on their own investigation and knowledge.

### 6. No Right of Plaintiffs to Rely

████████████████████████████████████████████████████

█████████████████████████████ SUMF at ¶¶ 156-58, 197-207. The analysis from Section III.A.1 is incorporated herein. Accordingly, there were no representations on which Plaintiffs could possibly rely.

19

In addition, Plaintiffs had knowledge of the laboratory arrangement at Putnam yet continued to pay Putnam reimbursements for laboratory claims. The analysis from Section III.A.5 is incorporated herein. With knowledge of the Putnam arrangement, Plaintiffs had no continuing right to rely on the claims provided by Putnam (and Empower).

### 7. The Sero Defendants Were under No Duty to Disclose Information to Plaintiffs

Count I also alleges that the Sero Defendants fraudulently concealed the "scheme" from Plaintiffs. FAC at ¶ 219. No factual or legal basis exists to support that claim.

As an initial matter, Missouri law does not even recognize a separate "fraudulent concealment" cause of action. *See*, *e.g.*, *Ridings v. Maurice,* No. 15-00020-CV-W-JTM, 2019 WL 4888910, at \*13 (W.D. Mo. Aug. 12, 2019) (Under Missouri law, "fraudulent concealment is not a cause of action in and of itself; rather, it is an exception to the time limitations imposed on other, underlying causes of action."). Instead, in cases where misrepresentation is alleged to have occurred by nondisclosure, a party's silence in the face of a legal duty to speak replaces the first element of a fraudulent misrepresentation claim, i.e., the existence of a representation. *Id.*

Under Missouri law, a duty to disclose arises "where a ***classical fiduciary relationship exists***, or, in an extension of that relationship, where one party ***expressly or by clear implication places a special confidence in the other***." *Blaine v. J.E. Jones Const. Co.*, 841 S.W.2d 703, 705 (Mo. Ct. App. 1992) (emphasis added); *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 727 (Mo. 2017) ("A relation of trust and confidence is essentially a fiduciary relationship."). The latter "relationship" is loosely characterized as "a ***relationship*** where one of the parties has ***superior knowledge*** which is ***not within the fair and reasonable reach of the other***." *Blaine*, 841 S.W.2d at 705 (emphasis added). Whether a duty to disclose exists is purely

a question of law.  *Sun Aviation*, 533 S.W.3d at 727.  None of the legal grounds recognized under Missouri law exist here.

██████████████████████████████████████████████████████

████████████████████████████████████████████ SUMF at ¶¶ 156-58, 197-207.  SeroDynamics and LabMed performed services for (and invoiced) Putnam, not Plaintiffs.  SUMF at ¶¶ 112-15, 124.  Putnam had the "exclusive right" to submit claims to Plaintiffs for those tests, and SeroDynamics was precluded from directly or indirectly submitting claims to any party, including Plaintiffs.  SUMF at ¶¶ 129-30.  ███████████████████

███████████████████████████████ SUMF at ¶¶ 156-58, 197-207.  ████

██████████████████████████████████████████████████████

███████████████████████████████████ SUMF at ¶ 205.  In addition, given that no relationship existed between the Sero Defendants and RightCHOICE, no Plaintiff could have "expressly or by clear implication place[d] a special confidence" in the Sero Defendants.

Second, the Sero Defendants did not have "superior knowledge … not within the fair and reasonable reach of the other."  On the contrary, the Sero Defendants had *no* knowledge.  ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ SUMF at ¶¶ 145-54.  Plaintiffs do not dispute this.  Critically, the Sero Defendants had no knowledge of Putnam's third-party payer agreements, including the RightCHOICE Agreement, or of the terms of those agreements.  SUMF at ¶¶ 161-67.  Plaintiffs have no evidence to create a genuine issue

21

of material fact on this. *Id.* Therefore, even if (contrary to fact) the Sero Defendants had knowledge of the Putnam claims, they would not have known whether those claims complied with or did not comply with Putnam's applicable third party payer standards and could not have had "superior knowledge" of any scheme.

SUMF at ¶¶ 226-30.

SUMF at ¶ 228.

Recognizing that no duty exists under the law, as they suggest, Plaintiffs resort to a scattershot attempt to create new law and a new duty out of whole cloth. Plaintiffs assert several purported reasons why the defendants together shared a duty to RightCHOICE. However, none of those reasons are sufficient to establish a duty to disclose on the part of the Sero Defendants.

To the extent that Plaintiffs assert that the Sero Defendants "controlled" Putnam or "caused" it to submit claims to Plaintiffs (FAC at ¶ 217(e)), there is no factual basis to support that assertion.

." SUMF at ¶ 120. A

SUMF at ¶¶ 121-22.

22

The Sero Defendants did not control or direct the claims submitted by Putnam or the information contained in those claims.  SUMF at ¶¶ 198-99.  ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  SUMF at ¶¶ 200-01.  Accordingly, no genuine issue of material fact exists on this point.

Plaintiffs assert that Putnam had a "special relationship of trust and confidence" with RightCHOICE, and that the defendants relied on that relationship (FAC at ¶¶ 222-24).  That is incorrect and irrelevant.  Initially, as explained above, no relationship of trust and confidence – or relationship whatsoever – existed between the Sero Defendants and Plaintiffs.  While Putnam and RightCHOICE were parties to a business arrangement, no relationship akin to a fiduciary duty existed between Putnam and RightCHOICE.  In any event, the Sero Defendants did not rely on that relationship.  Rather, they relied on Putnam and its adherence to the terms of the RefLab and LabMed Agreements, applicable laws and applicable third party payer standards.  Again, SeroDynamics made available to Putnam accurate blood testing information and had no knowledge of any wrongdoing.  SUMF at ¶¶ 145-54, 148, 178, 186-90.

Plaintiffs also suggest that the defendants had a duty arising from the claims submitted by Putnam to RightCHOICE and certain certifications contained on the back of the paper UB-04 claims forms (FAC at ¶¶ 224-25).  As an initial matter, the Sero Defendants are unaware of any UB-04 forms submitted by Putnam to RightCHOICE or any third-party payers in relation to the case; rather, the claims were submitted electronically *by Putnam (and Empower)*.  SUMF at ¶¶ 140, 153.  In any case, as set forth under the RefLab Agreement, the Sero Defendants did not submit any claims to Putnam, electronic or otherwise, or direct Putnam to submit any claims forms.  SUMF at ¶ 197-99.  SeroDynamics made available to Putnam (and Empower) accurate

blood testing information. ███████████████████████████ SUMF at ¶¶ 200-02.

████████████████████████████████████████████████

████████████████████████████ SUMF at ¶ 200.

Plaintiffs also point to Putnam's contract with RightCHOICE, requiring, among other things, that the claims be "accurate, complete, and truthful" and only in relation to services performed "by, or under the direction and supervision of [Putnam]", FAC at ¶ 226. The RightCHOICE Contract is between Putnam and RightCHOICE. None of the Sero Defendants were a party to that contract. The Sero Defendants were not provided access to that agreement and did not know of its terms. SUMF at ¶¶ 161-67. ████████████████████████

█████████████████████████████████████████ SUMF at ¶¶ 165-67.

Most importantly, Plaintiffs' mere invocation of the word "duty" does not create such a duty. Rather, duty is created in law (*see Sun Aviation*, 533 S.W.3d at 727 ("Whether a duty to disclose existed is purely a question of law")), and there is no such duty here under the law.

### 8. No Consequent and Proximately Caused Injury

Fraud belongs to that class of torts of which pecuniary loss constitutes a part of the cause of action. *Harris v. Penninger*, 613 S.W.2d 211, 214 (Mo. Ct. App. 1981). If the plaintiff has not suffered any pecuniary damage as the result of the alleged fraud, no action for damages may be maintained. *Id.* The traditional benefit of the bargain measure is the general rule in Missouri. *Glass Design Imports, Inc. v. Imp. Specialties*, 867 F.2d 1139, 1143 (8th Cir. 1989).

Here, Plaintiffs cannot establish any pecuniary loss caused by the Sero Defendants. SeroDynamics performed reliable and compliant blood tests for patients covered by BCBS plans ordered by independent physicians who certified the medical necessity of the tests. SUMF at ¶¶ 179-80, 193-96. SeroDynamics actually performed the tests, performed those tests reliably and compliantly, and kept meticulous and complete records. SUMF at ¶¶ 179-80, 186-90. The test

results were communicated to the ordering provider usually within 2 to 3 days.  SUMF at ¶ 190.

SeroDynamics made available to Putnam (including Empower) accurate blood testing

information sufficient to submit claims to third party payers, and received payments for those

tests from Putnam.  SUMF at ¶¶ 148, 178, 186-90.  Given the medical necessity of the blood

tests performed by SeroDynamics, had the tests not been performed by SeroDynamics, they

would have been performed by another hospital or reference laboratory and submitted by that

hospital / lab to Plaintiffs for reimbursement.



Accordingly, Plaintiffs cannot establish that they suffered a loss in reimbursing Putnam

for the blood tests performed by SeroDynamics.

Even if a loss can be established, the ***Sero Defendants*** did not cause that loss to Plaintiffs. The Sero Defendants performed the blood testing services requested by Putnam, and SeroDynamics made available to Putnam (and Empower) accurate blood testing information sufficient for Putnam to submit claims according to third party payer standards. SUMF at ¶¶ 148, 178, 186-90. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ SUMF at ¶ 198-202. The Sero Defendants had no knowledge of the communications between Putnam and Plaintiffs. SUMF at ¶ 200. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ SUMF at ¶¶ 201-02. Had Putnam not paid SeroDynamics or LabMed for their blood testing services, the Sero Defendants would have simply left the arrangement, as they did in October 2017.

In addition, by January 2017, Plaintiffs, through their own investigation, knew that the laboratory claims submitted by Putnam were for tests performed by independent laboratories, not Putnam, and for BCBS member patients not physically present at Putnam. Rather than cease payment or terminate the RightCHOICE Agreement, Plaintiffs continued to pay Putnam for the laboratory claims, despite its knowledge of the laboratories performing the tests. The analysis from Section III.A.5 is incorporated herein. In the circumstances, Plaintiffs cannot allege any genuine loss caused by the Sero Defendants.

9. **Missouri Law Governs Plaintiffs' Fraud Claim, Not Federal Healthcare Laws**

As the Court recognized, "Plaintiffs bring their tort claims under generally applicable Missouri laws." *RightCHOICE Managed Care*, 2019 WL 302515, at *5. Notwithstanding that

judicial determination, Plaintiffs (and their expert Dr. Peter Kongstvedt) reference several federal healthcare laws in an apparent attempt to supplant the elements of fraud under Missouri law and obfuscate the fatal flaws in their Missouri law claims against the Sero Defendants relating to non-federal, commercial insurance. *See* FAC at ¶ 221(c), (d). Plaintiffs' assertions under federal healthcare laws are not simply irrelevant, they are also incorrect.

To the extent Plaintiffs allege that any of the Sero Defendants paid "kickbacks" to healthcare providers (*see* FAC at ¶¶ 127, 221(c)), that allegation is incorrect and irrelevant. Initially, federal kickback laws are inapplicable given that no federal payer programs were involved or made payments to Putnam in relation to the blood tests performed by SeroDynamics. In any event, none of the Sero Defendants ever paid a kickback to a health care provider. SUMF at ¶ 219.



SUMF at ¶ 220.

Plaintiffs attempt to categorize LabMed's marketing efforts as improper kickbacks. That is plainly incorrect. Just as any company pays for advertising and marketing, LabMed paid local vendors around the country to market Putnam's and SeroDynamics' blood testing services. The vendors were not the providers or physicians ordering the blood tests. The vendors were required to enter Teaming Agreements, with comprehensive and detailed requirements regarding

27

compliance with applicable healthcare laws, including anti-kickback laws, violation of which provided grounds for immediate termination. LabMed did not pay any kickbacks (or any money or value) to providers or physicians.

Plaintiffs suggest that the Sero Defendants improperly waived patient copayment and co-insurance obligation. *See* FAC at ¶¶ 13, 221(d). That assertion ignores key terms in the RefLab Agreement between SeroDynamics and Putnam providing that Putnam had the "exclusive" right to submit claims to patients and expressly prohibited SeroDynamics from submitting claims to patients directly or indirectly. SUMF at ¶ 129. Only the entity that submits claims to Plaintiffs (here Putnam) has any obligation regarding co-pays. *Id.* There were no payment obligations owed by patients to SeroDynamics whatsoever—no copayment, coinsurance, or other obligation— and therefore nothing for any of the Sero Defendants to waive. *Id.*

Finally, even assuming (contrary to fact) that any violations occurred, given that Plaintiffs bring their claims under generally applicable Missouri law in relation to commercial insurance (and not any federal payer program), federal law does not apply and provides no basis for recovery by Plaintiffs against the Sero Defendants. In any event, that analysis is unnecessary because no such violations occurred.

**B.     The Sero Defendants Did Not Negligently Misrepresent any Information (Count II)**

Plaintiffs' Count II asserts a claim for ***negligent*** misrepresentation based on the same facts as Plaintiffs' fraud claim. A claim for negligent misrepresentation under Missouri law requires largely the same elements as fraud, except that the cause of action (1) substitutes the "failure to exercise reasonable care" for intent as the speaker's relevant standard of fault; and (2) limits the category of actionable information to information that "was intentionally provided by

the speaker for the guidance of limited persons in a particular business transaction." *Ryann Spencer Grp.*, 275 S.W.3d at 288.

The Sero Defendants made no statements of any kind to Plaintiffs. SUMF at ¶¶ 156-58, 197-207. SeroDynamics made available to Putnam (and Empower) accurate blood testing information. SUMF at ¶¶ 148, 178, 186-90. The analysis from Section III.A is incorporated herein. No issue of material fact exists.

### C. Plaintiffs Are Not Entitled to Restitution under ERISA Section 502(a)(3) against the Sero Defendants (Count III)

In Count III, Plaintiffs seek equitable restitution under ERISA Section 502(a)(3) as a purported fiduciary on behalf of certain ERISA plans (not identified in the FAC). Plaintiffs' ERISA claim fails for multiple independently sufficient reasons.

Under Section 502(a)(3), equitable restitution is available to Plaintiffs only if they can establish that: (1) Plaintiffs are acting as a fiduciary on behalf of the ERISA plans in which they seek recovery; (2) Plaintiffs seek money that "belong[s] in good conscience" to the Plaintiffs; and (3) Plaintiffs can trace the money from the ERISA fund "to particular funds … in the defendant's possession." *RightCHOICE Managed Care*, 2019 WL 302515, at *6. Section 502(a)(3) ***does not authorize compensatory damages***, even where the claim is "couched as a prayer for equitable relief." *Id.* (emphasis added). Equitable restitution is unavailable where the proceeds in question have "dissipated" and the claim seeks to recover from a defendant's general assets. *Id.* (citing *Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 390 (8th Cir. 2017)). "The ***critical question*** is whether [funds] are ***'separate from [defendant's] general assets'—rather than 'mixed' with those assets***—'or dissipated ... on nontraceable assets.'" *Ibson*, 877 F.3d at 390 (emphasis added).

29

Here, Plaintiffs cannot establish any of the required elements. Plaintiffs couch their claim as one for equitable restitution under ERISA; but in reality, it is simply a re-wording of their tort claims, which, as this court recognized, are derived from Missouri law, not ERISA, and have only "peripheral" interaction with the ERISA plans. *See RightCHOICE Managed Care*, 2019 WL 302515, at *6. Accordingly, Plaintiffs have no basis for restitution under ERISA.

### 1. Putnam's Payments to SeroDynamics and LabMed Do Not "Belong in Good Conscience" to Plaintiffs

SeroDynamics performed reliable blood testing on behalf of BCBS members in good faith and without knowledge of any wrongdoing. SUMF at ¶¶ 145-54, 177-92. Similarly, LabMed performed consulting and marketing services in support of Putnam's hospital outreach program. SUMF at ¶¶ 25-26, 210-11, 214-15. SeroDynamics and LabMed received payments from Putnam as bona fide service providers and the payments do not "belong in good conscience" to Plaintiffs. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). It would be inequitable to deprive SeroDynamics or LabMed of payments for the actual services rendered. It would also be inequitable for Plaintiffs to pay ***nothing*** for valuable and necessary services provided to their members. In addition, Plaintiffs cannot establish that the Sero Defendants caused actual injury to each of the ERISA plans. *See Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 630 (8th Cir. 2017). The analysis from Sections III.A.8 and III.H is incorporated herein.

### 2. Plaintiffs are Not Acting as a Fiduciary

Plaintiffs purport to act as a fiduciary on behalf of over a hundred ERISA plans in seeking recovery of payments made by Putnam to SeroDynamics and LabMed for medically necessary blood testing services actually rendered for Plaintiffs' ERISA plan members. Plaintiffs, however, are unable to establish that in bringing this lawsuit, they are acting in a

fiduciary capacity on behalf of the ERISA plans.  Instead, in essence, Plaintiffs seek recovery from the Sero Defendants as a commercial party in an attempt to enforce and maintain its two-tier provider network system (between in-network and out-of-network providers).  ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* FAC at ¶ 258.

In order to seek equitable restitution pursuant to Section 502(a)(3), Plaintiffs must establish that they are acting as a fiduciary of each ERISA plan on which they seek recovery.  *See* 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 1002 (emphasis added).  Plaintiffs' fiduciary status under each ERISA plan "is not an all-or-nothing concept."  *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002 (8th Cir. 2016).  Courts assessing claims under ERISA must assess whether the party acts as a fiduciary "***when taking the action subject to the complaint***."  *Id.* (emphasis added); *see also Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Center*, 623 F.Supp.2d 568, 577 (D. N.J. 2009).

Here, the various Administrative Services Agreements ("ASA") govern the relationship between Plaintiffs and employer ERISA plans, and determine the extent (if any) of Plaintiffs' fiduciary status.  These agreements do not delegate to Plaintiffs fiduciary status in relation to recovery of payments, let alone recovery against out-of-network, independent blood laboratory for services actually rendered and payable under the plans.  *See Id.* at 577 ("Here, what is critical to Plaintiff's claims is not what benefits the plan participants were entitled to under their ERISA plans but the relationship between Plaintiff and its out-of-network and in-network providers … In pursuing these claims, Plaintiff does not seek to deny or control benefits as a fiduciary but rather, to protect the integrity of its two-tiered provider system.").

31



SUMF at ¶ 225 (emphasis added).

SUMF at ¶ 261 (emphasis added).

SUMF at ¶ 262 (emphasis added).

SUMF at ¶ 263 (emphasis added).

Plaintiffs have not (and cannot) meet their burden in establishing that they seek recovery as a fiduciary. Therefore, recovery is not available under Section 502(a)(3).

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUMF at ¶ 258.

### 3. Plaintiffs are Not Seeking "Appropriate Equitable Relief"

Despite Plaintiffs' attempt to frame their claim as one for "appropriate equitable relief," in reality, Plaintiffs request legal relief in the form of money damages from the Sero Defendants' general assets, which is not permitted under ERISA. *See RightCHOICE Managed Care*, 2019 WL 302515, at *6; *see also Ibson*, 877 F.3d at 390 ("A restitution claim is cognizable in equity *only if* money or property belonging in good conscience to the plaintiff can *clearly be traced to particular funds or property* in the defendant's possession." (emphasis added)).

Here, Plaintiffs' supposed "tracing" analysis merely attempts to calculate the total funds paid by Plaintiffs to Putnam for blood tests performed by SeroDynamics, and the total amount of payments made by Putnam to SeroDynamics and LabMed. Plaintiffs do not – and cannot – "clearly trace" any "particular funds or property" in the Sero Defendants' possession originating from Plaintiffs' ERISA plans.



*See, e.g.*, Fortune Report, at ¶ 38

SUMF at ¶ 119.

Second, Putnam did not simply pay SeroDynamics and LabMed the identical reimbursements from Plaintiffs; rather, SeroDynamics and LabMed received payments based

upon a separate, agreed-upon payment structure.  SUMF at ¶¶ 112-18.

SUMF at ¶ 119.

SUMF at ¶ 119.  Plaintiffs are unable to "clearly trace" any actual payments originating with Plaintiffs' plans from Putnam to SeroDynamics or LabMed, let alone payments made in relation to Plaintiffs' ERISA plans.  Instead, Plaintiffs perform a post hoc calculation applying the agreed payment formula between SeroDynamics, LabMed and Putnam to <u>estimate</u> the amount *theoretically* paid from Putnam to SeroDynamics and LabMed relating to tests performed on patients covered by BCBS ERISA plans.

SUMF at ¶ 125.

SUMF at ¶ 125.

Fourth, the Sero Defendants do not have, and never had, possession of any separate or distinct fund that originated from Plaintiffs.  Rather, the remaining funds in the Sero Defendants' possession are general assets and cannot be attributed to Plaintiffs' ERISA plans.

Fifth, to the extent that Plaintiffs' alleged funds have been transferred to non-parties of the lawsuit, those funds are not "particular funds or property in the defendant's possession" and not recoverable by Plaintiffs in this lawsuit.  *See Knudson*, 534 U.S. at 213.

**D. Plaintiffs are Not Entitled to Declaratory and Injunctive Relief under ERISA Section 502(a)(3) and 28 U.S.C. §§ 2201 and 2202 (Count IV)**

Plaintiffs' Count IV asserts a claim for declaratory and injunctive relief under ERISA § 502 (a)(3) and 28 U.S.C. §§ 2201 and 2202. This claim is no different than Count III; it merely seeks different remedies and therefore fails for the same reasons. The analysis from Sections III.C and III.H is incorporated herein.

In addition, Count VI separately fails as the Sero Defendants have not had any relationship with Putnam since at least late 2017. SUMF at ¶¶ 241-44. This case therefore does not present a "live" or "ongoing" controversy that justifies the issuance of any injunctive relief.

**E. The Sero Defendants Did Not Tortiously Interfere with the RightCHOICE Agreement or Cause any Other Party or Non-Party to Interfere with that Agreement (Count V)**

Plaintiffs allege in Count v. that the Sero Defendants tortiously interfered with the RightCHOICE agreement by causing Putnam to breach the Agreement in numerous ways. *See* FAC at ¶ 289. As against the Sero Defendants, that claim has no factual basis.

SUMF at ¶ 230. For purposes of this Motion, given that the Sero Defendants were never provided a copy of the RightCHOICE Agreement or notice of its terms, and had no knowledge of the RightCHOICE Agreement or its terms, it is unnecessary at this time to address Plaintiffs' self-serving interpretations of the RightCHOICE Agreement.

"Tortious interference with contract occurs when the defendant, without justification, causes damage by intentionally interfering with a business relationship of which the defendant

35

has knowledge." *RightCHOICE Managed Care, Inc.*, 2019 WL 302515, at *8 ("a plaintiff must prove: (1) the existence of a contract or a valid business relationship; (2) defendant's knowledge of the contract or relationship; (3) defendant's intentional interference inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages.") (citing *Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. Ct. App. 2003).

Plaintiffs' tortious interference claim fails for multiple independently sufficient reasons.

### 1. No Knowledge of the Contract

The Sero Defendants were not provided copies of Putnam's third-party payer agreements and were not provided with a copy of the RightCHOICE or notice of its terms. SUMF at ¶¶ 161-67. Furthermore, the Sero Defendants had no knowledge of the RightCHOICE Agreement or its terms. *Id.* ███████████████████████████ SUMF at ¶¶ 165-66. ███████

███████████████████████████████████████

███████████████████████████████████████

███████ SUMF at ¶ 167. No genuine issue of material fact exists on this element.

### 2. No Intentional Interference Inducing or Causing a Breach

Plaintiffs must produce substantial evidence showing that the Sero Defendants "intended to interfere" with the RightCHOICE Agreement or, at a very minimum, "knew" that interference with the RightCHOICE Agreement was either "certain" or "substantially certain" to occur. *See RightCHOICE Managed Care*, 2019 WL 302515, at *8; *Blanke v. Hendrickson*, 944 S.W.2d 943, 944 (Mo. Ct. App. 1997).

The analysis from Sections III.E.1 and III.A.2 is incorporated herein. Without knowledge of the terms of the RightCHOICE Agreement, and without knowledge of the claims submitted by Putnam or the information contained therein (or whether those claims complied with the terms of the RightCHOICE Agreement), it was impossible for the Sero Defendants to

intend to interfere with the RightCHOICE Agreement (or even to know what would constitute interference or to know that interference was "substantially certain").  SUMF at ¶¶ 161-67.  To the extent that Putnam breached the RightCHOICE Agreement, it was caused by Putnam (and Empower) and their own actions, not by the Sero Defendants.  ███████████████████ █████████████████████████████████████████████████████████ SUMF at ¶¶ 165-67.

### 3.    No Absence of Justification

Under Missouri law, to prevail on a tortious interference of contract claim, a plaintiff has the burden of producing substantial evidence to establish a lack of justification.  *RightCHOICE Managed Care*, 2019 WL 302515, at *8;  *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009).  If the defendant has a legitimate interest, economic or otherwise, in the contract sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests.  *Id.* at 428.  The Missouri Supreme Court has defined "improper means" as "those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."  *Captiva Lake Investments, LLC v. Fid. Nat'l Title Ins. Co.*, 883 F.3d 1038, 1054-55 (8th Cir. 2018) (quoting *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 317 (Mo. 1993)), *reh'g denied* (May 29, 2018).

Here, the Sero Defendants were justified and had a legitimate economic interest in entering into a business arrangement with Putnam for the provision of blood testing services. SUMF at ¶¶ 75-81, 109-28.  The Sero Defendants acted properly and in good faith in entering the arrangement and in performing the blood testing services for Putnam, fulfilling the terms of the arrangement.  SUMF at ¶¶ 145-54, 177-96.  The Sero Defendants were unaware of any wrongdoing.  ████████████████████████ SUMF at ¶ 200.

### 4. No Damages

Plaintiffs must establish that the Sero Defendants caused loss suffered by Plaintiffs. *See RightCHOICE Managed Care*, 2019 WL 302515, at *8. Plaintiffs cannot establish any loss, much less that loss was caused by the Sero Defendants. The analysis from Section III.A.8 is incorporated herein.

### F. The Sero Defendants Did Not Conspire with any Party or Non-Party to Commit any Torts against Plaintiffs (Count VI)

Plaintiffs assert in Count VI that the Sero Defendants conspired with co-defendants to commit three torts against the Plaintiffs: fraud, negligent misrepresentation and tortious interference with contract. Regardless of the underlying tort, Plaintiffs' civil conspiracy claim has no factual or legal basis against the Sero Defendants.

Under Missouri law, a plaintiff asserting a claim of civil conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged. *RightCHOICE Managed Care*, 2019 WL 302515, at *9 (quoting *Global Control Sys., Inc. v. Luebbert*, No. 4:14-cv-657-DGK, 2016 WL 910190, at *2 (W.D. Mo. Mar. 9, 2016)); *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999). If the tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well. *Id.*

As an initial matter, Plaintiffs suggest that negligent misrepresentation provides a sufficient underlying tort on which to base a civil conspiracy claim. *See* FAC at ¶ 293. However, under Missouri law, "[i]t is common sense that one cannot conspire to commit a negligent or unintentional act." *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 833, 846 (E.D. Mo. 2018). *See also United States v. Sdoulam*, 398 F.3d 981, 987 (8th Cir. 2005); *Bader Farms, Inc.*

*v. Monsanto Co.*, Case No. 1:16CV299SNLJ, 2018 WL 1784394, at *5-6 (E.D. Mo. Apr. 13, 2018); *Wright v. Brooke Grp. Ltd.*, 114 F. Supp. 2d 797, 837 (N.D. Iowa 2000). Likewise, it is common sense that one cannot conspire to negligently misrepresent something. Accordingly, this court should reject Plaintiffs' claim that the Sero Defendants conspired with co-defendants and co-conspirators to negligently misrepresent information.

Plaintiffs' civil conspiracy claims for multiple other reasons.

### 1.      No Unlawful Objective

SeroDynamics and LabMed agreed to enter a business arrangement with Putnam and Empower and to provide reference blood laboratory services on an as-needed basis in relation to Putnam's RHA outreach program. SUMF at ¶¶ 75-81, 111-15. The RHA outreach program, as described by Perez, sought to further the same or similar rural access to health and veteran initiatives as those pursued by the Sero Defendants and non-party Cadira Companies. SUMF at ¶¶ 68-81. The Sero Defendants entered the arrangement to further those initiatives, to help Putnam obtain financial stability, and to generate business for SeroDynamics. *Id.* The evidence in the case confirms this agreement. Plaintiffs have no evidence to the contrary.

The Sero Defendants did not agree (expressly or tacitly) for Putnam (or Empower) to misrepresent information to third-party payers, to hide the identity of SeroDynamics as the laboratory performing the blood tests or to *any* illegal or improper behavior. ███████████ ████████████████ SUMF at ¶ 156-58, 197-207.

Rather than conspire to commit unlawful acts, the uncontroverted evidence shows Sero Defendants took significant steps to enter the arrangement at Putnam in a manner that furthered the Sero Defendants' compliance efforts, including by insisting on contracting directly with Putnam (and refusing to contract with Putnam through Hospital Lab Partners, as the urine labs did), and by implementing compliance measures internally and incorporating them in business

39

partner agreements. SUMF at ¶¶ 110, 208-25. Plaintiffs have no evidence disputing that these measures were taken.

### 2. No Meeting of the Minds

Under Missouri law, in order to have had a "meeting of the minds," Plaintiffs must establish that the Sero Defendants had knowledge of the unlawful behavior or objective, in this case, the alleged misrepresentations and interference with the RightCHOICE Agreement. *See*, *e.g.*, *Luebbert*, 2016 WL 910190, at *2 ("no record evidence establishes that Midwest knew about their mission, much less their contracts, at the time they breached them. Without this knowledge, Midwest could not have had a meeting of the minds to breach the contracts." (internal citations omitted)); *The Olivier Family Interests*, 2012 WL 12893873, at *5.

The Sero Defendants had no knowledge of any misrepresentations or interference with the Right CHOICE Agreement. SUMF at ¶¶ 145-54, 161-67. The analysis from Sections III.A.3-7 and III.E.1-2 is incorporated herein. Accordingly, no "meeting of the minds" existed between the Sero Defendants and any other party.

### 3. No Act in Furtherance of Conspiracy

The Sero Defendants performed blood laboratory services for Putnam. SUMF at ¶ 124. The Sero Defendants had no knowledge of any civil conspiracy (SUMF at ¶¶ 145-54) and could not have taken any act in furtherance of any conspiracy. To the extent that Plaintiffs assert bare allegations of civil conspiracy based on any alleged tortious acts of the Sero Defendants, there is no evidentiary support of an underlying tort. The analysis from Sections III.A, III.B and III.E is incorporated herein.

### 4. No Damage to Plaintiffs

Plaintiffs have no evidence that the laboratory arrangement at Putnam caused Plaintiffs any loss, much less loss of any reasonable certainty. ██████████████████

40

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████ SUMF at ¶ 228. █████████████████████

█████████████████████████████████████████████████████

████████████████████████████ SUMF at ¶ 230. The analysis from Section III.A.5 is incorporated herein. By knowingly continuing to reimburse Putnam, Plaintiffs cannot genuinely assert that any alleged conspiracy caused them any damage.

**G.**     **Under Missouri Law, No Legal Basis Exists for Plaintiffs' Claim for Aiding and Abetting a Tort (Count VII)**

In Count VII, evidencing Plaintiffs' desperation in this lawsuit, Plaintiffs assert a cause of action ("aiding and abetting a tort") that the Eighth Circuit Court of Appeals addressed in 2017 and ***rejected***. In particular, the Eighth Circuit held that the Missouri Supreme Court has not recognized such a claim.

In *Jo Ann Howard & Assocs., P.C. v. Cassity*, the Eighth Circuit Court of Appeals analyzed Missouri case law and determined that the Missouri Supreme Court would not recognize an aiding and abetting cause of action. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 650–51 (8th Cir. 2017), *reh'g denied* (Dec. 15, 2017). Likewise, the U.S. District Court for the Eastern District of Missouri has recently ruled that "[i]n light of this recent Eighth Circuit guidance, the Court cannot find that the Missouri Supreme Court would recognize a cause of action under § 876 [aiding and abetting]. Defendant's Motion to Dismiss will therefore be granted …." *Cardinal Health 110, LLC v. Premiere Healthcare, LLC*, No. 1:18 CV 165 ACL, 2019 WL 108837, at *7 (E.D. Mo. Jan. 4, 2019); *see also Bader Farms, Inc. v. Monsanto Co.*, No. 1:16CV299-SNLJ, 2019 WL 3017425, at *7 (E.D. Mo. July 10, 2019) (federal courts

41

sitting in Missouri are "*in agreement*" that Missouri appears not to have recognized the aid-and-abetting tort (emphasis added)).

Accordingly, summary judgment in favor of the Sero Defendants is mandated.

**H.      The Sero Defendants Are Entitled to Summary Judgment on Plaintiffs' Claims for Unjust Enrichment (Count VIII) and Money Had and Received (Count IX)**

In Counts VIII and IV, Plaintiffs allege claims for unjust enrichment and money had and received, which, under Missouri law, are treated as the same claims. *See RightCHOICE Managed Care*, 2019 WL 302515, at \*9. To avoid summary judgment, Plaintiffs must establish that: (1) the defendant obtained a benefit; (2) the plaintiff suffered an economic detriment as a result; and (3) it would be inequitable for the defendant to keep the benefit under the circumstances." *Id.* None of these elements are present in this case as against the Sero Defendants.

First, Plaintiffs did not confer a benefit to any of the Sero Defendants. SUMF at ¶ 124. Plaintiffs gave **nothing** to the Sero Defendants. Rather, the benefits obtained by the Sero Defendants were the payments made <u>by Putnam</u> to SeroDynamics and LabMed. *Id.* Plaintiffs were not parties to that arrangement.

Second, Plaintiffs did not suffer an economic detriment as a result of the payments from Putnam to SeroDynamics or LabMed, or as a result of the reimbursement paid by RightCHOICE to Putnam in relation to the blood tests. SeroDynamics and LabMed performed valuable services for Putnam, including medically necessary blood tests for patients covered by BCBS plans (and other commercial payer plans), and related consulting and marketing services. SUMF at ¶¶ 25-26, 177-96, 210-15. ██████████████████████████████████████

████████████████████████████████████████████████

██████████ SUMF at ¶¶ 193-96. Plaintiffs have failed to quantify the amount of any benefit

Plaintiffs conferred to the Sero Defendants which was an economic detriment to Plaintiffs or inequitable for Plaintiffs to keep. The analysis from Section III.A.8 is incorporated herein.

Third, SeroDynamics and LabMed performed under the Putnam arrangement in good faith and did not participate in, or know of, any wrongdoing, and the receipt and retention of the payments from Putnam is not inequitable under the circumstances. SUMF at ¶¶ 145-54. Rather, it would be inequitable to deprive the Sero Defendants of Putnam's payments for the actual services rendered.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

SUMF at ¶¶ 226-30. The analysis from Section III.A.5 is incorporated herein. After investigating the laboratory arrangement at Putnam, Plaintiffs revised the RightCHOICE Agreement and continued to pay Putnam reimbursements. *Id. See also Pitman*, 309 S.W.3d at 403-04.

## I. Individual Defendants Beau Gertz and Mark Blake Are Entitled to Summary Judgment on all Counts (I to IX)

Finally, Plaintiffs' FAC seeks liability on all nine counts against Gertz and Blake individually. No factual basis exists to establish individual liability.

As the Court noted, under Missouri law, a plaintiff can seek individual liability "for tortious corporate conduct if he or she had 'actual or constructive knowledge of, and participated in, an actionable wrong.'" *RightCHOICE Managed Care*, No. 2019 WL 302515, at *9 (quoting *State ex rel. Down Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. 2004)). Here, no basis exists under Missouri law for individual liability. Gertz and Blake did not know about or participate in an actionable wrong. SUMF at ¶¶ 145-54. The Sero Defendants had no responsibility or involvement in submitting claims to third-party payers in relation to Putnam and

were unaware of *any* billing practices between Putnam and Plaintiffs (let alone irregular ones). SUMF at ¶¶ 129-30, 145-54. Plaintiffs cannot create a genuine issue of material fact. Accordingly, summary judgment is appropriate on all counts against individual defendants Gertz and Blake.

Dated this Friday, February 28, 2020.	Respectfully submitted,

/S/ *Gregory J. Minana*

GREGORY J. MINANA	MO #38004
JAMES R. MONTGOMERY	MO #68281
AARON CHICKOS	MO #62072

HUSCH BLACKWELL LLP

4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
greg.minana@huschblackwell.com
jr.montgomery@huschblackwell.com
aaron.chickos@huschblackwell.com

10 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone (314) 480-1500
Facsimile (314) 480-1505

***Attorneys for Defendants Mark Blake,
Beau Gertz, SeroDynamics LLC, and
LabMed Services, LLC***

45

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, February 28, 2020, I filed the foregoing with the Court's CM/ECF system, which will serve an electronic copy to all ECF-registered counsel of record.

*/S/ Gregory J. Minana*
Attorney
