# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| RIGHTCHOICE MANAGED CARE, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>HOSPITAL PARTNERS, INC., et al., )<br>)<br>Defendants. ) | No. 5:18-cv-06037-DGK |

## ORDER FINDING WAIVER OF PRIVILEGE FOR UNJUSTIFIABLE DELAY IN PRODUCING PRIVILEGE LOG

This lawsuit arises out of an alleged pass-through billing scheme for laboratory tests billed from a small, rural Missouri hospital. Plaintiffs, a collection of health insurers, are suing a variety of Defendants who participated in, or benefitted from, the alleged fraud, including the laboratories. Now before the Court is Plaintiffs' "Motion for Order That the Sero Defendants have Waived the Attorney-Client Privilege or, in the Alternative, Striking All Evidence of Reliance on Advice of Counsel and for In Camera Review" (Doc. 366).

Plaintiffs argue Defendants Serodynamics, LLC ("Serodynamics") and two Defendants who directed it, Beau Gertz ("Gertz") and Mark Blake (collectively "the Sero Defendants"), who are all represented by the same law firm, have waived the attorney-client privilege by asserting an advice-of-counsel defense, or alternately, by failing to produce a privilege log for approximately 1,200 documents until four months after the close of discovery. Finding the Sero Defendants' delay in providing the privilege log is unjustifiable and inexcusable, the Court holds their behavior merits the serious sanction of holding they have waived any privilege in the documents listed on the privilege log. Plaintiffs' motion is GRANTED.

**Background**

Plaintiffs allege Defendants relationship to each other in the pass-through-billing scheme was as follows. Defendants Jorge Perez ("Perez")[1] and David Byrns ("Byrns")[2] took control of Putnam County Memorial Hospital ("Putnam"), a financially struggling fifteen-bed hospital in rural Missouri, through Defendant Hospital Partners, Inc. Perez and Byrns engaged Defendant Empower H.I.S. LLC ("Empower H.I.S.") to handle billing for the scheme. Perez and Byrns engaged laboratories—including Defendants Serodynamics, Pinnacle Laboratory Services ("Pinnacle Labs"), and former Defendant LifeBrite Laboratories, LLC ("LifeBrite Labs")—to collect patient specimens from health care providers and test them at their laboratories in Colorado, Florida, and Georgia, respectively. The laboratories would then send the patient and test information to Empower H.I.S., which would bill the tests using Putnam's identifiers (*e.g.*, Tax Identification Number and National Provider Identifier) and represent to Plaintiffs that Putnam performed the tests. This allowed Perez and Byrns, along with the codefendants, to exploit Putnam's in-network contract with Plaintiffs, which provided them with more lucrative reimbursements than the laboratories would have received if they had billed the tests directly to Plaintiffs.

The following facts relevant to the pending motion are not in dispute.

Plaintiffs filed their lawsuit on March 30, 2018. Early on in the litigation, Plaintiffs asked each of the Sero Defendants in a request for production to produce all documents they relied upon

---

[1] On June 17, 2020, a federal grand jury indicted Perez and nine other individuals—including the individuals who allegedly owned and controlled Defendants Pinnacle Labs and LifeBrite Labs—in a twenty-three count indictment in connection with the events alleged here.

[2] On October 29, 2019, Byrns pled guilty by agreement to one count of Conspiracy to Commit Health Care Fraud in connection with the events alleged here.

"if you intend to rely on advice of counsel as a defense in this litigation." Pls.' Req. for Produc. of Docs. No. 36 (Doc. 404-1) at 7. Each of the Sero Defendants responded, "Not applicable." *Id.*

The Court's initial scheduling order set July 31, 2019, as the deadline for fact discovery. Discovery proceeded slowly in this case, largely because of all the Defendants—including the Sero Defendants'—recalcitrance to comply with their discovery obligations. *See*, *e.g.*, Order Regarding Disc. Dispute (Doc. 255) at 5-7 (noting counsel for the Sero Defendants improperly ordered Gertz and Blake not to answer certain questions during deposition and also made improperly suggestive speaking objections); Order Granting Plaintiffs' Motion for R. 37 Sanctions Against Empower Defendants.[3]

On June 28, 2019, Plaintiffs' counsel sent an email to all defense counsel—including counsel for the Sero Defendants—asking them to produce a privilege log. The Sero Defendants did not respond.

On July 3, 2019, Plaintiffs' moved to modify the scheduling order to extend certain deadlines related to discovery, most notably to extend the deadline to take fact discovery to September 30, 2019. The Sero Defendants objected, arguing Plaintiffs had almost a year to obtain relevant information, further discovery was unwarranted, and the additional two months of discovery would impose an undue burden on them.

The Court granted the motion, finding Plaintiffs had tried to comply with the Court's deadlines, but "Defendants' refusal to produce relevant documents has stymied their efforts." Order (Doc. 256) at 2-3. The Court extended: the deadline to take fact discovery to September 30, 2019; the deadline to designate experts to October 31, 2019; the deadline to complete expert

---

[3] The Court also notes the Sero Defendants have, at times, not pursued discovery in good faith either. *See*, *e.g.*, Order Regarding Disc. Dispute Concerning R. 30(b)(6) Deps. (Doc. 302) at 2 (sustaining fifteen objections to Serodynamics' proposed 30(b)(6) deposition topics, ruling "[t]he disputed topics have no bearing on the claims or defenses in this case . . . the only purpose is to embarrass Plaintiffs.").

3

discovery to December 31, 2019; and the deadline to file motions to strike expert designations to January 15, 2020. *Id.* The deadline to file dispositive motions remained January 31, 2020.

On July 16, 2019, Plaintiffs' counsel sent another email to all defense counsel—including counsel for the Sero Defendants—copying the June 28 email, and asking them a second time to provide a privilege log. He wrote:

> Plaintiffs still have not received privilege logs from many defendants, even though some defendants have expressly invoked privilege, including at depositions, and we suspect others have withheld documents on that basis. Rule 26(b)(5) requires affirmative steps by parties claiming privilege over otherwise discoverable information. Give the current schedule in this matter, please let know if there is any reason you will not be producing a privilege log before the deadline for discovery motions.

Nathaniel Moore email (Doc. 404-1) at 227. The Sero Defendants did not produce a privilege log or otherwise respond.

On October 22, 2019, Plaintiffs moved to modify the scheduling order a second time by extending the five remaining deadlines[4] one month because Defendants had failed to provide discovery by court-ordered deadlines. The Sero Defendants opposed the request, arguing they had "done everything in their power to meet the Court's deadlines and respond to Plaintiffs' burdensome discovery." Opp'n to Pls.' Second Mot. to Modify the Scheduling and Trial Order (Doc. 337) at 2. The Court granted the motion, noting the Plaintiffs had complied with the scheduling order, the proposed extension was reasonable, and that "far from prejudicing Defendants, the amendments will benefit all parties because it will give all Defendants additional time to meet their obligations." Order Granting Plaintiffs' Mot. to Amend Scheduling Order (Doc. 342) at 2-3.

---

[4] The deadline to complete fact discovery had expired on September 30.

4

On December 31, 2020, the Sero Defendants produced the expert report of Dr. Karen Meador. In her report, Dr. Meador arguably opines that the Sero Defendants are not liable under an advice of counsel theory.[5] Plaintiffs deposed Dr. Meador on January 21, 2020, and her testimony on this point was consistent with her report.[6]

On January 2, 2020, Plaintiffs' counsel sent an email to all defense counsel discussing scheduling for the depositions of Plaintiffs' experts. In closing, counsel observed, "We still have not received privilege logs from most of the defendants. Please provide them immediately." Doc. 404-1 at 230. Again, the Sero Defendants did not respond.

---

[5] For example, she writes:

> From my assessment of the facts of the case and the depositions, it appears that the parties were clearly intending for SeroDynamics to be a reference lab, criteria were met, and *they had legal counsel that signed off on the arrangement*. It appears that Mr. Gertz and Mr. Blake designed the arrangement to meet the basic criteria for a reference lab using an entrepreneurial model under which they were striving to achieve success for their companies and Putnam *while following the rules of the time known to them and their legal advisors*.

Affidavit of Rebuttal Expert: Karen Meador dated December 2019 at 35-36 (Doc. 404-1 at 33-34) (emphasis added).

[6] For example, the following exchanged occurred during her deposition:

> Q: I want to be clear. Dr. Meador, you opined in your report Mr. Gertz and Mr. Blake were given reassurance regarding the structure of the business and contractual arrangements with Putnam. What reassurance were they given by counsel?
>
> [Objection.]
>
> A: I – I believe I answered that and it is from reading their depositions and them saying that they obtained guidance from counsel in these arrangements.
>
> Q: And what was the counsel, what was the advice that you understand Mr. Gertz and Mr. Blake received with respect to Putnam?
>
> [Objection.]
>
> A: That the arrangements were appropriate.

Meador Dep. 104:22-105:15 (Doc. 404-1 at 41-42).

5

On January 23, 2020, Plaintiffs' counsel sent another email to counsel for the Sero Defendants. In it, counsel observed that despite stating in written discovery that they would not be relying on an advice-of-counsel defense, their expert had opined on the content of the legal advice the Sero Defendants had purportedly received and used it to form her opinion. "At the same time, despite our repeated requests for privilege logs from you, we have yet to receive one from you." Doc. 404-1 at 230. Plaintiffs' counsel requested confirmation whether their clients were waiving the attorney-client privilege or not. If they were not, then "we need a privilege log from you identifying all documents withheld." *Id*.

On January 28, 2020, the Sero Defendants produced a privilege log. It disclosed approximately 1,200 documents[7] that the Sero Defendants are withholding as privileged, almost all on the basis of attorney-client privilege.

Most of the entries in the log are for emails sent to or from Gertz and Blake. (Blake is an attorney, and according to Gertz, Blake's role with respect to Serodynamics interaction with Putnam was dual: he was an "[o]verall business man and legal, general counsel.") Some documents appear to have been withheld because they involve owners of the Sero Defendant entities who are also attorneys. For example, Jeff Cohen was an owner of Serodynamics through FHLP, LLC, and emails he was included on were withheld. Many of the withheld emails were sent during the latter half of 2016, when Plaintiffs contend Defendants were planning and setting up their alleged scheme.

The descriptions in the privilege log provide little substantive information about the entries. A typical entry for "description" states, "Privileged communications from Mark Blake to Beau Gertz providing legal analysis," or "Privileged attorney-client communications between Mark

---

[7] The privilege log is 167 pages long and has between six and fifteen entries on each page.

Blake and Cadira/Serodynamics/LabMed personnel providing legal analysis regarding Cadira/SeoDynamics/LabMed business."

Some of the claims on the privilege log appear to be without merit.[8]

The day after receiving the privilege log, Plaintiffs' counsel requested a conference with the Sero Defendants counsel regarding the Sero Defendants' reliance on advice of counsel and the privilege log. When asked why the privilege log was produced to Plaintiffs in late January 2020, the Sero Defendants' counsel did not provide an explanation, nor in their briefing on the pending motion have the Sero Defendants have offered any explanation, justification, or apology for waiting until four months after the close of fact discovery to provide a privilege log.

**Standard**

Federal Procedure of Civil Procedure Rule 26(b)(5)(A) dictates what a party seeking to shield material from discovery on the basis of the attorney-client privilege "must" do. It states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party *must*:

---

[8] For example, the Sero Defendants produced an email (Bates numbered SERO0083459-60) from Laine Hetzler (a vice-president of sales), who was forwarding to two individuals in a marketing group an email sent to her by Gertz on September 20, 2016, at 8:43 a.m. In the email, Gertz reports that one of Labmed's contracted marketing groups no longer wished to have their specimens billed through the in-network contract of Campbellton-Graceville Hospital (another rural hospital which Defendants allegedly used in a pass-through billing scheme), and instead wanted the tests billed directly (and out-of-network) by Serodynamics. There is no indication in the email that it was produced in anticipation of litigation, nor there is correspondence soliciting or providing legal advice, and the chain is forwarded to a third party. Yet an email from Gertz dated September 20, 2016, at 8:43 a.m. appears twice on the privilege log. Two other emails sent in the same email chain by non-attorneys are also listed on the log. The inclusion of Blake on the email chain is the basis for the privilege claim.

A claim of privilege invoked with respect to an email produced on March 11, 2019, appears similarly without merit. The email (Bates numbered SERO0002590) is an email chain spanning from October 18 to 19, 2016, involving Blake, Jeff Cohen, Gertz, and others, with the subject line "Putnam Community Hospital Billing – Transition from CGH [Campbellton-Graceville Hospital] Attorney Client Communication." This email—which was used as a deposition exhibit on June 5, 2019, without objection from the Sero Defendants—does not appear to include the solicitation of, or provision of, legal advice. Yet the privilege log includes these very emails—or at least emails with the same subjects, dates, and times sent—that the Sero Defendants assert are reflective of "[p]rivileged attorney-client communications between Mark Blake, outside counsel, and Cadira/Serodynamics/Labmed personnel providing or soliciting legal analysis regarding Cadira/Serodynamics/Labmed business." Privilege Log at 28 (Doc. 404-1 at 72).

7

> (i) expressly make the claim; *and*
>
> (ii) *describe the nature of the documents*, communications, or tangible things not produced or disclosed—*and do so in a manner that*, without revealing information itself privileged or protected, *will enable other parties to assess the claim.*

(Emphasis added). In other words, the litigant must provide a privilege log. *See Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (holding a party asserting a privilege met its burden "when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question."). This requirement is consistent Rule 26(b)(5)(A)'s purpose, which is to "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection," and to enable a reviewing judge to determine whether the information is properly claimed as privileged. Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment; *see Chevron Corp v. Weinberg Grp.*, 286 F.R.D. 95, 98 (D.D.C. 2012) (noting a privilege log also assists the court).

A party's delay or outright failure to provide a privilege log can waive the privilege, but does not waive it automatically. *See Isham v. Booneville Cmty. Hosp.*, No. 2:14-CV-02018, 2015 WL 11117159, at *3 (W.D. Ark. Apr. 23, 2015) (surveying different approaches and holding a party's delay or failure to provide a privilege log does not automatically waive the privilege); Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection. The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection."). Waiver of the privilege is reserved as a serious sanction "for cases of unjustified delay, inexcusable conduct, and bad faith." *United States v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).

**Discussion**

**I.     The Sero Defendants have not asserted an advice-of-counsel defense, so they have not waived the attorney-client privilege on that basis.**

In their Opposition, the Sero Defendants state unequivocally that they are not asserting an advice-of-counsel defense. This is confirmed by their response to Plaintiffs' request for production of documents number 36. They contend the topic of Blake and Gertz consulting lawyers about the legality of the billing arrangement only arose during their depositions because Plaintiffs' counsel asked about it. Doc. 418 at 3-4. Hence, they did not waive the privilege by asserting the defense.

The Court finds the Sero Defendants are not asserting an advice-of counsel defense and so have not waived the attorney-client privilege on that basis. The Court cautions, however, that it will hold these Defendants to their representation and not permit them to raise the defense in any way, including indirectly through expert testimony.

This portion of Plaintiffs' motion is denied.

**II.    The Sero Defendants have waived the attorney-client privilege by waiting to produce the privilege log until four months after the close of discovery without justification.**

The Sero Defendants produced their 167-page privilege log on January 28, 2020, four months after the deadline to conduct fact discovery (September 30, 2020), nearly three weeks after the deadline to file discovery motions related to expert discovery (January 8, 2020), and two weeks after the deadline to complete expert discovery (January 15, 2020). In other words, the Sero Defendants produced the privilege log to Plaintiffs two weeks after the last possible deadline for them to conduct discovery on anything they might have learned from it.

The Sero Defendants' delay in producing the privilege log is exceeded only by their hubris in attempting to shift the blame for their failure to the Plaintiffs. Indeed, the Sero Defendants allege they timely asserted attorney-client privilege, and Plaintiffs knew they were asserting the

9

privilege with respect to some documents. Since Plaintiffs never raised the issue with the Court to force them to produce a privilege log and instead proceeded with discovery, it is Plaintiffs' own fault they did not get a privilege log until January 28, 2020.

This argument is without merit. First, the Sero Defendants never unambiguously asserted the attorney-client privilege with respect to any *particular* document before January 28, 2020. Granted, the Sero Defendants claim they asserted the attorney-client privilege in their responses to Plaintiffs' First Request for Production of Documents.[9] But objecting to a request for production of documents "to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine," is not asserting the attorney-client privilege, it is reciting a boilerplate objection. Even if this response qualified as invoking the privilege, however, it does not help the Sero Defendants' position: It confirms they consciously withheld documents under the attorney-client privilege for fourteen months before springing a privilege log on Plaintiffs four months after the close of fact discovery.

The Sero Defendants claim that they timely asserted the attorney-client privilege here also ignores the express text of Rule 26(b)(5)(A), which states a party withholding information by claiming it is privileged "*must*: (i) expressly make the claim; *and* (ii) *describe the nature of the documents*, communications, or tangible things not produced or disclosed—*and do so in a manner that*, without revealing information itself privileged or protected, *will enable other parties to assess the claim*." *See Rabushka*, 122 F.3d at 565 (holding a party asserting the attorney-client privilege

---

[9] The Court did not include this assertion in the "Background" section because the Sero Defendants have not provided any evidence supporting this claim. That said, the Court notes that page ten of the Sero Defendants' responses to Plaintiffs' First Request for Production is in the record as an exhibit to Plaintiff's Suggestions in Support. And in their responses to request 34, which seeks "All documents related to any criticism of, or questioning of the legality of, the laboratory-billing scheme" at Putnam, each Sero Defendant answered, "This Defendant objects to this Request because it is overbroad and seeks documents equally available to the requesting party . . . This Defendant also objects to this Request to the extent it seeks documents protected by the attorney client privilege and/or work product doctrine." Doc. 404-1 at 13.

10

met its burden "when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question."). While the Sero Defendants may have satisfied the first requirement to make a claim, they did not satisfy the second until they provided a privilege log on January 28, 2020. Thus, their assertion was anything but timely.

Second, the Sero Defendants' suggestion that they are absolved of responsibility because Plaintiffs knew some documents were being withheld on the basis of privilege is also not persuasive. As a threshold matter, the argument is based on a false premise. While Plaintiffs obviously *suspected* they were withholding some documents, they did not know for certain. Hence, Plaintiffs' counsel's email dated January 23, 2020, seeking confirmation whether documents were being withheld, and if so, requesting a privilege log be provided. But even if Plaintiffs knew some documents were being withheld, they did not know how many—approximately 1,2000—much less possess a description of any particular document which would enable them to file a motion to compel. Plaintiffs did not possess this information until the privilege log was produced.

Third, the fact that Plaintiffs suspected documents were being withheld on the basis of privilege without a privilege log and did not raise the issue with the Court is irrelevant. Plaintiffs, like any other litigant, had every right to expect that the Sero Defendants would abide by their Rule 26(b)(5) obligations. Even if Plaintiffs knew for certain the Sero Defendants were not complying—and they did not—they were not under any obligation to halt discovery. Nor were they under any obligation to repeatedly request from the Sero Defendants that they provide a privilege log, although they did so at least four times.[10] Contrary to the Sero Defendants suggestions, Plaintiffs bear no responsibility for their untimely disclosure of the privilege log.

---

[10] Plaintiffs requested a privilege log via email on June 28, 2019; July 16, 2019; January 2, 2020, and on January 23, 2020.

Nothing here suggests Plaintiffs have been sitting on their rights or intentionally not raising with the Court the Sero Defendants' failure to provide a privilege log in order to gain some tactical advantage. Plaintiffs are pursuing a serious, legitimate grievance: the Sero Defendants withholding 1,200 documents without providing a privilege log until after the close of discovery.

The question remaining for the Court is what is an appropriate sanction. Clearly, Plaintiffs have been prejudiced. Once the Sero Defendants finally produced the privilege log, Plaintiffs had insufficient time to challenge more than a few of the nearly 1,200 designations. Further, the privilege log's descriptions of the withheld documents lack sufficient details for Plaintiffs to evaluate the claims of privilege, particularly as to Blake given his dual legal and business roles. *See Taber v. Ford Motor Co.*, No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017) (observing "courts have generally held that the privilege log should set forth specific facts which if taken as true establish the elements of the privilege for each document for which the privilege is claimed").

The Court is also struck by the Sero Defendants' failure to provide any explanation, justification, or apology for waiting—by their own calculation—fourteen months to provide a privilege log. Frankly, they do not think they did anything wrong by withholding the privilege log until after the close of discovery.

The Sero Defendants failure to provide the privilege log until January 28, 2020, is at best completely unjustifiable and at worst an intentional decision not to provide a privilege log until it was too late for Plaintiffs to do anything with it, placing Plaintiffs at a strategic disadvantage. The Court suspects the latter. Either way, it is inexcusable and merits the serious sanction of holding they have waived the privilege with respect to the documents in the privilege log. *See United States v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).

12

Case 5:18-cv-06037-DGK   Document 431   Filed 09/24/20   Page 12 of 13

## Conclusion

For the reasons discussed above, the Court holds the Sero Defendants have waived the privilege with respect to the documents in the privilege log. The Sero Defendants shall produce the documents to Plaintiffs on or before October 15, 2020.

Plaintiffs' motion (Doc. 366) is GRANTED.

**IT IS SO ORDERED.**

Date:  September 24, 2020             /s/ Greg Kays
                                                    GREG KAYS, JUDGE
                                                    UNITED STATES DISTRICT COURT