IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| RIGHTCHOICE MANAGED CARE, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 5:18-cv-06037-DGK |
| HOSPITAL PARTNERS, INC., et al., | ) ) ) |
| Defendants. | ) |

## ORDER GRANTING IN PART MOTION TO STRIKE DR. KAREN MEADOR'S EXPERT TESTIMONY

This lawsuit arises out of an alleged fraudulent pass-through billing scheme for laboratory tests billed from Putnam County Memorial Hospital ("Putnam"), a small hospital in rural Missouri. Plaintiffs, a group of licensees or subsidiaries of independent licensees of Blue Cross and Blue Shield Association, are suing a variety of Defendants who allegedly participated in, or benefitted from, the alleged scheme, including the laboratories who conducted the testing.

Now before the Court is Plaintiffs' Motion to Strike the Expert Designation of Dr. Karen Meador. ECF No. 478. Defendants Serodynamics, LLC; LabMed Services, LLC; Beau Gertz; and Mark Blake (collectively "the Sero Defendants") retained Dr. Karen Meador (Dr. Meador), M.D., M.B.A., a physician and healthcare executive, to rebut the testimony of Plaintiffs' three retained experts on a wide variety of topics. Plaintiffs argue she is not qualified to rebut these experts' opinions; her opinions are irredeemably unreliable; her opinions rely on undisclosed legal advice which the Court previously ruled was inadmissible; and that bias infects her affidavit. The Sero Defendants disagree and argue that Plaintiffs' arguments go to the weight Dr. Meador's opinions should be given, not their admissibility.

Finding that some of Dr. Meador's opinions are, as a matter of law, unreliable or otherwise inadmissible, the motion is GRANTED IN PART.

**Standard**

When the admissibility of expert testimony is challenged, the district court must make "a preliminary determination of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The party seeking to introduce the expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Under Federal Rule of Evidence ("FRE") 702, a witness may give an expert opinion if the following conditions are met:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). Doubts should be resolved in favor of admissibility. *Marmo*, 457 F.3d at 758.

The Eighth Circuit has repeatedly observed that, as a general rule, "'the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility,'" but "'if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.'" *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014) (quoting *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005)).

**Discussion**

I. **Dr. Meador's opinion that the Sero Defendants were operating a reference laboratory for Putnam, or intended to operate a reference lab, is excluded.**

Plaintiffs move to strike Dr. Meador's opinion that the Serodynamics lab operated as a reference laboratory for Putnam on three grounds: (1) Dr. Meador lacks the qualifications or expertise to opine on what is, or is not, a reference laboratory; (2) her opinion is unreliable because she ignores evidence that contradicts it and does not reliably apply her own criteria as to what constitutes a reference laboratory; and (3) her opinion regarding the Sero Defendants' collective intent is unscientific speculation.

With respect to the first argument, the Court holds Dr. Meador possesses the minimal qualifications to opine on this subject. While she does not consider herself an expert on the subject of reference labs, she does possess the requisite "knowledge, skill, experience, training, or education sufficient to assist the trier of fact, which is satisfied where expert testimony advances the trier of fact's understanding to any degree." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). The fact that she does not specialize in reference laboratories goes to the weight of her testimony, not its admissibility.

Plaintiffs' second and third arguments are more persuasive. The Court agrees that Dr. Meador's analysis ignores a substantial amount of evidence which contradicts her conclusion that Serodynamics operated as a reference laboratory for Putnam. This is fatal to admitting her opinion on this subject. The Sero Defendants do not dispute that Dr. Meador refused to consider or credit evidence that was inconsistent with her opinion, including: (1) the deposition testimony of Putnam's corporate representative who testified Putnam did not refer tests to Serodynamics; (2) the testimony of Putnam's laboratory Medical Director that she had no knowledge of Serodynamics being involved with the Putnam laboratory; (3) Putnam stating in response to a

3

subpoena that Putnam never referred tests to Serodynamics; (4) admissions made by David Byrns, Putnam's chief executive officer, in connection with his guilty plea for Conspiracy to Commit Health Care Fraud, that he caused Putnam to bill for tests that were performed by outside labs (not reference labs); and (5) the testimony of Serodynamics' corporate representative, Defendant Mark Blake, who indicated Serodynamics was not a reference laboratory for Putnam. The fact that she ignored or summarily dismissed this evidence indicates her opinion is not the product of reliable principles and methods, and that Dr. Meador has not reliably applied these principles and methods to the present case.

The Court also holds Dr. Meador did not reliably apply her own criteria as to what constitutes a reference lab. During her deposition, she agreed there were six criteria necessary for a laboratory to operate as a reference laboratory, but then did not apply them all in her analysis of the Serodynamics lab, apparently because doing so would contradict her conclusion.

With respect to the third argument, the Court holds Dr. Meador's opinion that the Sero Defendants intended to operate Serodynamics as a reference lab is not a proper subject for expert testimony. Dr. Meador is in no better position to ascertain the Sero Defendants' intent than the jury. Permitting her to testify about the Sero Defendants' intent would only cast an impermissible "aura of expertise" on a subject that needs no expert testimony. *See United States v. Arenal*, 768 F.2d 263, 269-70 (8th Cir. 1985) (noting "[Federal] Rule [of Evidence] 704 does not render all expert testimony admissible," expert testimony is still "subject to exclusion if the subject matter is within the knowledge or experience of the jury"). Consequently, Dr. Meador's opinion regarding the Sero Defendants' collective intent to operate a legitimate reference laboratory—or her opinion about the Sero Defendants' individual or collective intent in taking any other action—is excluded.

4

## II. Dr. Meador's opinion that lab tests Serodynamics performed were medically necessary is excluded.

Plaintiffs also move to exclude Dr. Meador's opinion that the lab tests performed by Serodynamics and billed to Plaintiffs through Putnam were medically necessary and should be stricken.

This portion of the motion is granted for two reasons. First, Dr. Meador was disclosed as a rebuttal expert witness, and none of Plaintiffs' experts opined on the medical necessity of the lab tests Serodynamics performed. Second, the process Dr. Meador used to determine the medical necessity of the tests—examining fifty patient records out of a universe of 27,000 patient records—was patently insufficient. There is no indication that reviewing fifty out of 27,000 patient files is sufficient to produce a statistically reliable result, and there is no evidence that the fifty patient records were chosen in a statistically valid, randomized way. Accordingly, this opinion is excluded.

There is one caveat on this ruling. Although it appears Plaintiffs do not intend to offer any evidence concerning the medical necessity of the lab testing, if they do, the Court will allow Dr. Meador to testify that she reviewed fifty patient files, and it is her opinion that the tests in these files appeared to be medically necessary.

## III. Dr. Meador's opinion that pass-through billing was not uniformly prohibited by commercial payors during the relevant period is admissible.

Plaintiffs move to strike Dr. Meador's testimony that pass-through billing was not uniformly prohibited by commercial payors during the period relevant to this dispute. Plaintiffs argue she is not qualified to opine on the subject of pass-through billing, and her opinion is based on little more than documents she retrieved from public websites. Plaintiffs also contend her opinion is not relevant because the Putnam contract explicitly prohibited pass-through billing by

5

prohibiting Putnam from billing for services not rendered "by, or under the direction and personal supervision of [Putnam]." Ex. 1 RightChoice-Putnam contract §4.1(b), ECF No. 495.

The Court rules Dr. Meador is sufficiently qualified to render such an opinion. Her opinion is based on her recollection—confirmed by reviewing publicly available documents—that during the relevant time period, some large insurers permitted pass-through billing. Plaintiffs' concerns about Dr. Meador's qualifications and the amount and quality of research she performed before reaching this conclusion goes to the weight her testimony should be given, not its admissibility.

Her testimony is also relevant. Whether the Putnam contract prohibited pass-through billing, and whether the Sero Defendants actions constituted pass-through billing, are issues in dispute. The contract language cited by Plaintiffs does not establish as a matter of law that pass-through billing was prohibited, or that the Sero Defendants engaged in it. Hence, her testimony is admissible.

**IV. Dr. Meador's opinions that the Sero Defendants acted reasonably are inadmissible.**

Plaintiffs move to exclude Dr. Meador's opinions that the Sero Defendants acted "reasonably" in taking various actions; for example, in interpreting the Putnam contract, in relying on Putnam to comply with coding and billing standards, in assuming Putnam would accurately submit billing data to Plaintiffs, and in leaving it to Putnam to make accurate representations to Plaintiffs. Plaintiffs argue these opinions should be stricken because Dr. Meador does not have any specialized insight that would aid the jury in ascertaining the reasonableness of the Sero Defendants' actions, and she has not explained the basis for these opinions.

In response, the Sero Defendants describe the proposed testimony as simply opining on whether a given arrangement was consistent with industry standards or not. For example, testifying that it was in accordance with industry standards for an independent laboratory (such as

6

Case 5:18-cv-06037-DGK   Document 619   Filed 08/16/21   Page 6 of 9

Serodynamics) to enter an agreement requiring the hospital (Putnam) to ensure compliance with its own third-party payor agreements and to rely on the specialized expertise of the hospital to interpret and comply with third-party payer requirements (Plaintiffs).  This explanation, however, overlooks the fact that the word "reasonable" appears throughout her expert report, and much of her report is focused on arguing the Sero Defendants actions were reasonable.

The Court holds Dr. Meador does not have any specialized insight that would aid the jury in ascertaining whether the Sero Defendants' actions were reasonable.  The jury can make this determination for itself.  Accordingly, Dr. Meador may not testify or comment about the "reasonableness" of any arrangement.  She may, however, testify that a given arrangement was consistent with industry standards or not, so long as that opinion is clearly contained in her report.

**V.      Dr. Meador's opinion whether the patients were inpatients, outpatients, or non-patients of Putnam is admissible.**

Plaintiffs move to strike Dr. Meador's various characterizations of the patients whose tests were performed by Serodynamics as inpatients, outpatients, or non-patients on the grounds that they are patently unreliable, as demonstrated by the fact that her opinions seemed to change during her deposition.

Although these opinions arguably vacillate suspiciously, they do not fluctuate so much that they are, as a matter of law, inadmissible.  The Court holds Plaintiffs' criticisms go to the weight this testimony should receive, not its admissibility.

7

Case 5:18-cv-06037-DGK   Document 619   Filed 08/16/21   Page 7 of 9

### VI. Dr. Meador's rebuttal to Ms. Fortune's affidavit is inadmissible.

Plaintiffs also move to strike all of Dr. Meador's expert report rebutting the report by Plaintiffs' expert on damages, Ms. Karen Fortune.[1] Plaintiffs argue the opinions given in Dr. Meador's rebuttal are outsider the doctor's area of expertise.

With respect to Ms. Fortune's expert report, Dr. Meador opines that, while it appears to accurately report and calculate payments to the Sero Defendants, Ms. Fortune's analysis is not a calculation of damages because Dr. Meador's own review of medical records "showed solid evidence of medical necessity for the tests performed and confirmation that the tests were performed with results reported to ordering providers." Thus, "it cannot be said that these tests had no value as Ms. Fortune implies. Even if the Court concludes that actual payments by Plaintiffs to Putnam should have been less, they could not have been zero for the laboratory services that SeroDynamics provided to Plaintiffs' members." Ex. 3 to Meador Aff., ECF No. 495-1 at ECF p. 473. In other words, Dr. Meador opines that Ms. Fortune damages calculation is exaggerated because the tests were medically necessary, and Ms. Fortune's analysis assumes all the tests had no value.

The Court already ruled in Section II that Dr. Meador's opinion that the lab tests Serodynamics performed were medically necessary is inadmissible. Thus, the only portion left of her critique of the damages analysis is that the calculation assumes the tests had no value, and so to the degree the lab tests had any value, the damages calculation is too high. While valid, this observation does not on rest on any specialized insight; it is simply common sense. No expert testimony is necessary to make this point. The Sero Defendants can make this point while cross-examining Ms. Fortune, or in closing argument. Allowing Dr. Meador to offer this opinion would

---

[1] Karen Fortune, CPA/CFF, CGMA, MAcc, is Plaintiff's expert on (1) tracing payments Plaintiffs made to the Sero Defendants, and (2) damages.

8

only cast an impermissible "aura of expertise" on a subject that needs no expert testimony. Accordingly, her opinion on this topic is inadmissible.

**VII.    Dr. Meador is prohibited from offering "color commentary."**

Finally, Plaintiffs note Dr. Meador's report contains inappropriate comments, lauding the Sero Defendants "entrepreneurial spirit" and asserting the Plaintiffs are attempting to "confiscate" money from Defendants.  This is pure argument and unrelated to Dr. Meador's expertise.  Dr. Meador, and all the other expert witnesses, are prohibited from providing such color commentary in her or their testimony.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike the Expert Designation of Dr. Karen Meador, ECF No. 478, is GRANTED IN PART.

**IT IS SO ORDERED.**

Date:  August 16, 2021                                   /s/ Greg Kays
                                                        GREG KAYS, JUDGE
                                                        UNITED STATES DISTRICT COURT