# Exhibit 1

FILED IN OPEN COURT
10|29|2019
CLERK, U S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:19-cr-166·J·32JRK

DAVID LANE BYRNS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, the United States Department of Justice, Criminal Division, Fraud

Section ("Fraud Secton") (hereinafter collectively "government" or the

"United States"), and the defendant, DAVID LANE BYRNS, and the

attorney for the defendant, J. Justin Johnston, mutually agree as follows:

**A.   Particularized Terms**

1.  Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with Conspiracy to Commit

Health Care Fraud, in violation of Title 18, United States Code, Section 1349.

2.  Maximum Penalties

Count One carries a maximum sentence of 10 years of imprisonment, a

fine of $250,000 or the greater of twice the gross gain or twice the gross loss, a

Defendant's Initials _____                                        AF _____

term of supervised release of up to 3 years, and a special assessment of $100 per felony count for individuals.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:   Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, in violation of 18 U.S.C. § 1347; and

Second:   The Defendant knew the unlawful purpose of the plan and willfully joined in it.

4. Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida, the United States Attorney's Office for the Western District of Missouri, and the Fraud Section agree not to

Defendant's Initials _____

2

charge the defendant with committing any other federal criminal offenses known to the United States at the time of the execution of this agreement.

6. Chapter Two Base Offense Level Stipulation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two base offense level be calculated at 6 pursuant to USSG § 2B1.1(a)(2). The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Chapter Two and Three Calculations – Stipulation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two and Three guidelines scoring is as follows:

| | |
|---|---|
| Loss - 2B1.1(b)(1)(M): | + 24 level increase |
| Sophisticated means - 2B1.1(b)(10): | + 2 level increase |
| Acceptance of Responsibility - 3E1.1: | - 3 level decrease |
| Total Offense Level (TOL): | 29 |

The parties understand that such an estimate is not binding on the Court, and if the Court calculates the loss differently, neither the United States

Defendant's Initials _____   3

nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States, and the

Defendant's Initials _____

4

defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Cooperation - Substantial Assistance to be Considered

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in

Defendant's Initials _____   5

accordance with the policies of the United States, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Use of Information - Section 1B1.8

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of the defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

11. Cooperation - Responsibilities of Parties

a.      The government will make known to the Court and other relevant authorities the nature and extent of the defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation

Defendant's Initials _____          6

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

Defendant's Initials _____        7

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by rescission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _____     8

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which the defendant hereby agrees to plead in the instant case but, in that event, the defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant, or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following: the sum of at least $5,100,000.00 in proceeds the defendant admits he personally obtained as the result of the commission of the health care fraud conspiracy to which the defendant is pleading guilty, as well as the following:

1.     David L. Byrns & spouse's Revocable Trust Yield Pledge Money Mark Account located at TIAA Bank, Account No. x3668, in the amount of approximately $1,846,038.89;

2.     David L. Byrns & spouse's Revocable Trust Yield Pledge Checking Account located at TIAA Bank, Account No. x2911, in the amount of approximately $94,694.98;

Defendant's Initials _____        9

3.     Real property located at 4451 NE 27 Avenue, Lighthouse Point, Florida, 33064, together with all its buildings, appurtenances, and improvements and is more fully described as: Lot 4, Block 57, VENETIAN ISLES THIRD SECTION, according to the plat thereof, as recorded in Plat Book 47, Page 13, of the Public Records of Broward County, Florida, for which the defendant's and his spouse's Revocable Trust is the recorded owner;

4.     Real property located at 2611 NE 52 Court, Lighthouse Point, Florida, 33064-7065, together with all its buildings, appurtenances, and improvements and is more fully described as: Lot 6, Block 9, of POMPANO WATERWAY ESTATES, according to the plat thereof, as recorded on Plat Book 39, at Page 41, of the Public Records of Broward County, Florida, for which the defendant's daughter is the recorded owner;

5.     Real property located at 1681 SE 4 Court, Deerfield Beach, Florida, 33441, together with all its buildings, appurtenances, and improvements and is more fully described as: Lot 23, Block 11, THE COVE, according to the map or plat thereof, as recorded in Plat Book 32, Page 48, Public Records of Broward County, Florida, for which the defendant's daughter is the recorded owner; and

6.     Real property located at 1410 SE 14 Avenue, Deerfield Beach, Florida, 33441, together with all its buildings, appurtenances, and improvements and is more fully described as: Lot 1, Block 8, of SUNSET EAST, according to the plat thereof as recorded on Plat Book 60, Page 2, Public Records of Broward County, Florida, for which the defendant's son is the recorded owner,

which assets constitute, or are traceable to proceeds obtained as a result of the

offense to which the defendant is to plead guilty.

Defendant's Initials _____     10

The net proceeds from the forfeiture and sale of these specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained the sum of at least $5,100,000.00 as a result of the commission of the offense and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

Defendant's Initials _____   11

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action.  The defendant further consents to the filing of a motion by the United States for immediate entry of an Order of Forfeiture of Proceeds and Preliminary Order of Forfeiture.

The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Defendant's Initials _____                    12

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of

Defendant's Initials _____

13

title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.  However, pursuant to 21 U.S.C. § 853(i), the Attorney General of the United States is authorized to restore forfeited property to certain victims of federal crimes.  The Attorney General has delegated this authority to the Chief of the Money Laundering and Asset Recovery Section, United States Department of Justice (MLARS) and the granting or denial of restoration requests rests solely within the discretion of MLARS.  The determination of whether a victim may receive restoration is governed by the regulations found in 28 C.F.R. § 9.8(b).  If the requirements of 28 C.F.R. § 9.8 are met and appropriate internal approvals are obtained, the United States will recommend to MLARS that property forfeited in this case be restored to victims.

Defendant's Initials _____                14

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.     Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant specifically agrees that he is jointly and severally liable to make restitution to all victims of

Defendant's Initials _____     15

the offense, including but not limited to, the following entities in the following approximate amounts:

| | |
|---|---|
| RIGHT Choice Managed Care, Inc. | $89,531,893 |
| United HealthCare | $21,072,216 |
| Aetna, Inc. | $4,113,207 |
| Home State Health Plan, Inc. | $68,123 |

The defendant agrees that he is also jointly and severally liable to make restitution to such additional victims as may be identified in the future.

The defendant agrees to make his best efforts to make restitution to the victims as expeditiously as possible.  To that end, the defendant agrees to work with government counsel to liquidate assets so that, at or before sentencing, he can make a significant payment towards his restitution obligation.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that

Defendant's Initials _____   16

this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.  The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen will be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which the defendant pleads, to respond to

Defendant's Initials _____   17

comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C.  § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office and the Fraud Section to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of

Defendant's Initials _____   18

the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office and the Fraud Section to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.  Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw

Defendant's Initials _____                    19

the defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal the defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from the waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _____     20

8. Scope of Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida, the Office of the United States Attorney for the Western District of Missouri, and the Fraud Section, and cannot bind other federal, state, or local prosecuting authorities, although the undersigned will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court in open court, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the

Defendant's Initials _____   21

penalties provided by law, and the defendant's complete satisfaction with the representation and advice received from the defendant's undersigned counsel (if any). The defendant also understands that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in the defendant's defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial. The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel (if any), the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement. The defendant also understands that the defendant will be adjudicated guilty of the offenses to which the defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____     22

11. Factual Basis

The defendant is pleading guilty because the defendant is in fact guilty. The defendant certifies that the defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

Defendant's Initials _____   23

DATED this 26th day of September 2019.

David Byrns  
Defendant

J. Justin Johnston  
Johnston Law Firm, LLC  
Attorney for Defendant

Jesse Dreier  
Tassone Dreier Hill LLC  
Attorney for Defendant

MARIA CHAPA LOPEZ  
United States Attorney

Tysen Duva  
Assistant United States Attorney

Frank M. Talbot, II  
Assistant United States Attorney  
Chief, Jacksonville Division

ROBERT ZINK, Chief  
Criminal Division  
Fraud Section

Allan Medina  
Acting Deputy Chief  
Criminal Division  
Fraud Section

Gary A. Winters  
James V. Hayes  
Trial Attorneys  
Fraud Section

Defendant's Initials _____ 24

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 3:19-cr-166·J-32JRK

DAVID BYRNS

### PERSONALIZATION OF ELEMENTS

1. Between in or about ~~November~~ October 2016 and in or about February 2018, did you and at least one other person try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1347, that is, to execute a scheme or artifice to defraud a health care benefit program, or to obtain money or property owned by, or under the custody or control of, a health care benefit program by using materially false or fraudulent pretenses, representations, or promises?

2. Did you know the unlawful plan's purpose and willfully join in it?

Defendant's Initials _____

Case 5:18-cv-06037-DGK   Document 629-1   Filed 08/17/21   Page 26 of 37

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:19-cr- 166·J· 32JRK

DAVID BYRNS

FACTUAL BASIS[1]

**Putnam County Memorial Hospital**

Putnam County Memorial Hospital ("Putnam") was a rural hospital

located in Unionville, Missouri.  Putnam was a Critical Access Hospital

("CAH"), a designation established in the Balanced Budget Act of 1997 to

provide certain benefits, such as the opportunity to obtain Medicare cost

reimbursement, to small, rural hospitals.

**Putnam's Insurance Agreements**

RightCHOICE Managed Care, Inc. (a Missouri-headquartered licensee

of the Blue Cross and Blue Shield Association) ("RightCHOICE"), United

HealthCare, Inc. ("UHC"), and Aetna Inc. ("Aetna"), were insurance

companies that offered a variety of individual and group health benefit plans

---

[1] The Factual Basis is prepared by the United States.  The factual basis does not
include all pertinent or known facts concerning the charge and guilty plea, or all facts
that the defendant has knowledge of.  The factual basis is merely a set of facts
designed to set forth sufficient information that the Court uses to determine if there is
indeed a factual basis to accept the defendant's guilty plea.

Defendant's Initials _____

and served as third-party administrators for self-insured health plans.  Persons covered under these plans were referred to as "Members" or "Subscribers."  In addition, Missouri's Medicaid program, known as MO HealthNet, provided health insurance coverage to qualifying low-income individuals and families in the state.  MO HealthNet provided those benefits through managed care organizations ("MCOs"), including Home State Health Plan, Inc. ("Home State"), which were paid a monthly capitated rate by MO HealthNet for Medicaid recipients enrolled with the MCO.

Putnam entered into contracts with RightCHOICE, UHC, Aetna (the "Private Insurers"), and other health insurers under which the insurers agreed to reimburse Putnam for certain claims submitted by the hospital for healthcare services performed on behalf of the insurers' members, including laboratory testing services.  Under these contracts, Putnam was an "in-network" provider with the Private Insurers.  In general, "in-network" status meant that the insurers reimbursed Putnam for its services at higher rates than the insurers would reimburse "out-of-network" providers for comparable services.  Putnam's contracts with the Private Insurers also provided that reimbursement would be made only for medically necessary services, which was specifically defined in each contract.  Putnam also had a contract with Home State under which it was reimbursed for performing laboratory tests on

Defendant's Initials _____   2

behalf of Medicaid recipients.

In order to obtain reimbursement from the Private Insurers and other insurers for providing covered services, Putnam was required to submit claims either on paper or electronically, identifying, among other things, the patient, the patient's diagnosis, the nature of the service rendered, the date and location of the service, and the amount sought for reimbursement.

**The Conspirators' Control Over Putnam**

Like many rural hospitals, Putnam has struggled financially. In September 2016, David Byrns ("BYRNS") and Individual 1, acting through Hospital Partners, Inc. ("Hospital Partners"), a Florida corporation they had formed in late 2015, obtained control of Putnam. BYRNS, on behalf of Hospital Partners, signed a management agreement (the "Management Agreement") with Putnam's Board of Trustees (the "Board") which provided, among other things, that Hospital Partners had the sole and exclusive right to supervise, manage, and operate Putnam. Immediately thereafter, BYRNS became the Chief Executive Officer (CEO) of Putnam. Several days later, BYRNS, acting on behalf of Putnam, and Individual 1, acting on behalf of Company A, a medical billing and software company he/she controlled, signed a contract (the "Service Agreement") for Company A to provide claims processing services to Putnam. The Service Agreement provided that Putnam

Defendant's Initials _____   3

would pay Company A a fee of 6.5% of recoveries Putnam obtained from insurance company payors.

The foregoing events occurred shortly after Individual 1 and others had engaged in a fraudulent pass-through billing scheme at Campbellton-Graceville Hospital ("CGH"), a rural hospital in Graceville, Florida, during which tens of millions of dollars of claims for UDTs performed on patients with no connection to CGH were submitted to and paid by insurance companies, including Florida Blue located in Jacksonville, Florida.

In October 2016, BYRNS, acting on behalf of Putnam, signed an agreement (the "Independent Contractor Agreement") with Company C, a company incorporated in Florida whose manager was Individual 2. The Independent Contractor Agreement contract provided, among other things, that Company C would operate and manage a clinical laboratory at Putnam, that Putnam would establish a dedicated bank account (the "Putnam Account") to receive reimbursements for lab claims, and that Company C would be entitled to 80% of the monies deposited in the Putnam Account. In truth and in fact, Company C did not manage a clinical laboratory at Putnam, but was a vehicle for distributing reimbursements from the Private Insurers and other payors for laboratory claims submitted on behalf of Putnam. In addition to serving as the manager of Company C, Individual 2 exercised

Defendant's Initials _____   4

control over Company B, a clinical testing laboratory in the Middle District of Florida that was out-of-network with the Private Insurers.

In December 2016, Hospital Partners and the Putnam Board entered into a lease agreement (the "Lease Agreement") which superseded the Management Agreement, and provided, among other things, that Hospital Partners had full authority to conduct, supervise, and manage the day-to-day operations of Putnam, including full control over billing and collections for hospital services.

### Overview of the Scheme

Beginning in or about October 2016, and continuing through in or about February 2018, BYRNS, Individual 1, Individual 2, and others caused urine drug tests ("UDTs") and blood tests to be performed at Company B, at other out-of-network testing laboratories outside Missouri, and at Putnam's laboratory, on behalf of individuals who were not Putnam patients and who otherwise had no connection to Putnam. BYRNS, Individual 1, Individual 2 and others then caused claims for reimbursement of these tests to be submitted using Putnam's billing credentials to the Private Insurers, other insurers, and Home State, as if the testing and the patients had a legitimate connection to Putnam, in order to take advantage of Putnam's in-network status and higher reimbursement rates.

Defendant's Initials _____ 5

**Urine Drug Testing**

As soon as BYRNS and Individual 1 obtained control over Putnam, they began arranging for UDTs to be performed at Company B and other outside, out-of-network laboratories, and billed to the Private Insurers. In order to ensure a steady flow of samples for testing, BYRNS and his co-conspirators entered into arrangements with marketers to obtain urine samples from substance abuse treatment centers, sober living homes, physicians' offices, and other sources throughout the United States, and caused these marketers to be paid a portion of the insurance reimbursements. The UDTs were conducted on individuals from around the United States who required regular drug testing, such as persons undergoing treatment for substance abuse or taking prescription opioids. Many of the UDTs were medically unnecessary, in that patients were tested too frequently for the results to be useful in a course of treatment. Furthermore, expensive confirmatory tests (to determine the quantity or concentration of substances in the body) were conducted on numerous samples when an initial screening test (to determine only the presence or absence of substances) would have been sufficient.

From the time the Management Agreement was signed until about mid-February 2017, Putnam lacked laboratory facilities and equipment sufficient to conduct large-scale urine drug testing. Accordingly, during this time period,

Defendant's Initials _____   6

all the UDTs billed through Putnam were performed at Company B or at other out-of-network laboratories outside Missouri.

BYRNS, Individual 1 and Individual 2 endeavored to open a testing laboratory at Putnam to conduct UDTs onsite.  Individual 2, with the knowledge of BYRNS and others, arranged to move sophisticated testing equipment from Company B's location in Florida to Unionville, Missouri, for the sole purpose of conducting testing on non-Putnam patients that could be fraudulently billed to insurers using Putnam's billing credentials.  With BYRNS' knowledge, Individual 2 arranged for the hiring and training of new laboratory personnel to run the testing equipment.

Beginning in or about mid-February 2017, BYRNS, Individual 1 and Individual 2 caused urine samples to be shipped to Putnam, where some UDTs were performed in Putnam's lab using Company B's equipment.  As with the UDTs billed prior to mid-February 2017, these tests were performed on behalf of individuals from around the United States who were not inpatients or outpatients of Putnam, and who otherwise had no connection to Putnam.  In addition, after the Putnam lab became operational, BYRNS and his co-conspirators continued to cause UDTs to be performed at Company B and at other out-of-network testing laboratories outside Missouri, on behalf of individuals who had no connection to Putnam.

Defendant's Initials _____                    7

**Blood Testing**

Beginning in or about December 2016, BYRNS, Individual 1, Individual 2, and others caused blood testing to be performed at out-of-network testing laboratories outside Missouri, on behalf of individuals who were not Putnam patients and who otherwise had no connection to Putnam. At all times, Putnam's laboratory lacked the facilities or equipment to conduct the blood testing for which claims were submitted to insurers (other than ordinary blood tests for patients of the hospital); accordingly, all such blood testing was conducted at out-of-network laboratories outside Missouri.  In addition, BYRNS facilitated the billing of blood testing by placing phlebotomists, who were located in physicians' offices throughout the country and did not perform services for Putnam, on Putnam's payroll.  These phlebotomists secured blood samples that were tested at outside laboratories and billed through Putnam.

**Submission of Fraudulent Claims**

Once the UDTs and blood tests were completed, BYRNS and his co-conspirators, using Company A, caused claims for reimbursement to be submitted to RightCHOICE, UHC, Aetna, other private insurers, and Home State.  These claims were submitted under Putnam's National Provider Identification ("NPI") number and tax identification number, as if they

Defendant's Initials _____     8

derived from Putnam and were on behalf of Putnam patients, in order to take advantage of Putnam's "in-network" contracts and favorable reimbursement rates.

In causing these claims to be submitted through Putnam, BYRNS and his co-conspirators caused there to be made false representations that (1) the testing was medically necessary, and (2) the testing was conducted on behalf of patients with a connection to Putnam.  Moreover, the claims concealed the fact that (1) Company B and other out-of-network laboratories outside Missouri conducted much of the testing (including all UDTs conducted prior to about mid-February 2017 and all blood testing), and (2) those UDTs performed at Putnam were done solely for the purpose of evading the "out-of-network" (lower or non-existent) reimbursements that the Private Insurers and other insurers would have paid had they known that the tests were performed at Company B.  As such, the claims contained materially fraudulent representations and omissions about the nature of the testing in order to obtain reimbursement under Putnam's contracted rates with insurance companies. BYRNS, Individual 1, Individual 2, and others, intentionally obfuscated the nature of the patients, and did not divulge that the patients providing the urine and blood specimens had no connection to Putnam.

Defendant's Initials _____        9

**Payment of Claims**

Based on these materially false and fraudulent representations and omissions, the Private Insurers and other insurers, and Home State, between in or about November 2016 and in or about February 2018, reimbursed Putnam approximately $114 million for the UDTs and blood tests.  BYRNS and his co-conspirators caused at least $61.9 million of these insurance reimbursements to be transferred from Putnam to Company C; $23.5 million to be transferred to Company A; and additional amounts to be transferred to certain of the out-of-network, outside laboratories that conducted the UDTs and blood testing.  BYRNS and his co-conspirators further caused Company C to transfer at least $2 million to Company A; $12.1 million to Company B; and additional amounts to be transferred to other out-of-network, outside laboratories that conducted UDTs billed through Putnam, and to marketers who facilitated the collection of samples.

**Proceeds Obtained by BYRNS**

BYRNS admits that of the approximately $5,100,000 in proceeds he obtained as a result of the health care fraud conspiracy, approximately $1,500,000 in proceeds were deposited into his Revocable Trust Yield Pledge Money Market account ending in x3688 at TIAA Bank; approximately $2,844,500 in proceeds were deposited and transferred into his Revocable

Defendant's Initials _____     10

Trust Yield Pledge Checking account ending in x2911 at TIAA Bank; approximately $406,000 in proceeds were expended to pay down his mortgage secured by real property located at 4451 NE 27 Avenue, Lighthouse Point, Florida; and approximately $1,367,000 in proceeds were expended to purchase real property located at 2611 NE 52 Court, Lighthouse Point, Florida, 1681 SE 4 Court, Deerfield Beach, Florida, and 1410 SE 14 Avenue, Deerfield Beach, Florida, for his children.

Defendant's Initials ⟨signature⟩                11