# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| RIGHTCHOICE MANAGED CARE, INC., et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 18-cv-06037-DGK |
| HOSPITAL PARTNERS, INC., et al., | ) ) | |
| Defendants. | ) ) | |

## SERO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE*[1]

Defendants SeroDynamics, LLC; LabMed Services, LLC; Beau Gertz; and Mark Blake (collectively, the "Sero Defendants") respectfully submit the following opposition to Plaintiffs' Motions *in Limine*.

**FIRST MOTION *IN LIMINE* (DOC. 627):** Plaintiffs move to exclude evidence of the fault or responsibility of Putnam. The Sero Defendants do not intend to offer evidence or make references about attributing "fault" to Putnam or any non-party. However, the Sero Defendants oppose a blanket restriction regarding evidence or reference to Putnam's "responsibility," since the factual record of this case is clear Putnam did have responsibility for handling various aspects of the relationships they formed with Defendants, and such responsibility is relevant to the issues of alleged conspiracy. For example, ██████████████████████████

██████████████████████████████████████████

███████████████████████████████████ Ex. A. ████████████

██████████████████████████████████████████

---

[1] Per L.R. 7.0(d)(1)(B), opposing suggestions should not exceed fifteen (15) pages. However, each opposition that follows is a separate opposition and are combined for ease of filing and for the Court's convenience. Each opposition that follows complies with L.R. 7.0(d)(1)(B) in that each opposition is well under the fifteen (15) page limit.

████████████████████████████████████████████

███████████████████████████████████ There are
numerous other facts in the record that indicate Putnam had a specific responsibility for certain aspects of the claims submitted to Plaintiffs. These facts are relevant to the Sero Defendants' intent with their business arrangement at Putnam.

**SECOND MOTION** *IN LIMINE* **(DOC. 628):** Plaintiffs move to exclude █████████

████████████████████████████████████████████

██████████████████████████ The Sero Defendants oppose this Motion.

Federal Rule of Evidence 901(a) provides that the requirement of authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Sufficient evidence may include the testimony of a witness with knowledge, or "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *See* FED. R. EVID. 901(b)(1), (b)(4). "The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be." *United States v. Lamm*, 5 F.4th 942, 946–47 (8th Cir. 2021) (quoting *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010). Authentication may be established by circumstantial evidence. *Id* (citations omitted). Once the threshold requirement is met, any question as to whether the evidence is authentic is for the jury. *Id*. To authenticate evidence, a party must clear only a "low bar." *Id*.

Here, the Zirmed Data will be authenticated in several ways. *See* Wright & Miller, Fed. Prac. & Proc. Evid. § 7105 (1st ed.) (recognizing that authentication can be accomplished "by combining elements from more than one subdivision of Rule 901(b)"). First, Plaintiffs have already ***admitted*** that the Zirmed Data ███████████████████████████

2

████████████████████████████████████ *Id.* ("Authentication can also be accomplished through judicial admissions such as stipulations [and] pleadings" (and cited authority)). In particular, the Statement of Uncontroverted Material Facts at ¶ 105 of the Sero Defendants' summary judgment brief stated that the Zirmed Data ███████████

██████████████████████████████████████████

████████

    105. ████████████████████████████████

████████████ Ex. 25, 41:3-21 ███████████████

████████████████████████████████████

████████████████████ *See, e.g.,* Ex. 45, Electronic Claims Transmissions from Putnam to Plaintiffs for SeroDynamics' Tests (excerpts).



██████ (redaction of patient's name and out-of-state address).

3



(redaction of patient's name and out-of-state address).

(Docs. 521, 528) at 23-24 (highlighting represents redactions in publicly filed version; protected health information redacted in both versions).

Plaintiffs' response to paragraph 105 "*admitted*" it without qualification:

> 105. Putnam transmitted the claims to RightCHOICE in a data stream consisting of letters and numbers. Ex. 25, 41:3-21 ("Q. So it's your understanding and RightChoice's understanding that RightChoice receives the data in the -- this letter and number in a stream format, correct? [Objection] A. Correct."). *See, e.g.,* Ex. 45, Electronic Claims Transmissions from Putnam to Plaintiffs for SeroDynamics' Tests (excerpts).
>
> **Response:** Admitted.

(Docs. 548, 552) at 39 (highlighting supplied) (Plaintiffs' response omitted the images of the Zirmed Data in the Sero Defendants' brief). *See also* (Doc. 611) at 4 ▮▮▮▮▮

▮▮▮▮

Second, *Plaintiffs* served the Empower Defendants with requests for production seeking claims documentation evidencing the use of Putnam's NPI and TIN identifiers, and Empower

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ *See* Ex. B Empower's Response to Plaintiffs'

First Set of Requests for Production, at Responses 4, 13; *see also* Wright & Miller, Fed. Prac. &

Proc. Evid. § 7105 (1st ed.) (recognizing that authentication can be accomplished through "production of items in response to subpoena or other discovery request.")

Third, the Sero Defendants anticipate the Zirmed Data will be self-authenticating in accordance with FED. R. EVID. 902(13). In particular, the Sero Defendants anticipate the submission of an executed certificate meeting the requirements of Rules 902(11), (13) and 803(6). In accordance with Rule 902(11), the certificate will be made available to Plaintiffs for inspection as soon as possible before trial.

Fourth, the trier of fact will be in a position to compare the

See FED. R. EVID. 901(b)(3), (4).

Fifth, testimony from the custodian or another qualified person authenticating the Zirmed Data and establishing its admissibility could be introduced at trial. Plaintiffs deposed the officers and employees Empower (the company that submitted the at-issue claims) including Jorge Perez, Ricardo Perez, Yesenia Hidalgo *after* production of the Zirmed Data. Plaintiffs asked detailed questions and presented nearly 100 exhibits. While the witnesses invoked their Fifth Amendment rights in response to most questions, Plaintiffs did not exhibit, reference, or ask any questions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, Plaintiffs would not be prejudiced by the introduction of limited testimony to establish the authenticity and admissibility of the Zirmed Data. *See, e.g., Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011) (rejecting appellee's argument that district court's exclusion was appropriate because information sought during discovery was shielded through privilege only to be proffered at trial)

*F.T.C. v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291 (D. Minn. 1985) (allowing trial testimony and finding party was "not been unfairly surprised or prejudiced" by opposing proponent's "assertion of privilege and subsequent decision to testify at trial"); *Ille v. Am. Fam. Mut. Ins. Co.*, No. CIV. 03-2092 JRT/JSM, 2004 WL 5720680, at *5 (D. Minn. Dec. 1, 2004) ("The Eighth Circuit has emphasized a 'strong policy favoring trial on the merits and against depriving a party of his day in court.'")

Plaintiffs assert the Sero Defendants cannot authenticate the Zirmed Data because of the Court's prior sanctions Order against Empower precluding Empower from introducing evidence in its defense, but that argument is wrong. Here, the Sero Defendants—not the Empower Defendants—seek to introduce the Zirmed Data in support of the Sero Defendants' defense, and the Court explicitly declined to extend the Order so far as to potentially prejudice the defense of the Sero Defendants. (Doc. 430) at 12-13 ("Ordering that it be taken as established that Empower H.I.S. knew of the falsity of its representations and intended for Plaintiffs to act on those misrepresentations by paying the claims would make it difficult for the Serodynamics Defendants to defend a key fact in Plaintiffs' civil conspiracy claim, potentially prejudicing parties who are not being sanctioned.")

Plaintiffs also argue the Zirmed Data will only "confuse the jury." But Plaintiffs' central allegation is that Empower billed the at-issue claims to conceal the involvement of the defendant labs, including SeroDynamics. The Zirmed Data is directly relevant to intent to defraud (and the lack thereof). The fact that the at-issue claims submitted by Empower identified the names of the labs by name—even if coded incorrectly—is relevant and material evidence in showing that the claims were not intended to conceal the lab Defendants or otherwise deceive.

**THIRD MOTION *IN LIMINE* (DOC. 629):** Plaintiffs move to exclude any Party from introducing evidence of any decision by law enforcement to <u>not</u> criminally charge any Defendants for their work at Putnam. Plaintiffs also attempt to distinguish the Byrns' Guilty Plea (the "Byrns Plea") and argue it should be admitted in this case.

### a. The Plea Agreement is not a Final Judgment, is Hearsay, and its Prejudicial Value Outweighs any Probative Value.

As submitted in the Sero Defendants' Motion *in Limine* No. 5 (DOC. 641), the Byrns Plea should not be admitted to evidence. The Byrns Plea does not specify <u>who</u> Byrns conspired with, or whether it was any of the Sero Defendants, any co-defendants (including parties who have settled out of this litigation), and / or any third party. This is because the Byrns Plea does not use any names other than Byrns. The Byrns Plea also contains many facts not tied to any specific party other than Byrns. *Id*. Plaintiffs cite numerous authorities that purport to hold the Byrns Plea is relevant. But each of those authorities is based on facts completely different from the current case:

In *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 893 (D.C. Cir. 2010), the plea agreement at issue constituted a "final judgment of conviction," as required by FRE 803(22), because final sentencing had occurred years earlier (and had even been fulfilled) at the time the plea agreement was sought to be admitted at trial.

In *Buscaglia Guillermety v. Cancel Gonzalez*, 491 F. Supp. 2d 199, 200 (D.P.R. 2006), the defendant that plead guilty was still contesting liability in the civil case. Additionally, the admissibility of a plea agreement was explicitly not at issue. *Buscaglia-Guillermet, et al v. Cancel-Gonzalez, et al*, 3:00CV02116 (Doc. 190) at 2 (Defendants "d[id] not oppose the use of the guilty plea or conviction to prove negligence"). The Court ruled only that "[p]laintiffs may introduce the guilty plea as evidence to prove Cancel–González's [the defendant who had

entered the plea agreement]'s fault in the killing of Toledo Buscaglia." *Buscaglia Guillermety v. Cancel Gonzalez*, 491 F. Supp. 2d at 201 (D.P.R. 2006).

In *Garamendi v. Altus Fin. S.A.*, No. CV99-2829AHM(CWX), 2005 WL 5995776, at *1 (C.D. Cal. Jan. 31, 2005) the defendants who had pled guilty were still actively disputing liability yet had "explicitly acknowledged the inextricable connection between the criminal and civil cases." Additionally, the defendants had not moved to exclude the plea agreements, only "[t]o exclude irrelevant facts derived from plea agreements." *Id.* at *1. Even then, the Court required the jury instruction "separately specify" each portion of the plea agreement to which each defendant had pled guilty and clarifying that the other defendants "were not charged with any crimes and did not plead guilty to any crimes." *Id.* at *2.

In *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 403 (8th Cir. 1995), the guilty plea at issue was made by an employee of the defendant company and related to a fire he had started at the defendant company's facility, which was the subject of the insurance coverage dispute. The Court noted "many statements . . . strongly supported" the plaintiffs claim and, "[t]hus, even considering [the plea agreement], summary judgment was provided. In addition, there is no evidence the district court relied on [the plea agreement] in coming to its conclusion." While the Court found "in any event" the guilty plea was admissible, it did not address FRE 803(22).

In *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 491 F. Supp. 2d 690, 693 (S.D. Tex. 2007), the issue of admissibility of the plea agreements was not raised or argued by the parties. While the Court, in denying plaintiffs' motion for summary judgment, indicated (in dicta) that certain plea agreements of former Enron officers would be admissible at trial, those plea agreements had already resulted in sentencing and final judgment. *See American National,*

8

*et al v. Citigroup Inc.*, Case No. 3:02CV00723 (Doc. 65) at 8 (identifying plea agreements); *USA v. Fastow*, Case No. 4:02CR00665 (Docs. 93, 203) (final judgment); *USA v. Causey*, Case No. 4:04CR00025 (DOC. 1181) (final judgment).

As submitted in the Sero Defendant's Motion in Limine (DOC. 641), the Byrns Plea is hearsay and does not fall under any hearsay objection because it is not a final judgment of conviction and no sentencing has been assessed against Byrns. The Byrns plea is also unduly prejudicial in that it is being proffered by Plaintiffs in a civil trial to prove a conspiracy against alleged civil co-defendants when the Byrns Plea contains no specific reference as to <u>whom</u> Byrns allegedly conspired with. As shown above, each of Plaintiffs' authorities are easily distinguishable: in each case, a guilty plea was either (1) a final judgment of conviction that contained sentencing, and / or (2) was being offered against an active defendant in a subsequent civil case when they had already pleaded guilty in a related criminal case. Neither situation is presented here, and the Byrns Plea should be excluded.

> **b.   If the Byrns' Plea is Admitted, it Opens the Door to a Lack of Similar Prosecution Against the Sero Defendants.**

Allowing the Byrns' Plea opens the door to the Sero Defendants' lack of prosecution by law enforcement. The Sero Defendants will be unduly prejudiced if the Byrns Plea is admitted while the Sero Defendants are simultaneously precluded from offering evidence they have not similarly been prosecuted. Thus, if Byrns Plea is admitted, the fact the Sero Defendants have <u>not</u> been criminally charged by any law enforcement agency must be admitted under the doctrine of completeness and due to the lack of factual detail contained in the Byrns Plea.

The cases Plaintiffs rely upon to exclude the lack of prosecution to the Sero Defendants do not contain any similar situations, and do not otherwise support any assertions that a lack of criminal indictment by prosecutors is irrelevant.

9

*U.S. v. Morel*, 751 F. Supp. 2d 423, 430-36 (E.D.N.Y. 2010) was a criminal case against a single defendant (Morel). Morel and four other co-conspirators were arrested at the airport in for an attempt to smuggle narcotics. *Id.* at 426. All five (5) arrestees initially denied knowing their shipments contained narcotics. *Id.* On this basis, prosecutors declined to prosecute Morel's co-arrestees and also initially declined to prosecute Morel. *Id.* However, Morel then subsequently (in violation of his Constitutional rights) confessed to knowing the shipments contained narcotics. *Id.* The confession was suppressed. *Id.* The prosecution later moved *in limine* to exclude any evidence of the initial lack of prosecution of Morel. *Id.*

In analyzing the prosecutor's motion, the Court initially determined the "initial declination [to prosecute] **is important evidence** to support the defense theory." *Id.* at 431 (emphasis supplied). The court explained "the court is inclined to agree with Morel that the initial declination of prosecution **is relevant** to showing that the agents are fabricating or exaggerating the evidence in this case." *Id.* (emphasis added). But the Court went on to hold that in light of the suppression of Morel's voluntary confession, there would be severe prejudice in introducing the initial declination of prosecution. Thus, the Court excluded it on that basis alone.

Similarly, *United States v. Delgado*, 903 F.2d 1495, 1498 (11th Cir. 1990) is distinguishable. In that case, several co-offenders were tried and sentenced by a jury for smuggling narcotics. During pre-trial, the defendants wished to reference that one of their co-conspirators (Ajami) had reached a plea deal with prosecutors on different charges than Ajami initially had been indicted for and they also claimed this was evidence the active defendants were innocent of that charge too. *Id.* at 1500. In its rationale, the Court explained it was excluding the

lack of prosecution against the plea defendant because the government had reached a deal in exchange for that defendant's favorable testimony against his co-conspirators. *Id*.

Thus, both *Morel* and *Delgado* are distinguishable. In the instant matter, there was no initial declination to prosecute, no subsequent prosecution, and no suppressed statements as there was in *Morel*. If the Byrns Plea is admitted, Plaintiffs face no prejudice vis-à-vis testimony that the Sero Defendants have not been subject to criminal prosecution in order to prove the Sero Defendants are the not the individuals referenced in the Byrns Plea. Similarly, the Sero Defendants are not moving to admit the Byrns Plea as the defendants did in *Delgado*, or reference charges (or lack of charges) it contains against separate defendant Byrns. The Sero Defendants have already moved *in limine* to exclude the Byrns Plea (DOC. 641) since it is not relevant and is unduly prejudicial to this litigation.

As also argued above, the Sero Defendants have no intention of offering evidence they have not been criminally prosecuted for their actions at Putnam. However, such evidence and a lack of similar prosecution is relevant, crucial, and necessary should this Court admit evidence of the Byrns Plea. Admitting the Byrns Plea opens the door to this issue, and the Sero Defendants must be allowed to introduce evidence they have not been criminally prosecuted for their actions at Putnam and be allowed to distinguish themselves from the Byrns Plea should this Court allow the Byrns Plea into evidence.

**FOURTH MOTION *IN LIMINE* (DOC. 630):** Plaintiffs move to exclude any evidence of positions that Plaintiffs have taken in other litigation and arbitrations relating to pass-through billing.

The Sero Defendants have no intention of introducing evidence of other litigations or arbitrations involving allegations of pass-through billing by hospitals other than Putnam.

11

However, the Sero Defendants are allowed to cross-examine and impeach Plaintiffs (and their witnesses) on inconsistent statements and positions Plaintiffs themselves have taken *within* other proceedings.[2] These positions are highly relevant to the veracity of Plaintiffs, their witnesses, and Plaintiffs' allegations.

For example, in the instant litigation, Plaintiffs argue they were "misled" into thinking Putnam performed blood tests because Putnam used a 141 / "Non-Patient" billing code when Putnam submitted claims to Plaintiffs. Ex. C, Anthem Corp. Rep. (Oser) at 85:23-86:8. But, in separate litigation, Plaintiffs argued the exact opposite to an arbitral tribunal and contended the billing hospital in that case (Little River) should have billed the laboratory tests using code 141. *See* Ex. D, Award, *Rockdale Blackhawk, LLC d/b/a Little River Healthcare v. Blue Cross & Blue Shield of Texas,* AAA Case No. 01-18-0001-0136 (2020) at ¶ 90.

Thus, if Plaintiffs take an inconsistent position at trial with a position they have taken in a prior judicial or arbitral proceeding, the Sero Defendants should be able to question and impeach Plaintiffs' witnesses regarding those inconsistent positions.

**FIFTH MOTION *IN LIMINE* (DOC. 631):** Plaintiffs move to exclude any evidence or mention of policies maintained by any by non-party insurers. The Sero Defendants do not intend to introduce non-party policies for the truth of the matter asserted therein, and therefore they are

---

[2]     The doctrine of judicial estoppel is also relevant here: "[t]he doctrine of judicial estoppel protects the integrity of the judicial process. A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court. Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (cleaned up).

not hearsay.[3]  However, the Sero Defendants' intent at Putnam is an element of Plaintiffs' fraud and other tort claims.  And Plaintiffs must prove these claims by a preponderance of the evidence.  Evidence of industry policies and guidance on pass-through billing are highly relevant since they explain whether the Sero Defendants themselves understood if their objectives at Putnam were legal and because such guidance is relevant as to whether the Sero Defendants' intent was lawful.

Additionally, industry guidance in existence at the time the Sero Defendants formed their approach at Putnam is not hearsay and will not be offered for the truth of the matter asserted in such guidance, since the statements contained in the policies of other payors or insurance companies goes to the effect on the listener (the Sero Defendants themselves).  *White Commc'ns, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 613 (8th Cir. 2021) ("It is well settled that a statement offered to show its effect on the listener is not hearsay.")  Industry policies and guidance explain why the Sero Defendants believe their operations at Putnam were legal and were not improper pass-through billing.

Last, this Court has already determined in its order partially striking Dr. Kongstvedt's testimony that "Dr. Kongstvedt may testify about what practices like 'pass-through billing' and 'patient brokering' are, whether such practices **are consistent with industry standards**, and whether a given arrangement the Sero Defendants practiced constitutes pass-through billing or patient brokering."  (DOC 621) at pp. 3-4 (emphasis supplied).  Thus, the Sero Defendants also are able to raise other payors' and insurance companies' policies and guidance on pass-through

---

[3]    On a separate note, Dr. Kongstvedt attached an Exhibit 1 to his report (attached hereto as Ex .E), which is an article titled "Examining Clinical Laboratory Services" dated May of 2018 and was promulgated by the "Healthcare Fraud Prevention Partnership."  The Sero Defendants have separately moved to exclude this evidence, since it post-dates the Sero Defendants' work at Putnam and is therefore irrelevant. (DOC. 641) at No. 8(c).

billing in order to cross-examine Dr. Kongstvedt on these industry standards, to which he is the purported expert.

Further, Plaintiffs' cited authorities do not support their position, are inapposite, and easily distinguished. *Katzenmeier v. Blackpowder Prod., Inc.*, No. 4:06-CV-00169-RAW, 2008 WL 8586676, at *3 (S.D. Iowa Nov. 25, 2008), aff'd, 628 F.3d 948 (8th Cir. 2010) (holding "[e]vidence and testimony concerning **foreign** laws, regulations and standards is excluded" because "issues of foreign law are for the Court to determine as a matter of law") (emphasis supplied); *Bustamante v. Thedford*, No. 89 C 3471, 1995 WL 76900, at *5 (N.D. Ill. Feb. 23, 1995) (in a § 1983 case, the "Court conclude[d] that violations of departmental rules and regulations are unrelated to Plaintiff's claim that he was deprived of his constitutional rights.")

The instant case does not concern foreign laws, regulations, or standards that can be adjudicated by the Court as matter of law. This case also does not turn on a violation of any constitutional rights to which agency regulations might be inapplicable. Rather, Plaintiffs have accused the Sero Defendants of common-law fraud and pass-through billing and have disclosed an expert to present evidence on those very issues. Thus, the Sero Defendants should be able to introduce contradictory industry guidance in this area and prove the Sero Defendants' had no fraudulent intent. The Sero Defendants also must be allowed to cross-examine Plaintiffs' purported industry expert (Dr. Kongstvedt) on industry custom that existed at the time the Sero Defendants formed and carried out their operations with Putnam.

**SIXTH MOTION *IN LIMINE* (DOC. 632):** Plaintiffs move to exclude any evidence of the satisfaction or negotiation of debts owed by Putnam (what Plaintiffs deem "benevolent acts").

Defendants' valid business arrangement with Putnam allowed Putnam to avoid bankruptcy when at least $2.5 million of debt was "able to be retired during Mr. Byrns and Mr. Perez's tenure" at Putnam. This action was not a "benevolent act" as Plaintiffs attempt to characterize it. Rather, the Defendants' business dealings with Putnam allowed Putnam to generate additional streams of revenue and allowed Putnam to retire $2.5 million of debt (after Byrns and Perez negotiated that number down from $5.3 million).

The Corporate Representative for Putnam will testify at trial that Putnam was on the verge of bankruptcy:

> Q. The board had multiple discussions about this precarious financial condition, correct?
> A. Yes.
> Q. And in fact, bankruptcy was discussed on multiple occasions, correct?
> A. We were still fact-finding. I sat on the committee of six people that was assigned to just wade through it.

Ex. F, Putnam Corporate Representative (Gayle Pickens) Depo. at 112:20-113:9. She will further testify at least $5.3 million worth of debt was able to be absolved from Putnam due to the revenues generated at Putnam:

> Q. And do you know how many millions of dollars of debt were able to be retired during Mr. Byrns' and Mr. Perez's tenure?
> A. 2.5 million.
> Q. Before the hospital's relationship with hospital partners, Putnam had looked at partnering with other hospitals, correct?
> A. Yes.

*Id*. at 120:7-10;

> Q. So Mr. Byrns, and through Hospital Partners, negotiated 5.3 million down to 2.5, correct?
> A. Yes.
> Q. And then they paid 2.5?
> A. It was paid in payments over months.
> Q. Right.
> A. Yes.

> Q. So really, what we're looking at is a total number of $5.3 million worth of debt that was taken off the hospital's back. Is that fair?

*Id.* at 220:11-14.

In their motion in limine, Plaintiffs do not explain the factual basis for claiming the money Putnam was able to generate by working with the Defendants was a "benevolent act." And there is no evidence in the record to support that assertion. Rather, the record is clear that $2.5 million in debt (that Byrns and Perez were able to negotiate down from $5.3) was able to be retired through the Defendants' work at Putnam, and this work directly speaks to Defendants' intent and motive at Putnam. This evidence is highly relevant to a defense of Plaintiffs' fraud and other tort claims.

The cases cited by Plaintiffs are not persuasive. They both involve situations where purely monetary contributions (made by a corporation) were held to be unrelated to intellectual property claims. *See Ty Inc. v. Softbelly's Inc.,* No. 00 C 5230, 2006 WL 5111124, at \*14 (N.D. Ill. Apr. 7, 2006) (in a trademark infringement case, the Court held a defendant's monetary and charitable contributions were irrelevant to such things as the public's impressions of the Ty Beanie Bear mark); *Habersham Plantation Corp. v. Molyneux*, No. 10-61526-CIV, 2011 WL 13216995, at \*10 (S.D. Fla. Dec. 5, 2011) (the Court, without explanation, held that plaintiff's charitable contributions and missions were not admissible to bolster plaintiff's claims for trademark infringement of their original and copyrighted furniture designs).

This case does not involve intellectual property claims. This is a fraud case. The negotiation and retirement of the Putnam debts speaks to the motivation and intent of the Defendants, including the Sero Defendants. To prove their claims for fraud, Plaintiffs carry the burdens of production and persuasion as to each element of fraud (and their other related torts) and must prove it was the Sero Defendants' *intent* to defraud Plaintiffs. A contrary intent, such

as the one above—where Defendants worked with rural hospitals across the country to help generate increased revenue streams and avoid bankruptcy and closure of hospitals—speaks directly to this element of intent, and the Court should not exclude highly relevant evidence to the contrary.

**SEVENTH MOTION *IN LIMINE* (DOC. 633):** Plaintiffs move to exclude any evidence or mention of lay opinion testimony regarding the medical necessity of clinical laboratory tests at issue in the case. The Sero Defendants do not intend to introduce any such evidence. Indeed, *no witness* (expert or lay) should offer any such opinion. *See* (Doc. 619) at 5 ("none of Plaintiffs' experts opined on the medical necessity of the lab tests Serodynamics performed"; "it appears Plaintiffs do not intend to offer any evidence concerning the medical necessity of the lab testing").

However, the Sero Defendants oppose the motion to the extent it seeks to prevent the Sero Defendants from referencing: (1) LabTrac (SeroDynamics' proprietary patient database software); (2) the requisition forms contained in LabTrac; (3) the statement of medical necessity by ordering physicians in the requisition form; (4) the provider's signature of such statement of medical necessity; (5) or the Sero Defendants' reliance on the signed statements. *See* (Docs. 448, 452) at 11-12; *United States ex rel. Groat v. Bos. Heart Diagnostics Corp.*, 296 F. Supp. 3d 155, 158–60 (D.D.C. 2017) ("the Court is now convinced that a laboratory . . . is permitted to rely on the ordering physician's determination that the laboratory tests billed to Medicare are medically necessary") (citing Office of Inspector General ("OIG") Guidance, 63 Fed. Reg. at 45077). Plaintiffs allege that Defendants materially misrepresented medical necessity ((Doc. 310) at 57-58, 70), and the Sero Defendants should be allowed to submit evidence the lab tests performed were ordered by providers who had signed a statement stating that the ordered tests

were medically necessary. Excluding this evidence would result in a substantial danger of undue prejudice misleading the jury to believe (contrary to fact) that SeroDynamics performed lab tests in the absence of *any* medical necessity determination whatsoever. *See* FED. R. EVID. 403. The fact the Sero Defendants performed tests only after an independent provider certified the requested test(s) as medically necessary goes to the lack of any fraudulent intent, including to misrepresent medical necessity, and should be admissible.

**EIGHTH MOTION *IN LIMINE* (DOC. 634):** Plaintiffs move to exclude evidence of antitrust allegations asserted against Plaintiffs in other litigation, and any related settlements in any other particular cases, including *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000 (N.D. Ala. Jan. 8, 2013).

The Sero Defendants do not intend to introduce any such evidence. However, the Sero Defendants should not be prohibited from referencing any conduct, practice, or policy of Plaintiffs (or the BCBS Assignors) that may be considered anti-competitive in nature and that is otherwise relevant to this case including, for example, Plaintiffs' practice of reimbursing out-of-network providers at less than fair value and sending reimbursements to patients (not the providers). Such evidence is relevant to, among other things, refuting Plaintiffs' claim that the Sero Defendants' partnership with Putnam was merely a fraudulent attempt to be in-network. Just because that same conduct, practice, or policy may be referenced separately in an antitrust litigation does not make that evidence inadmissible. However, the Sero Defendants do not intend to refer to any specific case, specific allegation or argument in any case, or any resulting settlement.

**NINTH MOTION *IN LIMINE* (DOC. 635):** Plaintiffs move to exclude any evidence or mention of the Sero Defendants' initiatives and activities purportedly directed to or on behalf of

military veterans.  The Sero Defendants oppose this Motion because it seeks to exclude an integral component of partnership with Putnam and the lab arrangement model that the Sero Defendants (and their affiliates, including Cadira MD, which, while not contracted directly with Putnam, supported the Putnam relationship) attempted to implement at Putnam.  Plaintiffs allege the Sero Defendants were engaged in a "fraudulent scheme" that used Putnam "simply as a billing entity" distributing the "vast majority of the proceeds of the fraudulent scheme amongst themselves" and otherwise engaging in conduct that was "particularly telling of the[ir] greed." (Doc. 310) at 4, 6. The Sero Defendants must be allowed to introduce evidence giving the full picture of what the Sero Defendants sought to implement at Putnam, and their intentions generally, including their efforts to legitimize and bring into the mainstream a lab outreach approach seeking to further veteran, rural community, and health and wellness initiatives.

Additionally, Plaintiffs' core allegation is that the "scheme" was designed to conceal the involvement of independent labs.  The Sero Defendants' efforts that Plaintiffs seek to exclude demonstrate the contrary:  they were raising awareness about and promoting their concept of the lab arrangement at Putnam.  *See*, *e.g.*, (Doc. 635-2) at 33:23-34:7 (discussing meeting with "Veteran Affairs, Robert McDonald at the time, to talk to him about exactly what we were doing at Putnam and how we were trying to save rural hospitals and create veteran outreach and provide a means for the federal government not to have this rural hospital crisis on their balance books").

Plaintiffs' authorities are not persuasive and, in fact, support the Sero Defendants' position.  In *Achterberg v. Albaugh, LLC*, No. 5:16-CV-06097-DGK, 2017 WL 5924262, at *1 (W.D. Mo. Nov. 30, 2017), this Court **allowed** "evidence that [the defendant] has hired other veterans or servicemembers is relevant as circumstantial evidence *to rebut Plaintiff's allegation*

*that it had an improper motive or intent.*" *Id.* (emphasis added). The Sero Defendants seek to do the same here. Plaintiffs' other cases are inapposite. In *Simonsen v. McClinton Energy Grp., LLC*, No. 13-CV-635-JED-FHM, 2014 WL 5795498, at *1 (N.D. Okla. Nov. 6, 2014), a breach of contract dispute, the Court excluded evidence of the defendant's prior military service, which defendant argued was relevant because it was an "integral component" of "who he was" and to establish his character and credibility. But plaintiff had conceded his character and credibility was not at issue. The decision involved no issue of fraudulent intent. In contrast, here, evidence of the Sero Defendants' military veteran initiatives goes to the intent of the Sero Defendants—an element contested by Plaintiffs. Likewise, in *Capuano v. Consol. Graphics, Inc.*, No. CIV.A. 06 C 5924, 2007 WL 2688421, at *6 (N.D. Ill. Sept. 7, 2007), another breach of contract case, the plaintiff sought to introduce prior military service as evidence of his "credibility and business savvy." But again, unlike here, intent was not an issue in the case.

Finally, Plaintiffs' motion references LabTrac. LabTrac has nothing to with military veteran initiatives. LabTrac was SeroDynamics' proprietary lab information system which contained clinical documentation relating to the tests performed by itself. LabTrac, by itself, is completely unrelated to any veteran or health and wellness initiative. Thus, the Sero Defendants oppose Plaintiffs' characterization of LabTrac and its inclusion in Plaintiffs' Motion.

**TENTH MOTION *IN LIMINE* (DOC. 636):** Plaintiffs move to exclude any evidence or mention of Plaintiffs' assets, revenue, or financial conditions. The Sero Defendants do not intend to introduce any such evidence or make any such references.

Dated this Tuesday, August 24, 2021                   Respectfully submitted,

                                            /s/Gregory J. Minana
                                            GREGORY J. MINANA          MO #38004

JAMES R. MONTGOMERY MO #68281
AARON CHICKOS MO #62072

HUSCH BLACKWELL LLP

4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
greg.minana@huschblackwell.com
jr.montgomery@huschblackwell.com
aaron.chickos@huschblackwell.com

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone (314) 480-1500
Facsimile (314) 480-1505

***Attorneys for Defendants Mark Blake,
Beau Gertz, SeroDynamics LLC, and
LabMed Services, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, August 24, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Gregory J. Minana

21