## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

RightCHOICE Managed Care, Inc., *et al.*,

     Plaintiffs,

v.

Hospital Partners, Inc.; Hospital Laboratory
Partners, LLC; Empower H.I.S. LLC; RAJ
Enterprises of Central Florida, LLC d/b/a Pinnacle
Laboratory Services; Labmed Services, LLC;
Serodynamics, LLC; David Byrns; Jorge Perez;
Beau Gertz; and Mark Blake,

     Defendants.

Civil Action No.

5:18-CV-06037-DGK

## PLAINTIFFS' BRIEF REGARDING THE ADMISSIBILITY OF THE DEFENDANTS' INVOCATIONS OF THE FIFTH AMENDMENT

Plaintiffs respectfully request the Court's permission to introduce to the jury portions of the depositions of Defendants Jorge Perez and David Byrns relating to their relationships with Defendants Beau Gertz, Mark Blake, Serodynamics, LLC, and Labmed Services, LLC (the "Sero Defendants") and the issues the jury will decide.[1] For the Court's convenience, Exhibit A hereto contains the deposition testimony Plaintiff seek to introduce as to each of Perez and Byrns.

Perez and Byrns are central figures in this case. They controlled Putnam County Memorial Hospital ("Putnam")—the instrumentality of the fraud—through Defendant Hospital Partners, Inc. They used Perez's company, Defendant Empower H.I.S., LLC, to bill the tests to Plaintiffs, including those performed by Serodynamics. The Sero Defendants' contracts with Putnam were negotiated and agreed with Byrns and Perez. Plaintiffs' damages all arise from claims billed by Empower using Putnam's identifiers. Nonetheless, as set forth in their Trial Brief, the Sero Defendants intend to tell the jury that they relied extensively on Perez and Byrns as to the propriety of their relationship with Putnam, in an effort to convince the jury that they did not have a fraudulent or nefarious intent. Under Eighth Circuit precedent, given their centrality to the scheme and the Sero Defendants' reliance on Perez and Byrns in their defense, the jury should hear what Perez and Byrns said in response to similar questions before deciding whether the Sero Defendants' account is credible.

To be clear, Plaintiffs are not asking the Court for an adverse inference instruction as to the Sero Defendants at this time. As set forth herein, if the evidence at trial supports such an inference, the jury can be so advised, or the Court may wish to use a conditional instruction.

---

[1] Plaintiffs appreciate the Court's request for clarity as to the specific testimony Plaintiffs seek to introduce. (*See* Dkt. 708 at 16.) Plaintiffs are not requesting the Court's permission to introduce the depositions of James F. Porter, Ricardo Perez, or Yesenia Hidalgo at this time, but respectfully request that the Court permit them to reserve final decision until after certain witnesses (*e.g.*, the Sero Defendants) testify in Plaintiffs' case-in-chief.

The prejudice to Plaintiffs if they are not permitted to play the selected deposition testimony of the Sero Defendants' principal co-conspirators would be incurable. *First*, as the Court is aware (*see* Dkt. 430 at 10-12), Plaintiffs were deprived of the opportunity to take testimony from *anyone* at Empower or Hospital Partners: both refused to make corporate representatives available under Rule 30(b)(6) because, they said, anyone with knowledge would invoke the Fifth Amendment. *Second*, as the Court is also aware (*see id*. at 8, 13-15), Empower and Hospital Partners both violated their duties to produce relevant documents in discovery, ultimately producing essentially no documents from the relevant period. If the jury does not hear from the two people without whose collaboration the scheme would never have happened, that would not only deprive Plaintiffs of their ability to tell the whole story, it would also leave the jury to guess as to the reason for the absence of the two people the Sero Defendants will repeatedly point to as explaining their own conduct and supposed lack of a fraudulent intent.

Perez's and Byrns' conduct was not a mystery to the Sero Defendants—both did exactly what the Sero Defendants asked them to do. The Sero Defendants will testify extensively about their agreements with Perez and Byrns on the core factual issues that the jury will be asked to decide. Plaintiffs submit that the jury should be permitted to hear the other side of the story.

**ARGUMENT**

I.  **The jury should hear the selected portions of Perez's and Byrns' depositions.**

The Eighth Circuit has allowed the introduction of Fifth Amendment invocations by non-parties in civil cases. *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987). In making this determination, many courts follow the Second Circuit's nonexclusive, multifactor test from *LiButti v. United States*, which weighs: (1) the nature of the relevant relationships between the non-party and party; (2) the degree of control of the party over

2

the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. 107 F.3d 110, 123–24 (2d Cir. 1997) (relying on *Cerro Gordo*).[2]

The Sero Defendants' Trial Brief details the centrality of the role played by Perez and Byrns, the alignment of their interests, and the inevitable focus of the trial on the Sero Defendants' relationships with Perez and Byrns. As to Plaintiffs' fraud claim, the Sero Defendants state that "[t]he primary issue . . . is whether Putnam/Empower's use of Putnam's TIN and NPI constituted a false representation of fact relied on by Plaintiffs and that is attributable to the Sero Defendants."[3] (Dkt. 694 at 2.) As to Plaintiffs' tortious interference claim, the Sero Defendants "will testify that Mr. Gertz and Mr. Blake each requested a copy of Putnam's commercial contracts, including the network contract with Blue Cross and Blue Shield, but were not provided a copy" by Perez or Byrns. (*Id.* at 3.) They have, and will, make the conduct of Perez and Byrns a cornerstone of their defense at trial.

The Eighth Circuit's reasoning in *Cerro Gordo* is directly applicable: "If anyone knew whether there was an intent to commit a fraud, it was [Perez and Byrns]. Hearing [them] invoke the privilege informed the jury why the parties with the burden of proof, i.e., the insurance companies, resorted to less direct and more circumstantial evidence than [Perez's and Byrns'] own account of what had occurred. Otherwise, the jury might have inferred that the companies did not call [Perez and Byrns] to testify because [their] testimony would have damaged their case." 819 F.2d at 1482 (citations omitted).

---

[2] *Cerro Gordo* is the Eighth Circuit's most recent binding authority on this issue. Although the *LiButti* factors are derived in part from the Eighth Circuit's analysis in *Cerro Gordo*, the Eighth Circuit has not explicitly adopted the *LiButti* factors.
[3] The Sero Defendants frequently place the agreement or conduct of Putnam at issue, but their communications with "Putnam" were with Perez and Byrns.

Perez and Byrns were involved in nearly every aspect of the story the jury will hear, the jury will be presented with substantial evidence and the Sero Defendant's own live testimony to consider their truthfulness and guilt, and Perez and Byrns are "key figure[s] in this case." Therefore, the limited invocations the Plaintiffs seek to play should be presented to the jury. *See Cerro Gordo*, 819 F.2d at 1482-83 (permitting witness to invoke Fifth Amendment at trial); *Wood v. Reassure Am. Life Ins. Co.*, No. 4:03-CV-00800 JWC, 2006 WL 8444860, at \*3 (E.D. Ark. June 8, 2006) (applying *Cerro Gordo* and permitting witness to invoke at trial because he was a "key figure," his testimony would assist the jury in understanding the Defendants' need to prove the case through circumstantial evidence, and any undue prejudice could be addressed by jury instruction); *see also Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986) (affirming presentation of nonparties' invocations in depositions when record was "replete with circumstantial evidence" of their involvement with the alleged plan); *Coquina Inv. v. TD Bank, N.A.*, 760 F.3d 1300, 1310-12 (11th Cir. 2014) (affirming use of non-party's invocation because his misrepresentations formed "the bulk of [plaintiff's] complaint).

### A.  The nature of the Sero Defendants' relationships with Perez and Byrns

The first *LiButti* factor requires an analysis of the closeness of the relationship between the Sero Defendants, Perez, and Byrns. *LiButti*, 107 F.3d at 123. The Sero Defendants, Perez, and Byrns had a close business relationship. Before any of them had a relationship with Putnam, Perez was the CEO of Campbellton-Graceville Hospital ("CGH"), and invited the Sero Defendants to perform tests that would be billed through CGH. (Dkt. 658 Ex. 2 (Blake 2019 Dep.) at 65:11-14.) Perez thought the Sero Defendants did a good job at CGH, so he invited them to participate in the arrangement at Putnam. (Dkt. 658 Ex. 5 (Gertz 2019 Dep.) at 38:3-10.)

Perez and Byrns had control of Putnam beginning in September 2016. (Dkt. 658 Ex. 17

(Putnam Dep.) at 23:5-17, 24:12-25:21; Dkt. 529 Ex. 3 (Hospital Partners-Putnam contract).) Gertz and Blake negotiated their companies' contracts with Putnam through Perez and Byrns, and Byrns signed them. (*See* Dkt. 658 Ex. 2 at 124:7-14 (Serodynamics-Putnam contract was negotiated by Blake, Gertz, Perez, and Byrns); Dkt. 658 Ex. 12 at 56:16-21 (Labmed-Putnam contract discussed with Perez and Byrns); *see also* Dkt. 658 Ex. 2 at 124:24-125:4 (David Byrns had to agree to terms of contracts on behalf of Putnam); Dkt. 529 Exs. 24 (Putnam-Serodynamics contract); Dkt. 530 Ex. 22 (Putnam-Labmed contract); Dkt. 658 Ex. 20 at 263:6-264:23).

The Sero Defendants' control over Perez—and their alignment of interests—are further illustrated by the Sero Defendants' service four days ago of a "Certificate" signed under the penalties of perjury by Ricardo Perez, purporting to authenticate records produced by Empower H.I.S. (*See* Ex. B). But Ricardo Perez—the brother of Jorge Perez—invoked the Fifth Amendment in response to every single question asked of him by Plaintiffs at his deposition. (*See* Dkt. 658 Ex. 16.) Ricardo Perez is also a defendant in the related criminal proceeding pending in the Middle District of Florida. Now, however, he is voluntarily making sworn statements about the topics he and the company he worked for refused to provide under oath in their depositions, all for the benefit of the Sero Defendants. (*Compare* Ex. A to Dkt. 658 Ex. 16.)

Finally, there is no reason to believe Byrns or Perez invoked the Fifth Amendment at their depositions to damage the Sero Defendants, which was a principal concern of the *LiButti* and *Cerro Gordo* courts. Perez and Byrns have been indicted, reflecting a legitimate basis for their invocations. In fact, Byrns already pleaded guilty.

## B.  The Sero Defendants' control over Perez and Byrns

The second *LiButti* factor is the "the degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation[.]"

5

*LiButti*, 107 F.3d at 123. Here, the Sero Defendants have sought to place sole responsibility for billing the at-issue claims on Perez, Byrns, and their companies. (*See*, *e.g.*, Dkt. 658, Ex. 5 at 353:25-354:7 ("Would you mind talking about Putnam and Empower about billing and not asking me? I didn't deal with the billing."); *id.* 203:1-8 ("I don't know what was billed and what was not billed."); *id.* 204:4-14 ("I never billed, I never saw, I never did any of the transactions."); Dkt. 658, Ex. 6 (Gertz 2021 Dep.) at 120:11-17 ("I don't know anything about what Empower knew or didn't know or who billed what where."); *id.* at 121:20-122:3 ("The answer is: I don't know. I don't where or how billing took place."); Dkt. 658, Ex. 2 at 326:24-327:8 ("So I don't know how Putnam billed the claims."); Dkt. 658, Ex. 3 at 56:10-13 ("Q: I know nothing about billing. That's up to Putnam and Putnam's billing team."); *id.* at 56:20-57:8 ("And I knew nothing about billing. Mr. Gertz knew nothing about billing. And Mr. Perez had a billing platform that he used instead of us."). These denials are despite the fact that Serodynamics' contract with Putnam required the tests performed by Serodynamics to be billed using Putnam's "provider numbers," (s*ee* Dkt. 529, Ex. 24; Dkt. 688 ¶ 24 (J. Stip. Of Uncontroverted Facts)).

The Sero Defendants have also testified that Perez and Byrns approved of the Sero Defendants billing thousands of tests that Serodynamics performed for CGH and Southwest Labs through Putnam, even though the tests had no connection to Putnam. (Dkt. 658, Ex. 5 at 345:24-346:2 ("Q: Is it your understanding that David Byrns and [J]orge Perez authorized the billing of CGH and Southwest claims? A: That's how I understand it.").)

The Sero Defendants have also sought to place all responsibility for determining the propriety of their actions—including under the Putnam-RightCHOICE contract—on Byrns and Perez. (*See*, *e.g.*, Dkt. 658, Ex. 2 at 168:7-13 (when asked what he did to ensure Putnam could bill for tests performed by Serodynamics, Blake said: "I talked to Mr. Perez before the agreement

was signed. I talked to their attorneys. Nobody even raised it."); Dkt. 658, Ex. 20 at 255:21-256:10 ("Putnam had their own attorneys. Empower had their own attorneys. I was satisfied."); *id.* at 298:2-11 (when asked what steps Serodynamics took to comply with the Putnam-RightCHOICE contract, Blake said, "I didn't have the benefit of looking at Putnam's contract with Blue Cross Blue Shield. Neither Mr. Byrns nor Mr. Perez provided that to anybody. So it was solely up to them.") The Sero Defendants' knowledge of the Putnam-RightCHOICE contract came from Perez and Byrns. (Dkt. 658 Ex. 2 at 166:16-167:1 (somebody like Jorge Perez or David Byrns confirmed Putnam was in-network with Anthem).)

In short, Plaintiffs cannot present their claims against the Sero Defendants without the jury wondering, based upon the Sero Defendants' responses, how Perez and Byrns would testify.

### C. The Defendants' compatibility of interests in the outcome of the litigation

At the time they invoked the Fifth Amendment, both Byrns' and Jorge Perez's interests were aligned with the Sero Defendants' by virtue of their mutual desire to avoid joint and several liability and criminal prosecution. *See LiButti*, 107 F.3d at 123 (party and non-party witness "had precisely the same interest against the drawing of adverse inferences from the witness' invocation"); *NBank, Nat'l Ass'n v. Radian Servs., LLC*, No. 2:03-cv-109-WCO, 2005 WL 8156167, at *1-2 (N.D. Ga. Aug. 31, 2005) (witness's invocation "is hindering plaintiff's ability to gather evidence about the" conduct at issue, and therefore the defendants' and witness's interests were aligned). Even today, despite the fact that this Court has entered default judgment against Perez, he faces the risk of criminal liability on the same factual basis that the Sero Defendants are litigating in this case.

### D. The roles of Perez and Byrns in the litigation

The fourth *Libutti* factor is "[w]hether the non-party witness was a key figure in the

litigation and played a controlling role in respect to any of its underlying aspects[.]" 107 F.3d at 123-24. As set forth herein, Byrns and Perez were essential to the Putnam scheme's origin and operation. *See Cerro Gordo*, 819 F.2d at 1482 (invoking witness was a "key figure in this case"); *Rad Servs.*, 808 F.2d at 277 (affirming use of nonparties' deposition invocations when record was "replete with circumstantial evidence" of the witness's "involvement with the alleged plan"); *United States ex rel. Lutz v. Mallory,* 988 F.3d 730, 740-41 (4th Cir. 2021) (applying *Cerro Gordo* and *LiButti* and permitting invocation by non-party marketer against blood laboratory); *Wood*, 2006 WL 8444860 (permitting invocation by "key figure").

Additionally, Plaintiffs will introduce substantial evidence of Byrns' and Jorge Perez's conspiracy with the Sero Defendants. (*See* Dkts. 524, 529, 662.) The brief presentation of their invocations will not stand as the sole basis by which the jury will determine the Sero Defendants' involvement in the Putnam scheme. *Cf.* Fed. R. Evid. 403; *Cerro Gordo Charity*, 819 F.2d at 1481 (allowing adverse inferences in part because invocation was not the exclusive factor for the jury to consider in determining whether a fraud had been committed); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 153 (D. Conn. 2009) (drawing of adverse inferences from conspirators' invocations requires independent proof of the conspiracy).

## II.     The testimony is admissible under Federal Rules of Evidence 401 and 403.

The Eighth Circuit's analysis of Federal Rules of Evidence 401 and 403 in *Cerro Gordo* is instructive here. "[F]or evidence to be admissible under Rule 401 . . . it need only make it more probable that [a] fact exists." *Cerro Gordo*, 819 F.2d at 1482. Perez' and Byrns' invocations of the Fifth Amendment make it more probable that they engaged in fraud and tortiously interfered with the Putnam-RightCHOICE Contract, that they conspired with the Sero

Defendants, and that the Sero Defendants acted with tortious intent.[4] *See Eastman Chemical Co. v. SGS North Am., Inc.*, No. 2:15-CV-344, 2019 WL 10960575, at \*2–3 (E.D. Tenn. Feb. 4, 2019) (invocations in response to questions pertinent to remaining claims are probative).

Courts may exclude evidence under when the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice . . . misleading the jury . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Plaintiffs have narrowed their designations to avoid cumulative evidence (*see* Ex. A), and an appropriate instruction would prevent the jury from being confused or misled. Moreover, the Court should consider the Plaintiffs' lack of alternative means of presenting evidence on these critical issues.

"[T]he mere fact that a Fifth Amendment invocation is 'damning' to a party's position does not preclude its introduction." *In re 650 Fifth Avenue and Related Properties*, 934 F.3d 147, 171 (2d. Cir. 2019). And, where the invoking witness is so central to the conduct to be decided to the jury, courts in the Eighth Circuit have balanced the factors in Rule 403 in favor of admissibility. *See Cerro Gordo*, 819 F.2d at 1482 (invocations did not create "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one," and where other evidence supported the claims); *Wood*, 2006 WL 8444860 at \*2-3 (admitting witness invocation at trial, but excluding invocations in depositions as cumulative).

## III.    The Court should provide the jury with an appropriate instruction.

The Court correctly recognizes that, "when the party and the non-party witness are claims

---

[4] Byrns's and Perez's invocations are not statements offered for the truth of the matters asserted because they make no assertions. Fed. R. Evid. 801(c). Even if they did, Byrns and Perez are unavailable due to their invocations, *see* Fed. R. Evid. 804(a)(1); *Witham v. Mabry*, 596 F.2d 293, 297 (8th Cir. 1979), and their invocations were made at a lawful deposition where the Sero Defendants had an opportunity and similar motive to develop their testimony, *see* Fed. R. Evid. 804(b)(1)(A)-(B); *see also Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 520 (8th Cir. 1984) (discussing district court's unavailability analysis); *see also* Fed. R. Civ. P. 32.

9

co-conspirators, generally courts have required there to be sufficient, independent proof of a conspiracy between them before permitting the jury to draw an adverse inference against the party." (Dkt. 708 (quoting *In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 10-MD-2196, 2015 WL 12747961, at \*6 (N.D. Ohio Mar. 6, 2016)).) Plaintiffs are not asking for such an inference at this point. However, other courts—including a decision affirmed by the Fourth Circuit earlier this year—have used conditional jury instructions in nearly identical circumstances to address this concern. In *Mallory*, a non-party marketer for a blood laboratory invoked the Fifth Amendment at trial, and the district court provided the jury with the following instruction, which was contingent on the jury's determination that the invoking witness and the defendant were co-conspirators:

> "[I]f you find that [a] witness was a member of a conspiracy to violate the False Claims Act, you may but are not required to infer [from their] refusal [to testify] that the witness's answer would have been unfavorable to the interests of any co-conspirator."

*Id*. at 740. The Fourth Circuit affirmed. *Id*.

The Court need not decide now whether to permit the drawing of adverse inferences against the Sero Defendants. Plaintiffs submit that the Court may defer ruling until evidence of the Defendants' conspiracy is presented at trial, or it may use a conditional instruction.

## CONCLUSION

Plaintiffs respectfully request that the Court admit the portions of Perez's and Byrns' depositions identified in Exhibit A.

10

Dated: September 19, 2021    By:    _____ */s/ Michael L. Jente*_____

**LEWIS RICE LLC**
Neal F. Perryman, MO Bar #43057
Michael L. Jente, MO Bar #62980
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
T: (314) 444-7600
nperryman@lewisrice.com
mjente@lewisrice.com

-and-

**ROBINS KAPLAN LLP**
Jeffrey S. Gleason (admitted PHV)
Munir R. Meghjee (admitted PHV)
Jason W. Pfeiffer, MO Bar # 50104
Nathaniel J. Moore (admitted PHV)
Jaime J. Wing (admitted PHV)
J. Haynes Hansen (admitted PHV)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
T: (612) 349-8500
F: (612) 339-4181
jgleason@robinskaplan.com
mmeghjee@robinskaplan.com
jpfeiffer@robinskaplan.com
nmoore@robinskaplan.com
jwing@robinskaplan.com
hhansen@robinskaplan.com

***Attorneys for Plaintiffs***

11