# Exhibit A

# Clips Report

## 128426-0009 Anthem v Putnam Trial

**Saturday, September 18, 2021**

Case 5:18-cv-06037-DGK     Document 712-1     Filed 09/19/21     Page 2 of 37

# Case Clips Detailed Report

**BYRNS, DAVID - VOL 1 - 7/9/2019 1 Clips (Running 00:21:35.471)**

**DB-0709-010019** (Running 00:21:35.471)

Segment Count: 46

### 1. Page 10:19 to 10:22 (Running 00:00:03.916)

Do you swear the testimony you are about

to give in this case will be the truth, the

whole truth, and nothing but the truth?

THE WITNESS: I do.

### 2. Page 12:04 to 12:06 (Running 00:00:06.324)

Mr. Byrns, we met briefly before, but for

the record, can you state your full name, please?

A. David Lang Byrns.

### 3. Page 14:09 to 15:07 (Running 00:01:36.102)

Okay. What about more recently, what were

you doing professionally in 2015?

A. I was an interim CFO for Palm Springs

General Hospital, and prior to that I was an interim

controller for Miami Children's Hospital.

Q. After you finished those roles, what was

your next job?

A. I did some consulting work at

Campbellton-Graceville Hospital.

Q. And when did your consulting work at

Campbellton-Graceville start?

Total Number of Clips:1

Case 5:18-cv-06037-DGK     Document 712-1     Filed 09/19/21     Page 3 of 37

MR. JOHNSTON: I'm going to have you start invoking the Fifth at this point.

A. I invoke the Fifth.

BY MR. MOORE:

Q. Did you work at any hospitals other than Campbellton-Graceville or Putnam from 2015 to the present?

A. I invoke the Fifth.

Q. For your work at Campbellton-Graceville Hospital, were you employed by the hospital or working through an entity that you owned and operated?

A. I invoke the Fifth.

## 4. Page 17:06 to 17:18 (Running 00:00:31.771)

How did you become aware of the opportunity to work at or with Campbellton-Graceville Hospital?

A. I invoke the Fifth.

Q. Campbellton-Graceville Hospital billed commercial payors for lab tests ordered from, performed by, and reported to providers by independent laboratories; correct?

A. I invoke the Fifth.

Q. In your previous hospital experience, had you had any experience with an arrangement of this type prior to Campbellton-Graceville Hospital?

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 4 of 37

A. I invoke the Fifth.

**5. Page 18:02 to 18:03 (Running 00:00:03.608)**

Where did you first meet Jorge Perez?

A. I invoke the Fifth.

**6. Page 18:19 to 18:22 (Running 00:00:07.979)**

Where did you first meet Beau Gertz?

A. I invoke the Fifth.

Q. Where did you first meet Mark Blake?

A. I invoke the Fifth.

**7. Page 19:18 to 19:25 (Running 00:00:15.605)**

SeroDynamics was involved with

Campbellton-Graceville; correct?

A. I invoke the Fifth.

Q. It was one of the labs that was performing

tests at its facility in Denver, Colorado, and

billing them to commercial insurers through

Campbellton-Graceville; correct?

A. I invoke the Fifth.

**8. Page 20:01 to 20:15 (Running 00:00:30.941)**

Beau Gertz was involved with

Campbellton-Graceville Hospital; correct?

A. I invoke the Fifth.

Q. He oversaw the testing performed by

SeroDynamics that was caused to be billed through

Campbellton-Graceville Hospital to commercial

insurers; correct?

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 5 of 37

A. I invoke the Fifth.

Q. Mark Blake was also involved with Campbellton-Graceville Hospital; correct?

A. I invoke the Fifth.

Q. He was also involved with overseeing SeroDynamics and its lab testing of claims that were billed to commercial insurers through CGH; correct?

A. I invoke the Fifth.

### 9. Page 21:12 to 21:22 (Running 00:00:26.702)

Empower H.I.S. was involved with CGH?

A. I invoke the Fifth.

Q. And Jorge Perez was involved with CGH; correct?

A. I invoke the Fifth.

Q. Jorge Perez was the president of CGH; correct?

A. I invoke the Fifth.

Q. You introduced Jorge Perez to CGH; correct?

A. I invoke the Fifth.

### 10. Page 22:12 to 22:19 (Running 00:00:22.218)

What steps did you take to ensure the arrangement with respect to laboratory billings at Campbellton-Graceville Hospital was legal?

A. I invoke the Fifth.

Q. CGH billed commercial payors for lab tests

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 6 of 37

ordered from, performed by, and reported to

providers by independent labs; correct?

A. I invoke the Fifth.

**11. Page 35:13 to 35:21 (Running 00:00:19.144)**

Hospital Partners was created on

January 1st, 2016; correct?

A. I invoke the Fifth.

Q. You were its president and secretary;

correct?

A. I invoke the Fifth.

Q. And Jorge Perez was Hospital Partners'

vice president and treasurer?

A. I invoke the Fifth.

**12. Page 36:10 to 36:20 (Running 00:00:24.881)**

What was your purpose for creating

Hospital Partners?

A. I invoke the Fifth.

Q. The purpose for creating Hospital Partners

was to manage hospitals that would be used to bill

for lab tests performed by independent labs;

correct?

A. I invoke the Fifth.

Q. Was Hospital Partners' first business its

relationship with Putnam?

A. I invoke the Fifth.

**13. Page 37:08 to 37:19 (Running 00:00:32.111)**

Total Number of Clips:1

Q. When did you first hear of Putnam?

A. I invoke the Fifth.

Q. In what context did you first hear of Putnam?

A. I invoke the Fifth.

Q. Were you involved with discussions with Putnam before Hospital Partners took over the management of it in September 2016?

A. I invoke the Fifth.

Q. What was Hospital Partners' pitch to Putnam?

A. I invoke the Fifth.

### 14. Page 42:11 to 42:15 (Running 00:00:10.625)

So as of September 12, 2016, you've sent multiple emails to employees of Putnam asking for the Blue Cross Blue Shield contract with Putnam; correct?

A. I invoke the Fifth.

### 15. Page 44:21 to 44:24 (Running 00:00:09.546)

You had repeatedly asked Sue Ann Varner for a copy of Putnam's contract with Blue Cross Blue Shield as of September 13, 2016; correct?

A. I invoke the Fifth.

### 16. Page 51:25 to 52:22 (Running 00:00:58.361)

You reviewed Exhibit 250, the Putnam RightCHOICE contract, when you received it; correct?

Total Number of Clips:1

Case 5:18-cv-06037-DGK     Document 712-1     Filed 09/19/21     Page 8 of 37

A. I invoke the Fifth.

Q. You have been asking for it for at least a week at the time that you ultimately received it; correct?

A. I invoke the Fifth.

Q. So you knew as of September 13, 2016, that any claims submitted by Putnam to RightCHOICE for nonpatient testing would be in violation of the contract which only permitted Putnam to bill for inpatient and outpatients; correct?

A. I invoke the Fifth.

Q. You also knew as of September 13, 2016, that any claims submitted by Putnam to RightCHOICE for lab tests performed by independent labs would be violative of the contract; correct?

A. I invoke the Fifth.

Q. Because under the contract, Putnam was only permitted to submit claims for services performed by or under the direction and personal supervision of Putnam; correct?

A. I invoke the Fifth.

**17. Page 53:02 to 53:13 (Running 00:00:41.588)**

As of the date you received Exhibit 250, September 13, 2016, what was your understanding of the role that Empower H.I.S. would play at Putnam?

A. I invoke the Fifth.

Total Number of Clips:1

Q. You knew on September 13, 2016, that Empower H.I.S. would handle the billing of lab tests performed by independent labs through Putnam to commercial payors; correct?

A. I invoke the Fifth.

Q. And that Jorge Perez would oversee the -- those activities of Empower?

A. I invoke the Fifth.

### 18. Page 54:11 to 55:15 (Running 00:01:24.400)

As of September 13th, 2016, you understood that SeroDynamics was performing lab tests ordered from it at its facility in Denver, Colorado, and causing them to bill to commercial insurers through Putnam; correct?

A. I invoke the Fifth.

Q. As of September 13, 2016, you understood that LabMed Services would generate test orders from SeroDynamics, that would then be tested at SeroDynamics and billed to commercial insurers through Putnam; correct?

A. I invoke the Fifth.

Q. You understood that Beau Gertz would be overseeing and directing the activities of SeroDynamics and LabMed with respect to its relationship with Putnam; correct?

A. I invoke the Fifth.

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 10 of 37

Q. You understood that Beau Gertz would be causing LabMed to generate test orders for SeroDynamics, that SeroDynamics would perform the tests at its facility in Denver, and that it would cause those tests to be billed to commercial insurers through Putnam; correct?

A. I invoke the Fifth.

Q. You understood that Mark Blake would be causing LabMed to generate test orders that SeroDynamics would perform at its facility in Denver, and would cause those tests to be billed to commercial insurers through Putnam; correct?

A. I invoke the Fifth.

**19. Page 56:07 to 57:18 (Running 00:01:36.552)**

You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that you would manage Putnam; correct?

A. I invoke the Fifth.

Q. You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that you would cause Putnam to participate in the arrangement, including providing information to Empower to use in the billing of claims to payors as if the lab tests were performed at and by Putnam; correct?

A. I invoke the Fifth.

Total Number of Clips:1

Q. You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that Putnam would pay each of them and the entities that they controlled based upon the amounts paid to Putnam by the commercial insurers billed for the lab tests performed by the independent labs; correct?

A. I invoke the Fifth.

Q. You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that LifeBrite Labs, Pinnacle Labs, Lucenta, and SeroDynamics would generate and perform tests that would be billed to commercial insurers through Putnam; correct?

A. I invoke the Fifth.

Q. You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that Empower H.I.S. and Jorge Perez would handle the billing of the lab tests through Putnam to commercial insurers; correct?

A. I invoke the Fifth.

Q. You agreed with Jorge Perez, Jim Porter, Beau Gertz, Mark Blake, and Christian Fletcher that SeroDynamics would have the exclusive relationship with Putnam as to blood testing; correct?

A. I invoke the Fifth.

**20. Page 69:01 to 69:06 (Running 00:00:16.987)**

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 12 of 37

Q. When you wrote "let's get this thing going next week," you were stating to Mr. Gertz that you should begin billing lab tests performed by SeroDynamics through Putnam to commercial insurers in the next week; correct?

A. I invoke the Fifth.

### 21. Page 69:22 to 70:10 (Running 00:00:45.037)

Q. I'm going to hand you what's already been marked as Exhibit 15.

Mr. Byrns, Exhibit 15 is titled "Exclusive services agreement for reference laboratory services"; correct?

A. I invoke the Fifth.

Q. This is the contract that SeroDynamics entered into with Putnam; correct?

A. I invoke the Fifth.

Q. And you signed on behalf of Putnam?

A. I invoke the Fifth.

Q. Mr. Gertz signed on behalf of SeroDynamics; correct?

A. I invoke the Fifth.

### 22. Page 71:19 to 71:24 (Running 00:00:14.991)

By signing this contract, you knew that you were agreeing to allow Sero to use Putnam to bill for tests that had already been performed by SeroDynamics and that were originally intended to be

Total Number of Clips:1

billed through Campbellton-Graceville; correct?

A. I invoke the Fifth.

## 23. Page 73:19 to 73:23 (Running 00:00:14.121)

You agree that Putnam had no involvement

with the tests that are described in the third

whereas clause of this contract other than billing

those claims to commercial insurers; correct?

A. I invoke the Fifth.

## 24. Page 73:24 to 74:22 (Running 00:01:12.455)

You were also aware that SeroDynamics

would be billing commercial insurers, including Blue

Cross Blue Shield, for tests that had been performed

by Southwest Labs; correct?

A. I invoke the Fifth.

Q. Those tests were ordered and performed

before Hospital Partners took over the management of

Putnam; correct?

A. I invoke the Fifth.

Q. And you agree that as to the Southwest

Labs' claims, Putnam played no role as to those

tests except to bill them to commercial insurers;

correct?

A. I invoke the Fifth.

Q. You're aware that SeroDynamics contracted

with Southwest Labs to have the right to bill those

claims by settling claims that it had against

Total Number of Clips:1

Saturday, September 18, 2021

Page 13 of 21

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 14 of 37

Southwest Labs; correct?

A. I invoke the Fifth.

Q. You knew that SeroDynamics bought the right to bill tests from Southwest Labs by agreeing not to pursue litigation against Southwest Labs; correct?

A. I invoke the Fifth.

**25. Page 76:23 to 77:21 (Running 00:00:50.987)**

SeroDynamics received specimens and test orders directly from ordering providers around the country; correct?

A. I invoke the Fifth.

Q. It performed those tests at its facility in Denver, Colorado.

A. I invoke the Fifth.

Q. It transmitted information about the tests that it performed directly to Empower H.I.S.; correct?

A. I invoke the Fifth.

Q. Empower H.I.S. billed Blue Cross Blue Shield as if the tests were performed at and by Putnam; correct?

A. I invoke the Fifth.

Q. You knew that Empower H.I.S. would be billing Blue Cross Blue Shield for lab tests performed by SeroDynamics as if the tests were

Total Number of Clips:1

performed at and by Putnam; correct?

A. I invoke the Fifth.

Q. And they needed to be billed that way in order to be -- for Putnam to be reimbursed under the Putnam RightCHOICE contract; right?

A. I invoke the Fifth.

## 26. Page 78:02 to 78:04 (Running 00:00:08.217)

You caused Putnam to pay SeroDynamics more than 6 million because of its contract; correct?

A. I invoke the Fifth.

## 27. Page 78:05 to 78:15 (Running 00:00:40.515)

Q. I'm going to hand you what's already been marked as Exhibit 110. This is a document titled "Consulting and Marketing Services Agreement"; correct?

A. I invoke the Fifth.

Q. It's an agreement between CadiraMD, LLC, and Putnam; correct?

A. I invoke the Fifth.

Q. You signed on behalf of Putnam on November 4th, 2016; correct?

A. I invoke the Fifth.

## 28. Page 78:16 to 78:19 (Running 00:00:10.488)

Q. LabMed Services was ultimately the entity to perform the consulting and marketing services agreement that's marked as Exhibit 110; correct?

Total Number of Clips:1

A. I invoke the Fifth.

## 29. Page 80:16 to 80:18 (Running 00:00:05.732)

LabMed received more than $20 million from

Putnam because of this contract; correct?

A. I invoke the Fifth.

## 30. Page 96:24 to 98:04 (Running 00:01:24.060)

Mr. Byrns, for a blood test billed by

Putnam to Blue Cross Blue Shield in November 2016,

can you walk us through the life cycle of who

ordered it, who performed it, who reported it, and

who billed it?

A. I invoke the Fifth.

Q. For a blood test billed to Blue Cross Blue

Shield by Putnam in November 2016, the test would

have been ordered by a provider from SeroDynamics;

correct?

A. I invoke the Fifth.

Q. SeroDynamics would have performed the

blood test at its facility in Denver, Colorado?

A. I invoke the Fifth.

Q. It would have submitted information about

the test that it performed to Empower H.I.S.;

correct?

A. I invoke the Fifth.

Q. Empower H.I.S. would bill the test to Blue

Cross Blue Shield using Putnam's tax ID, name, and

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 17 of 37

NPI; correct?

A. I invoke the Fifth.

Q. That blood test would be billed in a way

that represented that Putnam had performed the

testing at its facility in Unionville, Missouri;

correct?

A. I invoke the Fifth.

Q. Did the life cycle of a blood test billed

by Putnam to Blue Cross Blue Shield change from

June 2016 until June 2017?

A. I invoke the Fifth.

### 31. Page 134:15 to 134:20 (Running 00:00:20.281)

I'm going to show you what's already been

marked as Exhibit 146.

This is a letter dated March 1st, 2017

from Jennifer Forsythe, managing associate general

counsel at Anthem; correct?

A. I invoke the Fifth.

### 32. Page 136:08 to 136:16 (Running 00:00:29.805)

I'm going to hand you what's already been

marked as Exhibit 147.

This is your response to Jennifer

Forsythe's March 8, 2017 letter; correct?

A. I invoke the Fifth.

Q. I'm sorry. I misspoke. This is your

response to Jennifer Forsythe's March 1, 2017

Total Number of Clips:1

letter; correct?

A. I invoke the Fifth.

### 33. Page 137:12 to 137:16 (Running 00:00:09.681)

You also write that Putnam has its own full-service clinical laboratory and the equipment to perform all tests it bills with some minor exceptions; correct?

A. I invoke the Fifth.

### 34. Page 141:04 to 141:08 (Running 00:00:12.751)

So it was a misrepresentation to state to Anthem that Putnam owns the equipment to perform all tests it bills with very few minor exceptions; correct?

A. I invoke the Fifth.

### 35. Page 141:09 to 141:20 (Running 00:00:25.790)

You also responded by saying "Putnam completes and retains the responsibility for all coding, billing, and collections associated with Putnam's clinical laboratory claims"; correct?

A. I invoke the Fifth.

Q. Putnam itself was not responsible for coding or billing for the laboratory claims; correct?

A. I invoke the Fifth.

Q. Instead, Empower H.I.S. handled the coding and billing?

Total Number of Clips:1

A. I invoke the Fifth.

### 36. Page 142:09 to 142:20 (Running 00:00:33.350)

In response to Jennifer Forsythe's question about what geographical areas the specimens were being collected, you wrote that "The lab provides routine and emergency clinical services for hospital patients and to areas where physicians associated and credentialed with Putnam are located"; correct?

A. I invoke the Fifth.

Q. In fact, the hospital was billing for tests on specimens taken from all across the country; correct?

A. I invoke the Fifth.

### 37. Page 156:18 to 156:21 (Running 00:00:10.751)

Putnam never referred tests to SeroDynamics or Pinnacle or Lucenta or LifeBrite; correct?

A. I invoke the Fifth.

### 38. Page 158:13 to 158:17 (Running 00:00:18.960)

Beau Gertz, Mark Blake, SeroDynamics, and LabMed suggested that Putnam employ phlebotomists who would be located in the offices of providers who ordered tests from SeroDynamics; correct?

A. I invoke the Fifth.

### 39. Page 159:06 to 159:09 (Running 00:00:19.271)

Total Number of Clips:1

Q. The phlebotomists' day-to-day responsibilities were directed by the sales representatives contracted with LabMed; correct?

A. I invoke the Fifth.

## 40. Page 160:18 to 160:21 (Running 00:00:19.271)

Putnam didn't have the records that it would normally have for employees for the phlebotomists; correct?

A. I invoke the Fifth.

## 41. Page 161:17 to 161:25 (Running 00:00:29.620)

Gertz was saying that phlebotomists are the main way that you and SeroDynamics and LabMed and Gertz and Blake could make these lab tests appear to be for outpatients of Putnam; correct?

A. I invoke the Fifth.

Q. That was by making Putnam appear to be more involved with the tests than it actually was; correct?

A. I invoke the Fifth.

## 42. Page 164:02 to 164:12 (Running 00:00:40.140)

Before Putnam could bring some or all of the phlebotomists onboard officially as employees, SeroDynamics, LabMed, Gertz, and Blake, and the sales representatives who worked with them, were having the phlebotomists begin work in providers' offices; correct?

Total Number of Clips:1

A. I invoke the Fifth.

Q. And they were the ones to oversee and direct the work of the phlebotomists, not Putnam; correct?

A. I invoke the Fifth.

### 43. Page 165:03 to 165:10 (Running 00:00:23.670)

So SeroDynamics, LabMed, Beau Gertz, and Mark Blake agreed to reimburse Putnam for the phlebotomists' salaries; correct?

A. I invoke the Fifth.

Q. Beau Gertz responded and said "Yes, sir," indicating that he had sent the check for the phlebotomists' salaries; correct?

A. I invoke the Fifth.

### 44. Page 188:03 to 188:05 (Running 00:00:06.004)

When was the last time you spoke with Jorge Perez?

A. I invoke the Fifth.

### 45. Page 188:12 to 188:14 (Running 00:00:05.060)

When was the last time you spoke with Beau Gertz?

A. I invoke the Fifth.

### 46. Page 188:15 to 188:17 (Running 00:00:05.102)

When was the last time you spoke with Mark Blake?

A. I invoke the Fifth.

Total Number of Clips:1

# Clips Report

## 128426-0009 Anthem v Putnam Trial

**Friday, September 17, 2021**

# Case Clips Detailed Report

## 128426-0009 Anthem v Putnam Trial

📹 **PEREZ, JORGE - VOL 2 - 9/11/2019 1 Clips (Running 01:31:25.822)**

▦ **JP-0911-152008** (Running 01:31:25.822)

Segment Count: 5

### 1. Page 157:13 to 157:18 (Running 00:00:13.680)

For each of the claims submitted

through Putnam to Blue Cross Blue Shield, who

chose to include Putnam County Memorial

Hospital's national provider identifier?

A. On the advice of counsel, I assert my

Fifth Amendment right.

### 2. Page 159:03 to 159:07 (Running 00:00:11.205)

For each of the claims submitted

through Putnam to Blue Cross Blue Shield, who

chose to include Putnam's tax ID?

A. On the advice of counsel, I assert my

Fifth Amendment right.

### 3. Page 185:09 to 185:24 (Running 00:00:33.802)

Mr. Perez, you agreed with

SeroDynamics that Empower H.I.S. would bill their

tests as if performed at and by Putnam, right?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. And Beau Gertz and Mark Blake of

SeroDynamics agreed that Empower H.I.S. would

Total Number of Clips:1

bill their tests as if performed at and by

Putnam, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. The only reason for your agreement

with one another was to bill the tests as if they

were performed at and by Putnam, right?

A. On the advice of counsel, I assert

my -- I assert my Fifth Amendment rights.

### 4. Page 254:19 to 254:25 (Running 01:30:19.339)

You'd agree that SeroDynamics was not

a reference lab, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. Putnam did not refer tests to

SeroDynamics.

A. On the advice of counsel, I assert my

### 5. Page 278:23 to 279:01 (Running 00:00:07.796)

Q. When was the last time you spoke with

Mr. Gertz?

A. On the advice of counsel, I assert my

Fifth Amendment right.

Total Number of Clips:1

Total Number of Segments:5

Total Running Time: 01:31:25.822

# Clips Report

---

## 128426-0009 Anthem v Putnam Trial

**Friday, September 17, 2021**

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 26 of 37

📹 **PEREZ, JORGE - VOL 1 - 9/10/2019 1 Clips (Running 00:08:26.988)**

▦ **JP-0910-007015** (Running 00:08:26.988)

Segment Count: 24

### 1. Page 07:15 to 07:17 (Running 00:00:04.493)

Mr. Perez, please state your full

name for the record.

A. Jorge Perez.

### 2. Page 13:08 to 13:11 (Running 00:00:06.563)

Mr. Perez, how did you first meet

David Byrns?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 3. Page 14:08 to 14:13 (Running 00:00:11.489)

How did you first meet Beau Gertz?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. How did you first meet Mark Blake?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 4. Page 17:09 to 17:17 (Running 00:00:19.932)

Now, when Hospital Partners was

created, David Byrns owned 51 percent of the

company; is that right?

A. On the advice of counsel, I assert my

Total Number of Clips:1

Fifth Amendment rights.

Q. When Hospital Partners was created, you owned the remaining 49 percent.

A. On the advice of counsel, I assert my Fifth Amendment rights.

## 5. Page 18:17 to 18:21 (Running 00:00:07.498)

You were actually the CEO of Campbellton-Graceville Hospital in 2016, weren't you?

A. On the advice of counsel, I assert my Fifth Amendment rights.

## 6. Page 19:07 to 19:13 (Running 00:00:14.211)

During your tenure as CEO of Campbellton-Graceville Hospital, the hospital billed commercial payors for lab tests that were actually performed by independent laboratories, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

## 7. Page 19:18 to 19:23 (Running 00:00:09.966)

Through Campbellton-Graceville you developed relationships with several of the defendants that are now named in this lawsuit, didn't you?

A. On the advice of counsel, I assert my Fifth Amendment rights.

Total Number of Clips:1

### 8. Page 19:24 to 20:05 (Running 00:00:14.434)

SeroDynamics was one of the labs that

performed tests at its own facility located in

Denver, Colorado but had its tests billed to

commercial insurers through

Campbellton-Graceville, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 9. Page 20:10 to 20:16 (Running 00:00:12.791)

It is your understanding that

Mr. Gertz oversaw the testing performed by

SeroDynamics that was billed through

Campbellton-Graceville Hospital to commercial

insurers.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 10. Page 20:21 to 21:02 (Running 00:00:13.629)

It is your understanding that

Mr. Blake was also involved with overseeing the

testing performed by SeroDynamics that was billed

through Campbellton-Graceville Hospital to

commercial insurers.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 11. Page 24:01 to 24:09 (Running 00:00:18.447)

You would agree that once you,

Total Number of Clips:1

Mr. Byrns, Mr. Porter, Mr. Fletcher, Mr. Gertz

and Mr. Blake were no longer able to bill tests

performed at independent labs to commercial

insurers through Campbellton-Graceville Hospital

you needed another hospital to bill claims

through, right?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

## 12. Page 25:20 to 25:24 (Running 00:00:08.253)

You were aware that Mr. Byrns

presented a pitch to Putnam on behalf of

Hospital Partners.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

## 13. Page 32:10 to 32:14 (Running 00:00:09.597)

Hospital Partners took over

management of Putnam on September 12th, 2016,

correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

## 14. Page 33:13 to 33:18 (Running 00:00:11.881)

You were aware that David Byrns had

asked Putnam employees for Putnam's contract on

several occasions before Hospital Partners took

over management of the hospital, right?

A. On the advice of counsel, I assert my

Total Number of Clips:1

Fifth Amendment rights.

### 15. Page 34:23 to 35:10 (Running 00:00:27.517)

Mr. Byrns forwarded the Blue Cross

Blue Shield contract with Putnam on to you,

correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. You reviewed that contract when

Mr. Byrns sent it to you.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. As of September 13th, 2016 you were

aware of the contents of that contract, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 16. Page 39:07 to 39:24 (Running 00:00:36.405)

When Hospital Partners took over

management of Putnam, it was also your intention

that SeroDynamics would bill tests that it

performed to commercial insurers through Putnam,

correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. You would agree that you had an

agreement with Mr. Blake and Mr. Gertz to that

effect.

Total Number of Clips:1

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. Part of that agreement with Mr. Gertz

and Mr. Blake was that Empower H.I.S. would

handle the billing of SeroDynamics' claims

through Putnam, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 17. Page 52:03 to 52:14 (Running 00:00:25.050)

Mr. Perez, when Hospital Partners

signed its management agreement with Putnam, it

was your intention that Empower H.I.S. would take

over the billing for Putnam, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. This would allow you to oversee the

billing of tests that were performed by

independent labs to commercial insurers through

Putnam, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 18. Page 52:21 to 52:25 (Running 00:00:12.714)

Mr. Perez, what you have before you

is Exhibit 315 is a contract between

Empower H.I.S. and Putnam, correct?

A. On the advice of counsel, I assert my

Total Number of Clips:1

Fifth Amendment rights.

### 19. Page 53:09 to 53:17 (Running 00:00:18.972)

If you look at the bottom, it was

signed by David Byrns on behalf of Putnam,

correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. And it was signed by you on behalf of

Empower H.I.S.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 20. Page 62:17 to 62:22 (Running 00:00:14.561)

You knew that any claim submitted by

Putnam to Blue Cross Blue Shield for lab tests

performed by independent labs would be a

violation of the contract, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

### 21. Page 68:01 to 70:06 (Running 00:02:10.399)

As of September 13th, 2016, after you

reviewed this contract, it was your understanding

that SeroDynamics would perform lab tests at its

facility in Denver, Colorado but would cause them

to be billed to commercial insurers through

Putnam, correct?

A. On the advice of counsel, I assert my

Total Number of Clips:1

Fifth Amendment rights.

Q. You were aware that that was a violation of Putnam's contract with Blue Cross Blue Shield.

A. On the advice of counsel, I assert my Fifth Amendment rights.

Q. It was your understanding that Beau Gertz and Mark Blake would oversee and direct SeroDynamics' conduct, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

Q. That's because you and Mr. Gertz and Mr. Blake had agreed that SeroDynamics would perform lab tests at its facility in Denver, Colorado and that your company Empower H.I.S. would bill those tests to commercial insurers through Putnam, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

Q. As of September 13th, 2016, after you reviewed this contract, it was your understanding that LabMed, owned by Mark Blake and Beau Gertz, would work with marketers and distributors to obtain blood samples that would be tested at SeroDynamics' facility in Denver, Colorado but would cause them to be billed to commercial

Total Number of Clips:1

insurers through Putnam, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. On September 13th, 2016 you

understood that that was a violation of Putnam's

contract with Blue Cross Blue Shield.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. It was your understanding that Beau

Gertz and Mark Blake would oversee and direct

LabMed's conduct.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Q. Because you had had communications

with Mr. Gertz and Mr. Blake discussing the fact

that LabMed would work with marketers and

distributors to obtain blood samples that would

be tested at SeroDynamics' facility in Denver,

Colorado but that Empower H.I.S. would then bill

those samples to commercial insurers through

Putnam.

A. On the advice of counsel, I assert my

Fifth Amendment rights.

**22. Page 71:07 to 71:23 (Running 00:00:39.486)**

When you spoke with each of the

individuals that I just mentioned -- Mr. Porter,

Total Number of Clips:1

Mr. Gertz, Mr. Blake, Mr. Fletcher -- you reached an agreement with each of them that Putnam would pay each of them and their entities based upon amounts paid to Putnam by commercial insurers for the lab tests performed at their independent labs, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

Q. You also agreed with Mr. Byrns, Mr. Porter, Mr. Gertz, Mr. Blake and Mr. Fletcher that SeroDynamics would have the exclusive relationship with Putnam as to blood testing, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

**23. Page 87:15 to 87:23 (Running 00:00:22.754)**

You were aware that Putnam entered an agreement with LabMed in November 2016, correct?

A. On the advice of counsel, I assert my Fifth Amendment rights.

Q. And you are aware that Putnam entered an agreement with SeroDynamics in November 2016, right?

A. On the advice of counsel, I assert my Fifth Amendment rights.

**24. Page 112:25 to 113:05 (Running 00:00:15.946)**

Total Number of Clips:1

Case 5:18-cv-06037-DGK    Document 712-1    Filed 09/19/21    Page 36 of 37

You agreed with Mr. Gertz and

Mr. Blake that Empower H.I.S. would bill tests

performed by SeroDynamics through Putnam to

commercial insurers, correct?

A. On the advice of counsel, I assert my

Fifth Amendment rights.

Total Number of Clips:1

Total Number of Segments:24

Total Running Time: 00:08:26.988

Friday, September 17, 2021

Page 12 of 12

Case 5:18-cv-06037-DGK   Document 712-1   Filed 09/19/21   Page 37 of 37