## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| RightCHOICE Managed Care, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Hospital Partners, Inc.; Hospital Laboratory Partners, LLC; Empower H.I.S. LLC; RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services; Labmed Services, LLC; Serodynamics, LLC; David Byrns; Jorge Perez; Beau Gertz; and Mark Blake<br><br>Defendants. | Case No. 5:18-CV-06037-DGK |

## RESPONDENT'S SUGGESTIONS IN OPPOSITION TO ANTHEM PLAINITFFS' MOTION FOR AN ORDER FOR ATTORNEY GREG MINANA TO SHOW CAUSE AS TO WHY HE SHOULD NOT BE SANCTIONED

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

I.      First Demand.................................................................................................................. 3

II.     Discovery Tactics........................................................................................................... 5

III.    Summary Judgment Process ......................................................................................... 8

IV.    Stipulated Facts............................................................................................................. 9

V.     Pretrial Deadlines........................................................................................................ 10

VI.    Opening Statement...................................................................................................... 11

VII.   Second Demand .......................................................................................................... 12

VIII.  Mr. Minana Did Not Profit ........................................................................................ 12

ARGUMENT............................................................................................................................ 13

I.      Legal Standard ............................................................................................................ 13

II.     Jurisdiction.................................................................................................................. 14

III.    The Court Should Not Direct Mr. Minana to Show Cause as to Why He Should Not be Sanctioned.................................................................................................................. 14

        A.     Summary Judgment Process ............................................................................ 15

             1.     Privilege Log........................................................................................ 15

             2.     Denial of Summary Judgment Facts ................................................... 15

             3.     Affirmative Summary Judgment Facts ............................................... 17

        B.     Stipulated Facts............................................................................................... 18

        C.     Pre-trial Orders............................................................................................... 18

CONCLUSION......................................................................................................................... 19

4864-7694-5957

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burull v. First Nat. Bank of Minneapolis*,
831 F.2d 788 (8th Cir. 1987) ......................................................................................13

*Farm J., Inc. v. Johnson*,
2019 WL 8405458 (W.D. Mo. Dec. 13, 2019) ...........................................................20

*Kirklin v. Joshen Paper & Packaging of Ark. Co.*,
911 F.3d 530 (8th Cir. 2018) ......................................................................................17

*Lee v. L.B. Sales, Inc.*,
177 F.3d 714 (8th Cir. 1999) ................................................................................13, 19

*Martin v. Automobili Lamborghini Exclusive, Inc.*,
2000 WL 36745514 (S.D. Fla. Feb. 3, 2000), *amended*, 2000 WL 36745510
(Feb. 10, 2000), *report and recommendation adopted*, 2000 WL 36745512
(Mar. 7, 2000) ..............................................................................................................14

*Shuler v. Arnott*,
2022 WL 179001 (W.D. Mo. Jan. 19, 2022) ................................................................5

**Rules**

Fed. R. Civ. P. 56(c)(1)..................................................................................................16

Fed. R. Civ. P. 56(c)(1)(A) ............................................................................................15

Fed. R. Civ. p. 56, Cmt. ................................................................................................15

Missouri Rules of Professional Conduct Rule 4-4.4......................................................14

**Other Authorities**

AM. BAR ASS'N SECTION OF LITIG., *Ethical Guidelines for Settlement
Negotiations* § 4.3.2 (Aug. 2002)......................................................................4, 5, 14

# **INTRODUCTION**

Before getting into the merits of Plaintiffs' particular arguments, Mr. Minana conveys to the Court that he understands the seriousness of the claims made against him and that, during the course of this hotly contested litigation, his advocacy for his clients led to situations he wishes had not occurred. Mr. Minana has learned a great deal from this case, and if confronted with similar situations in the future, he will act differently, and better.

Mr. Minana's response is intended to add to the Court's perspective and provide additional information, not to rehash the merits or prior sanctions orders. He welcomes the opportunity to speak with the Court about these issues should the Court decide to hold a hearing on the matter.

Mr. Minana acknowledges the gravity of the claims made in Plaintiffs' Motion to Show Cause and will address them with the detail and candor they deserve. That said, none of the complaints cited by Plaintiffs rise to the level of warranting personal sanctions against him here. The consistent theme throughout Plaintiffs' motion is that Mr. Minana had an overarching plan to burn through all of his clients' money by running up the costs of the litigation, leaving Plaintiffs with nothing, even if they prevailed. The reality is very different. At the inception of this litigation, Mr. Minana contacted Plaintiffs' counsel, informed him his clients had limited insurance coverage, which attorneys' fees would erode, and offered to engage in settlement negotiations.

It also makes no sense that Mr. Minana would participate in a plan to run his clients out of money prior to trial. In reality, his clients' financial situation put Mr. Minana in the extremely uncomfortable and regrettable position of requesting to withdraw when his clients' insurance limits were exhausted. The Court resolved that issue for Mr. Minana and he (and his firm) worked for the remainder of the case without being paid. Mr. Minana did not execute a plan to put himself or his firm in that position, and there is no reason why he would.

1

There was also no attempt to "run up the bill." The Court is aware of the large number of attorneys at Husch Blackwell that billed to this matter. However, as the Court witnessed, this complex matter was handled almost exclusively by four attorneys: one partner (Mr. Minana) and three associates, one of whom was replaced very early in the case due to medical leave. Aside from occasional motion help, the other attorneys involved were all engaged in document review, a burdensome task due in part to Plaintiffs' issuance of 76 third-party subpoenas and the production of over a million pages of documents. Importantly, Husch Blackwell's bills were all subjected to the strict billing guidelines of the clients' two different insurance carriers, two different claims adjusters, and two different outside attorneys for the insurance carriers.

In short, there was no plan to render his clients judgment-proof by running up the costs of the litigation to Plaintiffs' detriment. Any argument that Mr. Minana's actions were in furtherance of such a plan lacks credibility.

Equally clear is the fact the Court already imposed severe sanctions on Mr. Minana, both before and during trial. This culminated in Mr. Minana being precluded from delivering closing arguments and the following explanation by the Court:

> And, you know, I wish it didn't come to this. I wish it hadn't come to this. This is not the way I would have it done. The Court labored over this for quite a while and considered sanctions of a financial, sanctions related to stopping the closing argument, and this is the least prejudicial way that I could find, I believe, to ensure that the jury received a closing argument that was appropriate.
>
> And I'm not here to pick on Mr. Minana, but I've already stated I have not been -- I believe that the conduct in the pre-trial part of this, with all the orders that we had to issue, is consistent with the conduct that we've seen since trial started, and I'm not going to rehash all the many number of issues that I brought up during side bars and after objections, but this is an unfortunate step the Court is taking, and the Court has considered many other alternatives. And I'm sorry I have to take it, frankly.

2

Ex. A at Trial Tr. 1151:13 – 1152:3. The Court exercised firm control over the proceedings and dealt with issues as they arose. There is no reason to sanction Mr. Minana further, particularly on the grounds raised by Plaintiffs now.

When stripped of Plaintiffs' claim that Mr. Minana strategically executed some improper plan from the inception, Plaintiffs' motion boils down to three basic complaints: 1) the demands Mr. Minana made on behalf of his clients; 2) issues already raised with, and addressed by, the Court; and 3) arguments over factual statements and allegations (largely contained in Plaintiffs' three appendices). Each of the issues raised by Plaintiffs is addressed below in the order presented in Plaintiffs' Brief and in the three appendices attached to this brief.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    First Demand[1]

The lynchpin of Plaintiffs' claim of Mr. Minana's strategically executed, bad-faith plan is the Sero Defendants' March 11, 2020 demand.[2] Plaintiffs express outrage because the demand included, they claim, an unjustified demand for payment to resolve a potential malicious prosecution claim. The fact that Plaintiffs did not see merit in a malicious prosecution claim at the time is not surprising, but the parties' differing view of the facts and whether they support or defeat a claim for fraud is not grounds for sanctions. This brief will not get into the merits of the underlying action. The jury has spoken, as has the Court in ruling on the motion for a new trial. If the Plaintiffs believed so strongly the claim was meritless, the solution was to simply reject

---

[1] This issue is addressed multiple places in Plaintiffs' Brief; the following discussion is intended to be inclusive.

[2] *See* Pl. Brief, p. 2 ("But Mr. Minana erased any uncertainty about his intent and strategic plan that he and his clients were operating from in a March 11, 2020, 'demand' he sent to Plaintiffs and their counsel.").

3

Defendants' demand, which they did. And Plaintiffs suffered no harm, expense, or prejudice in doing so.

Clearly, the parties held wildly different views of the facts of this litigation. Mr. Minana's clients were singularly focused on acquitting themselves and addressing their own perceived grievances. This was not "Mr. Minana's demand," as alleged by Plaintiffs. This was the Sero Defendants' demand. And Mr. Minana was obligated to deliver that demand, unless it was unethical or unlawful. A demand reflecting the vast gulf between the parties' viewpoints is neither unethical nor unlawful.

Plaintiffs' authority supports this position. Plaintiffs cite the ABA's *Ethical Guidelines for Settlement Negotiations* for a proposition Mr. Minana agrees with: "A lawyer may not attempt to obtain a settlement by extortionate means, such as by making extortionate or otherwise unlawful threats."[3] AM. BAR ASS'N SECTION OF LITIG., *Ethical Guidelines for Settlement Negotiations* § 4.3.2 (Aug. 2002); Pl. Brief, p. 14. The ABA Committee notes provide additional guidance:

> Committee Notes: Not all threats are impermissible in the context of settlement negotiations. Most obviously, it is proper to threaten to file a civil lawsuit if the opposing party does not settle a dispute, if there is a good faith basis for a civil claim. It is also proper to remind the opposing party of the ordinary costs of proceeding to trial and to suggest that it may be in the opposing party's interest to avoid these costs by agreeing to a settlement. For example, it is obviously permissible to point out that, if the case proceeds to trial, evidence that is embarrassing to the opposing party will be offered in evidence, if the evidence is legally admissible. While this may be characterized as a "threat," it would not be an improper one.

---

[3] Plaintiffs' purported support for the assertion the settlement demand is unethical is contained in footnote six on page 14 of their Brief. The other citations are similarly inapposite, as explained in the Argument Section III below.

4864-7694-5957

Comment to ABA Section of Litigation, *Ethical Guidelines for Settlement Negotiations*, § 4.3.2. The Sero Defendants' demand was not extortionate or otherwise unlawful; it simply reflected the parties' vastly different views of this conflict.

Plaintiffs also argue the demand was unjustified and sanctionable because the Sero Defendants had no counterclaim. Pl. Brief, p. 4. The absence of a counterclaim is immaterial (and even necessary), as a claim for malicious prosecution cannot be brought until the underlying claim is resolved. *See, e.g. Shuler v. Arnott*, No. 6:20-cv-03281-MDH, 2022 WL 179001, at *4 (W.D. Mo. Jan. 19, 2022) ("A claim for malicious prosecution accrues when the underlying proceeding is terminated in the plaintiff's favor.") (citing *Doyle v. Crane*, 200 S.W.3d 581, 586 (Mo. App. W.D. 2006)).[4]

Finally, the demand did not "specifically threaten to bankrupt Plaintiffs' counsel and their law firms," but discussed the practical ramifications of a successful counterclaim. This is not unethical or otherwise unlawful.[5]

## II. Discovery Tactics

Plaintiffs' first allegation here is an issue the Court has already addressed. The Court instructed the parties, and Mr. Minana in particular, to henceforth state the bases for their objections with only a single word or, if necessary, a short phrase (*e.g.*, "compound question") and not to instruct a witness to answer, "if they know." ECF No. 255, p. 6. Mr. Minana complied, and Plaintiffs make no assertion that he did not. The only time the issue arose again was when

---

[4] Plaintiffs also note former co-defendants, not the Sero Defendants, had been indicted, making any counterclaim by the Sero Defendants unjustified. Plaintiffs fail to mention that these fraud issues against the Sero Defendants were presented to the Assistant United States Attorney for the Western District of Missouri, who elected not to pursue charges.

[5] *See* Comment to Am. Bar Ass'n Section of Litig., *Ethical Guidelines for Settlement Negotiations* § 4.3.2 (Aug. 2002).

4864-7694-5957

*Plaintiffs' counsel* instructed her witness to answer "if you know" and there was a discussion about the Court's Order. Ex. B at Oser Dep. 39:10-11.

Plaintiffs next argue, "even after that Order, Mr. Minana demanded that Plaintiffs' corporate representatives supply information on topics on which they were not designated to testify" and cite to three questions in the Bobbitt deposition. Pl. Brief, p. 7. Initially, the "beyond the scope" issue is completely different than the "if you know" issue. In each instance cited by Plaintiffs, Mr. Minana asked a question, there was a "beyond the scope" objection, and the witness ably answered the question. That is it. There was no "demand," nor has there been a showing the questions were even outside the scope. Ex. C at Bobbitt Dep. 82:8-83:2; 85:15-86:3; 93:4-22.

Plaintiffs next allege Mr. Minana "verbally attacked Plaintiffs' counsel, including Plaintiffs' in-house counsel" and cite to pages 37-40 of the Oser deposition. Pl. Brief, p. 7. The Court can and should read the transcript for itself (the full discussion begins at the bottom of page 32), but it includes a discussion about whether the questions were appropriate for this witness, whether Plaintiffs had or would produce someone else on the issue, and counsels' disagreement on those issues. *See* Ex. B at Oser Dep. pp. 32-40.

At one point, Plaintiffs' counsel was making longer objections, the witness repeated the objection as part of her answer, and a discussion ensued about the limitations set by the Court in the Order discussed above. Ex. B at Oser Dep. 35:5-12. At another point in the cited testimony, Plaintiffs' counsel instructed her witness with the above-referenced: "You can respond, if you know," (Ex. B at Oser Dep. 39:10-11), which launched another discussion about the Court's Order. In the end, the witness answered the questions and the deposition moved on. In hindsight, Mr. Minana regrets allowing his frustration with opposing counsel to get the better of him and saying, "You know, that's just a load" during this discussion. Ex. B at Oser Dep. 37:15-22. And while this

comment should not have been made (and Mr. Minana expects never to make such a comment again), this comment does not rise anywhere near the level of sanctionable conduct. As Mr. Minana explained at that point in the deposition, he was frustrated with what appeared to him to be Plaintiffs avoiding having any witness address the topic. It is unfortunate counsel did not agree on these subjects, but to claim Mr. Minana verbally attacked counsel is incorrect and not reflected in the record.[6]

Plaintiffs next claim Mr. Minana "repeatedly insulted Plaintiffs' outside counsel" and cite to the Huether deposition, pages 76-78. Pl. Brief, p. 7. *See* Ex. D. This discussion involved Plaintiffs' counsel instructing a witness not to answer a question on the basis of privilege and Mr. Minana attempting to ask the witness the requisite questions to make the record (*i.e.*, You are not answering the question and that is based on advice of counsel). As the Court will see in the transcript, Plaintiffs' counsel repeatedly insisted that Mr. Minana "move on" before obtaining this record from the witness. Mr. Minana regrets and apologizes for the inappropriate "law school" comment made in the midst of this discussion. It was not an appropriate way to handle this disagreement. It was born of frustration and will not happen again.

Finally, citing the 2021 Gertz deposition, pages 39-42, Plaintiffs allege Mr. Minana interrupted the deposition by insisting that Plaintiffs' counsel pre-identify exhibits before asking questions, requiring Plaintiffs to pause the deposition to request the Court's intervention. Pl. Brief, p. 7. *See* Ex. E. This exchange took place during the second deposition of Mr. Gertz, the scope of

---

[6] There are no statements concerning Plaintiffs' in-house counsel, Ms. Kearney, in the cited portion of the deposition. Earlier in the deposition, Ms. Kearney joined a discussion about proper objections and Mr. Minana asked if she had entered her appearance in the case. Ex. B at Oser Dep. 21:11-25. Later in the deposition, Mr. Minana asked Ms. Kearney if he had accurately stated the number of people present at the deposition as she was counting them. Outside plaintiffs' counsel asked Mr. Minana not to address her directly and he did not again. Ex. B at Oser Dep. 44:6-20. The record contains no indication of a "verbal attack."

4864-7694-5957

which was limited by the Court to the recently produced documents and the topics directly related to the subjects in those documents. ECF No. 461, p. 2. Plaintiffs' counsel was asking questions from a document that had not been identified. Mr. Minana asked for the document to be identified to determine if the topic was within the permitted scope of the second deposition. Plaintiffs' counsel would not identify the document and counsel agreed to contact the Court to resolve the issue. To the best of Mr. Minana's memory, counsel could not reach the Court. When the deposition resumed after a short break, Plaintiffs' counsel marked an exhibit and resumed asking questions, with the issue apparently resolved. Mr. Minana's attempts to confirm the scope of the deposition was in accordance with the Court's Order and was not obstructionist, unethical, or sanctionable.

### III.  Summary Judgment Process

Plaintiffs raise two issues related to the summary judgment process: (1) Defendants' submission of the privilege log after the close of discovery; and (2) that positions taken by Defendants in the motion for summary judgment briefing were contradicted at trial.

The privilege log issue was previously fully briefed and addressed by the Court. ECF Nos. 366, 367, 418, 424, 431, 461. Defendants submitted the privilege log after the close of discovery and Plaintiffs moved the Court for sanctions. Specifically, Plaintiffs moved for an order that the Defendants had waived privilege or, in the alternative, striking all evidence of reliance on advice of counsel and for *in camera* review. ECF No. 367. The Court found the Defendants' delay in producing the privilege log was unjustified, held that Defendants waived the attorney-client privilege, and ordered Defendants to produce all documents on the privilege log. ECF No. 431, p. 1. Defendants produced the documents, which were then used by Plaintiffs in supplemental depositions, motions, and at trial.

8

There is no dispute the Court addressed the privilege log issue by handing down a severe sanction—the very one requested by Plaintiffs. There is no reason or basis to sanction anyone further for the same matter.

The second issue, disputes as to positions taken concerning statements of fact, is addressed in Appendices 1 and 2 to Plaintiffs' Brief and are likewise addressed in the appendices attached to this brief and in Argument Sections III. A. (2) and (3) below.

IV.     Stipulated Facts

Plaintiffs argue Mr. Minana should be sanctioned because he did not stipulate to facts as phrased by Plaintiffs and those facts were allegedly admitted at trial. Plaintiffs address this issue in Appendix 3 to their Brief and Defendants likewise respond to each issue in Appendix 3 to this brief. As the Court will see in the appendix, Mr. Minana disagrees with Plaintiffs' contentions, which include proposed stipulations substantively agreed to and modified for accuracy as well as alleged "Facts Admitted at Trial by the Sero Defendants" that actually quote the trial testimony of Plaintiffs' expert witness, corporate representative, or other adverse witnesses for the purported "admission."

As an example of the former, Plaintiffs' Appendix 3 claims Defendants "Refused to Stipulate" to Plaintiffs proposed stipulation No. 53:

- "In 2016, Serodynamics entered into a contract with Campbellton-Graceville Hospital in Graceville, Florida, to perform blood tests in exchange for a fixed fee per specimen tested."

ECF No. 798-3, p. 10. In reality, Defendants offered the following modification in redline:

- In 2016, ~~Serodynamics~~ had entered into a contract with Campbellton-Graceville Hospital in Graceville, Florida, to perform blood tests <u>for members of commercial health insurance plans</u> in exchange for a fixed fee per specimen tested.

9

ECF No. 676-2, p. 12. Defendants' correction of the spelling and clarification of who the blood tests were for is not a refusal to stipulate.[7] The remainder of the issues raised are addressed in Appendix 3.

V.   Pretrial Deadlines

Plaintiffs contend Mr. Minana did not adequately confer about certain pretrial issues. This matter was previously briefed by the parties, addressed by the Court, and resolved before trial. ECF Nos. 665, 675, 676, 683. Defendants' response to Plaintiffs' Notice of the Parties' Failure to Agree to Stipulations of Uncontroverted Facts and Admissibility of Evidence (ECF No. 665) is set forth in their Suggestions in Support of Motion to Strike Plaintiffs' Notice (ECF No. 676) and will not be repeated here, as the Court has already heard and addressed the issue. After the pre-trial conference, the Court issued an Order including the following:

> During the conference, the parties indicated that they believed they could reach an agreement to stipulate to some facts and to the admissibility of some evidence. The Court will hold the parties to their representations. The Court notes that all parties – and the Court and the jury – will benefit by any agreements the parties reach to streamline the presentation of evidence.
>
> Plaintiffs and the Sero Defendants are ORDERED to comply with the Court's prior orders on stipulations by September 10. ECF No. 151 at 6-7. If Plaintiffs and the Sero Defendants fail to confer in good-faith on such stipulations, the Court may order the parties to meet and confer in-person at the Kansas City, Missouri, courthouse next week.

ECF No. 683, p. 4. The parties subsequently submitted 25 agreed-to Stipulations of Uncontroverted Facts (ECF No. 688) and a Stipulation of Authenticity of Business Records (ECF No. 693) and the in-person conferral at the Courthouse was not required.

---

[7] Plaintiffs' cited trial admission (Ex. A at Trial Tr. (Gertz) 267:5–9) simply identifies the contract. ECF No. 798-3, p. 10.

4864-7694-5957

Defendants also filed their proposed jury instruction, which noted conferral and Plaintiffs' objection to the instruction. ECF No. 692. Witness and Exhibit Lists were filed in advance of the pre-trial conference pursuant to the Court's Scheduling and Trial Order. ECF No. 151. At the pre-trial conference, the Court also instructed the parties to review their exhibit lists and address any overlap. Defendants filed a supplemental Exhibit List addressing exhibits that were duplicative of Plaintiffs'. ECF No. 701.

VI.     Opening Statement

Plaintiffs next claim that Mr. Minana made statements in his opening that were not supported by the evidence. Pl. Brief, pp. 9-10. Plaintiffs objected to neither statement during Mr. Minana's opening. Plaintiffs then refer to the testimony of their own retained expert and corporate representative to support their contention.

It is not unethical or sanctionable to present your clients' view of the evidence, even if it is contrary to the opposition's viewpoint, and Plaintiffs have cited no precedent for such a sanction. After the opening statements, Plaintiffs' counsel raised an issue about Mr. Minana's opening statement in the following exchange:

> MR. MEGHJEE: And the third thing is more
>
> substantive. I am concerned after that opening, your Honor,
>
> that Mr. Minana is using some of the Court's rulings as both a
>
> sword and a shield, and when it happens with witnesses, I'd
>
> like to ask your approach to open that door.
>
> THE COURT: Listen, so I was concerned, too, that
>
> that opening may open some doors. And if it happens -- I don't
>
> think it has yet, but if it happens, then there may be more
>
> evidence in this case than we thought. I don't think it will,

4864-7694-5957

but if it does, be warned. Some of these earlier rulings may be set aside. Everything's interlocutory, right?

MR. MEGHJEE: That's correct.

THE COURT: So anything else?

MR. MEGHJEE: That's it. Thank you, your Honor.

THE COURT: Mr. Minana, anything else?

MR. MINANA: Nothing from us, your Honor. Thank you.

THE COURT: All right. Let's bring them in.

Ex. A at Trial Tr. 77:7-24. Nothing about the statements made in opening or the discussion immediately following justifies sanctions. Rather, the Court told Mr. Minana he came close to opening doors on tentatively precluded evidence. The Court subsequently revisited certain motion in limine rulings to permit previously excluded evidence, a consequence already levied.

## VII. Second Demand

This second settlement demand was brought to the Court's attention during trial the day the demand was delivered. *See* Ex. A at Trial Tr. 1075:13 – 1076:4. Again, this was not "Mr. Minana's demand," but the Sero Defendants'. The demand was delivered by Mr. Minana on behalf of Defendants, who at this point believed they were going to prevail at trial. The issues related to both demands were addressed at length above in Section I. Again, simply because the parties have vastly differing views of the facts and evidence does not render a demand sanctionable.

## VIII. Mr. Minana Did Not Profit

Mr. Minana and his firm worked without being compensated through trial and post-trial motion practice. Plaintiffs note that 31 attorneys billed to this matter, but as explained above, this

12

case was primarily handled by Mr. Minana and two associates. The remaining attorneys were almost exclusively involved in document review.

For perspective, five attorneys entered their appearance in this matter for the Sero Defendants, the four from Husch Blackwell (one of whom was replaced due to medical leave) and a local counsel. In contrast, 14 attorneys from four different law firms entered their appearance for Plaintiffs.

Mr. Minana has worked without compensation, has had public sanctions orders entered against him and his clients, and his clients lost the trial in a substantial verdict. He has not profited from this litigation.

## ARGUMENT

### I.     Legal Standard

Mr. Minana agrees the Court has inherent authority to sanction litigants. The issue is whether sanctions are called for under these circumstances.

While the Court has the authority, it should be exercised with great care. "Because section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney representing his client.'" *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994)). "The imposition of sanctions is a serious matter and should be approached with circumspection." *Id.* (quotations omitted); *see also Burull v. First Nat. Bank of Minneapolis*, 831 F.2d 788 (8th Cir. 1987) (holding district court properly denied sanctions in spite of the lower court's "repeated expressions of frustration with the trial tactics and techniques of . . . counsel" when it could not conclude with certainty that the litigants or their trial counsel acted vexatiously or in bad faith (internal quotations omitted)).

13

II.	Jurisdiction

Mr. Minana does not contest the Court's jurisdiction to hear this matter.

III.	The Court Should Not Direct Mr. Minana to Show Cause as to Why He Should Not be Sanctioned

Plaintiffs' contention in the Argument Section III of their Brief concerns the claim that Mr. Minana was executing an overall plan to increase the cost and viciousness of this litigation for his benefit. Pl. Brief, p. 13. Each of these issues was addressed above.

Plaintiffs' support for their assertion that the Sero Defendants' settlement demands were unjustified appears in footnote six. Pl. Brief, p. 14. In addition to the ABA's *Ethical Guidelines for Settlement Negotiations* publication discussed above, Plaintiffs cite *Martin v. Automobili Lamborghini Exclusive, Inc.*, No. 98-6621-CIV, 2000 WL 36745514 (S.D. Fla. Feb. 3, 2000) (recommending the district court entertain a § 1927 motion for attorneys' signature and disclosure violations of Rule 26, bad-faith obstruction of discoverable material, and vexatiously defrauding the court), *amended*, 2000 WL 36745510 (Feb. 10, 2000), *report and recommendation adopted*, 2000 WL 36745512 (Mar. 7, 2000). Plaintiffs' allegations against Mr. Minana rise nowhere near the level of impropriety present in *Martin*. There, the attorneys sent three letters threatening class actions, two of which were sent after counsel became aware of his associate being sanctioned for the exact same conduct in another case. Counsel also made several misrepresentations to the Court and allowed 70% of the pleadings and other court documents to be filed with forged signatures. Such behavior has not been alleged here. Finally, Plaintiffs cite Rule 4-4.4 of the Missouri Rules of Professional Conduct, which forbids a lawyer from "us[ing] means that have no substantial purpose other than to embarrass, delay, or burden a third person," but that too is inapposite.

14

The remainder of Argument Section III of Plaintiffs' Brief discusses methods of determining an appropriate sanction, an issue that can be addressed if the Court believes additional sanctions are appropriate and issues a show cause order.

### A. Summary Judgment Process

#### 1. Privilege Log

Plaintiffs' argument here concerns the late production of the privilege log and the contention Mr. Minana is responsible for the privilege log. The privilege log and the severe sanction the Court already handed down with regard to the privilege log are discussed above in Factual and Procedural Background, Section III.

With regard to the case law cited by Plaintiffs, Mr. Minana does not dispute his responsibility to oversee the preparation and service of the privilege log.

#### 2. Denial of Summary Judgment Facts

Plaintiffs claim that Mr. Minana denied statements of fact set forth in Plaintiffs' motion for summary judgment which Mr. Minana or his clients should not have denied because his clients subsequently admitted them at trial. This issue is set forth in Plaintiffs' Appendix 1 and Respondent's Appendix 1 likewise addresses Plaintiffs' contentions individually.

Plaintiffs offer an example in their Brief, which is addressed here. Plaintiffs point to the response to Statement of Fact No. 35 in Defendants' Suggestions in Opposition to Plaintiffs' Motion for Partial Summary Judgment.[8] ECF No. 553, pp. 11-12. Statement of Fact No. 35 reads, "Gertz and Blake knew of the Putnam-RightCHOICE contract" with multiple deposition cites for the required support.

---

[8] Plaintiffs' Brief references the response to Statement of Fact No. 11. The response at issue is to Statement of Fact No, 35, on page 11 of the opposition to the motion for summary judgment.

15

Parties' statements of fact on summary judgment must cite to portions of the record relied on. Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56, Cmt. to the 2010 Amendment ("Subdivision (c)(1)(A) … requires that the movant cite the particular parts of the materials that support its fact positions."). Similarly, a party asserting a fact is genuinely disputed must support the assertion by:

(A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Defendants denied Statement of Fact No. 35, stating that the cited deposition testimony does not support the fact. ECF No. 553, p. 11. Defendants then went on to explain in the response why the cited deposition testimony did not support the statement of fact and quote the actual deposition testimony in support. The response notes SeroDynamics testified it knew a contract likely existed, but never received a copy, despite having asked for it, because it was confidential. It further admits Mr. Blake testified he confirmed that Putnam was in-network with Anthem, but he had not seen the contract until the litigation. These explanations and admissions reflect the testimony in deposition and at trial.

Plaintiffs cite pages of trial testimony in their Brief that are consistent with the explanation and admissions of Defendants' response to Statement of Fact No. 35, namely that Defendants understood there was a contract and even asked for a copy of it, that Defendants confirmed and understood Putnam was in-network, and that billing would be processed through Putman using the hospital's provider number.

16

The denial of a statement of fact not supported by the cited record, with an explanation of why the cited record does not support the statement of fact with quotes to the record, is not grounds for sanction. While Mr. Minana concedes he could have alternatively moved to strike Plaintiffs' alleged facts as unsupported by the record, *see Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 533 (8th Cir. 2018) (noting a district court may strike summary judgment statements of fact not properly supported by the material cited), an election of one procedural mechanism over another does not support sanctions. More generally, impeachment of a party at trial does not mean counsel is subject to sanctions and Plaintiffs do not cite any authority suggesting otherwise.

Finally, the record at trial is consistent with the deposition testimony. *See e.g.,* Ex. A at Trial Tr. (Gertz) 467:10-17:

> Q: "Have you ever had anyone tell you that they're in-network but then you find out they were mistaken and they didn't have a contract?
>
> A: Yes.
>
> Q: And is that a reason why you would ask to see the contract just to confirm that for yourself?
>
> A: Yes, sir."

Trial Tr. (Gertz) 467:18-20:

> Q: And did you ever – did SeroDynamics ever receive the RightCHOICE contract?
>
> A: No; we requested it.

### 3. Affirmative Summary Judgment Facts

Plaintiffs claim Defendants made statements of fact seeking summary judgment that were later contradicted at trial and set forth those contentions in Appendix 2 to their Brief. Defendants respectfully disagree and have addressed the issues in Appendix 2 to this brief.

17

### B. Stipulated Facts

Plaintiffs contend Mr. Minana did not adequately confer with opposing counsel with regard to proposed stipulations of fact, but rather provided a delayed redline of proposed changes. This issue was addressed above in Factual and Procedural Background, Section IV. Again, this issue was previously fully briefed for the Court (ECF Nos. 665, 675, 676, 683), addressed by the Court during and after the pre-trial conference, and resolved with the filing of agreed-to stipulations of fact. ECF Nos. 688, 683.

Plaintiffs also contend Defendants did not agree to certain stipulations of fact that were later proven at trial and set forth those contentions in Appendix 3 to their Brief. Mr. Minana has responded to those contentions individually in Appendix 3 to this brief and above in Factual and Procedural Background, Section IV.

### C. Pre-trial Orders

Plaintiffs argue Mr. Minana failed to adequately confer in advance of pre-trial deadlines. Again, this issue was previously briefed by the parties and addressed by the Court. ECF No. 683. It is also discussed above in Factual and Procedural Background, Section V. The parties submitted Stipulations of Uncontroverted Facts and Stipulation of Authenticity of Business Records immediately following the pretrial conference. ECF Nos. 688, 693. Defendants also submitted their proposed jury instruction, (ECF No. 692), and Witness and Exhibit Lists were filed in advance of the pre-trial conference pursuant to the Court Scheduling and Trial Order. ECF No. 151. The Court instructed the parties at the pre-trial conference to review their exhibit lists for overlap and Defendants filed a supplemental Exhibit List addressing exhibits which were duplicative of Plaintiffs'. ECF No. 701.

18

## CONCLUSION

Mr. Minana has learned many lessons from his experiences in this case and will become a better lawyer for it. He regrets that the Court is now presented with another motion relating to his conduct. He has responded to Plaintiffs' motion in a forthright manner, which includes pointing out issues that simply should not have been raised by Plaintiffs.

When the Court did not approve of Mr. Minana's conduct, it addressed the issues, either *sua sponte* or at Plaintiffs' urging. Plaintiffs did not hesitate to bring issues to the Court's attention and the Court thoroughly addressed each of their contentions. This resulted in punitive measures before trial and ultimately in Mr. Minana being precluded from delivering closing arguments. Under these circumstances, there is no need or basis for additional sanctions.

While the Court has broad authority, "[b]ecause section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney representing his client.'" *Lee*, 177 F.3d at 718 (quoting *Travelers Ins. Co.*, 38 F.3d at 1416). "The imposition of sanctions is a serious matter and should be approached with circumspection." *Id.* (quotations omitted). Plaintiffs have not set forth facts or case law which support imposition of additional sanctions.

Further, because the Court addressed Plaintiffs' allegations as they arose, Plaintiffs have not been harmed. An objective review of their Brief points to the delayed privilege log as Plaintiffs' best argument for incurred expense through additional depositions and briefing. Even there, Plaintiffs already received exactly what they asked the Court for as a remedy: waiver of privilege for every document on the log and additional depositions. Plaintiffs made the strategic choice to seek a different severe sanction rather than monetary sanctions. The Court granted the requested relief twenty months ago and the circumstances today do not merit additional sanctions.

19

4864-7694-5957

Mr. Minana has practiced for 31 years, tried over 60 cases to verdict, and never before been accused of sanctionable conduct as Plaintiffs do here.[9] Now he has and he does not take lightly either the sanctions already imposed or the additional sanctions sought. He welcomes the opportunity to address any questions the Court has regarding these matters.

Dated: June 13, 2022

SHOOK, HARDY & BACON L.L.P.

By: */s/ Robert T. Adams*
Robert T. Adams, MO Bar #34612
Steven D. Soden, MO Bar #41917
Hannah M. Smith, MO Bar #73949
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
rtadams@shb.com
ssoden@shb.com
hsmith@shb.com
***Attorneys for Respondent***

## CERTIFICATE OF SERVICE

This certifies that on the 13th day of June 2022, the foregoing was filed with the court using the CM/ECF filing system which sent copies to all attorneys of record.

*/s/ Robert T. Adams*
Robert T. Adams
*Attorney for Respondent*

---

[9] Mr. Minana is rated AV Preeminent by his peers for his skill and ethics. AV Preeminent is the highest peer-rating standard awarded by Martindale Hubble and is given to attorneys who are ranked at the highest level of professional excellence for their legal expertise, communication skills, and ethical standards by their peers. *See* MARTINDALE-HUBBELL PEER REVIEW RATINGS, https://www.martindale.com/ratings-and-reviews/ (last visited May, 20, 2022). The Western District of Missouri has further recognized that the Husch Blackwell law firm is "held in high regard and [has] established over the decades a reputation for honor, dignity, and zealous representation." *Farm J., Inc. v. Johnson*, No. 4:19-cv-00095-SRB, 2019 WL 8405458, at \*4 (W.D. Mo. Dec. 13, 2019).

4864-7694-5957