# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

| | |
|---|---|
| RightCHOICE Managed Care, Inc., et al.,      ) <br><br> Plaintiffs,      ) <br><br> v.      ) <br><br> Hospital Partners, Inc., et al.,      ) <br><br> Defendants.      ) | Case No. 5:18-cv-06037-DGK |

## ATTORNEY GREGORY MINANA'S RESPONSE TO ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE SANCTIONED UNDER 28 U.S.C. § 1927

### Introduction

Mr. Minana appreciates the opportunity to provide additional information and legal authority for the Court's consideration in response to the Show Cause Order.[1] Mr. Minana respectfully asks the Court to evaluate the following in determining what sanctions (if any) are appropriate:

- *First*, because Mr. Minana and his law firm have already suffered significant financial and reputational harm from litigating this case, monetary sanctions are unwarranted;

- *Second*, the Court should decline to award monetary sanctions at this juncture because the record does not currently support an award under § 1927;

---

[1] The issues relating to the imposition of sanctions have been briefed and Mr. Minana understands the Court has set forth what may be its final ruling on whether he will be sanctioned. Accordingly, Mr. Minana will not reargue those issues. Mr. Minana incorporates his Suggestions in Opposition, ECF No. 815, and related exhibits herein and will largely address the issue of an appropriate sanction should the Court determine sanctions are appropriate. By setting forth the standards for §1927 sanctions and discussing the conduct the Court has identified as sanctionable, Mr. Minana is not suggesting that any sanction is appropriate or waiving any arguments that sanctions are inappropriate.

- *Third*, a lump-sum fee percentage sanction of Plaintiffs' attorneys' fees and costs would be inconsistent with § 1927; and

- *Fourth*, if the Court is inclined to award monetary sanctions, it should follow Plaintiffs' proposed approach and require Plaintiffs to submit detailed billing statements to calculate what excess costs or attorneys' fees they claim were caused by Mr. Minana's allegedly sanctionable conduct.

This case has already resulted in great financial and reputational cost for Mr. Minana, and he will suffer more of those costs in the years to come as the Court's Orders will have career-long consequences for him. He asks the Court to decline to award monetary sanctions given the reputational and financial harm that he has already suffered. Mr. Minana also fully understands the reasons why the Court is considering a sanctions award, and that there are a number of things he could and should have done differently in this litigation. He has attempted to convey to the Court his regret and remorse, stating in the first paragraph of his declaration:

> Foremost, I admit that during the course of this hotly contested litigation, my advocacy for my clients led to situations I regret. For that, I apologize. I know I can always improve, and I am committed to doing so. I learned a great deal from this case and if confronted with similar situations in the future, I will act differently, and better.

(ECF No. 815-4 at 1.) If the Court is nevertheless inclined to award monetary sanctions despite the foregoing, Mr. Minana submits that the Court should follow Plaintiffs' proposed approach and require detailed billing statements to be submitted by Plaintiffs' counsel to determine the amount of excess costs and attorneys' fees that were caused by Mr. Minana's allegedly sanctionable conduct.

**Argument**

I. **Monetary Sanctions Are Unwarranted Because Mr. Minana Has Experienced Considerable Reputational and Financial Harm from this Litigation.**

After the Court denied Mr. Minana's motion to withdraw in May 2021, he and Husch Blackwell continued to represent the Sero Defendants for more than a year and a half through a

2

nine-day jury trial and extensive post-trial briefing without compensation. (*See generally* ECF Nos. 835 & 841.) More than $900,000 in attorneys' fees and costs have not been paid in this matter and Mr. Minana and Husch Blackwell do not expect that their former clients will ever make payment.[2] (Ex. A, Decl. ¶ 2.) Unsurprisingly, Mr. Minana's compensation (which depends in significant part on fees collected by the firm on his cases) was negatively impacted in 2021 and 2022, and he likely would have received $75,000 to $200,000 more over those two years had those additional fees been collected. (Ex. A, Decl. ¶ 3.)

Mr. Minana's professional reputation and standing in the community have also been harmed by this litigation. In addition to the substantial jury verdict against his clients, the Court's prior sanctions and admonitions of Mr. Minana—both before and during trial—are matters of public record. So too is the Court's pending Order to Show Cause. (Ex. A, Decl. ¶ 7.) These orders and admonitions have already served "as a symbolic statement about the quality and integrity" of Mr. Minana, and have already had a "tangible effect upon [his] career." *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). They have required extremely difficult conversations with existing and prospective clients and have likely resulted in the loss of additional clients. (Ex. A, Decl. ¶ 8.) Given the nature of the internet, the Court's admonitions and orders will almost certainly be accessible in perpetuity—leaving an "indelible and deleterious 'black mark'" on Mr. Minana's career. *Cf. Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 945 (8th Cir. 2015) ("Defense counsel's reputation was one of her 'most important professional assets,' . . . and the district court's unusual sanction might leave an indelible and deleterious 'black mark' on her career." (citations omitted)).

---

[2] Even without his clients' non-payment, this matter was not particularly profitable to Mr. Minana from the start. Mr. Minana was paid by two insurance carriers to defend the Sero Defendants. (Ex. A, Decl. ¶ 4.) As is often the case with insurance carriers, the hourly billing rates for Mr. Minana and his colleagues were heavily discounted for the duration of this litigation. (Ex. A, Decl. ¶ 5.)

Mr. Minana and his firm also face the prospect of future protracted litigation related to this matter. Their former clients have threatened to bring malpractice claims related to this litigation based, at least in part, on this Court's admonitions during trial and sanctions orders. (*See* ECF Nos. 839 and 840.) Regardless of the merits and outcome of those claims, the complexity of the underlying matter means that any related malpractice litigation will be costly and time-consuming for Mr. Minana and his firm.

The Court stated it is unclear whether Mr. Minana has profited from this litigation. (ECF No. 846 at 13.) The above demonstrates he has not. To the contrary, Mr. Minana has "suffered inevitable financial and personal costs" as a result of this litigation. *Day*, 800 F.3d at 945 (internal quotation marks omitted). This case has been the most challenging and humbling experience of Mr. Minana's 32 years practicing law, and not a day goes by that these issues do not weigh on Mr. Minana, both personally and professionally. (Ex. A, Decl. ¶ 9.)

"[T]he primary purpose of sanctions under Section 1927 is to deter intentional misconduct by attorneys." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 17-CV-5096 (WMW/BRT), 2022 WL 3701555, at *5 (D. Minn. Aug. 26, 2022), *appeal dismissed*, No. 2022-2271, 2022 WL 17972175 (Fed. Cir. Dec. 28, 2022) ("*NLC*"). That purpose has been fully accomplished here given the significant financial and reputational harm that Mr. Minana has already experienced and will experience for many years in the future due to this litigation.

## II. The Court Should Decline to Award Monetary Sanctions at this Juncture Because the Record Does Not Currently Support an Award under § 1927.

A court may only award sanctions under § 1927 for "excess costs *resulting from the misconduct.*" *See Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (emphasis added). "[A] sanctioning court must [therefore] make an effort to isolate the additional costs and fees incurred by reason of conduct that violated § 1927." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443,

4

445 (8th Cir. 2001). This is because "[n]ot every weak or unsuccessful argument . . . is sanctionable as vexatious—if that were true, then every unsuccessful argument in every case could subject an attorney to Section 1927 sanctions." *NLC*, 2022 WL 3701555, at *8.

The Court suggests that six categories of conduct "likely warrant sanctions" under § 1927. Each category is discussed in more detail below, but even if the Court finds that Mr. Minana's conduct in each category was "vexatious," there is currently no evidence of what (if any) excess costs or fees were "reasonably incurred because of" that misconduct. 28 U.S.C. § 1927.

### 1. First Demand

The Court stated that Mr. Minana did not have a good faith basis to file a malicious prosecution lawsuit and that his delivery of the first demand likely warrants sanctions. (ECF No. 846 at 7-8.) Mr. Minana understands the Court's view of the evidence and, as previously stated, will not debate the merits of the underlying action. Mr. Minana does, however, offer additional information for the Court's consideration.

As the Court is aware, there have been criminal prosecutions for similar underlying conduct as alleged in this matter. Such a case was recently tried in the Middle District of Florida and resulted in a defense verdict for all remaining defendants. Mr. Minana offers the attached Law360 article regarding the Florida trial for additional context. (Ex. B.)  Additionally, in 2018, similar issues were presented for an arbitration between a rural healthcare provider ("Little River") and Blue Cross Blue Shield of Texas ("BCBSTX").  Little River sought damages for BCBSTX's failure to pay for diagnostic testing, BCBSTX counter-claimed for fraud and alleged the claims were invalid due to the billing code Little River used. The Arbitrator found for Little River, assessed over $65 million in damages, and rejected BCBSTX's fraud claims. *See* (Ex. C, p. 4.)

Case 5:18-cv-06037-DGK   Document 849   Filed 04/20/23   Page 5 of 15

The Court has also noted that there is no evidence delivering the demand increased Plaintiffs' litigation costs, expenses, or attorneys' fees. (ECF No. 846 at 8.)

### 2. *Pre-Trial Deadlines*

The Court has found Mr. Minana disregarded pretrial deadlines and failed to confer with Plaintiffs' counsel and this conduct likely merits sanctions. The Court acknowledges that any excess costs and attorneys' fees incurred because of this conduct were small and would merit little weight in determining any sanction. (ECF No. 846 at 11.) Mr. Minana agrees and respectfully submits there is no indication that Plaintiffs incurred any excess costs or fees as a result of this conduct.

### 3. *Opening Statement*

The Court cites two assertions by Mr. Minana during his opening statement and states that they were unsupported by the evidence and likely merit sanctions. As discussed previously, the statements at issue were not objected to, nor were they discussed in the conference with counsel following opening statements. (ECF No. 815 at 11-12.) The Court acknowledges that this conduct did not appreciably increase Plaintiffs' litigation costs. Mr. Minana agrees and again submits there is no evidence that these assertions increased Plaintiffs' litigation costs.

### 4. *Delivery of Second Demand*

The Court has found Mr. Minana's delivery of the second demand likely merits sanctions and is more worthy of sanctions than the first because Mr. Minana knew more about the basis for a malicious prosecution claim than when delivering the first. (ECF No. 846 at 12-13.) Like the first demand, however, there is no indication that delivering it increased Plaintiffs' litigation costs, expenses, or attorneys' fees. (ECF No. 846 at 8.)

### 5. Pre-August 30, 2019 Discovery Issues

The Court indicated in its Order that Mr. Minana's initial response did not address the Sero Defendants' discovery tactics, which caused the Court to hold discovery teleconferences. (ECF No. 846 at 4.) The pre-August 30, 2019, discovery issues are therefore addressed in more detail below.

A review of the docket reveals one discovery motion involving the Sero Defendants prior to August 30, 2019.[3] The motion raised five issues. The first issue concerned the search terms Plaintiffs wanted the Sero Defendants to run for document production. (ECF No. 234 at 2-4.) Defendants did not object to the terms themselves, but argued they were collectively overbroad and likely to result in documents previously produced by the other parties. (ECF No. 255 at 2.) Defendants had run the search terms and determined they would yield 30,490 documents they would be required to review. The Court found the search terms reasonable and ordered the production of the "hit report," which the parties could then use "to more narrowly tailor the search terms and production of retrieved documents." (ECF No. 255 at 2.) The parties subsequently complied and resolved the issue. An objective review of this dispute and its resolution does not indicate any "vexatious" and "unreasonable" conduct. 28 U.S.C. § 1927.

The second issue concerned Labtrac data. (ECF No. 234 at 5-6.) Labtrac is a proprietary electronic database. (ECF No. 237 at 5.) Defendants responded that they had made available hardcopy documents with the same information, which Plaintiffs chose not to review, and had agreed to provide Plaintiffs access to the database itself if Plaintiffs would agree to an appropriate protective order. (ECF No. 237 at 5-6.) The issue was resolved, and the Court's order on this

---

[3] There was additional briefing regarding discovery issues related to other Defendants and orders issued by the Court regarding that briefing before August 30, 2019.

motion does not mention the Labtrac dispute. There is nothing about this discovery dispute which merits sanctions.

The third issue concerned Plaintiffs' request for Defendants' text messages. Defendants were in the process of producing text messages from company phones, but objected to producing text messages from all employees' personal phones. The Court ordered Defendants to produce relevant text messages from senior employees' business phones if the messages served as the sole source of relevant information and denied Plaintiffs' request to the extent it sought text messages on personal phones for employees other than Defendants Blake and Gertz. (ECF No. 255 at 5.) Nothing about this dispute indicates any sanctionable conduct.

The fourth is related to Plaintiffs' complaints regarding Mr. Minana's deposition conduct, namely, instructing witnesses not to answer a question, terminating a deposition 20 minutes early to make a flight, speaking objections, and the "if you know" instruction. The Court ordered Defendants to supply interrogatory answers for the questions not answered, denied Plaintiffs' request for additional deposition time because, among other reasons, Mr. Minana made the deponent available for eight hours, and instructed Mr. Minana to limit objections to a short phrase and to not use the "if you know" instruction in depositions. To the extent the Court believes that this conduct was "vexatious" and "unreasonable," any additional costs or attorneys' fees that Plaintiffs incurred "because of" this conduct should be easily identifiable with Plaintiffs' billing statements. 28 U.S.C. § 1927.

The final issue relates to financial records sought by Plaintiffs. After initial briefing on the issue, the Court stated it was mindful of the burden involved in permitting such broad discovery of sensitive material, ordered the parties to brief the issue further, and ordered Defendants, to the extent not already done, to produce financial records relevant to the existence and location of any

identifiable proceeds at issue received from Plaintiffs. (ECF No. 255 at 4.) After additional briefing, the Court granted Plaintiffs' motion. (ECF No. 277.) Subsequently, a dispute arose as to the scope of the order, and the Court ordered Defendants to produce the documents requested by Plaintiffs. (ECF No. 301.) Again, to the extent that the Court believes that this conduct was "vexatious" and "unreasonable," any additional costs or attorney's fees that Plaintiffs incurred "because of" this conduct should be readily ascertainable with Plaintiffs' billing statements. 28 U.S.C. § 1927.

For the reasons described above, the issues raised in the initial discovery motion do not merit sanctions under § 1927. If the Court is inclined to award sanctions based on this motion, which was granted in part and denied in part with instruction for additional briefing, the only potential sanction could be for the instruction to witnesses not to answer. That issue was addressed with written responses and involved a very small portion of the briefing on the motion which should be easily ascertainable. If the Court is inclined to award sanctions based on the subsequent briefing regarding financial records, the time spent on such briefing is similarly knowable and does not justify an award based on Plaintiffs' entire litigation costs and fees.

While not a formal motion, there was also briefing on the scope and location of Plaintiffs' 30(b)(6) depositions prior to August 30, 2019. (ECF Nos. 292, 293, 295, & 296.) Plaintiffs objected to certain noticed topics and disagreed on the deposition location. The Court sustained Plaintiffs' objections to the deposition topics and held certain depositions would take place in the cities where those deponents normally worked. (ECF No. 302.) This dispute does not merit sanctions.

With regard to the discovery issues specifically raised by Plaintiffs' request for sanctions, each was previously addressed in detail in Mr. Minana's opposition brief. (ECF No. 815 at 5-8.)

Each involved statements made in the course of a deposition and there is no indication any of the brief exchanges increased Plaintiffs' litigation costs or attorneys' fees. Thus, no sanctions are warranted under § 1927 for the pre-August 30, 2019, discovery issues. But even if the Court is inclined to award sanctions under § 1927 for any of those issues, Plaintiffs' excess costs and fees related to those issues should be easily ascertainable.

### 6. Summary Judgment Process

Finally, the Court found three aspects of the summary judgment process likely merit sanctions: (i) the late privilege log, (ii) the denial of some proposed stipulated facts, and (iii) the lack of a good faith basis to assert some facts in support of Defendants' motion for summary judgment. Mr. Minana addressed each of these issues in detail in his opposition to Plaintiffs' request for sanctions and the attached appendices. (ECF No. 815 at 8-10, 15-18; ECF No. 815-2; ECF No. 815-3.)

Mr. Minana's response noted the Court has already handed down a severe sanction for the privilege log. The Court acknowledged this but stated Mr. Minana has yet to be held accountable for his role with regard to the privilege log. As described above, Mr. Minana has already been held to significant financial and reputational account for his role in this litigation. If the Court is inclined to impose an additional sanction under § 1927, it should be tied to the additional costs and fees Plaintiffs incurred by reason of the late privilege log, rather than some percentage of all costs and fees incurred in the litigation.

With regard to Defendants' responses to Plaintiffs' proposed stipulations of fact, the Court has stated Defendants did not have a good faith basis to deny many and acknowledged other refusals to stipulate were appropriate. (ECF No. 846 at 9.) A review of the proposed stipulations and Plaintiffs' claimed countervailing evidence does not indicate significant time was used at trial

10

to address these issues. Any sanction related to the denials should be tied to the additional costs and fees incurred, as established through Plaintiffs' counsels' billing statements.

The factual statements at issue in Defendants' motion for summary judgment came from the affidavits of Messrs. Blake and Gertz. Plaintiffs contend five of the 137 statements in the two affidavits are improper and the Court has indicated they lack a good-faith basis and merit sanctions. (ECF No. 846 at 10.) Procedurally, the five affidavit statements were used to support three Statements of Material Fact. (ECF No. 521, ¶¶ 76, 79 and 81.) Plaintiffs admitted one of those Statements of Fact, controverted another only in part, and controverted the third. (ECF 552 at 26, 27 and 30.) Two affidavit statements were cited in the Defendants' reply brief. (ECF No. 556 at 8.) The Defendants' Motion for Summary Judgment was denied. (ECF at 616.) Any sanction awarded on this issue should be limited to the additional costs and fees incurred by Plaintiffs (if any) due to the five affidavit statements—which should be readily ascertainable.

### III. A Lump-Sum Sanction of 15% of Plaintiffs' Attorneys' Fees and Costs Would Be Inconsistent with § 1927.

The Court queried whether "a percentage of Plaintiffs' litigation costs in this case, say 15%" may be awarded as a sanction. (ECF 846 at 15.) But such a lump-sum approach would be inconsistent with the plain language and purpose of § 1927. The plain language of § 1927 requires the court to determine what "excess costs, expenses, and attorneys' fees" were "reasonably incurred" by Plaintiffs "because of" the alleged misconduct. 28 U.S.C. § 1927. Courts issuing sanctions under § 1927 recognize this limitation and narrowly tailor the sanction to the amount specifically attributable to the sanctionable conduct. *See, e.g.*, *Varner v. BNSF Ry. Co.*, No. CIV. 09-5076-JLV, 2011 WL 835887, at *5 (D.S.D. Mar. 4, 2011) ("[A] court may assess only those excess costs, expenses, and attorney's fees that bear a causal connection between the objectionable conduct of counsel and multiplication of the proceedings" (internal quotation marks and citation

omitted)); *NLC*, 2022 WL 3701555, at *9 (limiting sanction to "the most precise amount" the Court could discern as directly attributable to the attorneys' intentional or reckless disregard or violation of court orders).

The purpose of § 1927 sanctions is "to penalize and deter intentional misconduct"—not to "provide a windfall to a party." *NLC*, 2022 WL 3701555, at *9. But a lump-sum fee percentage sanction would do the latter. This is particularly true here, given that (i) the litigation spanned several years and included several claims brought against multiple other defendants, (ii) Plaintiffs amended the complaint four times to add new theories, (iii) the litigation involved extensive discovery having nothing to do with the alleged misconduct (including the 76 third-party subpoenas issued by Plaintiffs), and (iv) Plaintiffs filed several motions that were completely unrelated to the alleged misconduct.

Because Plaintiffs have not provided (much less submitted any evidence of) their total fees and costs, it is impossible to know what monetary amount would actually be awarded against Mr. Minana under the Court's proposed lump-sum percentage approach. But even conservatively estimating Plaintiffs' total fees and costs as approximately $3 million,[4] a lump-sum percentage sanction of 15% would constitute a $450,000 sanction against Mr. Minana—*in addition* to the $900,000 in uncollectable fees and costs described above. Such a sanction would bear no relationship to the discrete instances of alleged misconduct identified in the Court's Order to Show Cause and instead "provide a windfall" to Plaintiffs. *Id*. Because a lump-sum percentage award

---

[4] The Sero Defendants total attorneys' fees and costs in this matter were approximately $3 million. Each of Husch Blackwell's invoices was subjected to review by both insurance carriers, their outside counsel, and an independent auditor. (Ex. A, Decl. ¶ 6.) It is unclear what (if any) outside auditing procedures were in place for Plaintiffs' counsel's invoices. Based solely on the number of attorneys who represented Plaintiffs throughout this litigation and at trial, however, the amount of total costs and fees is likely to be much higher than the $3 million incurred on behalf of the Sero Defendants.

would not be based on the excess fees and costs "reasonably incurred because of" Mr. Minana's alleged misconduct, Mr. Minana respectfully submits that the Court should decline to take this approach in determining what monetary sanctions (if any) are appropriate.

## IV. The Court Should Instead Adopt Plaintiffs' Proposed Approach and Determine What Additional Fees and Costs Were Caused by Mr. Minana's Allegedly Vexatious Conduct

If the Court is still inclined to award monetary sanctions against Mr. Minana, it should instead adopt Plaintiffs' proposed approach and determine what additional attorneys' fees and costs were caused by Mr. Minana's allegedly sanctionable conduct.

*NLC* is instructive. There, the defendant (St. Jude) sought over a half a million dollars in attorneys' fees from the attorneys for the plaintiff (Niazi Licensing Co., "NLC") as a sanction under § 1927. *See id.* *7. The court determined that NLC's attorneys (i) "repeatedly disregarded the deadlines established in the Court's scheduling order," (ii) "willfully violated the Court's order striking improper evidence," and (iii) "advanced unreasonable and meritless arguments on multiple occasions." *Id.* "Most egregiously," the court explained, NLC's violations of court orders "required St. Jude to move to strike NLC's untimely evidence, to move to enforce the magistrate judge's order striking evidence and for sanctions, and to respond to NLC's appeals of the magistrate judge's decisions pertaining to these issues." *Id.* All of this conduct "multiplied the[] proceedings unreasonably and involved intentional or reckless conduct" that warranted sanctions under § 1927. *Id.*

Even so, the court only awarded St. Jude $49,120 in attorneys' fees—*i.e.*, less than a tenth of what St. Jude had requested. The court explained that it would not include in the sanctions award any fees incurred as a result of NLC's attorneys' conduct that was "intertwined with conduct that does *not* necessarily rise to the level of intentional, reckless or otherwise 'vexatious' conduct." *Id.*

*8. Likewise, in *VanDanacker*, the magistrate judge recommended the denial of a motion for attorney's fees to allow the parties "to fully develop the factual record" where, as here, "not all of the attorneys' fees incurred . . . were directly attributable to the alleged improper conduct." *VanDacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1057 (D. Minn. 2000).

*NLC* and *VanDanacker* apply equally here. Regardless of the Court's beliefs regarding the nature or egregiousness of Mr. Minana's alleged misconduct, sanctions can only be awarded under § 1927 for excess costs "reasonably incurred because of" that misconduct. 28 U.S.C. § 1927. Unlike in *NLC*, where St. Jude provided billing statements and identified the attorney's fees and costs that were allegedly incurred as a result of NLC's sanctionable conduct (that was still ten times higher than the court ultimately awarded) under a lodestar approach, the record here currently contains no billing statements from Plaintiffs' counsel reflecting an amount of excess fees purportedly caused by Mr. Minana's alleged vexatious conduct. Instead, this case is similar to *VanDanacker*, where additional evidence was necessary to determine what (if any) additional attorneys' fees and costs were incurred that were "directly attributable to the alleged improper conduct." 109 F. Supp. 2d at 1057.

As the Court noted, Plaintiffs have argued Mr. Minana should be responsible for the costs and fees attributable to Mr. Minana's conduct and have proposed submitting a fee request supported by records for use in a loadstar approach. To the extent the Court is considering awarding monetary sanctions, it should adopt Plaintiffs' proposed approach and require Plaintiffs to submit a fee request supported by billing records demonstrating what additional attorney's fees and costs Plaintiffs claim were incurred directly as a result of Mr. Minana's alleged misconduct.

14

**Conclusion**

For the reasons stated above, Mr. Minana respectfully requests the Court find sanctions are not appropriate, or, to the extent they are, have already been satisfied with prior sanction orders.

Dated:  April 20, 2023

SHOOK, HARDY & BACON L.L.P.

By: _/s/ Robert T. Adams_
Robert T. Adams, MO Bar #34612
Steven D. Soden, MO Bar #41917
Hannah M. Smith, MO Bar #73949
2555 Grand Blvd.
Kansas City, Missouri  64108
Telephone:  816.474.6550
Facsimile:  816.421.5547
rtadams@shb.com
ssoden@shb.com
hsmith@shb.com

*Attorneys for Respondent*

**<u>CERTIFICATE OF SERVICE</u>**

This certifies that on the 20th day of April 2023, Attorney Gregory Minana's Response to Order to Show Cause Why He Should Not Be Sanctioned Under 28 U.S.C. § 1927 was filed with the court using the CM/ECF filing system which sent copies to all attorneys of record.

*/s/ Robert T. Adams*
Robert T. Adams
*Attorney for Respondent*