IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RightChoice Managed Care, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc.; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Suggestions in Support of their Motion for Relief
Pursuant to FRCP Rule 60(b) and Request for post judgment discovery

1

# **CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ 3
    Cases .......................................................................................................................... 3
    Statutes ...................................................................................................................... 4
    Regulations ................................................................................................................ 4

INTRODUCTION ........................................................................................................ 5

BACKGROUND .......................................................................................................... 6

STATEMENT OF FACTS - THE PLAINTIFFS' MISCONDUCT ................................. 8

1. Plaintiffs concealed ███████████████████████████ .............................. 8

2. Plaintiffs concealed ████████████████████████████████
████████████████ ...................................................................................... 9

3. Plaintiffs concealed ███████████████████████████████████
███████████████████████████████████████████████ 10

4. Plaintiffs fabricated the data in the Rendering Provider fields in the claims spreadsheets ........ 10

5. Plaintiffs submitted ████████████████████████████
██████████████████ ...................................................................... 11

6. Plaintiffs' misconduct and misrepresentation prevented Defendants from fully and fairly preparing for and proceeding at trial ........................................................................... 12

ARGUMENT ............................................................................................................. 13

RELIEF REQUESTED ............................................................................................... 19

CERTIFICATE OF SERVICE ..................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Cryovac, Inc.* ...................................................................................14, 15
862 F.2d 910 (1st Cir. 1988).

*Avagyan v. Holder*...........................................................................................16
646 F.3d 672 (9th Cir. 2011)

*Bros Incorporated v. W.E. Grace Mfg. Co.*.............................................................13, 15
351 F.2d 208 (5th Cir. 1965)

*Cap Export, LLC v. Zinus, Inc.*............................................................................16
996 F. 3d 1332 (9th Cir. 2021)

*Dual-Deck Video Cassette Recorder Antitrust Litig.*...................................................17
10 F. 3d 693 (9th Cir. 1993)

*Harre v. A.H. Robins Co.*.. ................................................................................ 14
750 F.2d 1501 (11th Cir. 1985)

*JNS Enter., Inc. v Dixie Demolition, LLC*................................................................16
430 S.W. 3d 444 (Tex. App. 2014)

*Jones v. Swanson* ...........................................................................................18
512 F.3d 1045 (8th Cir. 2008)

*Minnesota Supply Co. v. The Raymond Corp.*..........................................................13, 17
472 F.3d 524 (8th Cir. 2006)

*Ramirez v. Department of Justice*.........................................................................14
680 F. Supp. 2d 208 (D.D.C. 2010)

*Rozier v. Ford Motor Company* ...........................................................................15
573 F.2d 1332 (5th Cir. 1978)

*Saenz v. Kennedy* ..........................................................................................14
178 F.2d 417 (5th Cir. 1949)

Case 5:18-cv-06037-DGK    Document 863    Filed 10/26/23    Page 3 of 22

*Schultz v Butler* .......................................................................................................................18
24 F.3d 626 (4th Cir. 1994)

*Seaboldt v. Pennsylvania Railroad Company* ...........................................................................15
290 F.2d 296 (3rd Cir. 1961)

*Solorio v. Muniz* .......................................................................................................................17
896 F.3d 914 (9th Cir. 2018)

*Static Media LLC v. Leader Accessories* LLC ........................................................................8, 17
38 F.4th 1042 (Fed. Cir. 2022)

*Toledo Scales Co. v. Computing Scale Co.* ...............................................................................14
261 U.S. 399 421, 43 S.Ct. 458, 67 L.Ed. 719 (1923)

**Statutes**

False Claims Act 31 U.S.C. § 3729-3733 ................................................................................ 11, 13

**Regulations**

45 CFR §§162.195 (b) ............................................................................................................ 11, 13

Model Rules of Prof'l Conduct R. #3.3 (1983)............................................................................5, 9

Mo. R. Gov. Bar Jud. 4-3.3....................................................................................................5, 9

# **INTRODUCTION**

Litigation is expected to be contentious, but even the most vigorous advocacy is bound by ethical rules, including the Model Rules of Prof'l Conduct R #3.3 (1983) and Mo. R. Gov. Bar Jud. 4-3.3, which impose upon attorneys a duty of candor to the court and an ongoing obligation to correct any false statements of material fact or law. Federal Rule of Civil Procedure 60(b) provides mechanisms to allow a Court the opportunity to correct judgments that it finds to have been rendered in error when such error meets certain standards. Because Plaintiffs engaged in instances of misconduct that prevented Beau Gertz ("Gertz") and Mark Blake ("Blake") (collectively "Defendants") from fully and fairly preparing for and proceeding at trial, Fed. R. Civ. P. 60(b)(3) authorizes the Court to relieve them from the final judgment because it was unfairly procured.

As a direct result of the post-judgment sanctions issued against Blake (Doc. 790), and Blake's agreeing to assist co-defendants Jorge and Ricardo Perez (collectively "Perez") at a sentencing hearing set for December 13, 2023, Blake learned that: 1) Plaintiffs concealed ███ ██████████████████████████████████████, 2) Plaintiffs concealed ███████ ████████████████████████████████████████████████, 3) Plaintiffs concealed ████████████████████████████████████████████████ ████ 4) Plaintiffs fabricated the data in the Rendering Provider fields in the claims spreadsheets, and 5) Plaintiffs submitted ████████████████████████████ █████████████████████████.



Any one of these instances of misconduct is sufficient for relief under Rule 60(b)(3). Plaintiffs' misconduct in totality is sufficient for relief under Fed. R. Civ. P. 60(b)(2).

Defendants seek post-judgment discovery to allow Defendants to make an inquiry about why documents were concealed and why █████████████████ .

**<u>BACKGROUND</u>**

On July 17, 2018, Plaintiffs filed a third amended complaint including as defendants Blake, Gertz, their laboratory SeroDynamics LLC, and their marketing company LabMed Services LLC. (Doc. 57). On September 17, 2019, Plaintiffs' filed a fourth amended complaint claiming that the tests were billed as if the tests were performed at and by Putnam. (Doc. 310) at p. 29. The sole billing evidence Plaintiffs produced were claims spreadsheets that Plaintiffs had authenticated for this Court and Government prosecutors, presenting them as truthful and reliable business records, though Defendants subsequently learned that they were not. On October 27, 2022, judgment was entered with punitive damages in favor of the Plaintiffs. (Doc. 828).

Prior to filing this lawsuit, Plaintiffs engaged with prosecutors to secure criminal charges against Defendants relative to their involvement with Putnam and Campbellton Graceville Hospital ("CGH"). After this lawsuit was filed On June 17, 2020, a federal Grand Jury in the Middle District of Florida issued a criminal indictment against co-defendants Jorge Perez, Ricardo Perez, James Porter and Christian Fletcher and on October 7, 2020, filed a superseding indictment against them. Defendants were subsequently identified as criminal targets for indictment but successfully defended themselves by presenting the Missouri Assistant United States Attorney's office evidence that was sufficiently compelling (Doc. 578) at p. 25 – 77 to have them excluded as targets on February 16, 2021. (Doc. 578 – 1) at p. 165.

The indictment resulted in two criminal trials. The first began on May 9, 2022, and concluded with a split verdict: Jorge Perez and Ricardo Perez were found guilty on multiple charges, but no verdict was reached for James Porter and Christian Fletcher. The government

6

chose to re-try the case. Prior to the second criminal trial, Plaintiffs provided the Government

████████████████████████████████████████████████████████

██████████████ Co-defendant Porter took a plea agreement prior to the second trail. After a

second four-week trial on March 31, 2023, a jury returned verdicts of not guilty for co-defendant

Fletcher and all other remaining defendants on all charges. Co-defendant Fletcher is now suing

Plaintiffs for $1 billion, alleging, inter alia in part, the same misconduct that Defendants learned

post judgment and that is the subject of this Motion. (Exhibit 1).

Defendant Blake, in his capacity as an attorney familiar with the intricacies of both the

civil and criminal cases, was retained by Jorge and Ricardo Perez to provide support at their

sentencing hearing following their conviction. While serving in this role, Blake became aware of

certain documents under protective order in the criminal case that Plaintiffs had concealed in the

civil trial and that would have contributed to the civil defense. Blake requested that the

Government release these documents from the protective order, noting that all the evidence was

going to come out in Fletcher's litigation against Plaintiffs, but the Government opposed this

request. (Exhibit 2). Blake then sought modification of the protective order from the Criminal

Court to obtain the concealed documents (Exhibit 3) and an evidentiary hearing. (Exhibit 4). The

government reasserted its opposition to Blake's request (Exhibit 5), and the Criminal Court

denied the Motion, stating that the matter should instead be brought before this Court (Exhibit 6).

Only protected information that is necessary to provide the Court a full and proper

understanding of Plaintiffs' misconduct is being used, in keeping with the standards established

in *Static Media LLC v. Leader Accessories LLC*, that "…the use of information gained by an

attorney under a protective order in one case may appropriately be used by the same attorney to

develop a strategy applicable to a second action." *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022).

These concealed documents demonstrate plainly that Plaintiffs engaged in misconduct. In particular, Defendants have learned that Plaintiffs ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

Together, these concealed documents and fabricated data precluded Defendants from fully and fairly presenting a defense against Plaintiffs' allegations. Plaintiffs' misconduct satisfy the requirements set by Rule (60)(b)(3) and warrant relief from the judgment and the granting of a new trial. Defendants are also entitled to post judgment discovery.

## STATEMENT OF FACTS - THE PLAINTIFFS' MISCONDUCT

**1. Plaintiffs concealed** ████████████████████████

Despite being requested (Doc. 603-3) at p. 11 (Exhibit 7), Plaintiffs concealed ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ (Exhibit 8).

Plaintiffs' civil complaint ████████████████████████████, claiming that Defendants committed healthcare fraud because they transmitted the data in the Place of Service field. Plaintiffs may argue that ██████████████████████████████ it was rightfully excluded from discovery, but such an argument would be disingenuous. In all respects, the ████████████ is directly relevant: Defendants has been providing laboratory services to one of the named hospitals (Campbellton-Graceville), they were submitting laboratory claims using the exact same forms and fields, and ████████████████████████████████ ██████████████████████████████████████████████████

After the indictment was issued and in the middle of the trial, Plaintiffs changed their position and stated that Plaintiffs themselves populated the data in the Place of Service field based upon their own assumptions. Had Plaintiffs produced this ████ in discovery, Defendants would have had the opportunity to question the multitude of Plaintiffs' witnesses at their depositions and raise the issue at trial. By concealing ████████ Plaintiffs denied Defendants the opportunity to demonstrate that ████████ was a fundamental instrument in Plaintiffs' strategy to induce Government prosecutors into pursuing indictments. Moreover, because the same attorneys in this case were intimately involved in the criminal case, their concealment ████████ in this case while producing it in the criminal case constitutes a violation of Model Rules of Prof'l Conduct R #3.3 (1983) and Mo. R. Gov.. Bar Jud. 4-3.3 demonstrating that they failed in their duty of candor to this Court and in their ongoing obligation to correct any false statements of material fact or law.

**2. Plaintiffs concealed ████████████████████████████████** ██████████████████████████████

Despite being requested (Doc. 603-3) at p. 11, Plaintiffs concealed ████████████ ██████████████████████████ but produced them as protected documents in the criminal

9

case. These ████████████████████████████████████████████████

████████████████████████████████████ (Exhibit 9) and that the ███████

████████████████████████████████████████████████████████████

████████████████████████████████████ (Exhibit 10).

### 3. Plaintiffs concealed ████████████████████████████████
████████████████████████

Despite being requested (Doc. 603-3) at p. 11, Plaintiffs concealed ████████

████████████████████████████████████████████████ but

produced it a protected document in the criminal case (Exhibit 11). ████████ ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████



Because Plaintiffs in the civil case concealed this document and the additional documents referenced above, they prevented Defendants from fully and fairly preparing for and proceeding at trial. Had Defendants been provided these documents in discovery, they would have unquestionably shaped the defense strategy.

### 4. Plaintiffs fabricated the data in the Rendering Provider fields in the claims spreadsheets

Plaintiffs' alleged that Defendants committed fraud because "Putnam was represented [by Defendants] as the rendering provider of the tests at issue, including through the use of Putnam's TIN and NPI, which triggered payment under the Putnam-RightCHOICE contract." (Doc. 793) at p. 22.

This allegation was refuted by Plaintiffs' witness Howard Rochey, Vice President over Plaintiffs' Claims Operations and Payment Integrity, who testified in the criminal trial that the data in Rendering Provider fields was not populated by Defendants but was instead populated by Plaintiffs:

> Q:   And you made it clear that neither Waystar nor Availity adds anything to the information it receives, right?
> A:   That's correct.
> Q.   So if the rendering provider is not on the UB-04 form, it has to come from Florida Blue, correct?
> A.   Sounds reasonable. (United States v. Jorge Perez et. al. Case No:. 3:20-cr-86-TJC-JBT criminal trial transcript Vol 3 Page 162 Lines 16-21) (Exhibit 12).

Rather than producing the actual data that was transmitted by Defendants, Plaintiffs by their own admission added the data in the Place of Service and Rendering Provider fields, ████████████████████████████████████████████ ██████ Data does not change, and the intermediary clearinghouse cannot be blamed for alterations and fabrications that Plaintiffs made on their own while claiming that Defendants transmitted the data.

**5. Plaintiffs submitted new claims spreadsheets to the prosecutors prior to the second criminal trial were different than those previously submitted**

On October 28, 2022, Plaintiffs provided Government prosecutors ██████ ████████████████████████████████████████ (Exhibit 13) Just like the Place of Service and Rendering Provider columns, █████████████ ████████████████████████████████████████ HIPAA patient data in violation of 45 CFR §§162.195 (b) and violated the False Claims Act 31 U.S.C. § 3729-3733 ███████████████████████ government mandated code sets.

On November 29, 2022, Blake notified Plaintiffs ██████████████████ ████████████████████████████████████████

11

██████████████████████████████████████ ). (Exhibit 14). On December 5, 2022, Plaintiffs provided the Government ███████████████████████ ██████████████████████████████. ████████████████████████ ████████████████████████████████████████. (Exhibit 15). ██ ████████████████████████████████████████ on March 2, 2023, during the second criminal trial, Moore was identified as the owner of the spreadsheet ████ ████████████████████████████████ (Exhibit 16).

Regarding the content of the post-trial newly submitted ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ Further, it demonstrates newly discovered evidence that shows that Plaintiffs had failed in their discovery obligations, a misrepresentation that is consistent with the requirements for the granting of a Rule 60(b)(3) motion.

**6. Plaintiffs' misconduct and misrepresentation prevented Defendants from fully and fairly preparing for and proceeding at trial**

Because of these instances of Plaintiffs' misconduct, Defendants did not have the ability to fully and fairly prepare for and proceed at trial. Defendants were denied the opportunity to demonstrate that Plaintiffs' claims were poorly founded, that Plaintiffs had been given notice ████████████████████████████████ that their allegations were incorrect, and that the evidence Plaintiffs presented to Government agencies, prosecutors, and this Court were ███████████ ██████ It is unarguable that if Defendants had access to this same information that it would have been put to constructive use in the formulation of their defense, as well.

12

## <u>ARGUMENT</u>

As a matter of law, the fabricated data in the claims spreadsheets renders all of the claims invalid in violation of 45 CFR 162.195(b) because Plaintiffs added non-existent Place of Service and Rendering Provider fields in their authenticated spreadsheets and populated those fields with data they falsely claimed Defendants transmitted. Plaintiffs violated the False Claims Act 31 USC 3729-3733 numerous times by adding and deleting data that was not transmitted by the Defendants. (Exhibit 17).

Federal Rule of Civil Procedure 60(b) provides the Court a mechanism to grant relief from a final judgment when it finds that judgment to have been rendered in error. Defendants seek relief under Rule 60(b)(3) and, as an alternative, under Rule 60(b)(2). Rule 60(b)(2) is reserved for those judgments that were factually incorrect due to newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) and consideration would have produced a different result. *Minnesota Supply Co. v. The Raymond Corp.,* 472 F.3d 524 (8th Cir. 2006).

This is distinct from Fed. R. Civ. P. 60(b)(3), where the judgment was unfairly procured whether the misconduct was "evil, innocent or careless." *Bros Incorporated v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965). The misconduct merely has to prevent the Defendants from fully and fairly preparing for and proceeding at trial.

The distinction between the two prongs of the Rule were made clear by the Court in *Anderson v. Cryovac, Inc.*, which emphasized that the burden to prevail on a Motion under Rule 60(b)(3) is justifiably less rigorous than on one based on Rule 60(b)(2):

> This standard [of a Rule 60(b)(3)] is more lenient than its Rule 60(b)(2) counterpart, and properly so. The "newly discovered evidence" provision of Rule 60(b)(2) is aimed at correcting erroneous judgments stemming from the unobtainability of evidence. Consequently, a party seeking a new trial under Rule 60(b)(2) must show that the missing

evidence was "of such a material and controlling nature as [would] probably [have] change[d] the outcome." 7 J. Moore J. Lucas, Moore's Federal Practice (2d ed. 1985) ¶ 60.23[4] at 60:201-02 (footnote omitted); see also Federal Deposit Insurance Corp. v. La Rambla Shopping Center,791 F.2d 215, 223-24 (1st Cir. 1986). In contrast, Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured. When wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict, the aggrieved party should not be required to assemble a further showing. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988).

This Motion seeks relief from judgment based on the standards of Rule 60(b)(3), noting that Plaintiffs' wrongful secretion of discovery materials and ████████████ as demonstrated herein created an inequity that has attended to the benefit of the Plaintiffs, and the appropriate remedy is to grant the Defendants' requested relief.

Assertions under Rule 60(b)(3) must be made clearly and convincingly (*Saenz v. Kennedy*, 178 F.2d 417, 419 (5th Cir. 1949)), and movants must prove that the offending conduct subverted their ability to fully and fairly present their case. *Ramirez v. Department of Justice*, 680 F. Supp. 2d 208, 210 (D.D.C. 2010); *Toledo Scales Co. v. Computing Scale Co.*, 261 U.S. 399, 421, 43 S.Ct. 458, 464, 67 L.Ed. 719 (1923).

The phrase "fully and fairly" merits clarification. As the Court noted in *Anderson*, Rule 60(b)(2) Motions must satisfactorily demonstrate that a different result would have likely been obtained had the withheld information been produced in discovery. *Anderson* at 924. There is no such obligation under Rule 60(b)(3). Rather, it is sufficient for the Movant to demonstrate that the withheld information "would have made a difference in their approach to the case…" *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1505 (11th Cir. 1985).

This is an interpretation that has been confirmed widely: "Another well-sculpted marker points out that misconduct need not be result-altering in order to merit Rule 60(b)(3) redress," *Anderson* at 924; "[Rule 60(b)(3)] does not require that the information withheld be of such

14

nature as to alter the result in the case," *Rozier v. Ford Motor Company*, 573 F.2d 1332, 1339 (5th Cir. 1978); "It is true that we cannot say for a certainty that previous knowledge … would have changed the case from a verdict for the plaintiff to one for the defendant or have changed the amount of the verdict. But it would have made a difference in [Defense] counsel's approach to the testimony of several witnesses," *Seaboldt v. Pennsylvania Railroad Company*, 290 F.2d 296, 299 (3d Cir. 1961).

Yet if the moving party need not demonstrate the inevitability of a different outcome, the question remains about what the moving party must demonstrate to meet the "fully and fairly" standard. *Anderson* offers an explication:

> …the moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial. This burden may be shouldered either by establishing the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery. The burden can also be met by presumption or inference, if the movant can successfully demonstrate that the misconduct was knowing or deliberate. Once a presumption of substantial interference arises, it can alone carry the day, unless defeated by a clear and convincing demonstration that the consequences of the misconduct were nugacious. Alternatively, if unaided by a presumption – that is, if the movant is unable to prove that the misconduct was knowing or deliberate – it may still prevail as long as it proves by a preponderance of the evidence that the nondisclosure worked some substantial interference with the full and fair preparation or presentation of the case. *Anderson, at 926*.

Plaintiffs may not claim as a defense that the withheld information or altered spreadsheets was innocent or careless. Even if such mistakes were committed without ill intent, "The effect was the same whether there was evil, innocent or careless, purpose," as the Court noted in *Bros Incorporated*, affirming the granting of a Rule 60(b) motion, further explaining that, "we are nonetheless certain that the broad reach of 60(b) reaches this far." *Bros Incorporated v. W.E. Grace Mfg. Co.* 351 F.2d 2,208, 211 (5th Cir. 1965).

Plaintiffs may not claim that the concealed information should be disqualified from consideration because it was discoverable by Defendants. The United States Court of Appeals for

15

the Ninth Circuit noted that a previous court's requirement that evidence of fraud must be undiscoverable through due diligence is a standard on shaky footing in dealing with false testimony, stating that the "additional due diligence requirement appears contrary to the text of Rule 60(b)(3), which does not mention diligence. The parties cite no cases from other courts of appeals adopting this additional requirement, nor are we aware of any other courts of appeals that have adopted it." *Cap Export, LLC v. Zinus, Inc.*, 996 F.3d 1332 (9th Cir. 2021).

Despite this caution, the Court chose to consider the case under that standard ("Even though the Ninth Circuit's requirement for Rule 60(b)(3) that the 'fraud' not be discoverable through due diligence seems questionable, we follow it here." *Id*.). But without guideposts in the text of Rule 60(b) to identify what constitutes due diligence in the discovery of fraud, they turned farther afield: "In other contexts, due diligence in discovering fraud does not require investigation unless there is reason to suspect fraud." *Id*. This is certainly a bar that Defendants meet because any reasonable observer would find it inconceivable that one of the worlds largest insurance companies would violate the False Claims Act by fabricating actual data transmitted by healthcare providers to induce litigation. Yet that's exactly what happened. See *JNS Enter., Inc. v Dixie Demolition, LLC* 430 S.W. 3d 444 (Tex. App. 2014), where death penalty sanctions in a civil case were upheld because a party fabricated evidence. In this case, regardless of Plaintiffs justifications, Plaintiffs fabricated the data in the Place of Service field and Rendering Provider fields and claimed that Defendants transmitted that data.

The Court in *Cap Export* then presented the standard established in *Avagyam v. Holder*, that the Court may "determine if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying her motion to reopen." *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011). If so, the Court would next "ascertain whether petitioner took

reasonable steps to investigate the suspected fraud or error, or, if petitioner is ignorant of counsel's shortcomings, whether petitioner made reasonable efforts to pursue relief." *Id* at 679.

A third standard cited by the Court in *Cap Export* is also germane to the matter at hand, that if there is no reason to investigate the exculpatory evidence, then the moving party could not have been dilatory in failing to investigate further. *Solorio v. Muniz*, 896 F.3d 914, 920 (9th Cir. 2018).

Exhibits 2, 8, 9, 10, 11, 13, 14 and 15 are under protective order in the criminal case. Multiple Courts have established that attorneys involved with one case may avail themselves of protected evidence in their development of strategies for related but separate matters. As the Ninth Circuit has noted, protective orders should both "comply with common sense," and that "a reasonable reading [of a protective order] must connect its prohibitions to its purpose…" *Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Precluding the Defendants' use of the protected documents identified in this Motion in light of the contribution they could have made to the preparation of the civil defense fails to meet this common sense standard: Here, multiple suits have been filed by or instigated by the same Plaintiffs, multiple Defendants are the same, the legal theories are the same in the civil case as in the criminal case, and in the case of Blake, there is duplication of legal representation. The use of these concealed documents to support a Rule 60(b) Motion is in keeping with the standard established in *Static Media*, that "…the use of information gained by an attorney under a protective order in one case may appropriately be used by the same attorney to develop a strategy applicable to a second action." *Static Media* at 1048.

Alternatively, Defendants seek relief under Rule 60(b)(2), which provides for relief from a judgment on grounds of newly discovered evidence which by due diligence could not have

been discovered in time to move for a new trial under Rule 59(b). Fed. R. Civ. P. 60(b)(2) *Minnesota Supply Co. v. The Raymond Corp.,* 472 F.3d 524 (8th Cir. 2006). The newly discovered evidence must be "of such a material and controlling nature as [would] probably [have] change[d] the outcome." See *Schultz v Butler*, 24 F.3d 626 (4th Cir. 1994), where a District Court was reversed because Defendants found that Plaintiffs had concealed a Coast Guard Investigative Report. In this case, as in *Schultz,* Defendants learned post-judgment that Plaintiffs ███████████████████████.

The integrity of patient records and attorney conduct in litigation is a matter of great public importance. The public welfare demands that this court safeguard members of the public from having their electronic medical records altered by insurance carriers. In this case, tens of thousands of laboratory electronic medical records were altered by Plaintiffs. Yet it is more than just the rights of Defendants and their patients that are at stake here; the integrity of the judicial system is, as well, because the fabrication and concealment of evidence undermines the adversarial process and may be grounds for death penalty sanctions.

Moreover, this Court has the discretion to permit post-judgment discovery to allow Defendants to inquire why documents were concealed and why the claims data was fabricated and changed post trial. *Jones v. Swanson*, 512 F.3d 1045, 1047 (8th Cir. 2008).

If Plaintiffs can win their case without violating the rights of patients, without violating without violating Federal law, without concealing evidence, without manipulating patient data, and without fabricating evidence, then so be it. But at a bare minimum, they should be put to that task.

18

## **RELIEF REQUESTED**

WHEREFORE, for the reasons stated herein, Defendants respectfully request that this Court grant this Motion pursuant to Rule 60(b)(3) or alternatively under Rule 60(b)(2), relieving Defendants from the judgment, ordering a new trial, and granting Defendants' request for post judgment discovery.

Respectfully submitted this 26th day of October 2023.

*/s/ Beau Cassidy Gertz*
Beau Gertz, pro se
4177 Xavier Street
Denver, CO 80212
(303) 877-8789
BeauGertz@gmail.com

*/s/ Mark T. Blake*
Mark T. Blake, pro se
1208 East Kennedy Boulevard – Unit 1126
Tampa, FL 33602
(813) 480-6828
MarkTBlake111@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically with the United States District Court for the Western District of Missouri, through the Court's CM/ECF system on the 26th day of October 2023, with notice of case activity sent to counsel of record.

*/s/ Mark T. Blake*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RightChoice Managed Care, Inc. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-06037-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| Hospital Partners, Inc.; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Declaration of Mark T. Blake in Support of Defendants Motion for
Fed.R.Civ.P. 60(b)(2) and (3) for Relief from Final Judgment

I, Mark T. Blake, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. The undersigned agreed to establish an attorney-client relationship with co-defendants Jorge and Ricardo Perez to assist them at a sentencing hearing set for December 13, 2023. The undersigned has no duty to file a Notice of Appearance in the criminal case at this time.

2. On or about December 6, 2022, Plaintiffs provided the Government prosecutors with a new set of spreadsheets for Putnam and added new attending provider columns and added data in those columns making the claims spreadsheet different than what Plaintiffs produced in this case.

3. Attached as Exhibit 1 is a true and correct copy of a lawsuit filed by co-defendant Christian Fletcher against Plaintiffs.

4. Attached as Exhibit 2 is a true and correct copy of emails transmitted from Mark Blake to Government prosecutors.

20

5. Attached as Exhibits 3, 4, 5 and 6 are true and correct copies of filings made in the criminal court.

6. Attached as Exhibit 7 is a portion of a Request for Production served upon Plaintiffs.

7. Attached as Exhibit 8 is a true and correct copy of Plaintiffs report issued by their Special Investigations Unit.

8. Attached as Exhibit 9 is a true and correct copy of an email transmitted from Julie Gallagher to Plaintiffs dated August 23, 2016.

9. Attached as Exhibit 10 is a true and correct copy of an email transmitted from Julie Gallagher to Plaintiffs dated August 25, 2016.

10. Attached as Exhibit 11 is a true and correct copy of an analysis conducted by Plaintiffs Special Investigations Unit Agent John Iacovelli.

11. Attached as Exhibit 12 is a true and correct copy of an excerpt of the criminal trial testimony of Howard Rochey.

12. Attached as Exhibit 13 is a true and correct copy of an email sent by DOJ prosecutor Gary Winters attaching a new set of claims spreadsheets Plaintiffs submitted for Campbellton Graceville Hospital. Those new spreadsheets contain a new column identified as Referring NPI. There is no field on a UB-04 for Referring Provider.

13. Attached as Exhibit 14 is a true and correct copy of the notification to Plaintiffs that attorney Nathaniel Moore was the author and Robins Kaplan was the owner of the software that created the claims spreadsheets for Chestatee Hospital

14. Attached as Exhibit 15 is a true and correct copy of the new metadata for the newly submitted claims spreadsheets Plaintiffs submitted to the Government prosecutors deleting Nathaniel Moore as the author and Robins Kaplan as the owner of the

21

software that created the claims spreadsheets for Chestatee Hospital.

15. Attached as Exhibit 16 is the testimony at the second criminal trial identifying Plaintiffs' attorney Nathaniel Moore as the owner of the spreadsheets submitted for Chestatee Hospital.

16. Attached as Exhibit 17 is a true and correct copy of a report issued by Bonnie Flem.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Tampa, Florida this 26th day of October 2023.

/s/ Mark T. Blake