## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

RightCHOICE Managed Care, Inc., *et al.*,

      Plaintiffs,

v.

Hospital Partners, Inc.; Hospital Laboratory Partners, LLC; Empower H.I.S. LLC; RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services; LabMed Services, LLC; SeroDynamics, LLC; David Byrns; Jorge Perez; Beau Gertz; and Mark Blake,

      Defendants.

Civil Action No.
5:18-CV-06037-DGK

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION FOR RELIEF UNDER RULE 60(b)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.      Gertz and Blake are Not Entitled to Relief under Rule 60(b)(3). ..................................... 3

     A.      The Alleged "Internal Report" is Not Plaintiffs' Document and Relates Only to Hospitals Other Than Putnam........................................................................ 3

     B.      The "Healthcare Attorney's Communications" Were Not Sent to Plaintiffs. ............. 7

     C.      The "Internal Analysis of the Billing Data" Related to Chestatee Regional Hospital, not Putnam........................................................................................ 8

     D.      Blake and Gertz Present No Evidence Plaintiffs "Fabricated" the Data in the "Rendering Provider" Fields in the Claims Spreadsheets............................................ 9

     E.      The Production of Supplemental Data to the Government in the Criminal Case Was Not Fraud, Misrepresentation, or Misconduct. .................................................... 12

II.      Blake and Gertz are Not Entitled to Relief under Rule 60(b)(2) .................................... 13

III.      Blake and Gertz Are Not Entitled to Discovery. ........................................................... 14

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Prudential Prop. Co., Inc.*,
   43 F.3d 367 (8th Cir. 1994) .................................................................................................4

*Dukes v. City of Minneapolis*,
   339 F. App'x 665 (8th Cir. 2009) ....................................................................................5, 13

*Greiner v. City of Champlin*,
   152 F.3d 787 (8th Cir. 1998) .................................................................................................6

*Jacobs v. Johnston Storage & Moving Co. Holding, LLC*,
   2021 WL 808855 (E.D. Mo. March 3, 2021) ................................................................. *passim*

*Miller v. Baker Implement Co.*,
   439 F.3d 407 (8th Cir. 2006) ......................................................................................5, 13, 14

*Nyaundi v. Triumph Foods, LLC*,
   No. 5:22-cv-06005-DGK, 2023 WL 4604546 (W.D. Mo. July 18, 2023)
   (Kays, J.) ..............................................................................................................................5

*Paige v. Sandbulte*,
   917 F.2d 1108 (8th Cir. 1990) ..............................................................................................3

*Sorenson v. Minn.*,
   2021 WL 6335128 (D. Minn. Dec. 17, 2021).........................................................................7

*U.S. v. Metro. St. Louis Sewer Dist.*,
   440 F.3d 930 (8th Cir. 2006) ................................................................................................3

*United States v. Lee*,
   2020 WL 3618709 (E.D. Ark. July 2, 2020) ........................................................................4

*United States v. Perez, et al.*,
   No. 3:20-cr-00086-TJC-JBT (M.D. Fla.)................................................................................1

*White v. National Football League*,
   2015 WL 501973 (D. Minn. Feb. 5, 2015) ..........................................................................14

## INTRODUCTION

The Rule 60(b) motion filed by Defendants Mark Blake and Beau Gertz is frivolous, is based entirely on documents Blake and Gertz are using in knowing violation of multiple orders from the Middle District of Florida, and should be denied.

Blake *claims* to represent Jorge and Ricardo Perez in the criminal matter that resulted from the pass-through-billing scheme at Putnam County Memorial Hospital and three other hospitals.[1] Even though Blake has not appeared in the criminal case as counsel of record, he was apparently given access to discovery from that case in violation of the operative protective order. *See* Cr. Dkt. 403 (allowing access to "counsel of record"). In August 2023, Blake filed a motion in the criminal case seeking the Middle District of Florida's permission to use certain discovery from the criminal case in a Rule 60(b) motion before this Court. *See* Cr. Dkts 1033 & 1034. The Department of Justice opposed, calling Blake's arguments "frivolous." Cr. Dkt. 1042. The Middle District of Florida denied Blake's request to modify the protective order. Cr. Dkt. 1046. For his part, Gertz is not an attorney and has no colorable right to access the documents.

Undeterred, Blake and Gertz filed this motion relying entirely on discovery from the criminal case, in violation of the operative protective order and the Middle District of Florida's order denying Blake relief therefrom. In fact, Gertz and Blake admit in their motion that they are knowingly violating those orders. *See* Dkt. 868 at 7-8, 17 ("Exhibits 2, 8, 9, 10, 11, 13, 14, and 15 are under protective order in the criminal case."). It appears they did so because they were nearly out of time under Rule 60(c)(1) for the filing of this motion.[2] *See* Fed. R. Civ. P. 60(c)(1).

---

[1] *United States v. Perez, et al.*, No. 3:20-cr-00086-TJC-JBT (M.D. Fla.). Citations to the docket in the criminal case are referred to herein as "Cr. Dkt."

[2] Plaintiffs accept that this Court has limited authority to enforce the orders of a different district court, but believe this conduct provides critical context as Blake and Gertz continue their practice of filing frivolous motions, bar complaints, and other complaints against Plaintiffs and their in-house and outside counsel, all in a desperate attempt to avoid the Jury's well-reasoned

Regardless of the propriety of their use of the exhibits attached to the motion, Blake and Gertz do not come close to carrying their burden under Rule 60(b). To set aside the judgment under Rule 60(b)(3), they had to provide "clear and convincing evidence" that Plaintiffs "engaged in fraud, misrepresentation, or misconduct" and that this prevented Blake and Gertz from fully and fairly presenting their case. Instead, Blake and Gertz rely on spurious and speculative allegations of the sort this Court has rejected, and they make no effort to establish how they were prevented from fully and fairly presenting their case.

They also do not develop their "alternative" argument under Rule 60(b)(2). They make no showing that they exercised diligence to obtain the evidence attached to their motion before entry of the judgment, or that the evidence is material and not merely cumulative, or that evidence they cite would likely have prevented the judgment against them. The latter requirement is a particularly heavy task in this case given the Court's apt description of the "mountain of evidence support[ing] the jury's verdicts." *See* Dkt. 807 at 2.

Finally, Blake and Gertz obliquely request "discovery," but do not explain why they need discovery or identify what discovery they need. And, given their apparent access to the complete universe of discovery produced by the Government in the criminal case, it is clear they have no need for post-judgment discovery. Blake and Gertz have apparently combed those records seeking *anything* they could argue was denied to them by Plaintiffs, they have not identified anything material, and the entirety of their Rule 60 motion should be denied.

---

Verdict. Blake's and Gertz's efforts have been rejected at every turn. The same result should follow with respect to their Rule 60(b) motion.

2

<u>**ARGUMENT**</u>

**I.**   <u>**Gertz and Blake are Not Entitled to Relief under Rule 60(b)(3).**</u>

The Eighth Circuit has repeatedly held that motions brought under Rule 60(b) seek "extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Paige v. Sandbulte*, 917 F.2d 1108, 1109 (8th Cir. 1990). Blake and Gertz rely almost entirely on out-of-Circuit precedent, none of which is controlling here (though the result would be the same in any court). Nor do they demonstrate the exceptional circumstances necessary to undermine the finality of the Judgment in this case, which is particularly acute here, where the Jury's verdict resolved Plaintiffs claims against them on the merits.

Blake and Gertz seek relief under Rule 60(b)(3), which affords the Court discretion to "relieve a party . . . from a final judgment" because of "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Their motion must be denied because they have not shown "with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 936 (8th Cir. 2006) (quoting *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005). Instead, they air five complaints on irrelevant topics, do not provide evidence—much less clear and convincing evidence—of fraud or misrepresentation by Plaintiffs, do not articulate how the issues they complain about prevented from fully and fairly presenting their case, and instead seek to relitigate this case.

   **A.**   **The Alleged "Internal Report" is Not Plaintiffs' Document and Relates Only to Hospitals Other Than Putnam.**

Blake and Gertz first complain about Plaintiffs' alleged non-production of a "report . . . issued by Plaintiffs' SIU on October 14, 2016, establishing Plaintiffs' predication [sic] for this case and for criminal prosecution." Dkt. 868 at 8 & Ex. 8. But that report was issued by Blue

3

Cross and Blue Shield of Florida, Inc., which does business as "Florida Blue," and which *is not a plaintiff in this case*. Despite being repeatedly informed by Plaintiffs, Blake and Gertz continue to ignore the obvious fact that many of the licensees using "Blue Cross and Blue Shield" name across the country are independent entities. Blake and Gertz refer to all of them simply as "BCBS" or "Plaintiffs," but these are material distinctions. The document explicitly states that it relates to *Florida Blue's* investigation of three Florida hospitals and *does not mention Putnam County Memorial Hospital*, which this case was about. *See id*., Ex. 8.

Even if Plaintiffs had been the appropriate recipient for discovery requests seeking reports issued by non-party Florida Blue (which they were not), Blake and Gertz do not identify any discovery requests where they sought the production of such a report, nor have they identified Plaintiffs' agreement to produce such documents. Instead, they cite requests served by their co-defendant, James F. Porter, Jr., see id. at 8 (citing Dkt. 603-3 at 11), but those requests are limited to "Plaintiffs' Special Investigations Units." See Dkt. 868, Ex. 7 (emphasis added). Moreover, the claims Plaintiffs filed against Porter were dismissed in early 2021. See Dkt. 566.

While failure to produce evidence requested in discovery "may under some circumstances be grounds for vacating judgment," there must be "evidence that the failure to do so . . . was due to misconduct on the part of the [non-movants.]" *Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994); *see also United States v. Lee*, 2020 WL 3618709, at *9 (E.D. Ark. July 2, 2020) (analyzing the differing law in various Circuits and concluding that "The Eighth Circuit, . . . requires [the movant] to demonstrate that any misrepresentation was intentional and that any fraud was deliberate."). Not only was there no failure by Plaintiffs to produce the Florida Blue report (because it was not a document belonging to Plaintiffs and did

4

not relate to this case), but there is no evidence that Plaintiffs' alleged failure was due to misconduct, fraud, or misrepresentation. Therefore, the motion should be denied.

Blake and Gertz also do "not attempt to demonstrate that [Plaintiffs'] answers and objections to document production were improper or that [they] pursued the available discovery remedies before the entry of" the Judgment. *Jacobs v. Johnston Storage & Moving Co. Holding, LLC*, 2021 WL 808855, at *4-5 (E.D. Mo. March 3, 2021) (collecting cases); *see Miller v. Baker Implement Co.*, 439 F.3d 407, 410 (8th Cir. 2006) (no basis for Rule 60(b)(3) relief where party "failed to avail himself of available discovery remedies before the district court issued its order"); *Dukes v. City of Minneapolis*, 339 F. App'x 665, 668 (8th Cir. 2009) (Rule 60(b)(3) relief unavailable for alleged failure to produce records in advance of order seeking relief from).

Moreover, because the report was in the custody and control of a non-party, Plaintiffs' non-production of it necessarily could not have prevented Blake and Gertz from fairly presenting their case. But that does not stop Blake and Gertz from speculating wildly that this report was the basis for the claims Plaintiffs filed against them. Dkt. 868 at 9. There is no evidence supporting this speculation, much less the clear and convincing evidence Blake and Gertz were required to provide. Such speculative Rule 60(b) motions are properly denied. *See*, *e.g.*, *Nyaundi v. Triumph Foods, LLC*, No. 5:22-cv-06005-DGK, 2023 WL 4604546, at *2 (W.D. Mo. July 18, 2023) (Kays, J.) ("Plaintiff's allegations are speculative; he has not presented clear and convincing evidence to support his motion, and the Court finds no other reasons justifying relief.").

It is exceptionally challenging to understand Blake and Gertz's convoluted arguments about why this report impacted their case, and most of their argument instead focuses on the report's importance to *the Federal Government and its criminal charging decision*, which is irrelevant to Plaintiffs' claims and this motion (particularly given that Blake and Gertz were not

5

criminally charged). *See* Dkt. 868 at 9. In any case, Blake and Gertz cannot contend they were denied the opportunity to establish that they and their co-conspirators did not bill the "Place of Service" field in the civil trial, as it came up repeatedly and was a focus for their counsel in closing argument. *See*, *e.g.*, Tr. 691[3] (Plaintiff employee testifying "Place of Service" field not on facility claims billed by Defendants but were derived in Plaintiffs' claims systems from the "Type of Bill" field billed by Defendants); Tr. 694-695 (same); Tr. 741 (same); Tr. 743 (same); Tr. 741 (no "Place of Service" code on a facility claim). It was a major theme in the Sero Defendants' closing argument. *See* Tr. 1236-37. Thus, any additional evidence on this point would have been cumulative. *See*, *e.g.*, *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (no error where alleged fraud had not prevented full and fair presentation of movant's case where evidence was mostly inadmissible and related to testimony already offered at trial).

Moreover, *Blake, Gertz, and their co-conspirators billed the tests to Plaintiffs*. If they genuinely believed that Plaintiffs' evidence of the claims at issue was incorrect or incomplete they had every opportunity to provide their own documents, to obtain documents from their co-conspirators, or to request different data from Plaintiffs. They did not, likely because the issues they raise are red herrings: Blake and Gertz engaged in fraud by billing for tests they admit were ordered from and performed by their laboratory in Colorado (*see* Dkt. 688 at ¶ 24 (stipulating that the tests were performed in Colorado), there is no evidence the tests were referred to their laboratory by Putnam (*see* Tr. 140-47, 781-82, 787-88 (Putnam's CEO and Medical Director denying Putnam referred tests to Serodynamics), and the tests were billed using *Putnam's* Tax Identification Number ("TIN") and National Provider Identifier ("NPI") without any disclosure that Serodynamics performed the tests (*see* Dkt. 751 (Jury Verdict on fraud claims)).

---

[3] "Tr." cites refer to the trial transcripts.

Plaintiffs' documentation about how the claims were billed could not possibly have prevented Gertz and Blake from fully and fairly presenting their case because Blake, Gertz, and their co-conspirators billed the claims, knew how they were billed, and had primary source evidence of how they were billed. Notably, after the Sero Defendants first raised concerns about the claims spreadsheets, Plaintiffs produced the "raw" underlying data as received by Plaintiffs, *but the Sero Defendants moved to exclude it*. *See* Dkts. 602-603. They cannot have it both ways. This is little more than an attempt to relitigate the Jury's Verdict that Blake and Gertz engaged in fraud and other torts. *See*, *e.g.*, *Sorenson v. Minn.*, 2021 WL 6335128, at *2 (D. Minn. Dec. 17, 2021) (denying Rule 60 motion attempting to relitigate issues decided) (citing *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 701 F. App'x 544, 545 (8th Cir. 2017)).

In short, Blake and Gertz fail to demonstrate with *any* evidence, much less the required clear and convincing evidence, that Plaintiffs engaged in fraud, misrepresentation, or misconduct as to the Florida Blue report, or that Plaintiffs' non-production of the report prevented Blake and Gertz from fully and fairly presenting their case.

**B.      The "Healthcare Attorney's Communications" Were Not Sent to Plaintiffs.**

Blake and Gertz next claim that Plaintiffs "concealed" two emails from a "healthcare attorney" that "make clear that Medicare rules permit hospitals to bill for laboratory claims using the form and the coding that Defendants had used" and that Blake and Gertz did not bill the "Place of Service" field to Plaintiffs. Dkt. 868 at 9-10 & Exs. 9-10. But the emails they reference were sent by counsel for a Florida hospital, Campbellton-Graceville Hospital ("CGH") to *Florida Blue*, which is not a Plaintiff in this case. *Id*. The emails are also irrelevant here.

Even if Plaintiffs had been the appropriate recipient for discovery requests seeking these emails (which they were not), Blake and Gertz do not identify any discovery requests where they sought these emails' production from Plaintiffs, nor have they identified Plaintiffs' agreement to

7

produce such documents. Nor have they established that they pursued the available discovery remedies before the entry of the judgment. *See Jacobs*, 2021 WL 808855, at *4-5.

Because these emails were in the custody and control of a non-party, Plaintiffs' non-production of it cannot possibly have prevented Blake and Gertz from fairly presenting their case. But, regardless, the Sero Defendants actually made the same argument about the propriety of their billing under Medicare guidelines. *See* Dkt. 528 (Sero Defs.' Mot. for Summ. J.) at ¶¶ 8, 99-101 Of course, this ignores the overwhelming evidence that Putnam never referred any tests to the laboratory operated by Blake and Gertz. *See*, *e.g.*, Tr. 140-47, 781-82, 787-88 (Putnam's CEO and Medical Director testifying that Putnam did not refer any tests to Serodynamics).

Blake and Gertz also claim that Exhibit 10 is relevant to whether the Sero Defendants and their co-conspirators billed the "Place of Service" field to Plaintiffs through Putnam. But Plaintiffs admitted in the civil trial that the Sero Defendants and their co-conspirators did not bill that field on the claims at issue. *See* Tr. 691, 694-95, 741, 743. The Sero Defendants made this a prominent part of their closing argument. *See* Tr. 1236-37. Exhibit 10—an email about how a *different hospital* billed certain claims not at issue in this case—would have been irrelevant, inadmissible, and, even if admitted, cumulative. For the reasons set forth above, *see supra* Section I.A, the absence of this document could not possibly have prevented Blake and Gertz from a full and fair presentation of their case.

C. **The "Internal Analysis of the Billing Data" Related to Chestatee Regional Hospital, not Putnam.**

Blake and Gertz next argue that Plaintiffs "concealed" an "internal analysis of the billing data." Dkt. 868 at 10. But the document they are referring to—Exhibit 11 to the motion—is an email between two personnel affiliated with Blue Cross and Blue Shield of Georgia that relates

to *Chestatee Regional Hospital*, a Georgia hospital. *See* Dkt. 868, Ex. 11. There is no reference to Putnam, nor do Blake and Gertz claim they had any connection to Chestatee.

Once again, Blake and Gertz fail to identify any discovery requests where they sought these emails from Plaintiffs, nor have they identified Plaintiffs' agreement to produce such documents. Nor have they established that they pursued the available discovery remedies before the entry of the judgment. *See Jacobs*, 2021 WL 808855, at \*4-5.

Finally, the only relevance Blake and Gertz identify for Exhibit 10 is that it could have been used to establish that they did not bill the "Place of Service" field. *See* Dkt. 868 at 10 (Blake and Gertz describe this as the "22 code," but they are referring to the "Place of Service" code "22"). But Exhibit 10 discusses the coding by a Georgia hospital that Blake and Gertz were not affiliated with. *See id*. And Plaintiffs admitted that the Sero Defendants did not bill the "Place of Service" field at trial, so an email about an unaffiliated hospital's billing practices would have been at most cumulative. *See* Tr. 691, 694-95, 741, 743, 1236-37. And, as set forth above, where Blake, Gertz, and their co-conspirators billed the claims at issue, and had the primary source evidence of how those claims were billed, they could not have been prevented from a full and fair presentation of their case by not having a document reflecting confusion by a single Plaintiff about how claims were billed by a different hospital and different actors than those at issue in this case. *See also supra* Section I.A.

> **D.** **Blake and Gertz Present No Evidence Plaintiffs "Fabricated" the Data in the "Rendering Provider" Fields in the Claims Spreadsheets.**

Blake and Gertz next speculate that Plaintiffs "fabricated" the "rendering provider field" in the claims spreadsheets produced by Plaintiffs.[4] Dkt. 868 at 10-11. Here, too, Blake and Gertz

---

[4] They rely entirely on testimony by a witness from Florida Blue to make this point, which, again, is not a Plaintiff in this case. *See* Dkt. 868 at 11.

9

are willing to allege the fabrication of evidence despite having no evidentiary basis for that contention, much less clear and convincing evidence, as they needed to prevail on their motion. Simply because Plaintiffs maintained a field in their data warehouse that was not billed by Blake or Gertz does not mean it was "fabricated." Indeed, the same claims spreadsheets included fields reflecting the amounts paid by Plaintiffs on each claim, the deductibles and cost-sharing owed by members, when payment was sent, and many other fields that were kept in the ordinary course of business by Plaintiffs but did not originate from the claims billed by Defendants. *See* Trial Ex. 12 (claims spreadsheet). These fields are not "fabricated;" they are real data fields maintained by Plaintiffs that simply were not billed by the Defendants.

Nor do Blake and Gertz articulate how the "rendering provider" field in the claims spreadsheets played any role in Plaintiffs' case against them, or prevented them from fully and fairly presenting their case. Blake, Gertz, and their co-conspirators billed the tests to Plaintiffs and had the primary source evidence of how the claims were billed. The manner Plaintiffs ran reports of data from their claims databases cannot possibly have prevented *the people who billed the claims* from providing a full and fair presentation of how those claims were billed.

The basis of Plaintiffs' case against Blake and Gertz was that they billed tests performed by Serodynamics using Putnam's TIN and NPI. *See* Dkt. 751 (Jury Verdict). These facts are undisputed. And Plaintiffs explained at trial that the use of Putnam's TIN and NPI indicated that Putnam was the rendering provider of the tests:

> Trial Transcript at 625:19-23 (testimony of Plaintiff employee Carey Bobbitt, questioned by Plaintiff's trial counsel):
>
> Q: So the first step, when the claim comes into the Anthem processing system, what is the first piece of data that the WGS system looks for on the claim form?
> A: We would look for the provider that rendered the service. So we're looking for their tax ID And their NPI number.

<u>Trial Transcript at 641:10-13 (testimony of Plaintiff employee Carey Bobbitt, questioned by Plaintiffs' trial counsel):</u>

Q:      Where does the system find the NPI and tax ID that's associated with the claim?
A:      It's submitted on the claim form from the provider, or the member.

<u>Trial Transcript at 681:22-682:9 (testimony of Plaintiff employee Carey Bobbitt, questioned by Blake's and Gertz's trial counsel):</u>

Q:      Ma'am, I'm almost done. But it's [Plaintiffs'] position that the fact that a claim was submitted by Putnam gives the assumption that the services were performed at Putnam. That's your position, isn't it?
A:      Yes.
Q:      And that's an assumption, correct?
A:      Yes.
Q:      All right. So nowhere in anything you that you looked at did SeroDynamics or Putnam make a statement, an affirmative statement, that these services were performed at Putnam. That's simply an assumption that you made in the adjudication process, fair?
A:      Yes, by the NPI and tax ID submitted on the claim form.

<u>Trial Transcript at 693:1-6 (testimony of Plaintiff employee Carey Bobbitt, questioned by Plaintiffs' trial counsel):</u>

Q:      Is it your assumption or your understanding that it was the provider who was associated with the NPI and tax ID provided on that claim form?
A:      It's an understanding that the provider NPI and tax ID that's billed on the claim form is the provider who performed those services.

Blake and Gertz do not provide clear and convincing evidence of fraud, misrepresentation, or misconduct, and certainly do not explain how the "rendering provider" field in the claims spreadsheets prevented them and their co-conspirators—the people who billed the claims and had the primary-source evidence of how they were billed—from a fair presentation of their case. To the contrary, overwhelming evidence reflected that Gertz and Blake knew that they were causing claims to be billed fraudulently. See, e.g., Tr. 506 (Blake testifying that he "knew to get [Serodynamics'] claims paid under [Plaintiffs'] contract with Putnam, the claims would have to be submitted using the hospital's provider numbers"); Tr. 316 (important to Gertz that Putnam was in-network with Plaintiffs); Trial Ex. 62 (advising Gertz and

Blake to get "[a]s little details re the hospital as possible, and to put "[w]ar chest money aside"); Trial Ex. 94 (Blake: "The blood laboratory can be located within one foot from the hospital and the hospitals cannot bill BCBS for the blood work."); Trial Ex. 2737 (Sero Defendants altering medical records to make them appear related to Putnam); Trial Ex. 279 (Gertz: "I don't see any way our business model will stay within the letter of the law."); Trial Ex. 293 (Gertz: "BCBS did to Putnam what I told them they would and they are about to face serious issues. I need a new hospital ASAP and all is well."); Trial Ex. 350 (Blake: "[P]igs get fat and hogs get slaughtered . . . Time to protect your families and ours."). This is only a small summary of the overwhelming evidence supporting the Jury's Verdict and the Judgment, both of which were correct. There is no basis to set the Judgment aside under Rule 60(b).

### E. The Production of Supplemental Data to the Government in the Criminal Case Was Not Fraud, Misrepresentation, or Misconduct.

The final argument from Blake and Gertz is that, in late 2022—more than one year after the civil trial in this case, after the entry of Judgment in this matter, and after the first criminal trial—certain Plaintiffs produced new claims spreadsheets to the Government.[5] This was in response to a request by the Government, which explains why other payors—including Aetna and Florida Blue—similarly provided the Government with new claims spreadsheets around that time. *See* Dkt. 868, Ex. 13 (email from Government producing updated spreadsheets from Aetna and Florida Blue, both non-parties to this case). That does not stop Blake and Gertz from conspiratorially speculating about malicious rationales for which they have no evidence.

Blake and Gertz are correct that, in response to the Government's request, Plaintiff RightCHOICE Managed Care, Inc. generated and produced an updated claims spreadsheet

---

[5] Blake and Gertz argue that Plaintiffs "added another column identify Referring Provider." *See* Dkt. 868 at 11 (citing *id*., Ex. 13). But Exhibit 13 is an email about the Government's production of spreadsheets by Florida Blue and Aetna. Dkt. 868, Ex. 13. Neither are Plaintiffs.

relating to Putnam that contained additional fields as to the "attending provider" name and "attending provider" NPI. It now appears that Blake, Gertz, and their co-conspirators used the "attending provider" fields to identify the providers around the country who sent tests to the independent laboratories that performed the tests and billed them to Plaintiffs through Putnam. This is likely the genesis for the Government's request for claims spreadsheets with these fields. But an "attending provider" is the individual responsible for a patient's care in a hospital or other clinical facility, so *even this use was a misrepresentation by the Defendants*.

Gertz and Blake do not identify any request they made for data on attending provider names or NPIs. Nor did they seek relief from the Court compelling this data field's production, despite that they and their co-conspirators were the ones who billed the tests and knew how they were billed. *See Jacobs*, 2021 WL 808855 at \*4-5; *Miller*, 439 F.3d at 410; *Dukes*, 339 F. App'x at 668. Nor do they explain how the absence of this data field prevented them from fully and fairly presenting their case. They cannot. The Jury knew the tests came from providers across the country (*see, e.g.*, Tr. 98-99 (patients calling from all over the country); Tr. 282, 289, 858 (Labmed marketers were generating test orders around the country)), and the Parties stipulated the tests were "ordered by real physicians for real patients and were actually performed" (*see* Dkt. 760 at 19). It was simply another misrepresentation made by the Defendants in this case.

Because Blake and Gertz do not provide clear and convincing evidence of fraud, misrepresentation, or misconduct, and do not explain how the absence of this data field prevented them from a full and fair presentation of their case, the motion should be denied.

## II. <u>Blake and Gertz are Not Entitled to Relief under Rule 60(b)(2)</u>

Without developing the argument, Blake and Gertz move, in the alternative, for relief under Rule 60(b)(2). Under Rule 60(b)(2), which is based on the discovery of new evidence, a party must show: "(1) that the evidence was discovered after the court's order; (2) that the

movant exercised diligence to obtain the evidence before entry of the order; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence would probably have produced a different result." *Miller v. Baker Implement Co.*, 439 F.3d 407, 414 (8th Cir. 2006). As to their motion under Rule 60(b)(2), Blake and Gertz argue only that they "learned post-judgment that Plaintiffs concealed an Investigative Report." Dkt. 868 at 18. This is, presumably, a reference to the Florida Blue report attached as Exhibit 8 to the motion. There is no basis for relief under Rule 60(b)(2) for at least three reasons.

*First*, Blake and Gertz provide no evidence that they "exercised diligence" to obtain the evidence before entry of the Judgment. The report is in the custody and control of Florida Blue, which is not a party to this action, and Blake and Gertz do not identify any effort to obtain it.

*Second*, they do not explain how the Florida Blue report, which relates only to hospitals in Florida, was material to Plaintiffs' claims against them and was not merely cumulative. In fact, as set forth above, the report is irrelevant in this case.

*Third*, Blake and Gertz make no effort to establish that, had they had the Florida Blue report about the three Florida hospitals, the jury likely would have returned verdicts in their favor. Even if they had made this argument, it would be pure speculation against the weight of the evidence. This Court has described the "mountain of evidence support[ing] the jury's verdicts." *See* Dkt. 807 at 2; *see also supra* Section I.D (summarizing evidence).

The argument made by Blake and Gertz under Rule 60(b)(2) is speculative, unsupported by any evidence, and inconsistent with the overwhelming evidence supporting their liability, the Jury's Verdict, and the Judgment. The motion should be denied.

### III. <u>Blake and Gertz Are Not Entitled to Discovery.</u>

The Court would have discretion to allow post-judgment discovery had Blake and Gertz made a "prima facie demonstration of success on the merits." *See White v. National Football*

*League*, 2015 WL 501973, at *2 (D. Minn. Feb. 5, 2015). But because Blake and Gertz have not made a *prima facie* case of any entitlement under Rule 60(b), there is no basis for any post-judgment discovery. And, "[u]nlike discovery under [Rule] 26(b), 'a request for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of its judgments.'" *Jacobs*, 2021 WL 808855 at *5 (quoting *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976) and stating that "courts should not reopen discovery without actual evidence of fraud").

Blake and Gertz make no effort to explain why they need discovery, or what discovery they need. *See generally* Dkt. 868. Rather, it is clear Blake has unfettered access to a huge trove of discovery from the criminal case that Plaintiffs do not have access to, suggesting there is no need for further discovery. Based on Blake's filings in the criminal case, it seems more likely that Blake and Gertz intend to use discovery to harass Plaintiffs and their counsel (including meritless bar complaints Blake and/or Gertz have filed against both in-house and outside counsel for Plaintiffs) or as a fishing expedition in furtherance of his conspiracy theories. *See* Cr. Dkt. 1035 (Blake's "Request for an Evidentiary Hearing" in the criminal matter).

## CONCLUSION

Gertz and Blake are not entitled to relief under Rule 60(b) because the evidence supporting the Judgment against them is overwhelming and their motion is premised entirely on their own speculation. They were given a fair opportunity to present their case to the Jury, they made strategic decisions in connection therewith, and they may not now use Rule 60(b) as a vehicle to relitigate the case or avoid the effects of their intentional and tortious conduct. Plaintiffs respectfully request that the Court deny the motion in full.

15

Dated: November 30, 2023      By: */s/ Nathaniel J. Moore*

**LEWIS RICE LLC**
Neal F. Perryman, MO Bar #43057
Michael L. Jente, MO Bar #62980
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7600
nperryman@lewisrice.com
mjente@lewisrice.com

-and-

**ROBINS KAPLAN LLP**
Jeffrey S. Gleason (admitted *pro hac vice*)
Nathaniel J. Moore (admitted *pro hac vice*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
JGleason@RobinsKaplan.com
NMoore@RobinsKaplan.com

***Attorneys for Plaintiffs***

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the Western District of Missouri, through the Court's CM/ECF system, on the 30th day of November 2023, with notice of case activity sent to counsel of record. I further hereby certify that the foregoing was served on Defendant Beau Gertz by e-mail (beaugertz@gmail) on the 30th day of November 2023.

*/s/ Nathaniel J. Moore*